United States Courts
Southern District of Texas
FILED

AUG 0 7 2000

Michael N. Milby, Clerk




# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEKD DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | **B-02- 040** |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants,** | § | |

## DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS' OBJECTIONS TO THE AFFIDAVIT OF MEL RAPP AND RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE AND PLAINTIFF'S CONDITIONAL MOTION TO TRANSFER VENUE TO ILLINOIS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Cohyco, Inc. and H. Lee Richards, (hereinafter collectively referred to as "Cohyco") and file this their Objections to the Affidavit of Mel Rapp and Response to Plaintiff's Opposition to Defendants' Motion to Transfer Venue and Plaintiff's Conditional Motion to Transfer Venue to Illinois.

### I.
### BACKGROUND FACTS

Plaintiff Quality Chekd Dairies, Inc. ("Quality Chekd") sued Cohyco, Inc. ("Cohyco") and "F" Street Investments, d/b/a Southwest Ice Cream Specialties (f/k/a Hygeia Dairy Company) ("Hygeia") to recover approximately $1.6 million allegedly owed to Quality Chekd by Hygeia for supplies and materials which Hygeia allegedly purchased through Hygeia's membership in a

47527:930991.1:080100

29

cooperative organization and purchasing program administered by Quality Chekd. Quality Chekd also has alleged that Hygeia defrauded Quality Chekd by making false representations regarding Hygeia's ability to pay its debt to Quality Chekd. Hygeia is a wholly-owned subsidiary of Cohyco. Quality Chekd has claimed that Cohyco "aided and abetted" Hygeia in its alleged fraud against Quality Chekd. Quality Chekd also sued Defendant H. Lee Richards ("Richards") individually for his alleged participation in the claimed fraud concerning Hygeia's debt to Quality Chekd.

On June 29, 2000, Cohyco filed their Motion to Transfer Venue to the Brownsville Division of the Southern District because: (1) the key witnesses[1] and all of the defendants reside in the Brownsville Division; (2) jurisdiction and venue over the Defendants is proper in the Brownsville Division; (3) Quality Chekd is a resident of Illinois and Wisconsin, and has no facilities, employees, or property in the Houston Division; (4) all of the corporate documents known to be relevant to the Plaintiff's primary claim for fraud are located in the Brownsville Division; and (5) related litigation, in the form of Hygeia's bankruptcy proceedings, is already proceeding in the Brownsville Division.

Hygeia agrees that the present matter should be transferred to the Brownsville Division for the convenience of the parties and witnesses, and it has filed a motion joining Defendants' Motion to Transfer Venue to the Brownsville Division. Hygeia has also filed a lawsuit against Quality Chekd seeking to recover the patronage dividend that Quality Chekd allegedly kept after unilaterally

---

[1]  All of the current board members of Cohyco, including Defendant Richards, and the President of the entity formerly doing business as Hygeia, reside in the Brownsville Division. See the Affidavits attached to Defendants' Motion to Transfer Venue.

cancelling Hygeia's membership in Quality Chekd. This suit has been filed in the bankruptcy proceedings currently pending in the Brownsville Division.[2]

Quality Chekd has opposed transfer to Brownsville and moved to transfer this case to Illinois. However, Quality Chekd acknowledges that a venue transfer to Illinois would be inconvenient to all parties and material witnesses.[3]  Quality Chekd's primary reasons for opposing transfer to Brownsville appear to be that their lawyers reside in Houston and that their headquarters are located in Illinois.[4]

## II.

## SUMMARY OF THE ARGUMENT

This matter should be transferred to the Brownsville Division because the factor given the greatest consideration in a decision to transfer venue based upon 28 U.S.C. 1404(a) are the location of the parties and key witnesses. It is undisputed that all of the Defendants, and the only witnesses whose testimony has been described,[5] reside in the Brownsville Division. Also, all of the witnesses or parties identified by Quality Chekd as living outside of the Brownsville Division also live outside

---

[2]    See Hygeia's Original Complaint for Recovery of Fraudulent Transfer or in the Alternative Avoidance of Section 547(b) Preference, and for Turnover of Property of the Estate Pursuant to Section 542(a) ("Hygeia's Complaint") attached as Exhibit 1 .

[3]    See Plaintiff Quality Chekd, Inc.'s Opposition to Defendants' Motion to Transfer Venue and Plaintiff's Conditional Motion to Transfer Venue to Illinois ("Opposition") at pp. 6-7.

[4]    See Opposition.

[5]    Quality Chekd has failed to provide more than general allegations concerning the witnesses they allege do not reside in the Brownsville Division. Therefore, they have failed to meet their burden of proof in moving to transfer this matter to Illinois. See Dupre v. Spanier Marine Corp., 810 F.Supp. 823, 825 (S.D. Tex. 1993).

of Houston, and most live outside of Texas.[6]  Therefore, those persons would be required to travel at least to Houston to attend trial, and they are not substantially more inconvenienced by the additional travel to the Brownsville Division.  The availability of the witnesses identified by Quality Chekd is not an issue, as the majority of those out-of-state witnesses listed by Quality Chekd are employees or directors of Quality Chekd and, therefore, can be compelled by Quality Chekd to attend trial wherever it is held. Further, Quality Chekd will not be substantially inconvenienced by litigation in the Brownsville Division, as parallel litigation involving the parties to this case is currently underway in the Brownsville Division.

Contrary to the argument of Quality Chekd, location of counsel is given the **least** weight of the factors considered for a transfer of venue. It is a factor only because of the traditional deference to a plaintiff's initial choice of forum. However, the policy behind this deference is absent in this case, as Quality Chekd is not a resident of the Houston Division.  Therefore, Quality Chekd's choice of forum, and of counsel resident in that forum, is not entitled to deference.

Quality Chekd will receive a fair trial in the Brownsville Division.  Despite their argument to the contrary, whether or not potential jurors know or may have heard of any of the Defendants is not grounds for a transfer under 1404(a), but rather is an issue to be dealt with by jury selection. Indeed, justice will be served by trying this case in a community that has a local interest in the controversy.

Quality Chekd's motion to move this case to Illinois should be denied because: (1) there is no evidence that personal jurisdiction over Cohyco can be obtained in Illinois; (2) Quality Chekd,

---

[6]     See Quality Chekd's Rule 26 Disclosures, attached as Ex. 5 to the Defendants' Motion to Transfer Venue.

as Plaintiff, chose to bring this action in Houston and, therefore, it would be an unfair exercise in

"forum shopping" to allow them to direct a venue change, effectively allowing them "two bites at

the apple"; (3) there is no evidence or argument by Quality Chekd that the witnesses or parties have

changed or moved, or that any other circumstance has changed since it filed suit in Houston, other

than the Defendants have moved to transfer venue to the Brownsville Division and, consequently,

there is no rational basis for changing their initial venue choice; and (4) the affidavit of Mel Rapp

submitted in support of Quality Chekd's motion is defective because it is not based on personal

knowledge and contains inadmissible speculation.

