Case 1:02-cv-00040   Document 35   Filed in TXSD on 08/28/2000   Page 1 of 36

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 2 8 2000 **BT**

Michael N. Milby, Clerk

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC. | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **B-02- 040** |
| | § | |
| COHYCO , INC., "F" STREET | § | CIVIL ACTION NO. H-00-0943 |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| Defendants. | § | |

**PLAINTIFF QUALITY CHEKD'S ANSWER TO
DEFENDANT F STREET INVESTMENTS, INC.'S
RESPONSE AND OBJECTION TO
PLAINTIFF'S MOTION TO SEVER "F" STREET INVESTMENTS, INC.
AND REFER PROCEEDINGS AGAINST IT TO THE BANKRUPTCY COURT
and
PLAINTIFF'S MOTION TO DISMISS PROCEEDINGS AS TO "F" STREET
INVESTMENTS, INC. WITHOUT PREJUDICE
and its
CONDITIONAL MOTION FOR DISMISSAL WITH PREJUDICE ON ALL
PLAINTIFF'S NON-ACCOUNT-DEBT CLAIMS
and
DEFENDANT F STREET INVESTMENTS, INC.'S MOTION FOR LEAVE TO FILE
FIRST AMENDED ANSWER OF F STREET INVESTMENTS, INC., TO THE
PLAINTIFF'S ORIGINAL COMPLAINT
AND
ORIGINAL COUNTER-COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The Plaintiff Quality Chek'd Inc. ("Quality Chrkd") answers the Defendant F Street

Investments Inc's ("F Street") combined responses, motion and conditional motion (the

"Responses") as follows:

-1-

35

1.      F Street correctly lists the motions pending in paragraphs 1,2 and 3 of its Responses. Quality Chekd opposes the Motion for Leave to File First Amended Answer filed by F Street because it seeks to bring as a counter-claim matters that are only relevant to the bankruptcy proceeding.  In the alternative, if the pending motions to sever and refer or to dismiss without prejudice are granted, such application or its substance should then be addressed to the bankruptcy court.  Quality Chekd denies that it is trying to "bifurcate" these proceedings as alleged in Paragraph 3.  The result of the pending motions that Quality Chekd has filed is to have the bankruptcy issues decided by the bankruptcy court and the issues which relate solely to Defendants Richards and Cohyco, Inc. decided by this court.  As has been reiterated frequently in these proceedings, Richards and Cohyco are being sued because Richards, while serving as a director of Quality Chekd, breached his fiduciary duty to the Plaintiff and was aided and abetted in this by Cohyco, which benefitted from Richards' misconduct

2.      The allegations in Paragraph 4 of the Response are patently incorrect.  Plaintiff has and still does deny that it is trying to penetrate the corporate veil of the F Street-Cohyco structure. This response has been made in pleadings, responses to Defendants' discovery and in open court in both this case and the F Street bankruptcy proceedings.  In connection with the assertion that the Plaintiff is pursuing a claim which belongs to the estate, in addition to the many denials of allegations on the record in this case and in the bankruptcy court, Quality Chekd would show that no such claim is listed in the schedules of F Street in the bankruptcy court.  In addition, a Motion to Convert the Chapter 11 Proceedings to a Chapter 7 Proceeding has been filed by the Creditors Committee.  It alleges, *inter alia*, that there is a conflict of interest between the debtor's current management and the duties owed by the debtor in possession to the creditors.  In support of these

allegations, the Creditor's Committee cites the family relationship between Richards, Mr. Purl, the current president of F Street and Cohyco's other owners.  Further, Cohyco claims to be a secured creditor of F Street and to be entitled to all of the assets of the debtor.  A copy of the motion to convert is attached as Exhibit "A".

3.    The allegations that the Plaintiff is seeking to obtain a greater proportion of the assets of the estate by pursuing this case is patently incorrect on its fact.  If, in fact, this case is successful, assets outside or the bankruptcy estate, as to which it has no claim, will mitigate the claim which the Plaintiff has against the debtor's estate and (if Cohyco does not deplete all of the assets) leave more to be divided among the other creditors.

4.    Quality Chekd has filed a proof of claim in the bankruptcy case which does not claim punitive damages.  A copy of this documents is attached as Exhibit "B."  The 2004 discovery proceedings in the bankruptcy are still in progress and discovery is far from complete in this case. Thus, a decision of whether or not Quality Chekd should abandon its claims for punitive damages against the debtor is premature. While the allegations in Paragraph 5 of the Response are an interesting emotional ploy, they have no basis in law or in fact. The allegations simply do not state any legal or factual basis why any part of the Plaintiff's case should be dismissed with prejudice.

5.    Under the pleadings on file, neither Cohyco nor Richards would have claims for contribution or indemnity. There is no right to be indemnified against one's own fraud, nor is there any right of contribution in a fraud case. In any event, whatever such claims the other defendants might have are unsecured claims against F Street and can be addressed in the bankruptcy court and satisfied from any assets left over from Cohyco's assertion that it is entitled to everything that the debtor has.

-3-

6.     There is no nexus between the debt that F street owes for its purchases and late payments and the damages that Richards and Cohyco caused through their misconduct that would justify the denial of the Motion to Dismiss Without Prejudice. F street owes for what it purchased; if F Street cannot pay (as now appears obvious), then Richards and Cohyco are responsible for the damages that Quality Chekd has sustained through their misconduct. These are two different obligations which are payable from two different sources.

## F STREET IS NOT A NECESSARY PARTY TO THIS CASE

7.     The cases cited by F Street in Paragraph 7 of its Response do not apply to the claims pending in this court and the bankruptcy proceeding. None of them involve the situation where an officer or director of the claimant used his position to abuse his director's position adversely to his principal and commit fraud. In fact, *Matter of Educator's Group Health Trust*, 25 F3d 1281, at 128 (5th Cir. 1994) ruled that a claim for fraud committed by an officer of the debtor on a creditor was a cause of action of the creditor and not the estate. An examination of the substance of Quality Chekd's cause of action alleged here clearly shows that its claim is unique to itself. Neither the debtor nor any of the other creditors had the type of fiduciary relationship with Richards that is alleged and admittedly existed. The claim that F Street is "both a Plaintiff and a Defendant" is patently incorrect. There is no way that F Street could sue Richards or Cohyco on the basis that Richards was or that Cohyco benefitted from Richards' position as a director of Quality Chekd. This matter has been hashed and rehashed in this court and in the bankruptcy court, and this absurd contention has and should continue to fall upon deaf ears. Again, if F Street thinks it owns the claim that Quality Chekd asserts against Richards, why isn't it listed in the schedules and why isn't it being pursued? Perhaps the answer lies in the allegations of conflict of interest and the question of the

-4-

validity or enforceability of Cohyco's "secured" creditor status raised in the Motion To Convert the Bankruptcy.

