

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| | § | |
| Plaintiff, | § | B-02- 040 |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC. and | § | |
| H. LEE RICHARDS, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S OPPOSITION TO REFERRAL OF CASE

Plaintiff in this case opposes the transfer of this case to the Bankruptcy Court to be litigated as part of the pending bankruptcy proceeding involving F Street Investments, Inc, Case No. 00-20953-B-11; *In Re F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company*; In the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, for the following reasons:

### Summary of Plaintiff's Objections

1. A transfer of this case to the Bankruptcy Court would deprive the Plaintiff of its right under the **Seventh** Amendment to the Constitution of the United States to a trial by jury before a court of the United States created under Article III of the Constitution. This is so because if the case were referred to the Bankruptcy Court, that court could only act as an adjunct to the District Court, and its rulings would only be advisory. If a jury were used, either party could apply to the District for *de novo* review of any findings or rulings to which it had objected. Such a review would be in violation of the Seventh Amendment's prohibition of review of a jury's findings by another court

1

by other than ordinary appellate procedures.

2.  The Bankruptcy Court does not have jurisdiction over this case and, in any event, it cannot render a final judgment in these proceedings unless all of the parties consent to such action.

3.  The referral of this case to the Bankruptcy Court will, at best, be an inefficient use of judicial resources.

## Argument

4.  Background and Status of the Case:

    a.  This civil action was originally a suit against F Street Investments, Inc (formerly Hygeia Dairy Company) ("F Street"), its parent company, Cohyco, Inc. ("Cohyco") and F. Lee Richards ("Richards"), who was the principal corporate head of the other defendants. F Street was originally sued by Quality Chekd on its delinquent $1.6 million account and all three defendants were sued because Richards, while a director of Quality Chekd, acting for Cohyco, breached his fiduciary duties as a director to benefit Cohyco and F Street and committed other torts as alleged in the amended complaint. Liability of the present defendants is predicated only on their pre-petition conduct and is based on the law of the State of Texas prohibiting fraud and breach of fiduciary duties. Recovery is sought only out of Cohyco's and Richards' personal estates. This civil action was brought in the United States District Court for the Southern District of Texas as a diversity case because the Plaintiff is a citizen of Illinois and all of the defendants are citizens of Texas.

    b.  After this civil action was filed, F Street filed the F Street Bankruptcy to obtain protection under the provisions of Chapter 11 of the Bankruptcy Code. Later, Quality Chekd moved to sever F Street from this civil action and transfer the case against F Street to the Bankruptcy Court as part of that proceeding. The Motion to Sever and Transfer was granted and leave was given

2

to amend the complaint in this case to sue only Richards and Cohyco. The case is now pending on Plaintiff's First Amended Complaint, which names only Cohyco and Richards.

  c. During the motion hearings, the United States Magistrate Judge instructed the Plaintiff to amend its pleadings to allege a cause of action which could only be brought in the District Court. Although the Magistrate Judge did not articulate such a ruling, counsel for Plaintiff are concerned that if such an amendment of the pleadings is not filed, the case might be referred to the Bankruptcy Court as part of the F Street Bankruptcy.

  d. After the recent hearing before the Magistrate Judge, the Plaintiff reviewed its First Amended Complaint and has determined, based on the facts of the case as they are known in this stage of discovery, that the First Amended Complaint cannot be amended to allege substantially different facts or causes of action at this time. Upon completion of discovery, further information may provide a basis for requesting leave to file a further amendment, and Quality Chekd reserves such rights as it has to do so. However, the Plaintiff does not choose to further amend its complaint at this time and does not consent to the referral of this case to the Bankruptcy Court or to a trial by jury before that court. Plaintiff believes it has plead a case which cannot be filed as such in the Bankruptcy Court.

  5. Discussion of the Reasons Why this Case Should Not Be Referred to the Bankruptcy Court and Authorities Supporting Plaintiff's Objections.

  a. Referral would deprive Quality Chekd of its Seventh Amendment right to a trial by Jury in an Article III United States Court because the Bankruptcy Court does not have jurisdiction to conduct such a trial.

  The Supreme Court recognized that the Bankruptcy Courts are not Article III

Courts in *Northern Pipeline Construction Co. v. Marathon Pipeline Co*, 458 U.S. 50, 102 S .Ct. 2858 (1982), and, in so doing, invalidated most of the then most recent Bankruptcy Reform Act. In the wake of the *Marathon* decision, the Congress attempted to accommodate the Supreme Court's decision that the Bankruptcy Courts have jurisdiction to enter final judgments only in what have become known as "core" bankruptcy matters and may act only as adjuncts to the District Courts in what are termed as "related" matters.