## III.
## <u>KEY WITNESSES AND ALL DEFENDANTS ARE LOCATED IN THE<br>BROWNSVILLE DIVISION</u>

This matter should be transferred to the Brownsville Division because the factor given the

greatest consideration in a decision to transfer based upon 28 U.S.C. 1404(a) is the location of

the parties and key witnesses. <u>See</u> <u>Dupre v. Spanier Marine Corp.</u>, 810 F.Supp. 823, 825 (S.D.

Tex. 1993). It is undisputed that all of the Defendants, and the only witnesses whose testimony

has been described,[7] reside in the Brownsville Division.

Plaintiff seems to believe that the "number" of witnesses who will allegedly be

inconvenienced by a transfer of venue is the dispositive issue in assessing the inconvenience of

---

[7]     Quality Chekd has failed to provide more than general allegations concerning the
witnesses they allege do not reside in the Brownsville Division. Therefore, they have
failed to meet their burden of proof in moving to transfer this matter to Illinois. <u>See</u>
<u>Dupre</u>, 810 F.Supp. at 825.

witnesses.[8] Courts have addressed this issue and have refused to allow the inconvenience of the witnesses to be a mere battle of numbers. Id. at 825. Rather, the central issue in determining the inconvenience of witnesses factor is whether the "key" witnesses will be inconvenienced. Id. A key witness is one who is actually expected to testify and whose nature and quality of testimony is related to the issues of the pending case. Id. Plaintiff fails to specify the identity and location of potential witnesses and fails to provide any sort of description of the potential witnesses' testimony. Instead, Plaintiff vaguely states that its "employees. . .officers. . .and its directors. . .live in different parts of the United States" and that it would be a "greater inconvenience. . .upon the victims of Mr. Richards. . ." if the present matter was transferred to the Brownsville Division.[9] Such assertion is insufficient to defeat Defendants' legal and factual evidence in support of its motion to transfer venue to the Brownsville Division and insufficient to transfer venue to Illinois.

Also, all of the witnesses or parties listed by Quality Chekd in their mandatory disclosures under Rule 26 as living outside of the Brownsville Division also live outside of Houston, and most live outside of Texas.[10] Therefore, those persons would be required to travel at least to Houston to attend trial, and they are not substantially more inconvenienced by the additional travel to the Brownsville Division. The availability of the witnesses identified by

---

[8]    Plaintiff alleged that "more witnesses and parties would be inconvenienced by transferring the case to Brownsville than by keeping it in Houston." See Opposition at pg. 6.

[9]    Opposition at pg. 3.

[10]   See Quality Chekd's Rule 26 Disclosures, at Ex. 5 to the Defendants' Motion to Transfer Venue, at pp. 1-4.

Quality Chekd is not an issue, as the majority of those out-of-state witnesses listed by Quality

Chekd are employees or directors of Quality Chekd and, therefore, can be compelled by Quality

Chekd to attend trial wherever it is held.

In sum, where a plaintiff, like Quality Chekd, does not reside in the chosen forum, the

case should be transferred to the division where the defendants, like Hygeia, Quality Chekd, and

Richards, are headquartered, because trial in Houston would be inconvenient for the Defendants

but no more convenient for Quality Chekd.  This rule has been applied even when both plaintiff

and defendant are corporations.  See United States Fidel. and Guar. Co. v. Republic Drug Co.,

800 F.Supp. 1076, 1081 (E.D.N.Y. 1992).

**IV.**
**RELATED LITIGATION IS PROCEEDING IN THE BROWNSVILLE DIVISION AND**
**CO-DEFENDANT HYGEIA HAS JOINED DEFENDANTS'**
**MOTION TO TRANSFER VENUE**

Quality Chekd will not be inconvenienced or prejudiced by transfer of the present suit to

the Brownsville Division, as it is already actively participating in related litigation in that

division.  Likewise, transfer of the present matter to the Brownsville Division will be convenient

to all parties and material witnesses, including those for Co-Defendant Hygeia, as the parties and

material witnesses are also already actively participating in related litigation in that division,

and/or either reside in or near the Brownsville Division.[11]  Transfer of the present matter to the

Brownsville Division will avoid duplicative litigation, effect judicial economy, and prevent

---

[11]     See Defendants' Motion to Transfer Venue at pgs. 3-5. See also Hygeia's Complaint,
Ex. 1 at pp. 2-3.

waste of time and money as parallel litigation involving the parties to this case in currently underway in the Brownsville Division.[12]

Hygeia has filed for bankruptcy protection in the Bankruptcy Court of the Brownsville Division.  Quality Chekd has represented to the Bankruptcy Court that it will file a claim in the bankruptcy proceedings,[13] and it has filed motions, sought and obtained relief, and made appearances in Bankruptcy Court in the Brownsville Division, and the same attorneys representing Quality Chekd in this suit also represent it in the bankruptcy proceedings.  More recently, Hygeia has also filed a lawsuit against Quality Chekd in the bankruptcy proceeding seeking to recover the patronage dividend that Quality Chekd  allegedly kept after unilaterally cancelling Hygeia's membership in Quality Chekd.[14]  In addition, Hygeia has represented to this Court in their Joinder to the Defendants' Motion to Transfer Venue that it plans to file a counterclaim against Quality Chekd for usery, and to dispute the amount of the debt claimed by Quality Chekd.  In addition, the automatic stay has been lifted as to Quality Chekd's claims against Hygeia, and it appears that Hygeia will not seek or require a severance from this action.  For these and other reasons, Hygeia has also filed a motion joining Defendants' Motion to Transfer Venue to the Brownsville Division.

Cohyco is also an active participant in the bankruptcy proceedings, as they are the largest secured creditor of Hygeia.  In fact, it is anticipated that Quality Chekd will take the position that

---

[12]    See Waites v. First Energy Leasing Corp., 605 F. Supp. 219, 222 (N.D. Ill. 1985).

[13]    See Exhibit 2, transcript from hearing in Bankruptcy Court.

[14]    See Hygeia's Complaint, attached as Ex. 1.

Cohyco's secured lien should be subordinated to the unsecured lien of Quality Chekd based on similar allegations Quality Chekd has made against Cohyco in this lawsuit. Therefore, it would be inconvenient for Cohyco to be forced to defend these duplicate claims in both the Brownsville and Houston Divisions.