8. The allegations of corporate veil piercing and estate ownership of the claims are refuted in the preceding paragraphs. Again, *Matter of Educator's Group Health Trust*, supra, does not control this case. The claims held to belong to the debtor's estate there are of a different nature from those alleged against Richards and Cohyco here.

## SEVERANCE AND TRANSFER IS APPROPRIATE IF THE COURT DOES NOT GRANT THE MOTION TO DISMISS WITHOUT PREJUDICE

9. Counsel conveniently overlooks the fact that the motion it contests was actually a Motion to Sever and Transfer the case against F Street to the bankruptcy court. Quality Chekd has elected to attempt to pursue the bankruptcy issues in the bankruptcy court and the common law causes of action against Richards and Cohyco and in this court. It initially felt the severance and transfer would be the most convenient means to pursue this objective. However, after it filed its claim in the Bankruptcy Court to comply with the bar date, it felt that a simple motion to dismiss would best accomplish this objective. However, granting either would accomplish this purpose. In view of F Street's Motion to Amend its Pleadings, the Motion to Sever and Refer might be preferable. The fraud and breach of fiduciary duty claims involve issues uniquely triable to a jury, and issues raised about F street's liability are, for the most part, inherently bankruptcy issues. The trial of all of these issues in one proceeding would unduly complicate matters for both courts and there would be neither judicial economy nor an appropriate forum for at least some of the issues. In short, the bankruptcy court is not well suited to a jury trial needed in the fraud and breach of fiduciary duties litigation, and this court should not be troubled with the decision of issues that

-5-

impact on other parties not before it and which it does not routinely handle. While the decision to sever and transfer is within the discretion of the court, the facts of this case strongly indicate that if the Motion to Dismiss Without Prejudice is not granted, severance and referral to the bankruptcy court should be ordered.

10.    The allegations in Paragraphs 12 and 13 of the Response raise the specter of a usury claim that the Defendant F street proposes to file. If, in fact, there is a usury claim which can be asserted, it is personal to the debtor and not to parties who are not co-obligors on the debt. See *Sterling Property Management, Inc. v. Texas Commerce Bank, N.A.*, 32 F3d 964 (5th Cir. 1994); *Federal Savings and Loan Ins. Corp. v. Griffin*, 955 F.2d 691 (5th Cir. 1991); *Houston Sash and Door Company, Inc. v Heaner*, 577 S.W.2d 217 (Tex. 1979). Under the cases cited, the personal nature of a usury claim prevents either Cohyco or Richards from asserting it. Its insertion in this case will only serve to confuse matters and add an unnecessary prejudicial element to this case. Although Quality Chekd denies having charged any usurious interest, this is an issue for the bankruptcy court. In fact, even if F Street were to prevail on this issue and reduce its obligation to Quality Chekd, it would not reduce either Richards or Cohyco's liability to the Plaintiff. Rather than being a reason for denying the severance and referral of the claims against F Street, these allegations actually support Quality Chekd's position on these issues.

## DISMISSAL WILL RESULT IN ALLOCATING THE ISSUES TO THE COURTS THAT CAN MOST EFFICIENTLY HANDLE THEM

11.    Quality Chekd's motions to either sever and refer or to dismiss without prejudice simply provide an orderly means of disposing of the many complex and vexing issues in this case. There are issues which only the bankruptcy court can decide in this case and the procedures

requested by Quality Chekd transfers the bankruptcy issues that are incidental to this civil action as originally filed to that court. It leaves in the District Court only the issues germane to the complaints against Cohyco and Richards and which this court is best equipped to handle. The procedure advocated would promote judicial economy and accords with the general scheme that the bankruptcy and general laws governing the District Courts envision.

### THE CONDITIONAL MOTION TO DISMISS WITH PREJUDICE SHOULD BE DENIED

12.     The reasons why the Conditional Motion to Dismiss with Prejudice should be denied are set out in Paragraph 4 above in response to the part of the Response where they were first raised and reference is made to that part of this answer. Obviously, that motion is not well taken and has no basis in the law or the facts of this case.

13.     Quality Chekd opposes F Street's Application for Leave to Amend its Pleadings because it only seeks to raise issues it should assert in the bankruptcy proceedings which will be eliminated from this case if the court severs and refers the claims against F Street to the bankruptcy court.

14.     In response to F Street's rearguing its joinder in the other Defendant's Motion to Transfer Venue, Quality Chekd reasserts its opposition to the motion for the reasons set out in its previous pleadings and such additional facts as are alleged in this answer.

### CONCLUSION

15.     The Motion of Quality Chekd to Dismiss its Claims against F Street Without Prejudice should be granted; F Street's Conditional Motion to Dismiss with Prejudice and Application to Amend its Pleadings should be denied.

Respectfully submitted,

HAMEL, BOWERS & CLARK, L.L.P.

Lee Hamel
SBN:  08818000
Fed. ID: 2872
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000
Fax:    (713) 659-3809
ATTORNEYS FOR PLAINTIFF
QUALITY CHEKD DAIRIES, INC

## CERTIFICATE OF SERVICE

A copy of the foregoing was mailed or faxed to the following parties on August 28, 2000.

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

*Attorney for Cohyco, Inc. and H. Lee Richards*

Harlin C. Womble, Jr.
Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

*Attorney for F Street Investments*

William L. Bowers, Jr.

-8-

# EXHIBIT "A"



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNVILLE DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| **F STREET INVESTMENTS, INC.** | §     CASE NO. 00-20953-B-11 |
| **F/K/A HYGEIA** | § |
| | § |
| Debtor. | § |

### MOTION OF OFFICIAL
### UNSECURED CREDITORS COMMITTEE
### TO CONVERT CASE TO CHAPTER 7

IF YOU WANT A HEARING, YOU MUST REQUEST ONE IN WRITING AND YOU MUST RESPOND SPECIFICALLY TO EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY DAYS FROM THE DATE YOU WERE SERVED AND GIVE A COPY TO THE PERSON WHO SENT YOU THE NOTICE, OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF.