      b.      The principal jurisdictional statutes are 28 U.S.C. §§157, 158 and 28 U.S.C. 1334. The statutory scheme enacted in §§ 157 and 1334, has provided exclusive jurisdiction in the District of Courts ". . . of all cases under Title 11" (28 U.S.C. 1334 [a]) and ". . . original but not exclusive jurisdiction of all civil proceedings arising under Chapter 11, or arising in or related to cases under Title 11." ( 28 U.S.C. 1334 [b] ). The provisions of 28 U.S.C. 157 allow referral of cases under Title 11, and all proceedings arising under Chapter 11 or arising in or related to a case under Title 11 ( 28 U.S.C. 157 [a] ) to the Bankruptcy Court. The next section, § (b) (1) permits bankruptcy judges to hear and determine all cases under Title 11 in all *core* proceedings arising under Chapter 11 or arising in a case under Chapter 11. The next subsection, §§ (b) (2) defines *core* proceedings with a non-exclusive list, and a final §§ (b)(2)(O) is a catchall for other matters related to the administration of bankruptcy estates.

      c.      The seminal case in the Fifth Circuit which defines *core* and related proceedings is *In Re Wood*, 825 F.2d 90 (5th Cir. 1987), recently cited with approval by *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, 171 F.3d 1016, 1022 (5th Cir.1999). In *Wood*, 825 F.2d 93, the Fifth Circuit defined a *core* proceeding as:

> *A proceeding is core under section 157 if it invokes a substantive*

4

>  *right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.*

    d.    The Court also considered what constituted a "related" claim. Adopting the rationale of an earlier Third Circuit case, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), it stated:

> *The Act does not define "related" matters. Courts have articulated various definitions of "related", but the definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." This definition comports with the legislative history of the statutory predecessor to section 1334. Neither Marathon nor general concerns of comity counsel against its use. We adopt it as our own.*

    e.    If a core case is referred, the Bankruptcy Court could enter dispositive orders under 28 U.S.C. 157 and its action would be reviewed as an ordinary appeal under 28 U.S.C. §158. However, under *In re Clay*, 35 F3d 190 (5th Cir. 1994), it is doubtful that a bankruptcy court could hold a jury trial, even in a *core* proceeding, without the consent of all of the parties. See discussion, *infra*.

    f.    The other type of case over which the District Courts have bankruptcy jurisdiction is a "related" matter governed by the provisions of 28 U.S.C. 157 (c) (1). Such a case, in the context of a jury trial, involves the difficult questions posed in *Northern Pipeline Construction Co. v. Marathon Pipeline Co, supra*. While a Bankruptcy Court may hear such a case, it may not enter dispositive orders and may only recommend findings and conclusions to the District Court, which must enter all final orders. A key provision, found in 28 U.S.C. §(c)(1), states that the District Court must consider any Bankruptcy Court findings or conclusions which are objected to *de novo*,

5

and the Bankruptcy Court may exercise final jurisdiction over a related matter only with the consent of all of the parties. Under 28 U.S.C. §157 (c) (2), the District Court can only refer a "related" matter to the Bankruptcy Court for final disposition with the consent of all of the parties. Further, a binding jury trial can only be held by a Bankruptcy Court with the consent of all of the parties. *See* 28 U.S.C. 157 (e).

        g.      The *Marathon* case and the resulting statutes have led to the holding that the Bankruptcy Court is without jurisdiction to hear a related matter where a party is entitled to a Seventh Amendment Jury Trial is an Article III Court. *See In Re Clay, supra*; and more recently, *see In the Matter of R. Daniel Bass, Jr., Debtor, et al,* 171 F.3d 1016 (5th Cir. 1999); *In the Matter of Texas General Petroleum Corporation,* 53 F.3d 1330, 1336 (5th Cir. 1995); *In Re: Doris Hofman, Debtor,* 248 B.R. 79, 90 (W. D. Tex. 2000), citing *In Re Clay, supra*; and *In Re: Pierre A. Lapeyre,* No. 99-1312 (E.D. La. 1999).

        h.      The main problem that Judge Higginbotham saw in the *Clay* case was that, outside of a core proceeding, there is not even statutory jurisdiction for the Bankruptcy Court to act as an Article III Court. If it acts as an adjunct to a District Court in a jury trial, the requirement of 28 U.S.C. 157 (c) that the District Court's review be *de novo* runs afoul of the Seventh Amendment's prohibition of a review of a jury's findings on other than traditional appellate review. The result of any referral of a related matter, especially where a party is entitled to a jury, is a circuitous procedure that would, in all probability, be invalid because it violates the Seventh Amendment.

        i.      Judge Higginbotham's analysis in *Clay,* 35 F.3d 192 is instructive. He reasoned:

> *The inadequacy of district court review of jury trials is fatal to*

*delegation to adjuncts. In upholding a magistrate's power to rule on a pretrial motion, the Court stressed the importance of de novo review maintaining sufficient Article III control over an adjunct. United States v. Raddatz, 447 U.S. 667, 681-82, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980); see also Gomez, 490 U.S. at 875 n.29 (suggesting that Raddatz requires that district court be able to rehear witnesses and decide for itself de novo). Marathon likewise emphasized the need for ample review of an adjunct by an Article III court. 458 U.S. at 85 (Brennan, J., plurality opinion) (disapproving of clearly erroneous standard of review of bankruptcy court judgments); id. at 91 (Rehnquist, J., concurring in the judgment) (holding that bankruptcy courts were not adjuncts because they were subject "only [to] traditional appellate review").*