## V.
## CONVENIENCE OF COUNSEL IS NOT A SIGNIFICANT FACTOR

Location of counsel, if relevant in any way, is given the least weight of the various factors considered for a venue transfer.[15] It is a factor in some cases only because of the traditional deference to a plaintiff's initial choice of forum.[16] However, the policy behind this deference is absent in this case, as Quality Chekd is not a resident of the Houston Division. Therefore, Quality Chekd's choice of forum, and of counsel resident in that forum, is not entitled to deference.[17] Nonetheless, assuming for purposes of argument that location of counsel is a factor to consider in determining a motion to transfer venue, this factor still weighs in favor of transfer to the Brownsville Division. The attorney-in-charge for Defendants Cohyco and Richards, and for Defendant Hygeia, each has their office in Corpus Christi, Texas, not Houston. Cohyco and Richards should not be penalized because they have retained a law firm with several state wide offices.

---

[15]    See Dupre, 810 F.Supp. at 826.

[16]    See Dupre, 810 F.Supp. at 826.

[17]    See Paul v. Inter. Precious Metals Corp., 613 F.Supp. 174, 179 (S.D. Miss. 1985).

## VI.
## CLAIMS OF LOCAL PREJUDICE AND/OR AN UNFAIR TRIAL ARE NOT FACTORS TO CONSIDER

Claims of local prejudice and/or an unfair trial are not factors to consider in determining a motion to transfer venue. See Los Angeles Memorial Coliseum Comm'n v. NFL, 89 F.R.D. 497, aff'd, 726 F.2d 1381, 1399 (9th Cir. 1984). The fact that Co-Defendant Hygeia is local to the Rio Grande Valley area, and the alleged facts that the "jury panel would be much more likely to have heard of [the defendants'] dairy operations and know of or be aware of the individual Defendant Richards" do not weigh against Defendants. In fact, the United States Supreme Court has noted that local interest in a controversy weighs in favor of litigating the case in a forum that has such a connection. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509 (1947) (setting forth private and public factors for courts to consider in determining a motion to transfer based on forum non conveniens). The Gulf Oil factors continue to be used as a framework for examination of motions to transfer venue based on 28 U.S.C. § 1404 (a). See Icon Indus. Controls Corp. v. Cimetrix, 921 F. Supp. 375, 383-85 (W.D. La. 1996). Consequently, trying the present matter in Brownsville, an area that Plaintiff acknowledges to have a connection and interest with the issues pertaining to the present case, would comport with the Supreme Court's guidance on venue transfers.[18] Illinois does not have the same connection or interest as does the Brownsville area. Therefore, Plaintiff's argument is insufficient to defeat Defendants' legal and factual evidence in

---

[18]   See also Reed v. Fina Oil & Chemical Co., 995 F. Supp. 705 (E.D. Tex. 1998) (case transferred from Beaumont to Amarillo where sources of proof, witnesses, and necessary records were substantially closer to Amarillo than Beaumont, and where the Amarillo area had local interest in the controversy).

support of its motion to transfer venue to the Brownsville Division and insufficient to transfer

venue to Illinois.

## VII.
## NO PERSONAL JURISDICTION CAN BE EXERCISED OVER COHYCO IN ILLINOIS

Cohyco is not subject to being sued in Illinois and, therefore, Quality Chekd's motion to

transfer this matter to Illinois should be denied.  Transfer for the convenience of the parties and

witnesses is only authorized by statute to a venue "where it might have been brought."  28 U.S.C.

§ 1404(a).  As movant, Quality Chekd bears the burden of establishing the propriety of their

requested transfer.  Cohyco is a holding company with its principal place of business in the

Brownsville Division.  There is no evidence before this Court that Cohyco had any contacts with

Illinois, let alone sufficient contacts to satisfy due process requirements.  As noted in Quality

Chekd's Opposition, the only contacts made by Richards with Illinois were in his capacity as a

director of Quality Chekd, a position he held solely by virtue of the membership of Hygeia in

Quality Chekd.[19]  Cohyco was not a member of Quality Chekd, had no contract with Quality

Chekd, and did no business with Quality Chekd.

## VIII.
## THE AFFIDAVIT OF MEL RAPP IS NOT BASED ON PERSONAL KNOWLEDGE

Defendants object to the affidavit of Mel Rapp attached to Plaintiff's Opposition because

it is not based on personal knowledge, it contains speculation and, therefore, it fails to meet the

required admissible evidence standard.  An affidavit must be made by a witness having personal

---

[19]      See Opposition, pp.4-5.

knowledge of the facts stated therein and must state facts that would be admissible evidence, rather than provide hearsay statements by others or mere opinions and conclusions.[20]

Rapp's affidavit is based on his "knowledge and *belief*"and merely denotes opinions and unsupported conclusions.[21]   For instance, Rapp speculates that it "*should have been apparent* to Richards that unsecured creditors like Quality Chekd . . . would never be paid anything by Hygeia."[22]   Moreover, Rapp boldly states that Richards traded "on relationships of trust *he had created* during his years as a fiduciary with *operational and management people* at Quality Chekd,"[23] but fails to provide support as to how he has knowledge of the *trust* relationships Richards formed and fails to identify which operational and management people Richards allegedly developed these trust relationships with.  Similarly, Rapp claims that "Richards' active deception . . . was practiced . . . in communications with [him] *and others* in Illinois,"[24] but does not provide the names of the "other" individuals or whether he was present at the time these alleged communications were made to the "other" individuals.  Without the aforementioned information, Rapp's assertions are at best conclusory hearsay statements which are insufficient to

---

[20]    See Karol v. Resolution Trust Corp., 839 F. Supp. 14 (E.D. Tex. 1993) (holding that affidavit submitted in opposition to motion to transfer venue for the convenience of the parties and witnesses was entitled to no weight where it contained hearsay statements); See generally, FED. R. CIV. P. 56(e) (requiring that affidavits in support of motions for summary judgments be made by a witness with personal knowledge of the facts stated therein).

[21]    See Affidavit of Rapp at paragraph 1 (emphasis added).

[22]    Id. at paragraph 3 (emphasis added).

[23]    Id. at paragraph 2 (emphasis added).

[24]    Id. at paragraph 7 (emphasis added).

meet the standard of admissible evidence. Therefore, his affidavit should be struck and not considered by this Court.