IF A PARTY REQUESTS EMERGENCY CONSIDERATION, THE COURT MAY ACT EXPEDITIOUSLY ON THE MATTER. IF THE COURT ALLOWS A SHORTER RESPONSE TIME THAN TWENTY DAYS, YOU MUST RESPOND WITHIN THAT TIME. IF THE COURT SETS AN EMERGENCY HEARING BEFORE THE RESPONSE TIME WILL EXPIRE, ONLY ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS. IF AN EMERGENCY HEARING IS NOT SET, YOU MUST RESPOND BEFORE THE RESPONSE TIME EXPIRES.

A HEARING IS HEREBY REQUESTED BY MOVANT.

**TO THE HONORABLE RICHARD S. SCHMIDT,**
**UNITED STATES BANKRUPTCY JUDGE:**

Pending before the Court is the chapter 11 case of F Street Investments, Inc. ("Debtor" or "F Street"). The Official Unsecured Creditors Committee ("Committee"), by and through its undersigned counsel, hereby moves for the conversion to chapter 7 of the pending chapter 11 case of Debtor. In support of this motion, the Committee represents the following:

## Preliminary Statement

1.      Conversion to chapter 7 is appropriate because (1) the Debtor is not engaged in any business and has no business to reorganize, (2) any chapter 11 liquidating plan will serve to benefit only the parent company and remaining secured creditor, Cohyco, Inc. ("Cohyco"), and no other creditor or party, (3) there are no funds with which to pay administrative claimants, thus demonstrating that a chapter 11 plan cannot be confirmed, (4) the Debtor has a conflict of interest that prevents it from investigating and prosecuting actions against Cohyco and other insiders, and (5) any liquidating plan can offer no benefit to creditors in excess of the rewards of a chapter 7 liquidation.  The Debtor's failure to take action on behalf of creditors to zealously protect their interests and the clear conflict of interest in which Debtor's management finds itself create a clear breach of fiduciary duty.  It appears that the Debtor is simply creating a structure by which the insiders, targeted defendants of certain litigation claims described below, can shield each other from bona fide claims.  Under these circumstances, the only appropriate course of action is the conversion of these cases and the appointment and/or election of a chapter 7 trustee.

## Relevant Facts

### General Background

2.      Prior to filing, and for many years, the Debtor was engaged in the business of manufacturing and selling milk and dairy products in Texas and Mexico.

3.      Debtor is 100% owned by Cohyco, its parent.  The Schedules show Cohyco to be owed $14,885,098.40[1] by Debtor, which is shown to be secured by all of the assets of Debtor,

---

[1]The Committee does not concede that the Cohyco debt is legitimate and reserves its right to seek to set it aside in its entirety, or to have it recharacterized as equity or otherwise subordinated

including the proceeds of the sale to Southern, described hereafter.

4.      On or about December 1, 1999, all operating assets, the trade name, good will, and all intangible assets (excluding accounts receivable) were sold by Debtor to Southern Foods Group ("Southern"). Certain secured creditors were allegedly paid from closing, including, *inter alia,* Congress Financial Corporation. On March 27, 2000, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code.

5.      No trustee or examiner has been appointed in these cases.

6.      Although virtually all assets, and 100% of the operating assets, of the Debtor were sold prior to bankruptcy, the Debtor is attempting to create the appearance of continuing to operate its business and manage its assets as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The reality is that there is nothing to manage other than liquidating accounts receivable and managing litigation for the benefit of Cohyco and other insiders.

## The Intent to File Liquidating Plan

7.      The Committee has met with the Debtor and the Debtor's representatives. The Debtor has advised the Committee, through counsel, that the Debtor intends to file a plan of liquidation. The Debtor has admitted that it does not have sufficient resources to pay the expenses of administration without the consent of Cohyco. There is no express agreement of Cohyco to pay the expenses of administration. Thus, there is and can be no assurance that a plan can be confirmed.

## The Conflicts of Interest

8.      There are a number of claims against insiders that require investigation. Debtor's

---

to unsecured creditors.

management has a conflict of interest. Debtor has made clear that it does not intend to pursue claims against Cohyco, its parent company. The Committee can investigate such claims and offer to pursue them but there is no assurance that the fees and expenses associated with such investigation and litigation will be paid. Since Cohyco asserts a security interest in all assets of Debtor, it is likely that Cohyco will oppose payment of such fees and expenses. In the absence of unencumbered assets or some other mechanism for paying the costs of such investigation, the only realistic method of doing so is through a chapter 7 trustee. A summary of some of the major claims and conflicts of interest is as follows.

**Fraud on creditors in run-up to bankruptcy.**

9.     The Debtor was losing millions of dollars each year for some years prior to the filing of bankruptcy. In 1995, the TCB Debt (defined hereafter) went into default and was satisfied only by Cohyco, a guarantor. In the audit opinion letter accompanying the financial statements for the year ending in 1998, and perhaps earlier, the Debtor's auditors issued a "going concern qualification." In 1999, the Debtor sought to sell its business for $19-20 million. Debtor ultimately sold all its assets (excluding accounts receivable) to Southern Foods for $9.5 million. This sequence of events objectively demonstrates that Debtor's management knew of the Debtor's probable insolvency for many years prior to bankruptcy. The sales price to Southern Foods was based, in part, on the amount of the physical inventory on hand at the closing date.[2] In the months immediately preceding the sale, and at times when the Debtor and its management knew that the Debtor was

---

[2]Sec. 4.2 of the Asset Purchase Agreement provides that inventory is estimated at $3 million. If a physical inventory is above $2.5 million, the excess is paid to Debtor; if less than $2.5 million, Debtor must pay purchaser. The sum of $500,000 is/was held in escrow for this purpose.

insolvent, the Debtor increased its purchases of inventory from many of its creditors by a magnitude of many millions of dollars. *E.g.*, the Statement of Financial Affairs shows that inventory increased by $460,000 in just 30 days prior to the closing of the sale to Southern Foods. The Debtor's management (who are also the principals of Cohyco) knew that Debtor could not pay its creditors for the inventory thus purchased but when the inventory was included in the sale to Southern, it was counted as physical inventory, which increased the price. The increased price, including amounts to be paid from escrow, are alleged to be pledged to Cohyco. Thus, Debtor's parent, Cohyco, benefited from the Debtor's fraudulent purchases of inventory from creditors in the months leading up to the sale to Southern Foods and to bankruptcy.