*De novo review is inconsistent with the Seventh Amendment, which states: "No fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law. In other words, the 7th Amendment permits only ordinary appellate review. This court has recognized the clash between Article III review of adjunct proceedings and 7th Amendment sanctity of jury verdicts. "The reference [to a magistrate for jury trial] either effectively denies the right to trial by jury, or impermissibly abrogates the decisive role of the district judge, or both." Ford v. Estelle, 740 F.2d 374, 380 (5th Cir. 1984).*

*De novo review by a district court is also impossible in practice, because a cold record cannot capture the atmosphere, the expressions, the attitudes that are the marrow of a jury trial. Gomez, 490 U.S. at 874-75; United States v. Ford, 824 F.2d at 1435-36; see also Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037, 1049 (7th Cir. 1984) (Posner, J., dissenting) (noting that appellate review leaves trial judge wide latitude in evidentiary rulings, instructions, and comments). Only verbal acrobatics could label the autonomous conduct of a trial as adjunct to anything.*

j.  Turning to this case, we have the following factors: this is *not* a core proceeding; it neither arises under Title 11 nor is it a case that could only arise in a bankruptcy situation. *See In Re Wood*, *supra*. If this case has anything to do with the F Street Bankruptcy Proceeding, it is only a "related" matter in which a Bankruptcy Court cannot conduct a Seventh

7

Amendment jury trial as an Article III Court unless all parties consent to such a proceeding. Such consent has not been given and the Plaintiff's rights to a jury trial have clearly been preserved.

  k. There is a serious question if this is even a related matter under *In re Wood*. There must be at least some impact on the F Street Bankruptcy for this to be a related matter. *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, 171 F.3d 1024. Under *Bass*, without the "related." matter *nexis*, there is no jurisdiction at all in the Bankruptcy Court, and none in the District Court unless there is an independent basis of jurisdiction, such as diversity of citizenship. Of course, jurisdiction can be raised at any time during a proceeding, and if this case were sent to the Bankruptcy Court, that issue would still be alive. If it were later determined that this is not even a related case, everything would have to start over.

  l. The case alleges conduct by the two defendants and the damages, based on legal grounds not available to the debtor in possession or the unsecured creditor's committee. Recovery would not be out of the debtor's assets and would not make additional assets available to the debtor's estate for distribution to the other creditors. If a distribution is paid to creditors by F Street's bankruptcy estate, it would impact the damages in this case. However, that is not enough to make this a "related case." Under *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, the non-bankruptcy must impact the administration of the estate in order to make the matter "related to" the bankruptcy. *Bass* teaches that the fact that the bankruptcy may conversely impact the civil action does not make the civil action a related matter.

  m. Returning to the court's original request of the Plaintiff, Quality Chekd respectfully submits that it has plead a case which cannot be prosecuted in the Bankruptcy Court. This is because Plaintiff has plead a case in which it has a right to a Seventh Amendment jury trial

8

conducted by an Article III United States Court. The Bankruptcy Court is not such a court and cannot conduct a Seventh Amended Jury Trial because, absent consent of the parties, it lacks jurisdiction to do so.

6. Referral of this case over the Plaintiff's objection to the Bankruptcy Court not only would be improper, but would also be an inefficient use of judicial resources.

From the foregoing analysis, it is evident that the procedure that would have to be followed is a complex, multiple step process:

- Trial with a jury before the Bankruptcy Court;

- Preparation of recommended findings and conclusions by the Bankruptcy Court for submission to the District Court;

- Objections by either or both parties to any proposals with which they disagree;

- District Court *de novo* consideration of the issues that are the subject of the objections by either party, and ruling on them; and

- Proceedings before the District Court to enter its final judgment.

At the conclusion of this cumbersome procedure, there will still remain the troublesome question of whether there should have been a jury trial before the Bankruptcy Court at all and whether it even had jurisdiction to conduct any proceedings. *See In Re Clay, supra* and related arguments above.

WHEREFORE, Plaintiff respectfully submits that referring this case would be improper and would cause unnecessary work for this Court and the Bankruptcy Court.

                Respectfully submitted,

                HAMEL BOWERS & CLARK L.L.P.

                _/s/ Lee Hamel_
                Lee Hamel
                SBN: 08818000
                William L. Bowers, Jr.
                SBN: 02740000
                1200 Smith, Suite 2900
                Houston, Texas 77002
                Tel: (713) 659-2000
                Fax: (713) 659-3809
                Attorneys for Quality Chekd Dairies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by U.S. Mail and/or fax to counsel of record on this the 20th day of February, 2001.

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

  *Attorneys for Cohyco, Inc. and H. Lee Richards*

                _/s/ William L. Bowers, Jr._
                William L. Bowers, Jr.