**IX.**
**OPERATIVE EVENTS OCCURRED IN THE BROWNSVILLE DIVISION**

By moving to transfer this case to Illinois, Quality Chekd has impliedly acknowledged that venue in the Houston Division is inconvenient for the parties and witnesses, and that Quality Chekd erred by choosing to bring this action in Houston. From reading their Opposition to transfer of this matter to the Brownsville Division, it becomes clear that the only reason for their instituting suit in Houston was for the convenience of their counsel, who are located in Houston. For example, Quality Chekd fails to allege that any witness, document, or fact relevant to their allegations is located or occurred in the Houston Division. Furthermore, their allegation that the alleged breaches of fiduciary duty they have pled "occurred" in Chicago is misleading. In their Complaint, they allege that Richards failed to communicate information about the financial condition of Hygeia, and that such failures to disclose constituted breaches of his fiduciary duties. Such alleged failures to disclose do not have a true place of occurrence, as would a car wreck. To the extent communications or failures to communicate do have a location, it is equally logical to consider the "place of occurrence" to be the location of the party sending the communication, as it is to make the such "place of occurrence" the location of the party receiving the communication. Therefore, it is equally logical to conclude that the "place of occurrence" of the acts made the subject of Quality Chekd's allegations was the Brownsville Division, where Hygeia, Cohyco, and Richards conducted their business, including their letters and phone calls to Quality Chekd.

## X.

## IT IS UNFAIR TO GIVE QUALITY CHEKD TWO BITES AT THE VENUE APPLE

Quality Chekd's motion to transfer to Illinois should also be denied because it would be an unfair exercise in "forum shopping" to allow them to direct a venue change, effectively allowing them "two bites at the apple." The statute in question requires that transfers comport with "the interests of justice." 26 U.S.C. § 1404(a). Plaintiff has had an opportunity to choose Illinois as a forum and instead elected to file suit near the offices of its lawyers. There is no evidence or argument by Quality Chekd that the witnesses or parties have changed or moved, or that any other circumstance has changed since it filed suit in Houston, other than the Defendants have moved to transfer venue to the Brownsville Division. Therefore, there is no rational basis for their abrupt change in their initial venue choice

WHEREFORE, PREMISES CONSIDERED, Defendants move the Court to grant their objection to the affidavit of Mel Rapp, grant their motion to transfer this case from the Houston Division to the Brownsville Division of the Southern District of Texas, and deny Plaintiff's conditional motion to transfer venue to Illinois. Defendants request any further relief, both special and general, at law or in equity, to which they may justly be entitled.

Respectfully submitted,

Christopher Lowrance w/permissic
OSS

Christopher Lowrance
Attorney-in-Charge
State Bar No. 00784502
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 Facsimile
ATTORNEY FOR DEFENDANTS COHYCO,
INC. AND H. LEE RICHARDS

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served

via the means indicated to counsel of record on this the ___4th___ day of August, 2000.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Law Office of Lee Hamel & Associates
1200 Smith, Suite 2900
Houston, Texas 77002
Attorney in Charge for Quality Chekd Dairies, Inc.

Mr. Nathaniel Peter Holzer
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Attorney in Charge for F Street Investments, Inc.

*Christopher Lowrance w/permission*

**Of Royston, Rayzor, Vickery & Williams, L.L.P.**   *OJS*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEKD DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER TRANSFERRING VENUE

On the _____ day of _____, 2000, the Court having considered

Defendants' Motion to Transfer Venue, and the Plaintiff's Conditional Motion to Transfer

Venue, finds that the Affidavit of Mel Rapp submitted by the Plaintiff is inadmissible and

therefore was not considered by this Court in making this Order. Further, this Court finds that

venue of this matter should be transferred to the Brownsville Division, and hereby **ORDERS**

that the Defendants' Motion To Transfer Venue be **GRANTED** and that suit be transferred to the

**Brownsville Division of the Southern District of Texas.** Plaintiff's Conditional Motion to

Transfer venue to Illinois is **DENIED.**

Signed this _____ day of _____, 2000.

_____
UNITED STATES MAGISTRATE JUDGE
HONORABLE MARY MILLOY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FILED

JUL 20 2000

BANKRUPTCY COURT

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | CASE NO. 00-20953-B-11 |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION, F/K/A | § | |
| HYGEIA DAIRY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | ADVERSARY NO. 00-2114-B |
| | § | |
| QUALITY CHEKD DAIRIES, | § | |
| | § | |
| Defendant. | § | |

ORIGINAL COMPLAINT FOR RECOVERY OF FRAUDULENT TRANSFER OR
IN THE ALTERNATIVE AVOIDANCE OF SECTION 547(b) PREFERENCE, AND FOR
TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO SECTION 542(a)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff F Street Investments, Inc., a Texas Corporation f/k/a Hygeia Dairy Company, Debtor and Debtor in Possession in this Chapter 11 proceeding, and files this its Original Complaint and in support hereof would respectively show the following:

**PARTIES, JURISDICTION, VENUE AND PROCEDURE**

1. Plaintiff is a Texas Corporation whose principal office is located in Harlingen, Cameron County, Texas.

2.      Defendant Quality Chekd Dairies is a for profit cooperative corporation organized and existing under the laws of Wisconsin and can be served at its principal place of business at 1733 Park Street, Naperville, Illinois 60563.

3.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 157 and § 1334. Venue of this case in this District is proper pursuant to 28 U.S.C. § 1408 and § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) & (F).

## FACTUAL BACKGROUND

4.      Plaintiff was a wholesale supplier of dairy products, various beverages and related merchandise.

5.      Defendant is owned by its members. Plaintiff was a long-time member of Defendant's cooperative.

6.      Some of the benefits of membership include the right to use the cooperative's logo, a discount on purchases made through the cooperative, and a quarterly dividend based on a percentage of that members purchases made through the cooperative.

7.      Another benefit of membership that was not tied to a member's level of activity in the cooperative was each member's receipt each year a payment from the cooperative solely as a benefit of membership, which payment and rights to payment is known as a patronage dividend. This patronage dividend was based on savings and economies of scale achieved by the cooperative which were then passed through to the members.

8.      Plaintiff received patronage dividends each year it was a cooperative member with the exception of 1999, in varying but often substantial amounts.

9.      Membership in a cooperative is a valuable property right.

10.     Plaintiff's and Defendant's 1999 fiscal years ended on September 30, 1999.

11.     Plaintiff did not receive its patronage dividend for FY 1999 or FY 2000.

12.     On November 30, 1999, Plaintiff sold virtually all its operating assets.

13.     Defendant unilaterally cancelled Plaintiff's membership in the cooperative.

14.     Plaintiff filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on March 27, 2000 ("Petition Date"),

15.     The economic value of the Plaintiff's membership in the cooperative can be calculated, in part, as at least a multiple of ten (10) times the average patronage dividend for the previous five (5) years, plus Plaintiff's percentage share of assets owned by the cooperative.