### Recharacterization or subordination of Cohyco's Debt as Equity.

10.     Cohyco, the parent of the Debtor, is shown on the Schedules as being owed $14.88 million, which is allegedly secured by all assets of Debtor. Cohyco takes the position, supported by Debtor, that all assets are pledged to Cohyco and that there are no unpledged assets.

11.     There is substantial reason to believe that Cohyco's debt should be re-characterized as equity and/or subordinated to the claims of trade creditors and other unsecured creditors. The schedules show that assets are worth approximately $4 million[3] which, if true, leaves Cohyco dramatically unsecured and the other creditors with nothing. Cohyco's $16.5 million debt originated as follows: In 1995, Debtor owed notes payable to Texas Commerce Bank, N.A. ("TCB") in the original amount of $3,050,000, $7,000,000 and $660,258 (the "TCB Notes"). The TCB Notes were guaranteed by Lee Richards and Cohyco. The TCB Notes had unpaid principal balances as of

---

[3]The Committee is advised by Debtor that substantial accounts receivable are uncollectible, which would significantly reduce the value of assets.

January 25, 1995 in amount of $2,198,000, $4,216,628.36 and $405,258. It appears that those notes went into default. In order to protect its position as guarantor, Cohyco arranged to pay TCB the amounts due and obtained an assignment of all security instruments and other rights associated with the TCB Notes. Thereafter, in May, 1995, Debtor executed a renewal note payable to Cohyco in amount of $10 million, representing the unpaid principal previously due and owing on the TCB Notes. The prior liens in favor of TCB, securing the TCB Notes, and assigned to Cohyco were not released. At the Sec. 341 meeting, representatives of the Debtor advised that no interest was ever paid on the TCB Notes after they were assigned to Cohyco. Between 1995 and the present, upon information and belief, no net reductions were made on the indebtedness which, with interest, reached $16.5 million in the months prior to filing. If these facts are true, as appears from the real property records and from the Debtor's financial statements, this would create an entitlement on the part of the trade creditors and other unsecured creditors to recharacterize Cohyco's debt as equity and/or to subordinate the Cohyco debt to other creditors. Debtor, as the subsidiary of Cohyco, has no incentive to investigate or consider bringing such a claim and has made clear that it has no intention of doing so.. The inherent conflict of interest has prevented Debtor from considering or pursuing such causes of action.

**Preferential payments and transfers.**

12.     The schedules demonstrate, and the Debtor has confirmed to the Committee, that during the 90 days prior to the date of filing (and, as to insiders, within 180 days prior to the date of filing), the Debtor paid approximately $300,000 to or for the benefit of Carancahua, an entity owned or controlled by Cohyco. This was repayment of an unsecured (or undersecured) advance previously made. The Statement of Financial Affairs also demonstrates that the Debtor transferred substantial

6

property to Cohyco within one year preceding the date of filing. The values and the dates of transfer

are: Victoria property, 1/4/00, $149,000; Kingsville property, 1/4/00, $120,000; Mercedes farm,

1/20/00, $136,633; Harlingen plant, 1/4/00, $600,000; and Bayview farm, 1/4/00, $902,300. The

total of such transfers is shown on the Statement of Affairs to be over $1.9 million. The Debtor has

shown no inclination to file a preference action to recoup these funds or avoid the transfers of

property. This is a conflict of interest that can best be remedied by converting the case to chapter 7.

**The Use of the Chapter 11 to Benefit Insiders Only.**

13.     The continuing chapter 11 serves to benefit only Cohyco and no other party. As an

example, the Debtor has now filed a motion (the "ADR Motion") seeking to require extensive

Alternative Dispute Resolution handling for all motions to lift stay, litigation and pursuit of claims

against Debtor, even when it has no conceivable impact on the chapter 11. The Debtor and Cohyco

take the position that unsecured creditors will receive ZERO. Yet the ADR Motion seeks to impose

ADR requirements on all litigation to which the Debtor is a party, even when the plaintiffs seek to

pursue insiders. There is no conceivable reason why parties pursuing claims against Debtor and

other third parties should have to engage in extensive ADR when the size of the unsecured claims

will not matter. The improper purpose is further demonstrated by the fact that Debtor's counsel can

be paid for handling ADR only through the grace of Cohyco, the allegedly secured creditor whose

alleged cash collateral is being used to pay Debtor's attorneys' fees. In fact, the ADR Motion is a

transparent attempt to shield insiders of Debtor, Cohyco and its officers, directors and shareholders,

from having to defend ongoing litigation, to make the pursuit of that litigation more expensive and

time-consuming than otherwise, and thus discourage plaintiffs from pursuing claims against insiders.

This is an improper purpose and demonstrates the bad faith pursuit of the chapter 11 by the Debtor.

7

## Relief Requested

14.     The Committee seeks the immediate conversion of the Debtor's case to chapter 7. In accordance with Section 1112(b) of the Bankruptcy Code, upon the motion of a party in interest and after notice and a hearing, the Court may convert a chapter 11 case to a case under chapter 7 for cause. *See*, Section 1112(b). The Bankruptcy Code does not specifically define "cause", although it offers a list of examples, some of which directly apply to the Debtor's case. Legislative history explains that the examples contained in Section 1112(b) do not constitute an exhaustive list, permitting the court to consider other factors as well and to use its equitable powers to reach an appropriate result in individual cases. *See*, H. Rep. 595, 95th Cong., 1st Sess. 406 (1977); *Koerner v. Colonial Bank (In re Koerner)*, 800 F.2d 1358, 1367-68 (5th Cir. 1986); *In re Devine*, 131 B.R. 952 (Bankr. S.D. Tex. 1991). The instant case meets the statutory standards under Section 1112(b), and the facts at bar compel the conversion of the Debtor's case to chapter 7 and the appointment and/or election of a chapter 7 trustee.