16.     **First Cause of Action – Fraudulent Transfer.**     Defendant's unilateral cancellation of Plaintiff's membership was a fraudulent transfer of valuable property of the Plaintiff for no value. Plaintiff therefore sues Defendant for the return of its membership or the cash value thereof.

17.     Further, on information and belief, the fraudulent transfer to the Defendant was transferred by Defendant to another member of the cooperative, or pro rata to all other members of the cooperative, as an increase of their patronage dividend and an increase in their percentage ownership of assets of the cooperative.   Plaintiff therefore reserves the right to amend this complaint after discovery to add as defendants any and all subsequent transferees.

18.     **Second Cause of Action – Preference.**  Defendant's unilateral cancellation of Plaintiff's membership was within 90 days of the Petition Date and was therefore also a preference. Plaintiff sues in the alternative for recovery of same or the cash value thereof.

19.     **Third Cause of Action – Turnover.** Plaintiff sues Defendant for turnover of its membership and its unpaid patronage dividend for FY 1999 and 2000.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer, that Plaintiff recover its membership or the cash value thereof, that Plaintiff recover all unpaid patronage dividends, and that Plaintiff receive and such other relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

Nathaniel Peter Holzer, Attorney In Charge
State Bar No. 00793971/Admissions No. 21503
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

ATTORNEY FOR DEBTOR/DEFENDANT F
STREET INVESTMENTS, INC.

OF COUNSEL:

*Jordan, Hyden, Womble & Culbreth, P.C.*

Harlin C. Womble, Jr.
State Bar No. 21880300/Admissions No. 8959
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

-4-

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | BANKRUPTCY |
| | § | |
| F-STREET INVESTMENTS, INC., | § | NO. 00-20953-B-11 |
| | § | |
| DEBTOR. | § | McALLEN, TEXAS |
| | § | JUNE 28, 2000 |
| | § | 10:26 A.M. |

............................§

## TRANSCRIPT OF HEARING

### BEFORE THE HONORABLE RICHARD S. SCHMIDT
### UNITED STATES BANKRUPTCY JUDGE

APPEARANCES FOR:

THE DEBTOR:                        MR. PETE HOLZER
                                   JORDAN, HYDEN, WOMBLE
                                     & CULBRETH
                                   500 N. SHORELINE, STE 900
                                   CORPUS CHRISTI, TEXAS 7847

QUALITY CHEK'D DAIRIES, INC.:      MR. WILLIAM BOWERS
                                   HAMEL, BOWERS & CLARK
                                   TWO ALLEN CENTER
                                   1200 SMITH STREET, STE 290
                                   HOUSTON, TEXAS 77002

OFFICIAL UNSECURED                 MS. PATRICIA REED CONSTANT
CREDITORS COMMITTEE:               ATTORNEY AT LAW
                                   STE 320-S, 800 N. SHORELII
                                   CORPUS CHRISTI, TEXAS 7840

THE COURT RECORDER:                MS. SUNNY COLLETT

PROCEEDING RECORDED BY ELECTRONIC SOUND RECORDING
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE:
GARCIA SERVICES CORP., 710 BUFFALO STREET, SUITE 210A
CORPUS CHRISTI, TX 78401, (361) 882-5753

Case 1:02-cv-00040  Document 29  Filed in TXSD on 08/07/2000  Page 23 of 41

1     (The proceedings began at 10:26 a.m.)

2         THE COURT:  All right, Mr. Holzer, F-Street and

3   which one, the motion to lift stay?

4         MR. HOLZER:  Yes, Your Honor.

5         MR. BOWERS:  The motion to lift stay, Your Honor.

6         THE COURT:  All right.  And who do you represent,

7   sir?

8         MR. BOWERS:  I represent Quality Chek'd Dairies,

9   Your Honor, the movant in this matter.

10        THE COURT:  All right.

11        MR. BOWERS:  Ms. Sanders is joining me in this

12  matter.

13        THE COURT:  All right.

14        MR. HOLZER:  And Pete Holzer for F-Street.  We do

15  have one exhibit.

16        THE COURT:  And Ms. Constant, are you in this also?

17        MS. CONSTANT:  Yes, Your Honor.  Patricia Constant

18  appearing on behalf of the official unsecured creditors

19  committee.

20        THE COURT:  Okay.

21        MR. HOLZER:  I have an original and a courtesy copy

22  for the Court.

23        THE COURT:  And does the unsecured creditors

24  committee have a position in this?

25        MS. CONSTANT:  Yes, sir.  Yes, sir.  It's the

Case 1:02-cv-00040  Document 29   Filed in TXSD on 08/07/2000   Page 24 of 41

1  unsecured creditors committee's position that Quality Chek'd

2  should be able to pursue, excuse me, that Quality Chek'd

3  should be able to pursue its actions against Lee Richards and

4  Cohyco that are based on the breach of fiduciary obligation

5  that Lee Richards owns to Quality Chek'd, because Lee

6  Richards was on the board of Quality Chek'd during the time

7  that all these decisions were made and that this conduct

8  occurred, Your Honor.

9        THE COURT:  What about -- it's a motion to lift stay

10 to allow them to go forward also against F-Street?

11       MR. HOLZER:  Yes, Your Honor.

12       MR. BOWERS:  Yes, Your Honor.

13       THE COURT:  And did you have a position with respect

14 to that?

15       MS. CONSTANT:  Your Honor, no, I don't guess so.  I

16 mean, I actually thought that perhaps F-Street should be

17 severed, that way the estate is not having to pay for the

18 defense of F-Street in the lawsuit, Your Honor, but that has

19 not yet been done.

20       MR. BOWERS:  May it please the Court, if I could

21 perhaps present the grounds that are involved in this.

22       THE COURT:  Okay, go ahead.

23       MR. BOWERS:  Before this proceeding was filed, my

24 client, Quality Chek'd, which is a dairy cooperative of which

25 F-Street, formerly Hygeia, was a member, sued F-Street.  The

Case 1:02-cv-00040  Document 29    Filed in TXSD on 08/07/2000   Page 25 of 41

1   sued Lee Richards, who was an executive and a director of F-

2   Street and also an executive and a director of Cohyco, which

3   is the owner of F-Street, and the reason for the suit was

4   primarily because Mr. Richards served as a director of our

5   client over the period of time from the beginning of the year

6   and perhaps much before that.  F-Street, then doing business

7   as Hygeia Dairies, was in desperate financial condition, as

8   was well known to Mr. Richards.  Despite this fact, Mr.