### Continuing Loss and Absence of Likelihood of Rehabilitation – Section 1112(b)(1)

15.     The first example of cause for conversion listed in Section 1112(b)(1) is the continuing loss to or diminution of the estate and absence of reasonable likelihood of rehabilitation. The Debtor's intent to file a liquidating plan speaks for itself on this point. There is no chance of rehabilitation and the costs of administration are a constant drain on the assets of the estate (albeit for Cohyco only, at this point). Although liquidating plans can be an efficient way to manage the liquidation of the estate for the benefit of creditors and are permitted under chapter 11, the liquidation plan must offer advantages to creditors greater than liquidation pursuant to chapter 7 in order to justify the cost of the chapter 11 plan confirmation process. "Debtors should not continue

8

in control of their businesses under the umbrella of the reorganization court beyond the point at which reorganization no longer remains a realistic undertaking, unless liquidation would proceed more expeditiously and less expensively under the control of the debtor." *In re L.S. Good and Company*, 8 B.R. 315, 318 (Bankr. N.D. W. Va. 1980). "Liquidation is not the proper function of reorganization proceedings, but the function of chapter 7 proceedings." *In re W.J. Rewoldt Company*, 22 B.R. 459, 462 (Bankr. E.D. Mich. 1982) (chapter 11 case converted to chapter 7 on determination that liquidation was not proper function of reorganization proceedings and chapter 11 liquidation was not more expeditious or less expensive than chapter 7 liquidation).

16.     The administration of this estate under chapter 11 offers no cost savings and the Debtor's plan offers no benefits of chapter 11. Therefore, continued use of the chapter 11 process cannot be justified.

**Inability to Effectuate a Plan – Section 1112(b)(2)**

17.     The inability of a debtor to effectuate a plan is another example of "cause" contained in Section 1112(b)(2) and concerns itself with whether the debtor has a viable business that is subject to resuscitation through the reorganization process and whether the debtor would be able to confirm its plan under Section 1129 of the Bankruptcy Code. Colliers Bankruptcy Manual, 3d ed., 1112.04[4][b]. If the Debtor cannot meet this standard, it is pointless to proceed with the chapter 11 process. Clearly the instant Debtor's business cannot be resuscitated. Furthermore, the Debtor will be unable to satisfy the requirements of Section 1129(a)(7) that creditors either vote in favor of the plan or receive more than they would otherwise receive if the estate were liquidated under chapter 7. In light of the costs of chapter 11 administration and the proposed release of claims, it is quite apparent that creditors will receive less from the estates by way of liquidating distributions than they

9

would receive in a Chapter 7. It will require additional time and money to complete the process, and confirmation of the Debtor's plan will not expedite the liquidation process that could be occurring now if the cases are converted.

18.     The Debtor will not be able to satisfy the provisions of Section 1129(a)(1) which requires that a chapter 11 plan comply with all provisions of Title 11 for the reasons stated above.

**Unreasonable Delay Prejudicial to Creditors – Section 1112(b)(3)**

19.     There is no benefit to creditors from waiting for the confirmation process to occur in the Debtor's cases. In fact, the delay is prejudicial and is apparently motivated by the Debtor's and third parties' interest in using the process to shield themselves from litigation claims. As in the case of "virtually any bankruptcy proceeding, time is the essence of prejudice to creditors." *Pyramid Mobile Homes, Inc. v. Speake*, 531 F.2d 743, 746 (5th Cir. 1976). The liquidation process may as well occur now to reduce chapter 11 costs since there is no added benefits to creditors contained in the provisions of the Debtor's liquidating plan.

**The Debtor Is Not Aggressively Protecting Creditors**

20.     There are potential recoveries for creditors from these cases, but the Debtor has shown an unwillingness to pursue these recoveries for the benefit of creditors, evidencing a prejudicial conflict of interest. The conversion of the cases and the appointment of a chapter 7 trustee would remedy this harm. The Debtor is imbued with an affirmative, fiduciary obligation to pursue cognizable preferences, fraudulent conveyances, and other litigation claims for the benefit of creditors. *See, In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F. 2d 820 (5th Cir. 1983); *NBD Park Ridge Bank v. SJR Enterprises, Inc. (In re SRJ Enterprises, Inc.)*, 151 B.R. 189 (Bankr. N.D. Ill. 1993); *In re Paul Kovacs and Co., Inc.*,

10

16 B.R. 203 (Bankr. D. Conn. 1981). The Fifth Circuit Court of Appeals has addressed the duties of a chapter 11 debtor in this role as a debtor-in-possession and has stated that "[a] debtor-in-possession, in his capacity as such, occupies the shoes of a trustee in every way" *Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir. 1983). "[A] debtor in possession holds its powers in trust for the benefit of creditors. The creditors have a right to require the debtor in possession to exercise those powers for their benefit." *Id.* at 822 (citing *Matter of E. Paul Kovacs & Co., Inc.*, 16 B.R. 203, 205 (Bankr. D. Conn. 1981)).

21.     As evidenced by the pleadings to date, the Debtor is not willing to take an affirmative position on the preference, fraudulent conveyance and other litigation claims. Under these circumstances, the creditors are better served by the conversion of the cases and the independent eyes of a chapter 7 trustee. Supervision of a disinterested trustee is necessary in connection with the Debtor's claims against related entities, and the conversion of these cases will provide this protection while promoting the quick and efficient administration of the estates at the lowest cost. *See, In re Natrl Plants & Lands Management Co., Ltd.*, 68 B.R. 394 (Bankr. S.D.N.Y. 1986) in which the court determined that the interests of the creditors could be jeopardized if the case were not converted and the chapter 7 trustee were not brought in to pursue preference actions against affiliates of the debtor and its major shareholder. "In a chapter 7 case, a disinterested trustee's sole commitment will be 'to the promotion of parity among interested parties, rather than to self interest'." *Id.* at 396, quoting *Thico Plan, Inc. v. Maplewood Poultry Co. (In re Maplewood Poultry Co.)*, 2 B.R. 545, 549 (Bankr. D. Me. 1980). "The interests of all creditors will best be served by the liquidation of the debtor under the supervision of a disinterested [chapter 7] trustee." *In re Cohoes Industrial Terminal, Inc.*, 65 B.R. 918 (Bankr. S.D.N.Y. 1986). "Moreover, where the

11

debtor is oblivious to fiduciary responsibilities imposed on it in dealing with property of the estate, conversion will normally be justified." *In re W.J. Rewoldt Company*, 22 B.R. 459, 462 (Bankr. E.D. Mich. 1982) (chapter 11 case converted to chapter 7 on determination that liquidation was not proper function of reorganization proceedings and chapter 11 liquidation was not more expeditious or less expensive than chapter 7 liquidation).