9   Richards used his position as a, on the board, and he had

10  formerly been a president of Quality Chek'd and had had a

11  long relationship, to cause our client to extend a great deal

12  of credit to F-Street, which never would have been done had

13  these true facts been known.  The guts of our lawsuit, Judge,

14  is basically Mr. Richards breached his fiduciary duty.  At

15  the same time, he was an officer and director of both Hygeia

16  and also Cohyco, which is the 100-percent owner I believe of

17  Hygeia.  And this case is pending before Judge Gilmore in

18  Houston.  Counsel for F-Street filed an ex parte motion to

19  recognize a transfer of the case to the Bankruptcy Court,

20  which was denied. . In addition, Judge Gilmore rescinded any

21  reference that would have been made of the case under the

22  standing order of the Southern District.  Judge Gilmore has

23  also set at this time a scheduling order.  Now, I'd like to

24  make one thing very clear, we are not seeking to impose some

25  type of liability on the basis of an alter-ego situation.

Case 1:02-cv-00040  Document 29  Filed in TXSD on 08/07/2000  Page 26 of 41

1   That is not in this case, although it has been very strongly

2   contended by counsel for F-Street. What we have is conduct

3   on the part of Mr. Richards when he was acting in the course

4   and scope of his employment with both Cohyco and Hygeia. We

5   are not questioning, certainly at this time, the corporate

6   integrity, but what we are talking about is individual wrong-

7   ful conduct on the part of Mr. Richards and the part of

8   Cohyco. It has been developed during the course of the bank-

9   ruptcy proceedings, the examination of the debtor and infor-

10   mal disclosures that essentially Cohyco had bailed Hygeia out

11   back in 1995, paying, selling some assets that it had and

12   paying off debt to the bank that was threatening to foreclose

13   at that time and took a $10,000 note upon which no payments

14   have been made, in addition to which it took liens and has

15   security interest on virtually all of the assets of Hygeia.

16   Now, the position we're in is we are looking to the personal

17   assets of Cohyco and the personal assets of Richards. Now,

18   part of the claim that is involved in this case is a claim

19   for the open account and the contract obligations of

20   F-Street. That, of course, is stayed by the Bankruptcy

21   Court's automatic, by the Bankruptcy Code's automatic stay.

22   What we are seeking to do is to go forward in this case,

23   conduct discovery. We do not intend and will not attempt to

24   use the Federal Court case to effect a collection of any

25   assets of the debtor. We are looking for assets of Mr.

Case 1:02-cv-00040   Document 29   Filed in TXSD on 08/07/2000   Page 27 of 41

1    Richards, we are looking for assets of Cohyco.  These are

2    assets outside of the assets of the debtor itself.  And the

3    case is brought upon a very unique situation that is not

4    common to any of the other debtors.  Mr. Richards was an

5    officer, was a director and had been a past chief executive

6    officer of Quality Chek'd.  He had had a long, long rela-

7    tionship and used his position of trust and confidence, under

8    our allegations, to obtain credit that he otherwise could not

9    have had, and to put it very bluntly, we're out to take this

10   out of Mr. Richards' and Cohyco's hide.  As far as the effect

11   on the bankruptcy, if we are in fact successful in pursuing

12   Mr. Richards and Cohyco, it will reduce the debt and will

13   reduce our claim.  My client is by far the largest unsecured

14   creditor.  What we are talking about in the bankruptcy, it's

15   essentially a liquidating bankruptcy and it's my understand-

16   ing that a stay has been filed -- that a motion has been

17   filed to convert the matter that is not yet set.  What we are

18   asking for is to allow the proceedings in the District Court

19   to go forward.  It's set for trial in approximately one year.

20   We have scheduling orders.  Part of the discovery must of

21   necessity in that case involve F-Street's records and offi-

22   cers.  To some extent it can be combined with the discovery

23   done in the bankruptcy matter but there are also matters that

24   are simply unique to this claim that the bankruptcy matters

25   should not be burdened with.  We are prepared, to the extent

1    that the contentions are that we are attempting to conduct

2    some type of alter-ego invasion, which we stoutly deny, we

3    are prepared to amend our pleadings to reflect that.  We

4    think that --

5            THE COURT:  What is your -- you now, you are after

6    Cohyco and Lee Richards but the third defendant is F-Street,

7    d/b/a Southwest Ice Cream, formerly known as Hygeia.  That's

8    our debtor.  What specifically, you don't want alter-ego,

9    what specifically are you seeking against the debtor?

10           MR. BOWERS:  Well.

11           THE COURT:  And why is it different from the claim

12   that you're going to file in the debtor's case?

13           MR. BOWERS:  Well, the difference, first of all, let

14   me address a minor difference.  In the schedules the debt is

15   listed as approximately 1,570,000.  Our claim, based upon our

16   records, indicates approximately $30,000 more.  In this size

17   debt it's obviously a small matter and we are attempting to

18   reconcile that at this point.  The other thing about it is

19   that the theory of the cause of action against the three

20   defendants involves the situation where it's not an alter-ego

21   thing but it's a matter of participating in a breach of fidu-

22   ciary duty.  In other words, Mr. Richards was an officer and

23   director of both Hygeia --

24           THE COURT:  So you're going to charge there's like

25   some sort of civil conspiracy between, among Cohyco, the

1   debtor and Lee Richards?

2          MR. BOWERS:  We have not alleged a civil conspiracy,

3   Your Honor, but under Texas law if someone participates or

4   benefits from or causes someone else to commit a breach of

5   fiduciary duty or causes them to commit fraud, then that per-

6   son is liable to the same extent as the person who actually

7   commits the fraud or breaches the fiduciary duty.  That's the

8   theory against Cohyco.  It's also the theory that's alleged

9   against Hygeia.

10          THE COURT:  To what extent did somebody other than

11  Lee Richards cause F-Street to act or participate in this?

12          MR. BOWERS:  Well, that's one of the problems we

13  have, Your Honor, is that right now we have had virtually no

14  formal discovery, and at this point we have a suspicion that

15  Mr. Pearl, who is the nephew of Mr. Richards and who is the

16  son of one of the other principal shareholders in Cohyco, may

17  have some involvement in it --

18          THE COURT:  Is he at all related to F-Street?  Is he

19  a --

20          MR. BOWERS:  He is the current president of

21  F-Street.

22          THE COURT:  Of F-Street.

23          MR. BOWERS:  And has been a president and director

24  of F-Street and Cohyco in the past.  It's a, basically, Your

25  Honor, it's a family business and Lee Richards' family, his

1   sister -- excuse me, Your Honor -- his sister is on the

2   board, Mr. Richards' sister, and she is also the mother of

3   Mr. Pearl and --

4          THE COURT:  So, I guess cutting right to the chase,

5   are you willing to go forward with this lawsuit just against

6   Cohyco and Lee Richards?

7          MR. BOWERS:  We would be willing --

8          THE COURT:  And file your claim against F-Street

9   Investments for whatever claim you have in the Bankruptcy

10  Court?

11         MR. BOWERS:  Your Honor, we would be willing to do

12  that except that we do have some aspects of the discovery in

13  the, what I would refer to as the District Court case.