**Conversion is the Appropriate Remedy**

22.     Once cause has been established under Section 1112 of the Bankruptcy Code, the case can be dismissed or converted, whichever course is in the best interests of the creditors and the estate. Here, conversion is the appropriate remedy because dismissal would result in a loss of rights under Section 547, 548 and 550 of the Bankruptcy Code and the inability of a chapter 7 trustee to reach assets for the benefit of creditors. Moreover, continuation of the protections of Section 362 will enable the liquidation to occur with the least interference possible while still protecting creditors. Conversion, as opposed to dismissal, would maximize the economic value of the Debtor's estates. A chapter 7 trustee will be independent of these machinations and can pursue the liquidation of these estates without the added expense of chapter 11 administration and post-confirmation obligations and costs.

## Conclusion

For the foregoing reasons, the Committee requests that this Court convert the chapter 11 case

to chapter 7, or for such other and further relief as to which the Committee may show itself entitled.

Dated: June 7, 2000, at Houston, Texas.

By: _____
    RHETT G. CAMPBELL
    Attorney-in-Charge
    Bar No. 03714500
    Randy W. Williams
    Bar. No. 21566850
    600 Jefferson, Suite 800
    Houston, Texas  77002
    Telephone:  (713) 659-8697
    Facsimile:  (713) 659-3020

OF COUNSEL:
MORRIS & CAMPBELL
A Professional Corporation
600 Jefferson, Suite 800
Houston, Texas 77002
(713) 659-8697

    Co-Counsel for Official
    Unsecured Creditors Committee

PATRICIA REED CONSTANT
800 N. Shoreline Boulevard
South Tower, Suite 320
Corpus Christi, Texas 78401
Telephone:  361-887-1044
Facsimile:  361-887-1043

Co-Counsel for Official
Unsecured Creditors Committee

13

## Certificate of Service

I hereby certify that true and correct copies of the foregoing pleadings has been served by first class mail on the creditors and parties-in-interest on the Limited Service List as shown on the mailing matrix attached, and upon the following parties by facsimile or Certified Mail, Return Receipt Requested, this ___7th___ day of June, 2000, as follows:

Ms. Barbara Kurtz
United States Trustee
606 North Carancahua, Room 1107
Corpus Christi, Texas 78476

Mr. Lee Wiley
P.O. Box 2764
Harlingen, Texas 78551-2764

Mr. Harlin Womble
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline, Suite 900
Corpus Christi, Texas 78471

Ronald A. Simank
Schauer, Simank & Ledbetter
615 N. Upper Broadway Street
Corpus Christi, Texas 78477

**Patricia Constant**

**Debtor**

F Street Investments, Inc.
P. O. Box 751
Harlingen TX 78550

Dan Hamm
Deloitte & Touche
700 N. St. Mary's, Suite 1100
San Antonio TX 78205

**Debtor's Attorney**
Harlin C. Womble, Jr.
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline, Suite 900
Corpus Christi TX 78471

**20 Largest Unsecured Creditor**

Cardinal Packaging, Inc.
P. O. Box 60929
St. Louis MO 63150-0929

**20 Largest Unsecured Creditor**

Hawkins Associates, Inc.
40 N. E. Loop 410, Suite 430
San Antonio TX 78298

**20 Largest Unsecured Creditor**

Norse Dairy Systems, LP
135 LaSalle St., Dept. 16
Chicago IL 60674

**20 Largest Unsecured Creditor**

Sealright Co., Inc.
P. O. Box 413582
Kansas City MO 64141

**20 Largest Unsecured Creditor**

United Refrigeration, Inc.
P. O. Box 970567
Dallas TX 75397

**Counsel for Committee**
Patricia Constant
800 N. Shoreline Dr., Suite 320
South Tower
Corpus Christi TX 78401

**Committee Member Counsel**
Edward M. Lavin
8918 Tesoro Drive #418
San Antonio TX 78217

**Local U. S. Trustee**
Barbara Kurtz
U. S. Trustee's Office
606 N. Carancahua, Room 1107
Corpus Christi TX 78476

**Debtor's Special Counsel**
David Horton
P. O. Box 2159
South Padre Island TX 78597

**20 Largest Unsecured Creditor**

Cel-Maine
P. O. Box 280164
Dallas TX 75326-0164

**20 Largest Unsecured Creditor**

CKS/Rigel Plastics
P. O. Box 29305
Dallas TX 75229

**20 Largest Unsecured Creditor**

Internal Revenue Service
300 E. 8th Street
STOP 5022 AUS
Austin TX 78701

**Committee of Unsecured Creditors**

Quality Check'd
P. O. Box 6500
Chicago IL 60680

**20 Largest Unsecured Creditor**

Sweetheart Cup Company
P. O. Box 730010
Dallas TX 75373

**Secured Creditor**

Cohyco, Inc.
P. O. Box 751
Harlingen TX 78551

**20 Largest Unsecured Creditor**
Attn: Linda Guertin
DuPont Canada, Inc.
7070 Mississauga Road
Mississauga, Ontario Can L5M 2H3

**20 Largest Unsecured Creditor**
Mark Prizer
Daystar-Robinson, Inc.
123 East Neck Road
Huntington NY 11743

**U. S. Trustee**
Richard Simmonds
United States Trustee
515 Rusk, Suite 3516
Houston TX 77002

**Debtor's Attorney**
Paul Lee Wiley
Law Offices of Paul Lee Wiley
P. O. Box 2764
Harlingen TX 78551-2764

**20 Largest Unsecured Creditor**

Carancahua Investments, Inc.
P. O. Box 751
Harlingen TX 78551

**20 Largest Unsecured Creditor**

Dan Martinez & Associates
10707 Corporate Drive
Corpus Christi TX 78405

**20 Largest Unsecured Creditor**

Lord Label Group
P. O. Box 3368
Omaha NE 68176

**Committee of Unsecured Creditors**

Ramsen, Inc.
P. O. Box 306
Stillwater MN 55082

**20 Largest Unsecured Creditor**

Tetra Pak Inc.