14         THE COURT:  Well, you can have discovery all you

15  want, I mean you can discover against them.  I mean, I don't,

16  I think that the Bankruptcy Code allows you to do, under

17  2004, lots of stuff, but in addition to that -- you're

18  suggesting that you need to have them as a party in order to

19  do the discovery?

20         MR. BOWERS:  Yes, Your Honor.  And there's also the

21  situation that the facts are so connected between Mr.

22  Richards and Cohyco that in terms of adjudicating this in a

23  jury trial it would probably save additional litigation

24  within the Bankruptcy Court --

25         THE COURT:  Well, except that we'll be through with

1  the bankruptcy before a year. I mean one way or the other

2  we'll have to determine your claim or estimate it or what-

3  ever, something, between now and a year. I mean this is

4  going to be, even if it's an 11, our target, we target even

5  the big cases for 120 days to get the plan confirmed and then

6  start the claims objection process immediately thereafter so

7  that within six months we try to get to claims objections.

8  But if it's a Chapter 7 it ought to be quicker than that, if

9  you're telling me they're about to convert.

10          MR. BOWERS: Well, there is a motion filed by the

11  creditors committee to convert that I understand is going to

12  be resisted. I understand that's not set for hearing yet.

13          THE COURT: So that may not come to fruition.

14          MR. BOWERS: Well, we don't know at this point, Your

15  Honor, but --

16          THE COURT: Well, I don't -- well, let me hear from

17  the other side now and we'll --

18          MR. HOLZER: Yes, sir. As to the motion to convert,

19  we are opposing that motion.

20          THE COURT: Okay, but that's not before us.

21          MR. HOLZER: Yes, Your Honor. I'm heartened to hear

22  that Mr. Bowers is now willing to amend his pleadings because

23  his pleadings allege claims not only for the account against

24  the debtor but for punitive damages against the debtor for

25  what Mr. Richards supposedly did, and that's one of my prob-

1   lems with this lawsuit is the claim for punitive damages.

2          THE COURT:  Well, I think they're entitled to, if in

3   fact F-Street participated, and under Texas law I think he's

4   right, that if there were some sort of breach of fiduciary

5   duty and they participated and benefitted, they're probably

6   entitled to damages and punitive damages.

7          MR. HOLZER:  And the proper place for that claim is

8   a claim against the debtor in the Bankruptcy Court to be

9   liquidated in the claims adjudication process, not in a

10  lawsuit in Houston.

11         THE COURT:  Well, but it's a claim that they would

12  own.  If they're claiming, you know, ultra vires acts or, you

13  know, attempting to pierce the corporate veil, that is owned

14  by the trustee --

15         MR. HOLZER:  Yes, Your Honor.

16         THE COURT:  -- if we ever have a trustee, but it's a

17  sort of an unusual -- and he recognizes that in his argument.

18         MR. HOLZER:  And that's because we have brought that

19  up.  Again, one of the reasons I gave Your Honor a copy of

20  the complaint was to show you that the complaint that's on

21  file in Houston, if you look on page 2 at the very bottom,

22  I've highlighted for Your Honor, they're suing the parent for

23  the debt of the subsidiary, my client, the debtor, and, you

24  know, they can call it what they want but when you sue the

25  parent for a debt owed by the subsidiary, you're trying to

1   pierce the corporate veil, and so what they've done is

2   they've made me a plaintiff in this lawsuit.  So if they're

3   willing to sever us out, file their claim in the bankruptcy

4   and go forward on that basis, that's fine, but they haven't

5   done that, and I think it's because they know they're stuck

6   because they're trying to sue the parent company for the debt

7   of the subsidiary.  And if you'll look at the invoices

8   they've attached, you can see that they're all debts of

9   Hygeia, not Cohyco.  Cohyco is not a party to any contract

10  with Quality Chek'd.  There's no contractual relationship

11  there to sue on the debt.  Certainly I understand their

12  theory of breach of fiduciary duty, I don't agree with it,

13  and of course there's, Hygeia, excuse me, Cohyco and Mr.

14  Richards have separate counsel arguing that case, but at

15  least I understand that theory.  I don't understand how they

16  can sue the parent and then say they're not trying to pierce

17  the veil.  And Judge, that's my problem, I'm stuck being a

18  plaintiff and a defendant in this lawsuit.  I'd also like to

19  point out, we really haven't done anything about it and I

20  doubt if we will, but they have already violated the stay by

21  filing a motion to withdraw the reference in the District

22  Court in Houston at the same time as they filed their motion

23  to lift stay, and so the fact that --

24          THE COURT:  Withdraw what reference?

25          MR. HOLZER:  Procedurally, the District Court case

1   in Houston was pending when the bankruptcy was filed.  I

2   filed a motion with the District Judge asking her, as purely

3   an administrative matter, to recognize the automatic

4   reference.

5            THE COURT:  Okay.

6            MR. HOLZER:  When Quality Chek'd responded, they

7   added to their response a motion to withdraw the reference.

8   Now, that's a violation of the stay.  The fact that Judge

9   Gilmore granted it, I don't think that purges them of the

10  violation.

11           THE COURT:  Well, I think that that's a finding by,

12  I think that most cases say that when a District Judge takes

13  an action in a case that they are implicitly finding that

14  it's not a violation of the stay for them to do it, because

15  it's a federal question and they decide federal questions

16  also and so that federal question is before them when they

17  act, so.

18           MR. HOLZER:  Again, and I'm not, I am not --

19           THE COURT:  So the law of this particular case at

20  the present time is that she did not violate the stay, I

21  think.