**Co-Counsel for Committee**
Rhett G. Campbell
Morris & Campbell
A Professional Corporation
500 Jefferson, Suite 800
Houston TX 77002

**Committee of Unsecured Creditors**
Robert D. Hidding
Blackhawk Molding Co., Inc.
120 Interstate Rd.
Addison IL 60101

**Committee of Unsecured Creditors**
Nancy Schermerhorn
Hatteras Packaging Systems, Inc.
9408 Robin Hood Circle
Westerville OH 43082

Committee of Unsecured Creditors
William H. Taylor
Farm Fresh, Inc.
5400 N. Grand Blvd., Suite #575
Oklahoma City OK 73112

Notice of Appearance
Lisa C. Fancher
Fritz, Byrne & Head, LLP
98 San Jacinto Boulevard, Suite 2000
Austin TX 78701-4286

Notice of Appearance
Henry L. Hardwick
Porter, Rogers, Dahlman, & Gordon
One Shoreline Plaza
800 N. Shoreline, Suite 800
Corpus Christi TX 78401

Notice of Appearance
Pilar Perez-Wagoner
Sealright Co., Inc.
9201 Packaging Drive
DeSoto KS 66018

Notice of Appearance
Jennifer Salisbury
Carrington Coleman Sloman & Blumenthal
200 Crescent Court, Suite 1500
Dallas TX 75201

Notice of Appearance

IOS Capital, Inc.
Bankruptcy Administration
1738 Bass Road, P. O. Box 9115
Macon GA 31208

Notice of Appearance
Leon Friedberg
Carlile Patchen & Murphy LLP
366 East Broad Street
Columbus OH 43215

Notice of Appearance
David V. Herin
P. O. Box 2208
Corpus Christi TX 78403

Notice of Appearance
Mark H. Ralston
Locke, Liddell & Sapp, LLP
2200 Ross Avenue, Suite 2200
Dallas TX 75201-6776

Notice of Appearance
R. Scott Shuker
Kay Gronek & Latham, LLP
390 N. Orange Avenue, Suite 600
P. O. Box 3353
Orlando FL 32802-3353

Notice of Appearance
Tommy Cocanougher
Cintas Corporation
301 Junior Beck Dr.
Corpus Christi TX 78405

Notice of Appearance
Thomas H. Grace
Locke Liddell & Sapp, LLp
2200 Ross Avenue, Suite 2200
Dallas TX 75201-6776

Notice of Appearance
Roy E. Jacobie, Jr.
Attorney at Law
117 North Street, Suite 9
Nacogdoches TX 75961

Notice of Appearance
Steve Randall, CFO
Norse Dairy Systems, LP
P. O. Box 1869
Columbus OH 43216

Notice of Appearance
Ronald A. Simank
Schauer, Simank & Ledbetter, P.C.
615 Upper N. Broadway, Suite 2000
Corpus Christi TX 78477

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| F STREET INVESTMENTS, INC. | § | CASE NO. 00-20953-B-11 |
| F/K/A HYGEIA | § | |
| | § | |
| Debtor. | § | |

### ORDER GRANTING MOTION OF OFFICIAL
### UNSECURED CREDITORS COMMITTEE
### TO CONVERT CASE TO CHAPTER 7

On this day came on for consideration the Motion of Official Unsecured Creditors Committee to Convert Case to Chapter 7 (the "Motion"), and it appearing to the Court that the Motion should be granted, it is therefore

Ordered that this case is converted to a case under chapter 7 of Title 11, United States Code.

Signed at Brownsville, Texas, this ___ day of _____, in the year 2000.


_____
United States Bankruptcy Judge

15

# EXHIBIT "B"

**FORM B10** (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT | Southern | DISTRICT OF Texas | PROOF OF CLAIM |
|---|---|---|---|

| Name of Debtor F Street Investments, Inc., a Texas Corporation, d/b/a Southwest Ice Cream Specialties (fka Hygeia Dairy Company) | Case Number 00-20953-B-11 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

FILED
AUG 14 2000
~~U.S.~~ ~~S~~
~~COURT~~

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>Quality Chekd Dairies, Inc. | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent:<br>Lee Hamel<br>Hamel Bowers & Clark L.L.P.<br>1200 Smith, Suite 2900<br>Houston, Texas 77002<br>Telephone number: (713) 659-2000 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor:<br><br>102503 | Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other __See Exhibit 1__

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)                        (date)

| **2. Date debt was incurred:** 9/16/99-3/27/00 | **3. If court judgment, date obtained:** |
|---|---|

**4. Total Amount of Claim at Time Case Filed:** $ __1,665,502.47__

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate  ☒ Motor Vehicle
- ☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $4,300),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**7. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br><br>08/11/00 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>_William L. Bowers, Jr._, Atty for Quality Chekd |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# EXHIBIT 1

1.  This debt is the balance due on the debtor's open account, pre-petition interest and attorneys' fees incurred in aid of collection before this Chapter 11 proceeding was filed on March 27, 2000. This creditor, Quality Chekd Dairies Inc. ("Quality Chekd"), is a cooperative corporation to which the Debtor, F Street Investments Inc., f/k/a Hygeia Dairies, Inc.("F Street"), formerly belonged.

2.  One of F Street's benefits as a member was participation in Quality Chekd's purchasing program through which it bought supplies, services, materials and other things needed in its dairy business. A copy of F Street's purchase program agreement is attached as Schedule 1. Under the program, F Street ordered what it needed from time to time from suppliers participating in the program and the suppliers, in turn, billed and were paid by Quality Chekd. Quality Chekd then billed F Street which, under the purchasing program agreement, was then obligated to pay Quality Chekd. The amounts owed by each member is kept on an open account in the respective members' names. If the payment due Quality Chekd was not made within 21 days, 12% per annum interest could be charged on the overdue balance until the amount owed under the invoice was remitted to Quality Chekd.

3.  Prior to F Street's filing for protection in this case, Quality Chekd retained attorneys to collect the amounts due and they filed suit against F Street and others in the United States District Court for the Southern District of Texas, Houston Division. The attorneys' fees listed are those incurred before March 27, 2000.

4.  The amount claimed, itemizing the balance of the account, the interest charged and the legal expense is summarized as follows:

### F Street Account Summary

| | | |
|---|---|---|
| Net Unpaid Invoices | $1,804,487.23 | |
| Interest Charges to 3/27/00 | 35,834.62 | |
| Legal Expenses to 3/2700 | 58,303.02 | 1,898,615.87 |
| Less: | | |
| Offsets | $ 233,113.40 | |
| Returns and Adjustments | - | 233,113.40 |
| Total due: 3/27/00 | | $1,665,502.47 |

5.  A copy of the written authorization for Quality Chekd's attorney to sign and file this proof of claim on Quality Chekd's behalf is attached as Schedule 2.