22           MR. HOLZER:  Okay.  And I'm not pressing that issue,

23  Your Honor, just a point.  So there's another issue involved

24  in the fact that their complaint as it is on file right now

25  pleads this veil-piercing theory and the problem with that is

1   under the case law, under the **Educator's Health Trust** theory

2   and then _In re Schimmelpenninck_, only do I own those claims

3   but the stay is also in effect as to Cohyco under that line

4   of cases, because if it's a claim, an asset of the debtor

5   that they're trying to collect from the parent, then the

6   cases say in the Fifth Circuit that that's, the stay is in

7   effect as to Cohyco as well.  A little bit -- I'm not sure

8   how that applies to Mr. Richards because they're also trying

9   to sue him on the debt.  So, anyway, they have not filed a

10  proof of claim so I don't know how serious they are about

11  these theories that are in their complaint as it's now pled,

12  but I really would like to see this, the claim against the

13  debtor resolved in the claims adjudication process and not

14  have to go defend a lawsuit in Houston.  As an aside, in the

15  Houston lawsuit, it's my understanding that Judge Gilmore,

16  when we were up there for her status conference, asked

17  counsel, "What's the case doing in Houston," because there's

18  really no connection to Houston other than the plaintiff's

19  lawyers are in Houston, and so it's my understanding that

20  Cohyco is going to be moving for a venue transfer down to

21  Brownsville.  I'd like to stay out of that and so I'd like

22  the stay to remain in effect so I don't have to fight that

23  fight and spend the time, money and effort fighting a fight

24  that I really don't need to be in.  So basically, Your Honor,

25  we're entitled to have their claims adjudicated before this

1  Court in the claims adjudication process and not have to go

2  fight this lawsuit, I'd like to see them making a claim, and

3  so we'd ask that the stay remain in effect as to

4  F-Street.  Another factual issue, we are now working on

5  depositions.  I believe we've got agreed dates in, sometime

6  in August.

7           MR. BOWERS:  Yes.

8           MR. HOLZER:  For depositions for Mr. Richards and

9  for Mr. Pearl, both individually and as representatives of

10  Cohyco and F-Street, it's my understanding that that's in

11  effect.  And I think that once those depositions are past it

12  may be a good time to possibly revisit the stay issue, but

13  until then I'd like the stay to remain in effect.

14           MR. BOWERS:  May I respond, Your Honor?

15           THE COURT:  Sure.

16           MR. BOWERS:  First of all, with respect to the

17  liability on the account, it is not an alter-ego question

18  despite counsel's protestations.  What we're saying is that

19  if basically you have someone who participates in running an

20  account that they have impliedly agreed to pay for it.  Per-

21  haps it's not spelled out with that much articulation.  We

22  would be content to sever F-Street out of this matter.  The

23  depositions that are set, these are in connection with the

24  bankruptcy matter and in connection with some document

25  inspections.  I think Mr. Hamel and I are schedule to be in

1    here after the week of the Fourth of July and we'll perhaps

2    have a delightful day in the warehouse looking at a bunch of

3    unairconditioned records.  But the thing is, what we need the

4    relief from the stay from primarily is to be able to have an

5    unfettered pursuit of the discovery that is unique and is

6    appropriate to the District Court lawsuit, and whether or not

7    it will be transferred here or elsewhere, that's simply some-

8    thing that's down the road if ever.  But we have a situation

9    where we can basically live with severing out Hygeia and for

10   the -- I keep calling it Hygeia, it's actually F-Street.

11   They sold the name and everything else when they got rid of

12   the assets.

13          THE COURT:  Right.

14          MR. BOWERS:  But we would like to have the District

15   Court pending case pending and we would like to be in a situ-

16   ation where we are not going to be in violation of the stay

17   if we notice depositions in the Federal Court on matters

18   peculiar to that or perhaps seek document discovery from the

19   debtor.

20                          RULING

21          THE COURT:  All right.  It seems to me that what

22   needs to happen here is, is that we are not at a stage where

23   I could tell whether the stay ought to be lifted for you to

24   pursue this matter against F-Street completely.  I think that

25   it's very possible that either way -- I mean it's hard to

1   say.  I mean we're talking about things, what the lawsuit

2   might look like in the future as you redraft it.   So I'm

3   going to allow, I'm going to lift the stay to allow you to

4   proceed against F-Street in this lawsuit, to conduct dis-

5   covery, and I'm going to allow you to proceed to conduct

6   preliminary matters in the District Court, including, again,

7   discovery matters, amending the pleadings to -- I think the

8   way the pleadings are at the present time, there's no ques-

9   tion that the stay couldn't lift as they are.  As you have

10  described them, I think it's very possible the stay could

11  lift.  Furthermore, I think as you've described them it's

12  very possible that you could just sever them out and then

13  there wouldn't be a problem.  There's no question that if you

14  sever them the stay is going to lift for all purposes.  But

15  I'm going to allow you to conduct your preliminary discovery,

16  I'm going to allow you to amend your pleadings.  And I'm not

17  trying to get in Judge Gilmore's business, I'm only trying to

18  facilitate so that there is no question that the stay isn't

19  in the way.  But I think that there are problems at the

20  present time that may be cured by discovery and by amending

21  of the pleadings, and so I will then relook at this matter as

22  soon as that's been done.  It seems to me that in about two

23  months that that ought to be able to be done and I'll relook

24  at it.  So you can go forward with your motion to transfer

25  venue if you want to, you can go forward with your discovery,

1   you can go forward with modifying your pleadings to the

2   extent that she allows you to do that, but I'm not prepared

3   to allow you to go to trial on this matter against F-Street.

4   I don't know what the claims objection date, what the date

5   for filing claims in the F-Street matter is but --

6               MR. HOLZER:  August the 14th, Your Honor.

7               MR. BOWERS:  We'll have a claim on file by that

8   time, Your Honor.

9               THE COURT:  So, and you'll get a claims scheduling

10  order in that matter also.  So, in any event, to the extent

11  that she needs any clarification, of course, she'll be, I'll

12  be more than happy to talk with her about that.  But I'm

13  trying to facilitate her schedule, not hinder it, but I'm

14  also trying to facilitate getting this into a posture where

15  looking at what's filed I can then say, yes, this is a matter

16  that ought to go to District Court or, no, this is a matter

17  that ought to stay in the Bankruptcy Court.

18              MR. BOWERS:  Very well, Your Honor.  I'll assure the

19  Court we're not attempting at this time to go to judgment, we

20  just need to develop the case, is the main thing.

21              THE COURT:  Right, I understand that, so that's --

22              MR. BOWERS:  Does the Court wish me draft an order

23  to submit to the Court?

24              THE COURT:  Yes.

25              MR. BOWERS:  I'll do so and send it to counsel.

1        THE COURT:  If you'll submit it by both Ms. Constant

2  and Mr. Holzer.  All right.

3        MR. HOLZER:  Thank you, Your Honor.  And just to be

4  clear, if there's an amended pleading, do I then have to

5  answer the amended pleading?

6        THE COURT:  You should answer the amended pleading.

7        MR. HOLZER:  In the District Court?

8        THE COURT:  Yes.

9        MR. HOLZER:  All right, thank you, Your Honor.

10       MR. BOWERS:  Thank you, Your Honor.

11    (The proceedings ended at 10:49 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:02-cv-00040   Document 29   Filed in TXSD on 08/07/2000   Page 41 of 41

I certify that the foregoing is a correct transcription from
the electronic sound recording of the proceeds in the above
entitled matter.


July 21, 2000

Judith M. Garcia