# SCHEDULE 1

# QUALITY CHEKD DAIRIES, INC.
## -PURCHASE AGREEMENT -

This Agreement is made by and between Quality Chekd Dairies, Inc. and _Hygeia Dairy Company_ a Member of Quality Chekd Dairies, Inc. ("Participant").

## RECITALS

A.    Quality Chekd administers a cooperative purchasing program ("Program") for the benefit of its Eligible Members and Affiliate Members who join the Program as Participants and in which Program the organization arranges for the purchase of various products and services from selected suppliers by Participants and receives discounts from these suppliers, which discounts are passed to the Participants of the Program.

B.    Participant desires to join and participate in the Program and is willing to promptly pay and guarantee payment to Quality Chekd for the supplies purchased on its behalf upon receipt of the invoice and to otherwise comply with the Rules and Regulations established by the Purchasing Agreement with respect to the Program.

NOW THEREFORE, in consideration of the matters herein set forth, the parties agree as follows:

1.    <u>Participation in Purchasing Program</u>.   Quality Chekd Dairies, Inc. agrees to permit Participant to participate in the Program and to promptly submit a statement to Participant for goods or services delivered to Participant by a supplier.   The Quality Chekd organization has guaranteed the payment to Program suppliers and agrees to promptly pay such suppliers for goods and services ordered and received by a Participant.

2.    <u>Undertaking of Participant</u>
Participant agrees as follows:
A.    To order such goods and services from selected suppliers under the Program as Participant reasonably expects to need.

0011

B.    To make a good faith determination of whether the goods comply with the order and to promptly advise supplier and Quality Chekd of any defective goods.

C.    To keep accurate records of orders, shipments and payments relating to the Program and to permit Quality Chekd to review such records at reasonable times.

D.    To promptly pay for supplies and services received under the Program upon receipt of Quality Chekd's invoices for the supplies, without deductions, unless excepted under Rules and Regulations adopted by Quality Chekd's Board of Directors for the administration of the Program.

E.    To comply with all Rules and Regulations relating to the Program.

3.    <u>Guarantee</u>. Participant guarantees payment of all invoices submitted by the Program for supplies and services delivered to Participant that is of acceptable quality.

4.    <u>Interest</u>. If Participant fails to pay the guaranteed obligation outlined in paragraph 3 above, in addition to repayment of the guaranteed obligation, Participant agrees to pay interest on the unpaid guaranteed obligation equal to the lower of 12 percent per annum or the maximum interest rate allowable under applicable law at the time paragraph 3 herein is breached until the guaranteed obligation is repaid.

5.    <u>Deduction of Unpaid Obligations</u>.  Participant agrees that Quality Chekd shall have an unfettered right to deduct any unpaid sum due and owing under paragraph 3 above and any unpaid interest due and owing under paragraph 4 above from any patronage dividend which may be payable to Participant at the end of each fiscal year.

6.    <u>Costs</u>.  If Participant shall fail to pay any sum due and owing under the terms of this Agreement, Participant agrees to pay all expenses, costs and

attorneys' fees incurred by Quality Chekd either in collecting or attempting to collect any sums payable hereunder.

7. <u>Cancellation of Agreement.</u> If Participant fails to comply with the terms of this Agreement, then Quality Chekd shall give written notice of such failure and Participant will have 30 days to correct such failure. In the event such failure is not rectified within 30 days of the date of said notice, then Participant's participation and eligibility to join in Purchasing Program shall terminate. In the event Program membership is terminated, Participant remains liable for any amounts due and owing Quality Chekd and agrees to pay such liabilities.

DATED: _____11-11-98_____

QUALITY CHEKD DAIRIES, INC.

BY: _____

AS ITS:      PURCHASING DIRECTOR

DATE: _____11-11-98_____

BY: _____

AS ITS: _____Chairman_____

DATE: _____11-10-98_____

-3-

# SCHEDULE 2



# QUALITY CHEKD DAIRIES, INC.

1733 Park Street, Naperville, Illinois 60563
(630) 717-1110 • fax (630) 717-1126 • www.qchekd.com

August 11, 2000

**President**
Paul Arbuthnot
Sunshine Dairy, Inc.
Portland, OR

**Vice President**
L.G. Oller
Hiland Dairy
Springfield, MO

**Treasurer**
Donnis Winter
Super Store Industries
Stockton, CA

**Secretary**
Doug Parr
Dean Foods
Franklin Park, IL

**Directors**
Jim Miklinski
Wendt's Dairy
Niagara Falls, NY

Ron Richardson
Hiland-Roberts Ice Cream
Norfolk, NE

Steve Schmid
Smith Dairy Products Co.
Orrville, OH

Dan Soehnlen
Superior Dairy, Inc.
Canton, OH

Jerry Teel
Vitamilk Dairy, Inc.
Seattle, WA

**Director Emeritus**
Irving B. Weber
Iowa City, IA
1900-1997

**Managing Director**
Mel W. Rapp

Mr. William L. Bowers, Jr.
Hamel Bowers & Clark L.L.P.
1200 Smith, Suite 2900
Houston, Texas 77002

Re:   *In Re F Street Investments, Inc. f/k/a Hygeia Dairy Company*
      Case No. 00-20953-B-11

Dear Mr. Bowers:

I have reviewed the attached Proof of Claim in the above mentioned Chapter 11
Proceeding and have determined that it is true and correct to the best of my
knowledge and belief. I hereby authorize you to sign the Proof of Claim as one of
the attorneys of record for Quality Chekd Dairies, Inc. in the above captioned matter,
and to file it on the company's behalf in these Proceedings.

Sincerely,

Mel Rapp
Managing Director
Quality Chekd Dairies, Inc.

MR:

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC. | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| COHYCO , INC., "F" STREET | § | CIVIL ACTION NO. H-00-0943 |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | ***JURY DEMANDED*** |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| Defendants. | § | |

## ORDER

It is ORDERED THAT Plaintiff's Motion to Dismiss Proceedings as to "F" Street

Investments, Inc. Without Prejudice is GRANTED.  It is further

ORDER THAT Defendant "F" Street's Condition Motion for Dismissal with Prejudice and

Application to Amend its Pleadings should be DENIED.

Signed in Houston, Texas this _____ day of _____, 2000.

_____
United States District Judge