# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|                                          |     |                              |
| ---------------------------------------- | --- | ---------------------------- |
| QUALITY CHEK'D DAIRIES, INC.,            | §   |                              |
|                                          | §   |                              |
| Plaintiff,                               | §   | **B-02-  040**               |
|                                          | §   |                              |
| VS.                                      | §   | CIVIL ACTION NO. H-00-0943   |
|                                          | §   |                              |
| COHYCO, INC., "F" STREET                 | §   |                              |
| INVESTMENTS, d/b/a SOUTHWEST             | §   |                              |
| ICE CREAM SPECIALTIES (f/k/a             | §   |                              |
| HYGEIA DAIRY COMPANY), and               | §   |                              |
| H. LEE RICHARDS,                         | §   |                              |
|                                          | §   |                              |
| Defendants.                             | §   |                              |

## DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS' MOTION FOR SUMMARY JUDGMENT, MOTION FOR REFERRAL TO THE BANKRUPTCY COURT, AND MOTION TO TRANSFER

TO THE HONORABLE JUDGE OF SAID COURT:

As requested by this Court, Defendants Cohyco, Inc. and H. Lee Richards (hereinafter collectively "the Cohyco Defendants") move this Court to:

1. grant summary judgment in favor of Cohyco, Inc. against the civil causes of action brought against it by the Plaintiff, Quality Chek'd Dairies, Inc.;

2. transfer non-dispositive pre-trial handling of the remaining causes of action to the Brownsville Bankruptcy Court hearing the related bankruptcy by Hygeia; and

3. transfer final disposition of this matter, whether by motion or trial, to the District Court for the Brownsville Division for the convenience of the parties and witnesses.

47527:960762.1:031901



## I.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Quality Chek'd Dairies, Inc. ("Quality Chek'd") is a cooperative organization whose members are dairy companies. Quality Chek'd administers a purchasing program that allows its members to benefit from the greater purchasing power of the group. Quality Chek'd is a resident of Illinois. Defendant "F" Street Investments, d/b/a Southwest Ice Cream Specialties (f/k/a Hygeia Dairy Company) ("Hygeia") was a dairy company, and it was a member of Quality Chek'd. Hygeia is a resident of Texas, with its principal place of business in Harlingen, Texas. Defendant Cohyco, Inc. ("Cohyco") is the parent corporation that wholly owned Hygeia. Cohyco is also a resident of Texas, with its principal place of business in Harlingen, Texas. H. Lee Richards ("Richards") is a shareholder, officer, and director of Cohyco. Richards was also an officer and director of Hygeia, and a director of Quality Chek'd.

On or about November 30, 1999, Hygeia sold substantially all of its assets to Southern Foods, an entity unrelated to any of the parties in this case. The proceeds of the sale were not sufficient to fully pay all of Hygeia's creditors. Quality Chek'd is an unsecured creditor of Hygeia. Cohyco was not a member of Quality Chek'd, it did not purchase anything from or through Quality Chek'd, it did not enter any agreements or contracts with Quality Chek'd, and it did not guarantee, in any way or form, the trade debt incurred by Hygeia with Quality Chek'd. After attempting to reach an agreement with creditors without the need for the protection of the Bankruptcy Code, Hygeia was forced by its creditors to file for bankruptcy protection under Chapter 11 of the Bankruptcy Code on March 27, 2000. The bankruptcy action is currently pending before the Honorable Richard Schmidt in Brownsville, Texas.

Quality Chek'd sued Hygeia, Cohyco, and Richards to recover the $1.6 million allegedly owed to Quality Chek'd by Hygeia for supplies and materials which Hygeia allegedly purchased through Hygeia's membership in Quality Chek'd.  Quality Chek'd's current pleading is its First Amended Complaint (Ex. A, attached).  This live pleading alleged causes of action for breach of fiduciary duty, actual fraud, and civil conspiracy.  Specifically, Quality Chek'd has pled that Richards breached his fiduciary duty to Quality Chek'd and defrauded Quality Chek'd by failing to disclose the financial condition of Hygeia to Quality Chek'd, despite the fact that Quality Chek'd refused an offer to provide such financial information. The only allegations made against Cohyco were that it conspired with Richards in his alleged breach of fiduciary duty and his alleged fraud. The live pleading of the Plaintiff also requested the remedy of the imposition of a constructive trust against certain assets of the Defendants.

Hygeia and Cohyco have brought counterclaims against Quality Chek'd for usury, in part because Quality Chek'd charged more than the contractually agreed amount of interest on the trade debt incurred by Hygeia. (Exhibit "B", attached.)  Quality Chek'd has admitted in open court that it charged more than the appropriate rate on the debt in question.

Hygeia sued Quality Chek'd in a separate lawsuit in the bankruptcy court in Brownsville, because Quality Chek'd allegedly withheld the equity held in Quality Chek'd by Hygeia upon terminating Hygeia's membership in Quality Chek'd. (Exhibit "C", attached).

In a hearing called by this Court, the Court asked counsel for Quality Chek'd to advise the Court of any cause of action or remedy pled by Quality Chek'd that could not be pursued in the Bankruptcy Court if the case were transferred to that Court. Plaintiff's counsel could not identify such a cause of action or remedy, and requested the opportunity to replead to meet the Court's

inquiry. The Court granted this request of the Plaintiff's counsel. However, Quality Chek'd has

now filed an Opposition with the Court wherein they refused to replead to add or amend their causes

of action and remedies, thereby impliedly admitting that their causes of action and remedies can be

pursued in the Bankruptcy Court if this Court transfers their claims to that Court. At the same

hearing, this Court requested counsel for the Defendants to respond to any repleading made by

Quality Chek'd, specifically in the form of a motion to transfer to the bankruptcy court, and/or a

motion to dismiss all or part of Quality Chek'd's case.

## II.

## SUMMARY OF THE ARGUMENT

Partial summary judgment should be granted in favor of the Cohyco Defendants because

Texas law does not allow recovery from Cohyco for allegedly conspiring with Richards' purported

breach of his fiduciary duty to Quality Chek'd, or for allegedly conspiring with Richards to defraud

Quality Chek'd. Specifically, Richards is a shareholder, officer, and/or director of Cohyco, and

therefore Cohyco and Richards are not separate persons capable of forming a "meeting of the minds"

as required to form a civil conspiracy.

Referral of the remaining causes of action to the Bankruptcy Court in Brownsville is proper

because this matter could conceivably have an effect on the size of Hygeia's estate in bankruptcy,

or the amount of funds distributable to creditors of Hygeia, including Quality Chek'd. Referral

would not eliminate Quality Chek'd's right to a jury trial, as the referral to the bankruptcy court

would operate like this Court's earlier referral of pretrial matters to the Honorable Magistrate Judge

Milloy: trial of this case, if any, would be before the District Court. However, referral would

eliminate the waste of judicial resources and risk of inconsistent findings inherent in parallel litigation proceeding before two different courts.

If this matter were to require a jury trial for resolution, transfer of this matter to the Brownsville Division would serve the convenience of the parties and witnesses and the interests of justice, as no party, witness, or evidence is located in the Houston Division, and the parties are located in the Brownsville Division and/or actively participating in litigation in that division.

### III.

### IT TAKES TWO TO TANGO: COHYCO CANNOT CONSPIRE WITH ITS OWN OFFICER AND DIRECTOR

Richards cannot conspire with himself to commit fraud against Quality Chek'd. Quality Chek'd has pled that Richards and Cohyco entered into a civil conspiracy to prevent the debt due from Hygeia to Quality Chek'd from being paid and to divert any residual assets of Hygeia to Cohyco.[1]  In addition, Quality Chek'd has pled that Cohyco conspired with Richards to defraud Quality Chek'd and to have Richards breach his alleged fiduciary duty to Quality Chek'd.[2] However, the factual basis alleged to support these "conspiracy" claims are the same: Richards' alleged failure to disclose Hygeia's financial condition to Quality Chek'd.[3]

---

[1]     Ex. A, Para. 37.

[2]     Ex. A, Paras. 32 and 35.  Although the word "conspire" is not used in these paragraphs, they both state that Cohyco "cause, aided and abetted Richards to so act and has knowingly accepted and retained benefits from such wrongful conduct."

[3]     Ex. A, Paras. 30, 34, and 37.

These conspiracy claims fail as a matter of law because the only mind in which Cohyco and

Richards were pled to have conspired with was that of Richards. The essential elements of a civil

conspiracy cause of action under Texas law are:

1.      two or more persons;

2.      an object to be accomplished;

3.      a meeting of the minds on the object or course of action;

4.      one or more unlawful, overt acts; and

5.      damages as the proximate result.

Massey v. Armco Steel Co., 652 S.W.2d 716, 719 (Tex. 1983).  In order for a conspiracy cause of

action to exist, two persons must have "a meeting of minds" to specifically intend to accomplish an

unlawful purpose.  See Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995).

The only factual support pled by Quality Chek'd for their allegation that Cohyco conspired with

Richards is the fact that Richards was an officer and/or director of Cohyco while simultaneously

acting as an officer of Hygeia.[4] Quality Chek'd pled that "Through Richards, Cohyco had full

---

[4]      The following language appears in Quality Chek'd's First Amended
         Complaint:

         "At all relevant times, Cohyco owned and controlled Hygeia and
         caused, aided and abetted Hygeia and its officers, directors, agents,
         and employees to commit the wrongful acts alleged herein.  Further
         at all relevant times, Richards was Chairman of the Board of Cohyco
         and controlled the activities of both corporations.  Through Richards,
         Cohyco had full knowledge of Richards' conduct alleged herein."
         (Ex. A, Para. 28).

knowledge of Richards' conduct alleged herein."[5]  Cohyco's knowledge of Richards' conduct is

legally insufficient to support a conspiracy claim: Cohyco must agree with Richards' alleged specific

intent to breach his fiduciary duty to Quality Chek'd or defraud Quality Chek'd.  No such allegation

has been made by Quality Chek'd, nor could such an allegation be made, because the fundamental

flaw in the conspiracy claims against Cohyco is that a person cannot conspire with himself, even

though he may have different legal capacities.  Stated another way, the knowledge of Richards may

be imputed to Cohyco, but that does not mean that Richards and Cohyco therefore had "a meeting

of the minds" required for a conspiracy cause of action.

The requirement of two persons having a meeting of the minds  to form a conspiracy has led

courts interpreting Texas law to conclude that corporations and their employees cannot conspire as

a matter of law.  See, e.g., Griffin v. GK Intelligent Systems, 87 F.Supp. 2d 684, 690 (S.D. Tex.

1999) (agents of a corporation cannot conspire to commit fraud as a matter of Texas law because a

corporation cannot conspire with itself).   Just as a corporation and its agents or employees are not

separate persons for purposes of conspiracy claims,  a parent corporation cannot conspire with its

wholly owned subsidiary as a matter of law because a wholly-owned subsidiary is under the

complete control of the parent and, therefore, incapable of being a separate entity for conspiracy

purposes.  See, e.g., Atlantic Richfield Co. v. Misty Products, Inc., 820 S.W.2d 414, 420 (Tex.App.-

Houston [14th Dist.] 1991, writ denied). Therefore, an agent of a parent corporation cannot conspire,

within the course and scope of his agency relationship, with an agent of a wholly-owned subsidiary.

Misty, 820 S.W.2d at 421.  Quality Chek'd has specifically pled that Richards' alleged wrongful

---

[5]        Ex. A, Para. 28.

conduct was taken during the course and scope of his employment with both the parent (Cohyco) and its fully owned subsidiary (Hygeia).[6]

If a parent could conspire with its wholly owned subsidiary, then every tort committed by the subsidiary would make the parent liable for civil conspiracy, as at least one director or officer of the parent will also hold an executive position in the subsidiary. In effect, such a rule of law would allow a piercing of the corporate veil without a showing of actual fraud, in contravention of Texas statutory law. See Texas Business Corporation Act sec. 2.21 (Vernon Supp. 2000). Under Section 2.21 of the TBCA, a shareholder (such as the parent corporation that owns all the stock of its subsidiary) limits liability of shareholders to contract debtors of their corporation to claims of actual fraud. See Menetti v. Chavers, 974 S.W.2d 168, 173-74 (Tex. App. - San Antonio 1998, no writ) (TBCA 2.21 requires proving actual fraud to pierce the corporate veil to impose tort liability upon a shareholder for damages arising from a contractual obligation of the corporation).

## IV.

### REFERRAL TO THE BROWNSVILLE BANKRUPTCY COURT FOR PRE-TRIAL MATTERS IS PROPER AND WILL NOT DEPRIVE QUALITY CHEK'D OF A JURY TRIAL

Referral of the present matter to the Brownsville Bankruptcy Court for resolution of pre-trial matters is proper. Not only would referral be consistent with the Court's referral of pre-trial matters to the Magistrate Judge,[7] but referral would follow Fifth Circuit precedent on "related to"

---

[6]    Ex. A, Paras. 32 and 35.

[7]    Referral to the Brownsville Bankruptcy Court would have the same effect as the Court's referral of the full pretrial management of this case to Honorable Magistrate Judge Milloy pursuant to 28 U.S.C. sec.

(continued...)

jurisdiction, and referral would have no effect on Quality Chek'd's causes of action, remedies, or right to a jury trial.

**A.     The present lawsuit could conceivably affect the Hygeia bankruptcy estate.**

This case should be referred to the Brownsville Bankruptcy Court for pre-trial proceedings because this case could have an effect on the Hygeia bankruptcy estate.  28 U.S.C. § 157 permits district courts to refer proceedings to a bankruptcy court when the underlying proceedings "relate to" bankruptcy.[8]  The present lawsuit is "related to" the Brownsville bankruptcy proceeding because the lawsuit could conceivably have an effect on the Hygeia bankruptcy estate.

The present case could conceivably effect the Hygeia bankruptcy estate because it could effect the amount of the estate available to be distributed to Quality Chek'd and/or other unsecured creditors of Hygeia. The Fifth Circuit has consistently held that bankruptcy jurisdiction will attach where there is a potential for *any conceivable* effect on the bankruptcy estate.[9]  For example, in

---

[7](...continued)

> 636. See Ex. B.  Both courts would monitor and resolve all non-dispositive pre-trial matters, and submit their report and recommendation on dispositive matters to the District Court for final disposition.   Whether pretrial matters were handled by the Bankruptcy Court or the Magistrate Judge, jury trial would take place in the District Court absent consent of the parties to trial before either Article III judge.  Contrary to Quality Chek'd's argument, referral to the bankruptcy court would not result in a double trial and a waste of judicial resources.

[8]     See In the Matter of J.R. Canion, Jr. v. Evans, 196 F.3d 579, 585-87 (5th Cir. 1999) (noting "the law is well established in this Circuit, as in others, that, when testing 'related to' jurisdiction, an effect is not required to a certainty").

[9]     Canion, 196 F.3d at 585-87.

Canion, the Fifth Circuit found that a creditor's claim filed in federal district court against several of a debtor's friends, relatives, business associates, and employees "related to" the debtor's bankruptcy estate where the friends, relatives, business associates and employees allegedly conspired to interfere with the creditor's efforts to collect on a non-discharged judgment against the debtor.[10] Quality Chek'd's allegations in the present case are similar to the creditor's claims in Canion: Quality Chek'd has sued employees and related entities of the contract debtor (Hygeia) for their alleged conspiracy to defraud Quality Chek'd by making the Hygeia debt uncollectible.

The Fifth Circuit in Canion further cited with approval case law from other circuit courts which found "related to" jurisdiction in situations where the bankruptcy estate would either be increased or reduced as a result of a separate claim between two non-debtors.[11] The facts of the

---

[10]     The creditor's district court case involved the following causes of action:

(1) toritious interference with judgments;
(2) conspiracy to interfere with judgments;
(3) actual and constructive fraud;
(4) conspiracy to defraud;
(5) fraudulent transfers; and
(6) alter ego liability.

Canion, 196 F.3d at 581-82.

[11]     See Canion, 196 F.3d at 586-87; see also Owens Illinois, Inc. v. Rapid American Corp., 124 F.3d 619, 626 (4th Cir. 1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); Kaonohi Ohana, Ltd. v. Southerland, 873 F.2d 1302, 1306-07 (9th Cir. 1989) (upholding "related to" jurisdiction over a third-party action where specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); National Union Fire Ins. Co. v. Titan Energy, Inc., 837 F.2d 325, 329 (8th Cir. 1988) (holding that a coverage dispute between the debtor's insurance

(continued...)

present case are similar to this line of authority and warrant referral to the bankruptcy court. Quality

Chek'd's damages in the present suit are based upon the debt owed to Quality Chek'd by Hygeia.

Therefore, if Quality Chek'd is successful in prosecuting its claim against Cohyco and/or Richards,

Quality Chek'd would lose its right to recover for its debt from the Hygeia bankruptcy estate.

Moreover, even if Quality Chek'd recovers only a portion of the debt owed by Hygeia from Cohyco

and/or Richards in the underlying suit, the total amount due on Quality Chek'd's claims against

Hygeia's bankruptcy estate would be decreased. This decrease would inure to the benefit of all other

unsecured creditors, each of whom would then share in the disbursement that would otherwise have

been paid to Quality Chek'd.[12]

In addition, a finding by this Court that Cohyco conspired with Richards to defraud Quality

Chek'd and/or breach Richards' fiduciary duty to Quality Chek'd could serve as part of an argument

to alter Cohyco's status as an unsecured creditor to that of an equity holder under the doctrine of

"equitable subordination."[13] If adjudged an equity holder, Cohyco would lose the priority of its

current status as a creditor to the proceeds in the Hygeia estate, and the funds available to the

remaining creditors would increase. Likewise, any recovery for Hygeia on its usury claim against

---

[11](...continued)
company and a creditor was 'related to' bankruptcy as a finding of
coverage would reduce the claims against the estate).

[12]    See Canion, 196 F.3d at 586-88 (finding "related to" jurisdiction
where separate proceeding could potentially evaporate plaintiff's
claim against the bankruptcy estate).

[13]    Quality Chek'd has argued for such a result in the bankruptcy
proceedings. See Ex. D, excerpt from Answers of Quality Chek'd to
Cohyco's Interrogatories, pp. 19-20.

Quality Chek'd would increase the Hygeia bankruptcy estate and alter Quality Chek'd's right to recover against the bankruptcy estate. Thus, referral to the Brownsville Bankruptcy Court is proper because this case could conceivably impact the size of the bankruptcy estate, or the amounts payable to the creditors from that estate.

### B.    Quality Chek'd will not lose its right to a jury trial.

Quality Chek'd has admitted that all of its causes of action against Cohyco and/or Richards can be pursued in the bankruptcy court, and has judicially admitted that its causes of action against Cohyco and Richards arise out of the same facts and circumstances currently being litigated in the bankruptcy proceeding.[14]   Referral to the Brownsville Bankruptcy Court would not circumvent Quality Chek'd's right to a jury trial. Defendants are not requesting this Court refer the present suit to the Brownsville bankruptcy proceeding for a jury trial. Defendants are well aware that Quality Chek'd is not consenting to a jury trial by the Brownsville bankruptcy court and only request referral so that the bankruptcy court can monitor and resolve all pre-trial matters.[15]   Indeed, discovery has

---

[14]    At a recent hearing, the Court stated its intention to transfer the case to the Brownsville Bankruptcy Court, and it asked Quality Chek'd to state any remedy or cause of action it pled that could not be pursued in the bankruptcy court. In response, Quality Chek'd requested time to make a response, and the Court granted Quality Chek'd leave to amend its pleadings to allege a cause of action which could only be brought in the District Court. Quality Chek'd decided it cannot replead its causes of action, and it judicially admitted its "First Amended Complaint cannot be amended to allege substantially different facts or causes of action." Ex. E, Plaintiffs' Opposition to Referral of Case at pages 2- 3.

[15]    As outlined in this motion and in Defendant Cohyco, Inc. and H. Lee Richards' Motion to Transfer Venue attached as Exhibit F and fully incorporated herein, Cohyco requests that the Court transfer the

(continued...)

commenced in the bankruptcy proceeding and would unnecessarily need to be duplicated should the present case remain in this Court.  This would hinder judicial efficiency and cause the parties to incur additional expense associated with litigating the same case in two different locations before two different courts at the same time.  Thus, referral to the bankruptcy court for pre-trial matters is proper and Quality Chek'd would not lose its right to a jury trial.

**C.    Referral would eliminate the risk of inconsistent findings between the District Court and the Brownsville Bankruptcy Court.**

Referral to the Brownsville Bankruptcy Court would eliminate the risk of inconsistent findings between the bankruptcy court and the District Court. The parties could conceivably find themselves in a situation where one court says that the alleged $1.6 million debt is owed, while the other court says it is not.   For instance, Hygeia has asserted claims for refund of equity against Quality Chek'd in the bankruptcy court.  A finding by either court on Hygeia's causes of action against Quality Chek'd could change the amount of damages recoverable in the other court. Moreover, a finding by the bankruptcy court on Hygeia's causes of action could reduce the amount of damages as against Cohyco and/or Richards or, better yet, eliminate the debt and claim in its entirety.  Where a creditor's district court claim against another party can potentially satisfy and/or "evaporate" the creditor's claim against the debtor's bankruptcy estate, referral to the bankruptcy court is proper.[16]  Therefore, the Court should refer the present case to the Brownsville Bankruptcy Court for pre-trial matters.

---

[15](...continued)
      underlying suit to the Brownsville Division District Court for final disposition by jury trial pursuant to 28 U.S.C. § 1404.

[16]    See Canion, 196 F.3d at 588.

## V.

### TRANSFER TO THE BROWNSVILLE DIVISION FOR FINAL DISPOSITION IS PROPER IN LIGHT OF THE CONVENIENCE TO THE PARTIES AND WITNESSES

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court should transfer the present suit to the Brownsville Division for final disposition pursuant to 28 U.S.C. § 1404(a) because none of the parties, witnesses or evidence is located in the Houston Division. Rather, all material witnesses and evidence are located in or near the Brownsville Division and all parties are actively participating in related litigation in the Brownsville Division.[17]

WHEREFORE, PREMISES CONSIDERED, for the reasons stated herein, Cohyco moves for summary judgment dismissing all of Quality Chek'd's claims against Cohyco. The Cohyco Defendants also move for referral of the pre-trial handling of the remaining causes of action to the related case filed in the Bankruptcy Court in the Brownsville Division, and for transfer of the final disposition of the case to the District Court for the Brownsville Division, and for such other and further relief to which they are entitled.

---

[17]    For further briefing and evidence on this issue, see the Cohyco Defendants' Motion to Transfer Venue and exhibits thereto attached as Exhibit F and fully incorporated herein.

Respectfully submitted,

Christopher Lowrance
Attorney-in-Charge
State Bar No. 00784502
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via

the means indicated to counsel of record on this the 17th day of March, 2001.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Law Office of Lee Hamel & Associates
1200 Smith, Suite 2900
Houston, Texas 77002

Mr. Harlin Womble
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline, Suite 900
Corpus Christi, Texas 78471

**Of Royston, Rayzor, Vickery & Williams, L.L.P.**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants,** | § | |

## FIRST AMENDED COMPLAINT

Quality Chekd Dairies, Inc. ("Quality Chekd") complains of COHYCO, Inc. ("Cohyco"), "F" Street Investments ("F Street") and H. Lee Richards ("Richards"). For its causes of action, Quality Chekd alleges:

### Parties

1.      Quality Chekd is a for profit cooperative corporation organized and existing under the laws of Wisconsin and maintains its principal place of business at 1733 Park Street, Naperville, Illinois 60563.

2.      Cohyco is a corporation which is organized under the laws of the state of Texas. It maintains its principal offices in Harlingen, Texas, and through its subsidiary, F Street Investments, formerly known as Hygeia Dairy Company ("Hygeia") which did business in the dairy industry throughout the state. The subsidiary had business establishments or property in Houston, San Antonio, Harlingen, Brownsville, Corpus Christi, McAllen, Laredo, McKinney, and other parts of Texas. Cohyco has been served with summons and has appeared and answered herein.

3.      Richards is a citizen and resident of the state of Texas who resides in Harlingen,

Texas and maintains an office at 700 S. "F" Street, Harlingen, Texas 78550. He has been served with summons and has appeared and answered herein.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this civil action under 28 U.S.C. §1332 on the basis of diversity of citizenship because Quality Chekd is a corporation formed under the laws of Wisconsin and maintains its principal place of business at 1733 Park Street, Naperville, Illinois 60563, and is, thus, a corporate citizen of Illinois. Cohyco and Richards are citizens of the state of Texas within the meaning of §1332, and this controversy involves an amount in excess of $75,000, exclusive of interest and costs. Venue is proper in this district and in this division of the Court because Cohyco, of which Richards is Chairman of the Board, at all times material to this civil action did business throughout Texas and owned a subsidiary, Hygeia, which has places of business or property in the Southern District of Texas, including Houston, Texas.

## Nature of the Case

5.      This is a civil action to recover approximately $1.6 million, plus interest, indirect economic damages and punitive damages owed to Quality Chekd by Cohyco and Richards. This obligation is based on the wrongful conduct of Richards and Cohyco, consisting of fraud, breach of fiduciary duty by Richards in the course and scope of his duties as the Chairman of the Board of Cohyco, Cohyco's causing, aiding, abetting and knowingly participating in, benefitting from and conspiring with Richards to commit such wrongful conduct. The wrongful conduct arose during the course of Hygeia's participating in a purchasing program that Quality Chekd operated for the benefit of its members and while Richards was also serving on the Board of Directors of Quality Chekd. Through his conduct, Hygeia was able to purchase certain supplies and materials and obtain credit to which Hygeia was not entitled in a legitimate participation in Quality Chekd's purchasing

47527:928960.1:071700                    -2-

program. Richards and Cohyco have caused Hygeia to file a bankruptcy proceeding in which it is now pursuing a liquidation plan which will, in all reasonable probability, cause Quality Chekd to lose virtually all of the money that it is owed by Hygeia.

6.      Richards is sued personally because of his wrongful conduct as a director of Quality Chekd in connection with the transactions between Hygeia on one hand, and Quality Chekd on the other. While a director of Quality Chekd, Richards breached his fiduciary duty as a director by failing to reveal and concealing material facts about Cohyco and Hygeia, not acting against the best interests of Quality Chekd, and committing acts of fraud, and misrepresentation by making material misstatements of fact and omitting to disclose facts which were necessary to reveal the truth about the transactions in which he, Cohyco and Quality Chekd were participating. This conduct, more fully described below, consisted of, at least, failing to disclose the financial condition of Hygeia and Cohyco while at the same time continuing Hygeia's purchases through Quality Chekd at a level for which it could not pay, and not paying for the purchases as agreed. This occurred while Richards was negotiating the sale of Hygeia's assets to Southern Foods Group ("Southern"), at a price which Richards well knew could not pay Hygeia's debts and within a corporate structure which would divert virtually all of Hygeia's assets to Cohyco. As Richards well knew, the sale of Hygeia's assets would take Cohyco and Hygeia out of the dairy business, eliminate their ability to generate revenue, and not leave sufficient assets to pay Hygeia's debts. Hygeia's condition and the plans described above were not disclosed to Quality Chekd when Hygeia was incurring additional debt to Quality Chekd and increasing or at least maintaining an asset base which would enhance the sale price of its assets for the benefit of Cohyco. Since December 1, 1999, Southern has operated an entity doing business as the new "Hygeia Dairy;" the entity formerly known as Hygeia Dairy that dealt with Quality Chekd is now named "'F' Street Investments." Lee Richards is now either employed by

Southern or being paid an annual fee by Southern for undisclosed services or other consideration.

7.     What Lee Richards and Cohyco did for nine months was to cause Hygeia to buy materials through Quality Chekd, which they knew that Hygeia could not pay for.  This was done in anticipation of an asset sale which included some of the materials or the resulting products or inventory conveyed to Southern as part of an asset sale.  They did this while causing Hygeia to refuse to pay Quality Chekd the full amount of the debt.

### Facts

8.     Quality Chekd is a corporate, cooperative organization which serves a large segment of the United States' dairy industry.  It does not have any shareholders and no one owns equity in it.  It is managed by its respective members during their membership.  At all relevant times, numerous major dairy companies in all parts of the United States, including Hygeia, belonged to and supported the Quality Chekd cooperative organization.  The members elect Quality Chekd's board of directors, pay certain fees and assessments to Quality Chekd, perform certain other duties, and receive the benefits of membership, including shares of any profits generated.

9.     One of the several services which Quality Chekd furnishes to its members is a voluntary purchasing program which arranges for the participating members to purchase materials, equipment, services and supplies needed in their dairy businesses through a high volume purchasing program.  The participating members achieve cost savings, part of which is rebated to them in addition to a percentage of any annual operational surplus. The program operates by the members ordering what they need through participating vendors.  The vendors ship directly to the members, but bill Quality Chekd.  Quality Chekd pays the vendors and then invoices the respective members for the amount of their orders.  The purchasing program agreement requires the participating members to pay Quality Chekd within twenty-one days from the date of Quality Chekd's invoices.

If this is not done, under the purchasing program agreement, the unpaid balances are considered "over term," and by agreement delinquent members are assessed interest on the amounts not paid within the twenty-one day period. Continued delinquency can lead to suspension or termination of purchasing privileges or the termination of the delinquent member's membership in Quality Chekd. The charge continues until the respective "over term" amounts are paid. This interest is not included in the current invoices, but is accumulated through the year and is deducted from the profits and purchase savings "dividends" distributed to Quality Chekd members after the end of each fiscal year.

10.     Quality Chekd is governed by a board of directors which elects a president of the board and employs a paid Managing Director, who in turn manages the day-to-day operations. The Managing Director, the President, and the directors deal with members' account problems and related issues. From time to time, some members of Quality Chekd have had difficulty meeting their financial obligations to Quality Chekd and were given opportunities to extend payments or other relief to enable them to bring the accounts current. Richards has actively participated in this activity. To date, it has been many years since any member's account balances have not been ultimately collected. The total past defaults have totaled less than $100,000.

11.     From January 28, 1981 until December 1, 1992, Richards was a Director of Quality Chekd. This included serving as President of the Board from December 1, 1987 until December 1, 1992. After coming off the board for a period, as required by Quality Chekd's bylaws, he was re-elected to the board on December 6, 1994, and served until his term expired on December 5, 1999. During all of his board membership with Quality Chekd from 1994 through December 5, 1999, on information and belief, Richards was the Chairman of the Board of Hygeia and Chairman of the Board of Cohyco. He was the ultimate "boss" or controlling person of the corporate structure.

12.     While serving as a director and officer of the Plaintiff, Richards participated in

approving payout programs for delinquent members and was personally familiar with any leniency shown by Quality Chekd to its members. He was aware of the policy of Quality Chekd to not require financial information from its members or seek credit information from reporting services, such as Dun & Bradstreet. These steps were considered unnecessary in view of the close relationship of the members and the past history of virtually 100 percent collection of the accounts. In the course of Richards' participation in the management of Quality Chekd's operations, he developed close personal and business relationships with the other directors, executives, and staff.

13.     Since becoming a member of Quality Chekd, Hygeia participated in the purchasing program and, over the years, carried an account balance with Quality Chekd. During 1998, the billings were divided between Hygeia Dairy Company and Hygeia/Southwest Ice Cream Specialties, although the latter name was actually a "d/b/a" for Hygeia Dairy Company. Therefore, although the addressees of the respective invoices were different, all of the bills were to Hygeia. Hygeia's balance averaged approximately $700,000 per month during 1998. The balances ranged from approximately $485,000 to $1,100,000. In 1999, Hygeia's account balance averaged about $700,000 per month for the first four months, but rose from approximately $800,000 on March 31, 1999 to $1,140,000 on April 30, 1999. Its balance "over terms" rose from approximately $300,000 to $413,000 at the same time. This trend continued until early December, 1999, and generally reflected a continual increase in the total amount of Hygeia's combined accounts which were "over terms." The three largest increases were from March 31 to April 30 ($341,000); May 31 to June 30 ($497,000); and August 31 to September 30 ($556,000). As of December 31, 1999, Hygeia's account with Quality Chekd was a total of approximately $1,801,000 of which approximately $1,625,000 was "over terms." In other words, for the nine months preceding December 1, 1999, Hygeia increased its average balance of debt to Quality Chekd by approximately

$1,000,000, all the while knowing that it would sell its assets and attempt to avoid paying its debt to Quality Chekd. This increase occurred because Hygeia continued to use the purchasing program at the 1998 level, but mostly payed progressively less on its account. Richards and Cohyco had full knowledge of these facts.

14.     Quality Chekd's management noted the continued increase in the size of the account and the increase in the amount of the account that was "over terms". During the early summer of 1999, Quality Chekd unsuccessfully attempted to obtain financial information from Hygeia, and in November, demanded financial statements. This demand was refused and earlier requests were either evaded or ignored. Based on information obtained during the course of Hygeia's bankruptcy proceedings, Quality Chekd alleges that sometime during late 1998 or early 1999, the Defendants lost the ability to secure bank or other commercial financing for some or all of their operating capital needs. Richards had, in fact, stated that Hygeia was seeking new banking relationships. However, as alleged below, Hygeia's audited financial statements for 1998, prepared by Deloitte & Touche, L.L.P, reflected a "going concern" or "liquidity" warning which essentially would have disqualified Hygeia from such financial assistance, as Richards must have known.

15.     During early January, 2000, Hygeia outlined a proposed liquidation of its debts, which involved the ultimate payment of only about 15% of its unsecured debt. Although Hygeia's financial problems were well-known to Richards and Cohyco, Richards never disclosed the nature and extent of these problems to Quality Chekd, and Hygeia continued to make purchases and run up its account with Quality Chekd. Since Richards personally was the ultimate authority in both Cohyco and Hygeia, Cohyco was fully aware of Richards' misconduct. Had the true condition and plans of Hygeia and Cohyco been known to Quality Chekd, these extensions of credit would never have been allowed, and earlier action would have been taken.

16.     On December 1, 1999, Southern purchased all of Hygeia's assets and Hygeia and

Cohyco ceased operating the dairy business.  After the purchase of Hygeia's assets, an employee of

Southern advised Quality Chekd that during the late spring or early summer of 1999, Richards

requested Southern to make an offer for Hygeia's assets.  This fact was, of course, known to

Richards and Cohyco, but Richards never disclosed this information to Plaintiff or any of its officers

until late October of 1999, by which time Hygeia's account was almost $1,945,000.

17.     In early Summer of 1999, numerous attempts were made to resolve the problem of

Hygeia's account with Richards, who at all times acted and spoke for Hygeia.  This resulted in an

extended business conference between Richards and Quality Chekd's management on or about June

23, 1999, and an agreement that Hygeia was to make certain scheduled payments in order to bring

the total amount owed to specified levels within a given time period, an agreement that the total

credit would not exceed $496,296.97, and that the amount of the account "over terms" would be

$200,000 or less, on or before July 14, 1999.  The parties all understood that failure to meet the

payment and reduction obligations summarized in the June 23, 1999 letter would result in Hygeia's

suspension or termination from the purchasing program and possible expulsion from membership

in Quality Chekd.  At this time, Richards was negotiating the asset sale with Southern Foods and

knew that the Quality Chekd account could not be paid by Hygeia.

18.     Hygeia's payments on its account did not conform to the agreed schedule and both

the total amount of the balance and the amount "over terms" continued to grow.  In fact, the debt

reached a maximum of approximately $2,228,000 by the end of September 1999, with approximately

$1,426,000 "over terms."  Small reductions, achieved by making payments greater than the amounts

purchased, resulted in an account balance of approximately $1,801,000 at the end of December 1999.

These payments were made to lull Quality Chekd and to keep its management at bay until its asset

sale could be completed.

19.     Despite its failure to comply with the June 23, 1999 agreement, Hygeia continued to make purchases through the program. This resulted in a buildup or at least maintenance of Hygeia's inventories of supplies, products and material needed to continue its business, and enabled it to continue to operate pending the asset sale. This use of credit from Quality Chekd, for example, enabled Hygeia to pay its milk suppliers (who traditionally were dealt with on essentially a cash basis throughout the industry) and avoid a virtual shut-down of its operations. The result of this mode of operation of Hygeia was to increase or maintain its assets and continue in business during the time that Richards was negotiating a sale of these assets to Southern.

20.     At all material times during the course of events leading to this civil action, Richards served as a director of Quality Chekd. He also had been an active participant in the management of Quality Chekd and was trusted and respected by the other directors and the management. Richards' long tenure and participation in Quality Chekd's affairs and his position as director at all relevant times created a legal fiduciary responsibility on Richards to act in the best interests of Quality Chekd, to avoid conduct harmful to Quality Chekd, and to disclose all material information to Quality Chekd bearing on its decisions concerning the extension of credit to Hygeia.

21.     From July 1, 1999 through early November 1999, Richards and Quality Chekd's management continued to discuss the reduction and status of Hygeia's account. On or about October 28, 1999, Doug Purl, a Hygeia employee, told Quality Chekd that a sale of Hygeia's business was pending, would be completed in "the next few days" and that if Quality Chekd cut off credit, that act could result in the sale not being completed. This information was conveyed in response to Quality Chekd's advice, in the face of continued failures by Hygeia to live up to its

agreements, that its participation in the purchasing program would be suspended unless the account was brought current. Purl was an officer of both Cohyco and Hygeia in 1999. He is also a newphew of Richards. Purl implied that patience would be rewarded upon completion of the sale by payment of the account. To that point, neither Purl nor Richards in any way indicated that less than the full amount due would be paid. Purl did not reveal the terms, structure or status of the sale. Richards insisted that Hygeia was under confidentiality restrictions, but Richards led Quality Chekd's management to believe that the account would be paid in full when Hygeia's accounts receivable were collected. Based on these representations, Hygeia was allowed to continue in the program and no collection activities were undertaken. In late November 1999, Richards, for the first time, indicated that he did not know if there would be enough money to pay Quality Chekd's account in full. Richards stated shortly before December 1, 1999 that no payments would be made to creditors until all of Hygeia's receivables were collected. On January 25, 2000, Hygeia management advised Quality Chekd for the first time that perhaps less than fifty percent of its balance would be paid. Not once during the nine months of build-up of its account at Quality Chekd or during any discussion regarding payment of the account did Hygeia or Richards dispute the balance due, and prior to the sale of its assets, Hygeia never raised any question about the amount of its account or indicated its debt would not be paid in full.

22.     On or about November 30, 1999, Hygeia sold its principal assets to Southern, which notified Quality Chekd of this event by its letter of December 20, 1999, after having announced the purchase of Hygeia in an earlier press release. Although the complete terms of the sale are not known at this time, the December 20, 1999 letter advised that the transaction was a sale of assets and that there was no assumption by Southern of any Hygeia liability incurred before December 1, 1999.

23.     During the critical months when Hygeia's account was being increased, Richards was in active negotiations with Southern Foods to sell virtually all of Hygeia's operating assets. Testimony in the bankruptcy proceedings indicated that the initial asking price was approximately $17,000,000. The final price was $9,000,000 for all of the assets except five parcels of real estate, Hygeia's accounts receivable and certain of the processing and manufacturing equipment.   In addition, Richards was given a contract to pay him $90,000 per year for six years and his sister, Merry K. Richards, also an officer and director of Hygeia and Cohyco, was given a similar contract to pay her $38,000 for three years.

24.     At the time that these negotiations described above were taking place, Hygeia owed approximately $7 million to Congress Financial Services ("Congress"); $5.1 million to unsecured creditors; and is alleged to have owed $16 million to Cohyco.  As the sale was structured, Congress was to and did release its liens to Cohyco and received $7 million in cash  This left Cohyco with what it claimed to be security interests on virtually of Hygeia's property and left essentially nothing for the unsecured creditors.  During the course of the bankruptcy, Cohyco has taken the position that it was entitled to virtually all of the approximately $3 million in Hygeia's assets.  Initially, it claimed to be a secured creditor.  However, in the most recent schedules, Cohyco is listed as a holder of approximately $12.5 million of the approximately $17.5 million of unsecured debt.  In fact, before Hygeia filed for bankruptcy, Cohyco took deeds in lieu of foreclosure to all five parcels of real estate.  This real property is valued in the Debtor's Statement of Affairs at $1.9 million.

25.     Quality Chekd has not received any payment on Hygeia's account since December 13, 1999.  Quality Chekd declared the entire debt due and has continued to demand payment in full of all amounts due to it by its letter of December 7, 1999.  Since then, Quality Chekd has continued

to demand payment until the bankruptcy, and defendants have failed and refused to pay the debt. Quality Chekd has offset the patronage dividends and Hygeia's share of the operating surplus against the account before the bankruptcy.

26.     At the present time, invoices from Quality Chekd to Hygeia, in the total amount of $1,601,000 are due and unpaid. A description of such invoices as shown on statements is attached as Exhibit "A." All offsets and payments due have been credited to Hygeia's account, and there is now due and payable by Hygeia to Quality Chekd the total amount of $1,601,000, plus interest, as allowed by law on current balances and interest at the rate of at least 12 percent per annum on all amounts that are now or later become, "over terms" as detailed by the voluntary purchases program agreement and other charges due under Hygeia's agreements with Quality Chekd.

27.     Because of Hygeia's refusal and failure to pay the account described above, it has become necessary for Quality Chekd to retain attorneys to collect such amount and to pay them a reasonable and necessary fee.

28.     At all relevant times, Cohyco owned and controlled Hygeia and caused, aided and abetted Hygeia and its officers, directors, agents, and employees to commit the wrongful acts alleged herein. Further, at all relevant times, Richards was Chairman of the Board of Cohyco and controlled the activities of both corporations. Through Richards, Cohyco had full knowledge of Richards' conduct alleged herein. As owner of Hygeia, Cohyco knowingly benefitted from all wrongful conduct alleged herein. In addition, the management of Cohyco and Hygeia were substantially the same and Cohyco, through its management, controlled Hygeia and structured its relationships with Hygeia to benefit Cohyco and its owners at the expense of creditors of Hygeia.

### First Cause of Action
### Breach of Fiduciary Duty By Richards

29.     The allegations made in the prior paragraphs of this Amended Complaint are incorporated by reference into this Cause of Action for all purposes.

30.     The service by Richards as a director of Quality Chekd until December 5, 1999, imposed a fiduciary duty on him with respect to Quality Chekd. During 1999, when Hygeia was in financial difficulty, running up its accounts with Quality Chekd and applying for special financial considerations and, at the same time, attempting to sell all of its assets for a price which would not pay its debts, Richards had a duty of full disclosure and an obligation to act only in the best interests of Quality Chekd. Instead of disclosing Hygeia's precarious financial condition and using his position to assure payment of Hygeia's obligations to Quality Chekd, he deliberately concealed relevant financial information. He did not disclose that he was engaged in negotiations to consummate the sale of Hygeia's assets for a price and under a corporate relationship which would divert virtually all of the sales proceeds and remaining assets to Cohyco. Rather, he concealed the details of the sale and corporate structure and knowingly and intentionally caused and permitted Hygeia to run up its accounts with Quality Chekd. He maintained Hygeia's purchases through Quality Chekd's purchasing program at a level that he knew Hygeia could not pay for, used his relationships and position of trust with Quality Chekd's management for the benefit of Hygeia, and otherwise engaged in intentionally wrongful, reckless conduct in reckless disregard of Quality Chekd's rights. Further, Richards served his own interests because he and his family interests were the principal owners of Cohyco, and he may have been a personal guarantor of other obligations of Hygeia and Cohyco. In all of his wrongful conduct, Richards employed, whenever possible, the relationships of trust and confidence that he had developed over the years with the management and

personnel of Quality Chekd.

31.    Richards' breach of his director's fiduciary duty to Quality Chekd as alleged in the preceding paragraphs had a direct and causal relationship to the increasing purchases of Hygeia and the continued extension of credit to Hygeia by Quality Chekd, and has thereby proximately caused damage to Quality Chekd in an amount of at least $1,601,000, plus indirect economic damages, for which Plaintiff sues.  Further, Richards and Cohyco engaged in such breach of his fiduciary duty knowingly, wilfully or, in the alternative, in reckless disregard or with gross negligence as to Quality Chekd.  Therefore, Quality Chekd is entitled to recover exemplary or punitive damages from Richards in an amount determined by the jury as adequate to punish Richards for his wrongful conduct and deter others similarly situated from so acting.  Accordingly, Quality Chekd also sues for punitive or exemplary damages.

32.    Cohyco and Richards are both liable for the damages claimed under this cause of action because Richards' wrongful conduct was committed in the course and scope of his employment with Hygeia and Cohyco, was done on Cohyco and Hygeia's behalf, and Cohyco and Hygeia have caused, aided and abetted Richards to so act and has knowingly accepted and retained benefits from such wrongful conduct.

**Second Cause of Action**
**Fraud**

33.    The allegations made in the prior paragraphs of this Complaint are incorporated by reference into this cause of action for all purposes.

34.    Richards' conduct includes, but is not limited to, withholding information about Hygeia's financial condition, the existence and terms of the sale of Hygeia's assets, the fact that there would not be sufficient funds to pay Hygeia's obligations to Quality Chekd and other material

information. He did this at the same time he was running up Hygeia's accounts with Quality Chekd and with the intention of improving the asset base of Hygeia and Cohyco thereby obtaining financing through Quality Chekd for Hygeia's operations and making repeated false representations with respect to the payment of the account when he knew that could not be paid. All such conduct constituted fraud. Further, Richards engaged in such fraudulent conduct duty knowingly, wilfully, or, in the alternative, in reckless disregard or with gross negligence as to Quality Chekd. Therefore, Quality Chekd is entitled to recover exemplary or punitive damages from Richards and Cohyco in an amount determined by the jury as adequate to punish Richards for his wrongful conduct and deter others similarly situated from so acting. Accordingly, Quality Chekd also sues for punitive or exemplary damages

35.     Cohyco and Richards are both liable for the damages claimed under this cause of action because Richards' wrongful conduct was engaged in the course and scope of his employment with Hygeia and Cohyco, was done on Cohyco and Hygeia's behalf, and Cohyco, individually and through Richards caused, aided and abetted his actions, accepted and has knowingly retained benefits from such wrongful conduct.

**Third Cause of Action**
**Conspiracy**

36.     The allegations made in the prior paragraphs of this Amended Complaint are incorporated by reference into this cause of action for all purposes.

37.     Under the foregoing allegations, Richards and Cohyco entered into a civil conspiracy to prevent the debt due from Hygeia to Quality Chekd from being paid and to divert any residual assets of Hygeia to Cohyco. The illegal means which they employed to achieve this objective was to conceal from Quality Chekd the true nature of Hygeia's financial condition, that its latest audited

financial statements contained a going concern or liquidity warning, and that they were negotiating a sale of Hygeia's assets which would in effect divert all of the residual assets of Hygeia to Cohyco and cause Hygeia's debt, which Richards and Cohyco had caused to be incurred, to be unpaid. At all times both were aware that Richards was breaching his fiduciary duty to Quality Chekd by pursuing this course of action. The conspiracy was not merely between Richards as a director of Cohyco and the company, but also between Richards as an individual pursuing his own interests, to wit, his and his family's ownership interest in the corporate structure of which Cohyco and Hygeia were part.

38.    The result of the conspiracy described above was to proximately cause damage and injury to Quality Chekd in the amount of $1,601,000, interest as allowed by law, and indirect economic damages for which Quality Chekd here sues.

39.    Further, Richards and Cohyco engaged in such conspiracy knowingly, wilfully or, in the alternative, in reckless disregard or with gross negligence as to Quality Chekd. Therefore, Quality Chekd is entitled to recover exemplary or punitive damages from Richards in an amount determined by the jury as adequate to punish Richards for his wrongful conduct and deter others similarly situated from so acting. Accordingly, Quality Chekd also sues for punitive or exemplary damages.

**Fourth Cause of Action**
**Application for an Accounting and**
**Imposition of a Constructive Trust or an Equitable Lien**

40.    The allegations made in the prior paragraphs of this Complaint are incorporated by reference into this cause of action for all purposes.

41.    The conduct of Richards in increasing the assets of Hygeia through his breach of fiduciary duty, fraud or constructive fraud has, and in the good faith belief of Plaintiff, caused

Cohyco to acquire certain assets which it either currently possesses or has sold for a valuable

consideration or which it has distributed to their shareholders. Because of Richards' failure to

disclose information which his position as a director of Quality Chekd obligated him to divulge,

Plaintiff cannot allege the exact amount and nature of such assets or proceeds, but such assets at the

least include the five parcels of real estate to which Cohyco accepted deeds in lieu of foreclosure and

Richards' personal compensation from Southern Foods.  Under the laws of the state of Texas and

the practices of equity, Quality Chekd is entitled to have a complete accounting for all assets and or

their proceeds which Cohyco acquired through Richards' breach of fiduciary duty or fraud.  Such

assets include, without limitation, all of the material, supplies, equipment or other things acquired

through the Quality Chekd purchasing program, the five tracts of real estate, and, to the extent that

such assets may have been sold, the proceeds or such assets as have been substituted for them, for

which relief Quality Chekd sues.

     42.     Under the laws of the state of Texas, Quality Chekd is entitled to have a constructive

trust imposed on such assets as Richards or Cohyco acquired through Richards' breach of fiduciary

duty, fraud or the proceeds or assets substituted for such wrongfully acquired assets.  In the

alternative, Quality Chekd is entitled to the imposition of an equitable lien on all such assets, for

which relief Quality Chekd sues.

     WHEREFORE, Quality Chekd prays that it be awarded actual and punitive damages against

Richards and Cohyco and, as shown by the evidence, that Richards, Hygeia, and Cohyco be ordered

to make an accounting of these wrongfully acquired assets, that a constructive trust or equitable lien

be imposed on all such assets, and such other general or special relief in law or equity to which

Quality Chekd may be entitled.  Quality Chekd demands a trial by jury.

Respectfully submitted

HAMEL BOWERS & CLARK L.L.P.

Lee Hamel
SBN: 08818000
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000
Fax:    (713) 659-3809
Attorneys for Quality Chekd Dairies, Inc.

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent, by United States mail, to the following parties on October 1, 2000.

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

*Attorney for Cohyco, Inc. and H. Lee Richards*

Harlin C. Womble, Jr.
Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

*Attorney for F Street Investments*

William L. Bowers, Jr.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| Defendants. | § | |

## FIRST AMENDED ANSWER OF COHYCO, INC. TO PLAINTIFF'S ORIGINAL COMPLAINT AND ORIGINAL COUNTERCLAIMS

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

COMES NOW Defendant, Cohyco, Inc., and files this its First Amended Answer to the Plaintiff's Original Complaint and Original Counterclaims, showing as follows:

### I.

Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph I of the Plaintiff's Original Complaint. Consequently, Defendant denies the allegations of Paragraph I.

### II.

Defendant admits that it is a corporation organized under the laws of the State of Texas, and that it maintains its principal offices in Harlingen, Texas. Defendant denies the remaining allegations contained in Paragraph II of the Plaintiff's Original Complaint.

47527:938461.1:092800

## III.

Defendant denies the allegations contained in Paragraph III of the Plaintiff's Original Complaint.

## IV.

Defendant admits that H. Lee Richards is a citizen and resident of the State of Texas who resides and maintains an office in Harlingen, Texas. This Defendant denies the remaining allegations contained in Paragraph IV of the Plaintiff's Original Complaint.

## V.

Defendant admits that this is an action within the Court's subject matter jurisdiction. This Defendant denies the remaining allegations contained in Paragraph V of the Plaintiff's Original Complaint.

## VI.

This Defendant denies the allegations contained in Paragraph VI of the Plaintiff's Original Complaint.

## VII.

This Defendant denies the allegations contained in Paragraph VII of the Plaintiff's Original Complaint.

## VIII.

This Defendant denies the allegations contained in Paragraph VIII of the Plaintiff's Original Complaint.

## IX.

This Defendant denies the allegations contained in Paragraph IX of the Plaintiff's Original Complaint.

## X.

This Defendant denies the allegations contained in Paragraph X of the Plaintiff's Original Complaint.

## XI.

This Defendant denies the allegations contained in Paragraph XI of the Plaintiff's Original Complaint.

## XII.

This Defendant denies the allegations contained in Paragraph XII of the Plaintiff's Original Complaint.

## XIII.

This Defendant denies the allegations contained in Paragraph XIII of the Plaintiff's Original Complaint.

## XIV.

This Defendant denies the allegations contained in Paragraph XIV of the Plaintiff's Original Complaint.

## XV.

This Defendant denies the allegations contained in Paragraph XV of the Plaintiff's Original Complaint.

## XVI.

This Defendant denies the allegations contained in Paragraph XVI of the Plaintiff's Original Complaint.

## XVII.

This Defendant denies the allegations contained in Paragraph XVII of the Plaintiff's Original Complaint.

## XVIII.

This Defendant denies the allegations contained in Paragraph XVIII of the Plaintiff's Original Complaint.

## XIX.

This Defendant denies the allegations contained in Paragraph XIX of the Plaintiff's Original Complaint.

## XX.

This Defendant denies the allegations contained in Paragraph XX of the Plaintiff's Original Complaint.

## XXI.

This Defendant denies the allegations contained in Paragraph XXI of the Plaintiff's Original Complaint.

## XXII.

This Defendant denies the allegations contained in Paragraph XXII of the Plaintiff's Original Complaint.

## XXIII.

This Defendant denies the allegations contained in Paragraph XXIII of the Plaintiff's Original Complaint.

## XXIV.

This Defendant denies the allegations contained in Paragraph XXIV of the Plaintiff's Original Complaint.

## XXV.

This Defendant denies the allegations contained in Paragraph XXV of the Plaintiff's Original Complaint.

## XXVI.

This Defendant denies the allegations contained in Paragraph XXVI of the Plaintiff's Original Complaint.

## XXVII.

This Defendant denies the allegations contained in Paragraph XXVII of the Plaintiff's Original Complaint.

## XXVIII.

This Defendant denies the allegations contained in Paragraph XXVIII of the Plaintiff's Original Complaint.

## XXIX.

This Defendant denies the allegations contained in Paragraph XXIX of the Plaintiff's Original Complaint.

## XXX.

This Defendant denies the allegations contained in Paragraph XXX of the Plaintiff's Original Complaint.

## XXXI.

This Defendant denies the allegations contained in Paragraph XXXI of the Plaintiff's Original Complaint.

## XXXII.

This Defendant denies the allegations contained in Paragraph XXXII of the Plaintiff's Original Complaint.

## XXXIII.

This Defendant denies the allegations contained in Paragraph XXXIII of the Plaintiff's Original Complaint.

## XXXIV.

This Defendant denies the allegations contained in Paragraph XXXIV of the Plaintiff's Original Complaint.

## XXXV.

This Defendant denies the allegations contained in Paragraph XXXV of the Plaintiff's Original Complaint.

## XXXVI.

This Defendant denies the allegations contained in Paragraph XXXVI of the Plaintiff's Original Complaint.

## XXXVII.

This Defendant denies the allegations contained in Paragraph XXXVII of the Plaintiff's Original Complaint.

## XXXVIII.

This Defendant denies the allegations contained in Paragraph XXXVIII of the Plaintiff's Original Complaint.

## XXXIX.

This Defendant denies the allegations contained in Paragraph XXXIX of the Plaintiff's Original Complaint.

## XXXX.

This Defendant denies the allegations contained in Paragraph XXXX of the Plaintiff's Original Complaint.

## XXXXI.

This Defendant denies the allegations contained in Paragraph XXXXI of the Plaintiff's Original Complaint.

## XXXXII.

This Defendant denies the allegations contained in Paragraph XXXXII of the Plaintiff's Original Complaint.

## XXXXIII.

This Defendant denies the allegations contained in Paragraph XXXXIII of the Plaintiff's Original Complaint.

## **FIRST AFFIRMATIVE DEFENSE**

Defendant contends that it is not a proper party.

## SECOND AFFIRMATIVE DEFENSE

Defendant expressly denies that the "sworn account" referenced in Paragraphs XXVII through XXIX of the Plaintiff's Original Complaint is just, true, and due.

## THIRD AFFIRMATIVE DEFENSE

Defendant contends that Plaintiff has failed to state a claim upon which relief can be granted against this Defendant. Further, the matters about which Plaintiff complains involve alleged acts, omissions, and breaches of obligations by "F" Street Investments. Defendant is not responsible for the alleged acts, omissions, and breaches of obligations by "F" Street Investments.

## FOURTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for allegedly having "aided, abetted, encouraged and counselled," and/or for allegedly accepting and returning the benefits of the alleged breach of fiduciary duty of Lee Richards.

## FIFTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for constructive fraud as alleged by the Plaintiff.

## SIXTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for imposition of a constructive trust or an equitable lien as alleged by the Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

Any and all transactions made the subject of the Plaintiff's pleadings were fair to the Plaintiff at the time they were made.

## EIGHTH AFFIRMATIVE DEFENSE

Lee Richards was a disinterested director for purposes of the transactions made the subject of the Plaintiff's pleadings.

## NINTH AFFIRMATIVE DEFENSE

All transactions made the subject of the Plaintiff's pleadings were validated and/or ratified by the Plaintiff and/or its directors, officers, or representatives.

## TENTH AFFIRMATIVE DEFENSE

The damages claimed by the Plaintiff were proximately caused, in whole or in part, by its negligence.

## ELEVENTH AFFIRMATIVE DEFENSE

Material facts regarding the transactions made the subject of the Plaintiff's pleadings were timely disclosed and/or known by the Plaintiff.

## COUNTERCLAIM - USURY

A business relationship existed between Plaintiff Quality Chek'd Dairies, Inc. ("Quality Chek'd") and Co-Defendant "F" Street Investments ("F" Street). For a period of time during this business relationship, no contract existed between the parties, including no agreement relating to interest on unpaid accounts. In 1998, Quality Chek'd and "F" Street entered into a contract wherein the parties agreed that interest on unpaid obligations would be charged at the rate of twelve percent per annum or the maximum interest rate allowed by law, which ever was lower. Subsequently, Quality Chek'd charged and collected interest in an amount in excess of the rate allowed by law and also in excess of the contractual rate. Quality Chek'd's actions were in breach of the agreement with "F" Street. In addition, these actions constitute usury under the Texas statutory and common law.

In addition to charging the usurious rate of interest to "F" Street, Quality Chek'd also made a claim and is attempting to charge and collect interest from Cohyco, Inc. at a usurious rate. These actions constitute usury under Texas law. As such, Cohyco, Inc. is entitled to statutory and common law damages from Quality Chek'd including a cancellation of any debt claimed to be owed, attorneys' fees, and other damages allowed by statutory and common law.

## COUNTERCLAIM - BREACH OF CONTRACT

Plaintiff has alleged that Cohyco, Inc. and Lee Richards are liable for the debt incurred by Hygeia Dairy Company and/or "F" Street Investments ("Hygeia") resulting from Hygeia's alleged failure to pay the Plaintiff under the terms of Hygeia's contract with the Plaintiff. Assuming the Plaintiff prevails on its contentions, which is not admitted but rather denied, this Defendant is entitled to an offset, setoff, reduction, cancellation, rescission, or termination of the alleged contract and/or alleged debt due to the Plaintiff's overcharging interest, which constitutes a breach of the contract it is attempting to enforce.

WHEREFORE, PREMISES CONSIDERED, Defendant Cohyco, Inc. prays that the Plaintiff's Original Complaint be dismissed with costs taxed against the Plaintiff, that the Defendant's affirmative defenses be granted, that the judgment be entered on the Defendant's counterclaims against Quality Chek'd, and that the Defendant receive all other relief to which it is justly entitled.

Respectfully submitted,


Christopher Lowrance
Attorney-in-Charge
State Bar No. 00784502
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 Facsimile
ATTORNEY FOR DEFENDANTS COHYCO, INC.
AND H. LEE RICHARDS

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated to counsel of record on this the ___ day of September, 2000.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Law Office of Lee Hamel & Associates
1200 Smith, Suite 2900
Houston, Texas 77002
Attorney in Charge for Quality Chek'd Dairies, Inc.

Mr. Nathaniel Peter Holzer
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Attorney in Charge for F Street Investments, Inc.

Of Royston, Rayzor, Vickery & Williams, L.L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHECKD DAIRIES, INC., | § | |
| | § | |
| Plaintiff | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. H-00-0943 |
| COHYCO, INC., F STREET INVESTMENTS, | § | |
| d/b/a SOUTHWEST ICE CREAM | § | |
| SPECIALTIES (f/k/a HYGEIA DAIRY | § | |
| COMPANY), and H. LEE RICHARDS | § | |
| Defendants; | § | |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| | § | |
| Counter-Plaintiff | § | |
| | § | |
| vs. | § | |
| | § | |
| QUALITY CHECKD DAIRIES, INC., | § | |
| | § | |
| Counter-Defendant | § | |

---

**FIRST AMENDED ANSWER OF F STREET INVESTMENTS, INC., TO THE
PLAINTIFF'S ORIGINAL COMPLAINT
AND
ORIGINAL COUNTER-COMPLAINT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, F Street Investments, Inc., a Texas Corporation, f/

Dairy Company ("F Street"), debtor and debtor-in-possession in bankruptcy case N

B-11, currently pending in the Brownsville Division of the Southern District of Te

this its First Amended Answer to the Plaintiff's Original Complaint, and Ori

Complaint showing as follows:

## I.

This Defendant is without knowledge or information sufficient to form a belief as to th

truth of the averments in Paragraph I of the Plaintiff's Original Complaint and therefore denie

those allegations.

## II.

Defendant admits that Cohyco, Inc. ("Cohyco"), is a corporation organized under th

laws of the State of Texas, and that it maintains its principal offices in Harlingen, Texas

Defendant denies the remaining allegations contained in Paragraph II of the Plaintiff's Origina

Complaint.

## III.

Defendant admits that it is a corporation organized under the laws of the State of Texas

that it maintains its principal offices in Harlingen, Texas, and that prior to November 30, 1999,

did business in various locations in the state of Texas in the dairy industry.  Defendant denies th

remaining allegations contained in Paragraph III of the Plaintiff's Original Complaint.

## IV.

Defendant admits that H. Lee Richards is a citizen and resident of the State of Texas

resides and maintains an office in Harlingen, Texas.  This Defendant denies the rem:

allegations contained in Paragraph IV of the Plaintiff's Original Complaint.

## V.

Defendant admits that as of March 27, 2000, this is an action within the Court'

matter jurisdiction under 28 U.S.C. 1334(b).  This Defendant denies the remaining a

contained in Paragraph V of the Plaintiff's Original Complaint.

## VI.

This Defendant admits that prior to December 1, 1999, it purchased

materials from various vendors through its membership in the Quality Check

Defendant denies the remaining allegations contained in Paragraph VI of the Plaintiff's Original Complaint.

## VII.

This Defendant admits that since December 1, 1999, Southern Foods does business as Hygeia Dairy, that the old Hygeia Dairy Company is known as F Street Investments, Inc., and that Lee Richards is now employed by Southern. This Defendant denies the remaining allegations contained in Paragraph VII of the Plaintiff's Original Complaint.

## VIII.

This Defendant denies the allegations contained in Paragraph VIII of the Plaintiff's Original Complaint.

## IX.

This Defendant admits that it an other members of the Quality Checkd cooperative received benefits associated with that membership including shares of any profits generated. This Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in Paragraph IX of the Plaintiff's Original Complaint and therefore denies those averments.

## X.

This Defendant admits that it an other members of the Quality Checkd cooperativ received cost savings part of which was rebated to them in addition to a percentage of annu profits. This Defendant is without knowledge or information sufficient to form a belief as to truth of the remaining averments in Paragraph X of the Plaintiff's Original Complaint therefore denies those allegations.

## XI.

This Defendant is without knowledge or information sufficient to form a belief as truth of the averments in Paragraph XI of the Plaintiff's Original Complaint and therefore those allegations.

## XII.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph XII of the Plaintiff's Original Complaint and therefore denies those allegations.

## XIII.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph XIII of the Plaintiff's Original Complaint and therefore denies those allegations.

## XIV.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph XIV of the Plaintiff's Original Complaint and therefore denies those allegations.

## XV.

This Defendant denies the allegations contained in Paragraph XV of the Plaintiff's Original Complaint.

## XVI.

This Defendant denies the allegations contained in Paragraph XVI of the Plaintiff's Original Complaint.

## XVII.

This Defendant denies the allegations contained in Paragraph XVII of the Plaintiff Original Complaint.

## XVIII.

This Defendant denies the allegations contained in Paragraph XVIII of the Plain Original Complaint.

## XIX.

This Defendant denies the allegations contained in Paragraph XIX of the Plaintiff's Original Complaint.

## XX.

This Defendant denies the allegations contained in Paragraph XX of the Plaintiff's Original Complaint.

## XXI.

This Defendant denies the allegations contained in Paragraph XXI of the Plaintiff's Original Complaint.

## XXII.

This Defendant admits that it sold substantially all of its operations to Southern Foods, Inc., on or about September 30, 1999, and denies the remaining allegations contained in Paragraph XXII of the Plaintiff's Original Complaint.

## XXIII.

This Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments in the first sentence of Paragraph XXIII of the Plaintiff's Original Complaint and therefore denies those allegations. This Defendant admits the remaining allegations contained in Paragraph XXIII of the Plaintiff's Original Complaint.

## XXIV.

This Defendant denies the allegations contained in Paragraph XXIV of the Plaintiff's Original Complaint.

## XXV.

This Defendant denies the allegations contained in Paragraph XXV of the Plaintiff's Original Complaint.

## XXVI.

This Defendant denies the allegations contained in Paragraph XXVI of the Plaintiff's Original Complaint.

## XXVII.

This Defendant denies the allegations contained in Paragraph XXVII of the Plaintiff's Original Complaint.

## XXVIII.

This Defendant denies the allegations contained in Paragraph XXVIII of the Plaintiff's Original Complaint.

## XXIX.

This Defendant denies the allegations contained in Paragraph XXIX of the Plaintiff's Original Complaint.

## XXX.

This Defendant denies the allegations contained in Paragraph XXX of the Plaintiff's Original Complaint.

## XXXI.

This Defendant denies the allegations contained in Paragraph XXXI of the Plaintiff's Original Complaint.

## XXXII.

This Defendant denies the allegations contained in Paragraph XXXII of the Plaintiff's Original Complaint.

## XXXIII.

This Defendant denies the allegations contained in Paragraph XXXIII of the Plaintiff's Original Complaint.

## XXXIV.

This Defendant denies the allegations contained in Paragraph XXXIV of the Plaintiff's Original Complaint.

## XXXV.

This Defendant denies the allegations contained in Paragraph XXXV of the Plaintiff's Original Complaint.

## XXXVI.

This Defendant denies the allegations contained in Paragraph XXXVI of the Plaintiff's Original Complaint.

## XXXVII.

This Defendant denies the allegations contained in Paragraph XXXVII of the Plaintiff's Original Complaint.

## XXXVIII.

This Defendant denies the allegations contained in Paragraph XXXVIII of the Plaintiff's Original Complaint.

## XXXIX.

This Defendant denies the allegations contained in Paragraph XXXIX of the Plaintiff's Original Complaint.

## XXXX.

This Defendant denies the allegations contained in Paragraph XXXX of the Plaintiff's Original Complaint.

## XXXXI.

This Defendant denies the allegations contained in Paragraph XXXXI of the Plaintiff's Original Complaint.

## XXXXII.

This Defendant denies the allegations contained in Paragraph XXXXII of the Plaintiff's Original Complaint.

## XXXXIII.

This Defendant denies the allegations contained in Paragraph XXXXIII of the Plaintiff's Original Complaint.

## XXXXIV.
## AFFIRMATIVE DEFENSE

Defendant expressly denies that the "sworn account" referenced in Paragraphs XXVII through XXIX of the Plaintiff's Original Complaint is just, true, and due.

## XXXXV
## COUNTERCLAIM -- COUNT ONE
## USURY

F Street counter claims against Quality Checkd for usury. For a period of time during their business relationship Quality Checkd had no contract with F Street allowing for interest on unpaid accounts due, and thus the allowable rate of interest was 6%. During other periods there was a contract allowing for interest at 12%. Quality Checkd charged and collected interest from F Street at a usurious rate. As such, F Street is entitled to statutory and common law damages from Quality Checkd including cancellation of the debt claimed to be owed and triple the amount of usurious interest as damages.

## XXXXV
## COUNTERCLAIM -- COUNT TWO
## RECOVERY OF UNPAID PURCHASING DIVIDENDS

F Street counterclaims against Quality Checkd to recover amounts owed and unpaid from purchasing dividends.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff's Original

Complaint be dismissed with costs taxed against the Plaintiff, that Defendant's affirmative

defense be granted, that judgment be entered on Plaintiff's counterclaims against Quality Checkd

and that Defendant receive all the relief to which it is entitled, at law or in equity.

Respectfully submitted,

_____

Nathaniel Peter Holzer, Attorney in Charge,
State Bar No. 00793971/Admissions No. 21503
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555
ATTORNEY FOR DEBTOR/DEFENDANT F
STREET INVESTMENTS, INC.

OF COUNSEL:

*Jordan, Hyden, Womble & Culbreth, P.C.*

Harlin C. Womble, Jr.
State Bar No. 21880300/Admissions No. 8959
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FILED

JUL 20 2000

~~UN . . . . . . ES~~
BANKRUPTCY COURT

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | CASE NO. 00-20953-B-11 |
| | § | |
| Debtor. | § | |
| | § | |

_____

| | | |
|---|---|---|
| | § | |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION, F/K/A | § | |
| HYGEIA DAIRY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | ADVERSARY NO. 00-2114-B |
| | § | |
| QUALITY CHEKD DAIRIES, | § | |
| | § | |
| Defendant. | § | |

ORIGINAL COMPLAINT FOR RECOVERY OF FRAUDULENT TRANSFER OR
IN THE ALTERNATIVE AVOIDANCE OF SECTION 547(b) PREFERENCE, AND FOR
TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO SECTION 542(a)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff F Street Investments, Inc., a Texas Corporation f/k/a Hygeia Dairy Company, Debtor and Debtor in Possession in this Chapter 11 proceeding, and files this its Original Complaint and in support hereof would respectively show the following:

### PARTIES, JURISDICTION, VENUE AND PROCEDURE

1.      Plaintiff is a Texas Corporation whose principal office is located in Harlingen, Cameron County, Texas.

2.      Defendant Quality Chekd Dairies is a for profit cooperative corporation organized and existing under the laws of Wisconsin and can be served at its principal place of business at 1733 Park Street, Naperville, Illinois 60563.

3.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 157 and § 1334. Venue of this case in this District is proper pursuant to 28 U.S.C. § 1408 and § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) & (F).

## FACTUAL BACKGROUND

4.      Plaintiff was a wholesale supplier of dairy products, various beverages and related merchandise.

5.      Defendant is owned by its members. Plaintiff was a long-time member of Defendant's cooperative.

6.      Some of the benefits of membership include the right to use the cooperative's logo, a discount on purchases made through the cooperative, and a quarterly dividend based on a percentage of that members purchases made through the cooperative.

7.      Another benefit of membership that was not tied to a member's level of activity in the cooperative was each member's receipt each year a payment from the cooperative solely as a benefit of membership, which payment and rights to payment is known as a patronage dividend. This patronage dividend was based on savings and economies of scale achieved by the cooperative which were then passed through to the members.

8.      Plaintiff received patronage dividends each year it was a cooperative member with the exception of 1999, in varying but often substantial amounts.

9.      Membership in a cooperative is a valuable property right.

10.     Plaintiff's and Defendant's 1999 fiscal years ended on September 30, 1999.

11.     Plaintiff did not receive its patronage dividend for FY 1999 or FY 2000.

12.     On November 30, 1999, Plaintiff sold virtually all its operating assets.

13.     Defendant unilaterally cancelled Plaintiff's membership in the cooperative.

14.     Plaintiff filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on March 27, 2000 ("Petition Date"),

15.     The economic value of the Plaintiff's membership in the cooperative can be calculated, in part, as at least a multiple of ten (10) times the average patronage dividend for the previous five (5) years, plus Plaintiff's percentage share of assets owned by the cooperative.

16.     **First Cause of Action – Fraudulent Transfer.**   Defendant's unilateral cancellation of Plaintiff's membership was a fraudulent transfer of valuable property of the Plaintiff for no value. Plaintiff therefore sues Defendant for the return of its membership or the cash value thereof.

17.     Further, on information and belief, the fraudulent transfer to the Defendant was transferred by Defendant to another member of the cooperative, or pro rata to all other members of the cooperative, as an increase of their patronage dividend and an increase in their percentage ownership of assets of the cooperative.   Plaintiff therefore reserves the right to amend this complaint after discovery to add as defendants any and all subsequent transferees.

18.     **Second Cause of Action – Preference.**   Defendant's unilateral cancellation of Plaintiff's membership was within 90 days of the Petition Date and was therefore also a preference. Plaintiff sues in the alternative for recovery of same or the cash value thereof.

19.     **Third Cause of Action – Turnover.**   Plaintiff sues Defendant for turnover of its membership and its unpaid patronage dividend for FY 1999 and 2000.

        WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer, that Plaintiff recover its membership or the cash value thereof, that Plaintiff recover all unpaid patronage dividends, and that Plaintiff receive and such other relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

Nathaniel Peter Holzer, Attorney In Charge
State Bar No. 00793971/Admissions No. 21503
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

ATTORNEY FOR DEBTOR/DEFENDANT F
STREET INVESTMENTS, INC.

OF COUNSEL:

*Jordan, Hyden, Womble & Culbreth, P.C.*

Harlin C. Womble, Jr.
State Bar No. 21880300/Admissions No. 8959
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

FILED

JUL 20 2000

BANKRUPTCY COURT

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION F/K/A | § | |
| HYGEIA DAIRY COMPANY | § | CASE NO. 00-20953-B-11 |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| | § | |
| F STREET INVESTMENTS, INC., | § | |
| A TEXAS CORPORATION, F/K/A | § | |
| HYGEIA DAIRY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | ADVERSARY NO. 00-2114-£ |
| | § | |
| QUALITY CHEKD DAIRIES, | § | |
| | § | |
| Defendant. | § | |

ORIGINAL COMPLAINT FOR RECOVERY OF FRAUDULENT TRANSFER OR
IN THE ALTERNATIVE AVOIDANCE OF SECTION 547(b) PREFERENCE, AND FOR
TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO SECTION 542(a)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff F Street Investments, Inc., a Texas Corporation f/k/a Hygeia

Dairy Company, Debtor and Debtor in Possession in this Chapter 11 proceeding, and files this

its Original Complaint and in support hereof would respectively show the following:

**PARTIES, JURISDICTION, VENUE AND PROCEDURE**

1.      Plaintiff is a Texas Corporation whose principal office is located in Harlingen,

Cameron County, Texas.

2.     Defendant Quality Chekd Dairies is a for profit cooperative corporation organized and existing under the laws of Wisconsin and can be served at its principal place of business at 1733 Park Street, Naperville, Illinois 60563.

3.     This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 157 and § 1334. Venue of this case in this District is proper pursuant to 28 U.S.C. § 1408 and § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) & (F).

## FACTUAL BACKGROUND

4.     Plaintiff was a wholesale supplier of dairy products, various beverages and related merchandise.

5.     Defendant is owned by its members.  Plaintiff was a long-time member of Defendant's cooperative.

6.     Some of the benefits of membership include the right to use the cooperative's logo, a discount on purchases made through the cooperative, and a quarterly dividend based on a percentage of that members purchases made through the cooperative.

7.     Another benefit of membership that was not tied to a member's level of activity in the cooperative was each member's receipt each year a payment from the cooperative solely as a benefit of membership, which payment and rights to payment is known as a patronage dividend. This patronage dividend was based on savings and economies of scale achieved by the cooperative which were then passed through to the members.

8.     Plaintiff received patronage dividends each year it was a cooperative member with the exception of 1999, in varying but often substantial amounts.

9.     Membership in a cooperative is a valuable property right.

10.     Plaintiff's and Defendant's 1999 fiscal years ended on September 30, 1999.

11.     Plaintiff did not receive its patronage dividend for FY 1999 or FY 2000.

12.     On November 30, 1999, Plaintiff sold virtually all its operating assets.

13.     Defendant unilaterally cancelled Plaintiff's membership in the cooperative.

14.     Plaintiff filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on March 27, 2000 ("Petition Date"),

15.     The economic value of the Plaintiff's membership in the cooperative can be calculated, in part, as at least a multiple of ten (10) times the average patronage dividend for the previous five (5) years, plus Plaintiff's percentage share of assets owned by the cooperative.

16.     **First Cause of Action – Fraudulent Transfer.**   Defendant's unilateral cancellation of Plaintiff's membership was a fraudulent transfer of valuable property of the Plaintiff for no value. Plaintiff therefore sues Defendant for the return of its membership or the cash value thereof.

17.     Further, on information and belief, the fraudulent transfer to the Defendant was transferred by Defendant to another member of the cooperative, or pro rata to all other members of the cooperative, as an increase of their patronage dividend and an increase in their percentage ownership of assets of the cooperative.   Plaintiff therefore reserves the right to amend this complaint after discovery to add as defendants any and all subsequent transferees.

18.     **Second Cause of Action – Preference.**   Defendant's unilateral cancellation of Plaintiff's membership was within 90 days of the Petition Date and was therefore also a preference. Plaintiff sues in the alternative for recovery of same or the cash value thereof.

19.     **Third Cause of Action – Turnover.**   Plaintiff sues Defendant for turnover of its membership and its unpaid patronage dividend for FY 1999 and 2000.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant be cited to appear and answer, that Plaintiff recover its membership or the cash value thereof, that Plaintiff recover all unpaid patronage dividends, and that Plaintiff receive and such other relief to which Plaintiff may show itself justly entitled.

Respectfully submitted,

Nathaniel Peter Holzer, Attorney In Charge
State Bar No. 00793971/Admissions No. 21503
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

ATTORNEY FOR DEBTOR/DEFENDANT F
STREET INVESTMENTS, INC.

OF COUNSEL:

*Jordan, Hyden, Womble & Culbreth, P.C.*

Harlin C. Womble, Jr.
State Bar No. 21880300/Admissions No. 8959
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

-4-

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants,** | § | |

### ANSWERS, OBJECTIONS AND RESPONSES
### OF QUALITY CHEKD DAIRIES INC TO
### DEFENDANTS COHYCO, INC.'S REQUEST FOR ADMISSIONS,
### INTERROGATORIES, AND REQUESTS FOR PRODUCTION
### TO QUALITY CHEK'D DAIRIES, INC.

TO:   Defendant, Cohyco, Inc., by and through its attorney of record, Christopher Lowrance, Royston, Rayzor, Vickery & Williams, 606 N. Carancahua, Suite 1700, Corpus Christi, Texas 78746.

COMES NOW the Plaintiff Quality Chekd Dairies Inc ("Quality Chekd") and answers, objects and responds to the Plaintiff Cohyco, Inc.'s Requests for Admission, Interrogatories and Requests for Production by correspondingly numbered paragraphs in pages 3 through 23 attached hereto.

**ANSWER:**

Mr. Purl indicated that a sale might be in progress on October 27, 1999 in a telephone conversation. This was confirmed in a telephone conversation with Mr. Richards on November 11, 1999.

**REQUEST FOR PRODUCTION NO. 25:**

Produce all documents that reference or mention any disclosures identified in the foregoing Interrogatory.

**RESPONSE:**

Quality Chekd will produce all documents described in this request for inspection and copying which exist and that are not privileged and that it can identify at the offices of Hamel, Bowers and Clark, L.L.P., 1200 Smith, Suite 2900, Houston, Texas, 77002 upon reasonable notice after August 21, 2000. Counsel are invited to contact the attorneys for the plaintiff and arrange a mutually convenient time for this inspection.

**REQUEST FOR ADMISSION NO. 7:**

Cohyco, Inc. is a secured creditor of Hygeia.

ADMIT:  _____                     DENY:  ___X___

**REQUEST FOR ADMISSION NO. 8:**

Cohyco, Inc. is a secured creditor of "F" Street Investments, Inc.

ADMIT:  _____                     DENY:  ___X___

**REQUEST FOR ADMISSION NO. 9:**

The amount of Cohyco's lien against Hygeia and/or "F" Street totals over $12 million.

ADMIT:  _____                     DENY:  ___X___

**INTERROGATORY NO. 13:**

If the answer to any of the three foregoing Requests for Admission is anything other than an unqualified admission, explain your reasoning for your response to these Requests for Admission.

**ANSWER:**

Based on the circumstances and information developed so far, Quality Chekd believes that the transactions leading to the documents which Cohyco claims make it a secured creditor of the debtor F Street (f/k/a Hygeia Diary Company) were actually an infusion of capital by Cohyco into its subsidiary F Street/Hygeia and that Cohyco is not in fact a secured creditor. Further, based on its involvement in the affairs of F Street/Hygeia leading up to the bankruptcy, any lien or security interest that Cohyco may have had is equitably subordinated to the claims of the unsecured creditors.

**REQUEST FOR PRODUCTION NO. 26:**

Produce all documents that support your contention as to the amount of the debt owed you by Hygeia and/or "F" Street, including all documents that evidence payments made by Quality Chek'd to the vendors that shipped the goods for which you claim Hygeia and/or "F" Street have not yet paid.

**OBJECTION:**

These documents are not relevant to any issue in this case. F street has admitted in its schedules in the bankruptcy proceeding that approximately $1,570.00 is owed by it to Quality Chekd. There are two invoices totaling approximately $30,000 which are in dispute. The data from which the totals of the amounts owned are contained in Quality Chekd's computerized accounting system. Copies of the invoices which are outstanding will be furnished and a copy of the account since the last payment has been attached to these answers. Further production of documents is unnecessary and will not lead to the discovery of any relevant evidence in this case.

**RESPONSE:**

See Exhibit 1 attached; further, Quality Chekd will produce the unpaid invoices and a transcript of the unpaid account of F street at the offices of Hamel, Bowers and Clark, L.L.P., 1200 Smith, Suite 2900, Houston, Texas, 77002 upon reasonable notice after August 21, 2000. Counsel are invited to contact the attorneys for the plaintiff and arrange a mutually convenient time for this inspection.

**REQUEST FOR PRODUCTION NO. 27:**

Produce all documents evidencing investigation, consideration, and/or analysis of the creditworthiness, credit history, and/or financial condition of Hygeia between January 1, 1995 and December 1, 1999 by your Board of Directors.

**RESPONSE:**

None have been found. The stature of Mr. Richards as a director and former officer of Quality Chekd, combined with the past record of payments by Hygeia caused Quality Chekd to believe this was necessary.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC. and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S OPPOSITION TO REFERRAL OF CASE

Plaintiff in this case opposes the transfer of this case to the Bankruptcy Court to be litigated as part of the pending bankruptcy proceeding involving F Street Investments, Inc, Case No. 00-20953-B-11; *In Re F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company*; In the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, for the following reasons:

### Summary of Plaintiff's Objections

1.     A transfer of this case to the Bankruptcy Court would deprive the Plaintiff of its right under the **Seventh** Amendment to the Constitution of the United States to a trial by jury before a court of the United States created under Article III of the Constitution. This is so because if the case were referred to the Bankruptcy Court, that court could only act as an adjunct to the District Court, and its rulings would only be advisory. If a jury were used, either party could apply to the District for *de novo* review of any findings or rulings to which it had objected. Such a review would be in violation of the Seventh Amendment's prohibition of review of a jury's findings by another court

1

by other than ordinary appellate procedures.

2.    The Bankruptcy Court does not have jurisdiction over this case and, in any event, it

cannot render a final judgment in these proceedings unless all of the parties consent to such action.

3.    The referral of this case to the Bankruptcy Court will, at best, be an inefficient use

of judicial resources.

### Argument

4.    Background and Status of the Case:

a.    This civil action was originally a suit against F Street Investments, Inc

(formerly Hygeia Dairy Company) ("F Street"), its parent company, Cohyco, Inc. ("Cohyco") and

F. Lee Richards ("Richards"), who was the principal corporate head of the other defendants. F Street

was originally sued by Quality Chekd on its delinquent $1.6 million account and all three defendants

were sued because Richards, while a director of Quality Chekd, acting for Cohyco, breached his

fiduciary duties as a director to benefit Cohyco and F Street and committed other torts as alleged in

the amended complaint. Liability of the present defendants is predicated only on their pre-petition

conduct and is based on the law of the State of Texas prohibiting fraud and breach of fiduciary

duties. Recovery is sought only out of Cohyco's and Richards' personal estates. This civil action

was brought in the United States District Court for the Southern District of Texas as a diversity case

because the Plaintiff is a citizen of Illinois and all of the defendants are citizens of Texas.

b.    After this civil action was filed, F Street filed the F Street Bankruptcy to

obtain protection under the provisions of Chapter 11 of the Bankruptcy Code. Later, Quality Chekd

moved to sever F Street from this civil action and transfer the case against F Street to the Bankruptcy

Court as part of that proceeding. The Motion to Sever and Transfer was granted and leave was given

2

to amend the complaint in this case to sue only Richards and Cohyco. The case is now pending on Plaintiff's First Amended Complaint, which names only Cohyco and Richards.

c.    During the motion hearings, the United States Magistrate Judge instructed the Plaintiff to amend its pleadings to allege a cause of action which could only be brought in the District Court. Although the Magistrate Judge did not articulate such a ruling, counsel for Plaintiff are concerned that if such an amendment of the pleadings is not filed, the case might be referred to the Bankruptcy Court as part of the F Street Bankruptcy.

d.    After the recent hearing before the Magistrate Judge, the Plaintiff reviewed its First Amended Complaint and has determined, based on the facts of the case as they are known in this stage of discovery, that the First Amended Complaint cannot be amended to allege substantially different facts or causes of action at this time. Upon completion of discovery, further information may provide a basis for requesting leave to file a further amendment, and Quality Chekd reserves such rights as it has to do so. However, the Plaintiff does not choose to further amend its complaint at this time and does not consent to the referral of this case to the Bankruptcy Court or to a trial by jury before that court. Plaintiff believes it has plead a case which cannot be filed as such in the Bankruptcy Court.

5.    Discussion of the Reasons Why this Case Should Not Be Referred to the Bankruptcy Court and Authorities Supporting Plaintiff's Objections.

a.    Referral would deprive Quality Chekd of its Seventh Amendment right to a trial by Jury in an Article III United States Court because the Bankruptcy Court does not have jurisdiction to conduct such a trial.

The Supreme Court recognized that the Bankruptcy Courts are not Article III

3

Courts in *Northern Pipeline Construction Co. v. Marathon Pipeline Co,* 458 U.S. 50, 102 S .Ct. 2858 (1982), and, in so doing, invalidated most of the then most recent Bankruptcy Reform Act. In the wake of the *Marathon* decision, the Congress attempted to accommodate the Supreme Court's decision that the Bankruptcy Courts have jurisdiction to enter final judgments only in what have become known as "core" bankruptcy matters and may act only as adjuncts to the District Courts in what are termed as "related" matters.

    b.  The principal jurisdictional statutes are 28 U.S.C. §§157, 158 and 28 U.S.C. 1334. The statutory scheme enacted in §§ 157 and 1334, has provided exclusive jurisdiction in the District of Courts ". . . of all cases under Title 11" (28 U.S.C. 1334 [a]) and ". . . original but not exclusive jurisdiction of all civil proceedings arising under Chapter 11, or arising in or related to cases under Title 11." ( 28 U.S.C. 1334 [b] ). The provisions of 28 U.S.C. 157 allow referral of cases under Title 11, and all proceedings arising under Chapter 11 or arising in or related to a case under Title 11 ( 28 U.S.C. 157 [a] ) to the Bankruptcy Court.  The next section, § (b) (1) permits bankruptcy judges to hear and determine all cases under Title 11 in all *core* proceedings arising under Chapter 11 or arising in a case under Chapter 11. The next subsection, §§ (b) (2) defines *core* proceedings with a non-exclusive list, and a final §§ (b)(2)(O) is a catchall for other matters related to the administration of bankruptcy estates.

    c.  The seminal case in the Fifth Circuit which defines *core* and related proceedings is *In Re Wood,* 825 F.2d 90 (5th Cir. 1987), recently cited with approval by *In the Matter of R. Daniel Bass, Jr., Debtor, et al,* 171 F.3d 1016, 1022 (5th Cir.1999).  In *Wood,* 825 F.2d 93, the Fifth Circuit defined a *core* proceeding as:

    *A proceeding is core under section 157 if it invokes a substantive*

4

*right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.*

d. The Court also considered what constituted a "related" claim.  Adopting the

rationale of an earlier Third Circuit case, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984),

it stated:

> *The Act does not define "related" matters.  Courts have articulated various definitions of "related", but the definition of the Court of Appeals for the Third Circuit appears to have the most support: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  This definition comports with the legislative history of the statutory predecessor to section 1334.  Neither Marathon nor general concerns of comity counsel against its use.  We adopt it as our own.*

e. If a core case is referred, the Bankruptcy Court could enter dispositive orders

under 28 U.S.C. 157 and its action would be reviewed as an ordinary appeal under 28 U.S.C. §158.

However, under *In re Clay*, 35 F3d 190 (5th Cir. 1994), it is doubtful that a bankruptcy court could

hold a jury trial, even in a *core* proceeding, without the consent of all of the parties.  See discussion,

*infra.*

f. The other type of case over which the District Courts have bankruptcy

jurisdiction is a "related" matter governed by the provisions of 28 U.S.C. 157 (c) (1).  Such a case,

in the context of a jury trial, involves the difficult questions posed in *Northern Pipeline Construction*

*Co. v. Marathon Pipeline Co, supra.*  While a Bankruptcy Court may hear such a case, it may not

enter dispositive orders and may only recommend findings and conclusions to the District Court,

which must enter all final orders.  A key provision, found in 28 U.S.C. §(c)(1), states that the District

Court must consider any Bankruptcy Court findings or conclusions which are objected to *de novo,*

5

and the Bankruptcy Court may exercise final jurisdiction over a related matter only with the consent of all of the parties.   Under 28 U.S.C. §157 (c) (2), the District Court can only refer a "related" matter to the Bankruptcy Court for final disposition with the consent of all of the parties.   Further, a binding jury trial can only be held by a Bankruptcy Court with the consent of all of the parties. *See* 28 U.S.C. 157 (e).

    g.  The *Marathon* case and the resulting statutes have led to the holding that the Bankruptcy Court is without jurisdiction to hear a related matter where a party is entitled to a Seventh Amendment Jury Trial is an Article III Court.  *See In Re Clay, supra*; and more recently, *see In the Matter of R. Daniel Bass, Jr., Debtor, et al,* 171 F.3d 1016 (5th Cir. 1999); *In the Matter of Texas General Petroleum Corporation,* 53 F.3d 1330, 1336 (5th Cir. 1995); *In Re: Doris Hofman, Debtor,* 248 B.R. 79, 90 (W. D. Tex. 2000), citing *In Re Clay, supra*; and *In Re: Pierre A. Lapeyre,* No. 99-1312 (E.D. La. 1999).

    h.  The main problem that Judge Higginbotham saw in the *Clay* case was that, outside of a core proceeding, there is not even statutory jurisdiction for the Bankruptcy Court to act as an Article III Court.  If it acts as an adjunct to a District Court in a jury trial, the requirement of 28 U.S.C. 157 (c) that the District Court's review be *de novo* runs afoul of the Seventh Amendment's prohibition of a review of a jury's findings on other than traditional appellate review.  The result of any referral of a related matter, especially where a party is entitled to a jury, is a circuitous procedure that would, in all probability, be invalid because it violates the Seventh Amendment.

    i.  Judge Higginbotham's analysis in *Clay,* 35 F.3d 192 is instructive.  He reasoned:

    *The inadequacy of district court review of jury trials is fatal to*

6

*delegation to adjuncts. In upholding a magistrate's power to rule on a pretrial motion, the Court stressed the importance of de novo review maintaining sufficient Article III control over an adjunct. United States v. Raddatz, 447 U.S. 667, 681-82, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980); see also Gomez, 490 U.S. at 875 n.29 (suggesting that Raddatz requires that district court be able to rehear witnesses and decide for itself de novo). Marathon likewise emphasized the need for ample review of an adjunct by an Article III court. 458 U.S. at 85 (Brennan, J., plurality opinion) (disapproving of clearly erroneous standard of review of bankruptcy court judgments); id. at 91 (Rehnquist, J., concurring in the judgment) (holding that bankruptcy courts were not adjuncts because they were subject "only [to] traditional appellate review").*

*De novo review is inconsistent with the Seventh Amendment, which states: "No fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law. In other words, the 7th Amendment permits only ordinary appellate review. This court has recognized the clash between Article III review of adjunct proceedings and 7th Amendment sanctity of jury verdicts. "The reference [to a magistrate for jury trial] either effectively denies the right to trial by jury, or impermissibly abrogates the decisive role of the district judge, or both." Ford v. Estelle, 740 F.2d 374, 380 (5th Cir. 1984).*

*De novo review by a district court is also impossible in practice, because a cold record cannot capture the atmosphere, the expressions, the attitudes that are the marrow of a jury trial. Gomez, 490 U.S. at 874-75; United States v. Ford, 824 F.2d at 1435-36; see also Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037, 1049 (7th Cir. 1984) (Posner, J., dissenting) (noting that appellate review leaves trial judge wide latitude in evidentiary rulings, instructions, and comments). Only verbal acrobatics could label the autonomous conduct of a trial as adjunct to anything.*

j.    Turning to this case, we have the following factors: this is *not* a core proceeding; it neither arises under Title 11 nor is it a case that could only arise in a bankruptcy situation. *See In Re Wood , supra.* If this case has anything to do with the F Street Bankruptcy Proceeding, it is only a "related" matter in which a Bankruptcy Court cannot conduct a Seventh

7

Amendment jury trial as an Article III Court unless all parties consent to such a proceeding. Such consent has not been given and the Plaintiff's rights to a jury trial have clearly been preserved.

k.       There is a serious question if this is even a related matter under *In re Wood*. There must be at least some impact on the F Street Bankruptcy for this to be a related matter. *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, 171 F.3d 1024. Under *Bass*, without the "related." matter *nexis*, there is no jurisdiction at all in the Bankruptcy Court, and none in the District Court unless there is an independent basis of jurisdiction, such as diversity of citizenship. Of course, jurisdiction can be raised at any time during a proceeding, and if this case were sent to the Bankruptcy Court, that issue would still be alive. If it were later determined that this is not even a related case, everything would have to start over.

l.       The case alleges conduct by the two defendants and the damages, based on legal grounds not available to the debtor in possession or the unsecured creditor's committee. Recovery would not be out of the debtor's assets and would not make additional assets available to the debtor's estate for distribution to the other creditors. If a distribution is paid to creditors by F Street's bankruptcy estate, it would impact the damages in this case. However, that is not enough to make this a "related case." Under *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, the non-bankruptcy must impact the administration of the estate in order to make the matter "related to" the bankruptcy. *Bass* teaches that the fact that the bankruptcy may conversely impact the civil action does not make the civil action a related matter.

m.       Returning to the court's original request of the Plaintiff, Quality Chekd respectfully submits that it has plead a case which cannot be prosecuted in the Bankruptcy Court. This is because Plaintiff has plead a case in which it has a right to a Seventh Amendment jury trial

8

conducted by an Article III United States Court. The Bankruptcy Court is not such a court and

cannot conduct a Seventh Amended Jury Trial because, absent consent of the parties, it lacks

jurisdiction to do so.

6.     Referral of this case over the Plaintiff's objection to the Bankruptcy Court not only

would be improper, but would also be an inefficient use of judicial resources.

From the foregoing analysis, it is evident that the procedure that would have to be followed

is a complex, multiple step process:

- Trial with a jury before the Bankruptcy Court;

- Preparation of recommended findings and conclusions by the Bankruptcy Court for submission to the District Court;

- Objections by either or both parties to any proposals with which they disagree;

- District Court *de novo* consideration of the issues that are the subject of the objections by either party, and ruling on them; and

- Proceedings before the District Court to enter its final judgment.

At the conclusion of this cumbersome procedure, there will still remain the troublesome question

of whether there should have been a jury trial before the Bankruptcy Court at all and whether it even

had jurisdiction to conduct any proceedings. *See In Re Clay, supra* and related arguments above.

WHEREFORE, Plaintiff respectfully submits that referring this case would be improper and would cause unnecessary work for this Court and the Bankruptcy Court.

Respectfully submitted,

HAMEL BOWERS & CLARK L.L.P.

Lee Hamel
SBN: 08818000
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000
Fax: (713) 659-3809
Attorneys for Quality Chekd Dairies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by U.S. Mail and/or fax to counsel of record on this the 20th day of February, 2001.

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

*Attorneys for Cohyco, Inc. and H. Lee Richards*

William L. Bowers, Jr.

10

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEKD DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants,** | § | |

## DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS'
## MOTION TO TRANSFER VENUE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Cohyco, Inc. and H. Lee Richards, (hereinafter collectively referred to as

"Defendants") and file this their Motion to Transfer Venue as permitted under 28 U.S.C. §1404(a).

### I.
### BACKGROUND FACTS

Plaintiff Quality Chekd Dairies, Inc. ("Quality Chekd") sued Defendants Cohyco, Inc.

("Cohyco") and "F" Street Investments, d/b/a Southwest Ice Cream Specialties (f/k/a Hygeia Dairy

Company) ("Hygeia") to recover approximately $1.6 million allegedly owed to Quality Chekd by

Hygeia for supplies and materials which Hygeia allegedly purchased through Hygeia's membership

in a cooperative organization and purchasing program administered by Quality Chekd. Quality

Chekd also has alleged that Hygeia defrauded Quality Chekd by making false representations

regarding Hygeia's ability to pay its debt to Quality Chekd. Hygeia is a wholly-owned subsidiary

of Cohyco. Quality Chekd has claimed that Cohyco "aided and abetted" Hygeia in its alleged fraud against Quality Chekd.   Quality Chekd also sued Defendant H. Lee Richards ("Richards") individually for his alleged participation in the claimed fraud concerning Hygeia's debt to Quality Chekd.

## II.

## VENUE SHOULD BE TRANSFERRED TO BROWNSVILLE BECAUSE THE DEFENDANTS, WITNESSES AND DOCUMENTS ARE IN HARLINGEN

Transfer of this suit from the Houston Division to the Brownsville Division will result in a much greater convenience to the witnesses and parties because none of the parties, witnesses or evidence is located in the Houston Division. Rather, all of the Defendants, the key witnesses, and the vast majority of the relevant documents are located in or near Harlingen, which is within the Brownsville Division. 28 U.S.C. §1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

## III.

## THIS SUIT COULD HAVE BEEN BROUGHT IN BROWNSVILLE

The present matter could have been brought in the Brownsville Division because Defendants Cohyco, Hygeia, and Richards are domiciled in Harlingen, Texas. Specifically, it is undisputed that Defendants Cohyco and Hygeia are corporations organized under the laws of the State of Texas, and both corporations maintain their principal offices in Harlingen, Texas.[1] Likewise, it is undisputed

---

[1]     See Original Complaint attached as Exhibit 1 at pgs.1-2 and fully incorporated (continued...)

that Defendant Richards is an individual who resides in Harlingen, Texas.[2]  Plaintiff Quality Chekd

was aware of these facts prior to filing suit in Houston, as it included these facts in its Original

Complaint.[3]

## IV.

### PLAINTIFF IS A RESIDENT OF ILLINOIS AND WISCONSIN, NOT HOUSTON

Plaintiff Quality Chekd filed this suit in Houston, but Quality Chekd is not a resident of

Houston or even the State of Texas.  Plaintiff Quality Chekd is a corporation organized under the

laws of Wisconsin with its principal place of business in Illinois.[4]  Therefore, little, if any, deference

is owed to Quality Chekd's choice of forum.  See Robertson v. M/V Cape Hunter, 979 F. Supp.

1105, 1108 (S.D. Tex. 1997)

## V.

### DEFENDANTS AND WITNESSES RESIDE IN THE BROWNSVILLE DIVISION

Venue is inconvenient for Defendants in the Houston Division and more convenient in the

Brownsville Division because all of the Defendants, several of the key witnesses, and virtually all

of the documents needed to disprove Plaintiff's allegations reside or are located in the Brownsville

Division. Defendant Richards has resided, for all times relevant to this lawsuit, in Harlingen, Texas,

---

[1](...continued)
herein.

[2]    See Id. at pg. 2.

[3]    See Id. at pgs. 1-2.

[4]    See Id. at pg. 1.

a city within the Brownsville Division.[5]  The corporate offices of Defendants Cohyco and Hygeia,

for all times relevant to this lawsuit, have been located in Harlingen, Texas.[6]  As Plaintiff Quality

Chekd has alleged causes of action for fraud and breach of fiduciary duty that were claimed to have

occurred within the corporate management of Cohyco and Hygeia, many material witnesses needed

to disprove Plaintiff's allegations reside in the Brownsville Division.[7]

     For example, Defendant Richards was a shareholder, officer, and director of Hygeia and

Cohyco at certain times relevant to the allegations made in the Complaint.[8]  In addition, he was a

member of the board of directors of Quality Chekd at times relevant to the allegations in the

Complaint.[9]  Richards will testify about the financial condition of Hygeia over times relevant to this

lawsuit, the status of Cohyco as parent of Hygeia, and the business dealings, including loan

transactions, between Hygeia and Cohyco.[10]  Also, Richards is expected to testify that Cohyco was

not involved in the arms-length business dealings between Hygeia and Quality Chekd, that he did

not intend for Hygeia to default on its debts to Quality Chekd, that any and all statements of present

facts he made to Quality Chekd representatives were true when made, and that he did not participate

---

[5]    See Affidavit of Lee Richards attached as Exhibit 2 and fully incorporated herein.

[6]    See Affidavits of Lee Richards, Merry Richards, and Doug Purl attached as Exhibits 2, 3, and 4, respectively, and fully incorporated herein.

[7]    See Initial Disclosures of Plaintiff Quality Chekd and of Defendants Cohyco and Richards attached as Exhibits 5 and 6, respectively, and fully incorporated herein.

[8]    See affidavit of Richards attached as Exhibit 2 and fully incorporated herein.

[9]    See Id.

[10]    See Id.

as a director of Quality Chekd in any decisions or actions by Quality Chekd to extend credit to Hygeia at any time relevant to the allegations in the Complaint.[11]

Other expected witnesses include Merry K. Richards, a resident of Harlingen, Texas, and Doug Purl, a resident of La Feria, Texas. Both Merry Richards and Doug Purl were shareholders, officers, and directors of Hygeia at times relevant to this lawsuit and, therefore, they are expected to testify about the financial condition of Hygeia over periods relevant to this lawsuit, the status of Cohyco as parent of Hygeia, and the business dealings, including loan transactions, between Hygeia and Cohyco.[12] Both of these witnesses reside in or near the Brownsville Division.[13]

On information and belief, there are no material witnesses that work or reside in the Houston Division. The rest of the potential witnesses and/or individuals who may have knowledge of the business and financial dealings of Quality Chekd, Cohyco, and/or Hygeia reside outside of the state of Texas, as is reflected in the Rule 26 Disclosures of Plaintiff Quality Chekd and Defendants Cohyco and Richards.[14]

---

[11]   See Id.

[12]   See affidavits of Merry Richards and Doug Purl attached as Exhibits 3 and 4, respectively, and fully incorporated herein.

[13]   See Id.

[14]   See Initial Disclosures of Plaintiff Quality Chekd and of Defendants Cohyco and Richards attached as Exhibits 5 and 6, respectively, and fully incorporated herein.

# VI.

## MOST OF THE DOCUMENTS ARE LOCATED IN THE BROWNSVILLE DIVISION

Access to sources of proof needed to disprove Plaintiff's allegations would be substantially more convenient if this case is transferred to the Brownsville Division. All important corporate documents needed to disprove Plaintiff's allegations are located in either the corporate offices of Hygeia or Cohyco, both of which are in Harlingen. These documents include all financial records of Hygeia and Cohyco, all records of the transactions between Hygeia and Quality Chekd made the subject of this lawsuit, all corporate minutes of Hygeia and Cohyco, all contracts and other agreements between Hygeia and Quality Chekd, and all the documents regarding the sale of a substantial portion of Hygeia's assets to Southern Foods, a transaction which Quality Chekd alleges operated as a fraud against it.[15]   The corporate and financial documents which are needed to disprove Plaintiff's allegations are numerous and relatively bulky, would be difficult to transport, and/or would require an unnecessarily inconvenient and sufficient amount of time and expense for copying, organization, and preparation should this case remain in the Houston Division. Moreover, upon information and belief, no documents relevant to this lawsuit are located in the Houston Division.[16] There are no assets, facilities, records or employees of Hygeia, Cohyco, or Richards that are found or reside in Houston.[17]

---

[15]     See affidavit of Richards attached as Exhibit 2 and fully incorporated herein.

[16]     See Id.

[17]     See Id.

## VII.

## RELATED LITIGATION IS PROCEEDING IN THE BROWNSVILLE DIVISION

Hygeia has filed for bankruptcy protection in the Brownsville Division of the Bankruptcy Court.[18] Plaintiff Quality Chekd has filed a claim in the bankruptcy proceedings, it has made appearances in Bankruptcy Court in the Brownsville Division, and the same attorneys representing Quality Chekd in this suit also represent it in the bankruptcy proceedings.[19] Therefore, Quality Chekd will not be inconvenienced or prejudiced by transfer of this suit to the Brownsville Division, as they are already actively participating in related litigation in that division.

WHEREFORE, PREMISES CONSIDERED, Defendants move the Court to grant its motion and transfer this case from the Houston Division to the Brownsville Division of the Southern District of Texas.  Defendants request any further relief, both special and general, at law or in equity, to which they may justly be entitled.

---

[18]     A true and correct  copy of Hygeia's Suggestion of Bankruptcy is attached as Exhibit 7 and fully incorporated herein.

[19]     See a true and correct copy of Quality Chekd's Motion to Lift Stay in the Bankruptcy Court attached as Exhibit 8 and fully incorporated herein.

Respectfully submitted,

Christopher Lowrance
Attorney-in-Charge
State Bar No. 00784502
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 Facsimile

C. Scott Kinzel
State Bar No. 00785499
2200 Chase Tower
600 Travis Street
Houston, Texas 77002-2913
(713) 224-8380
(713) 225-9945 Facsimile

ATTORNEYS FOR DEFENDANTS COHYCO,
INC. AND H. LEE RICHARDS

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated to counsel of record on this the 29th day of June, 2000.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Law Office of Lee Hamel & Associates
1200 Smith, Suite 2900
Houston, Texas 77002
Attorney in Charge for Quality Chekd Dairies, Inc.

Mr. Nathaniel Peter Holzer
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Attorney in Charge for F Street Investments, Inc.

**Of Royston, Rayzor, Vickery & Williams, L.L.P.**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEKD DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER TRANSFERRING VENUE

On the _____ day of _____, 2000, the Court having considered

Defendants' Motion to Transfer Venue and finding that said Motion should be **GRANTED**, it is

hereby **ORDERED, ADJUGED AND DECREED** the Defendants' Motion To Transfer Venue

be **GRANTED** and that suit be transferred to the **Brownsville Division of the Southern District**

**of Texas.**

Signed this _____ day of _____, 2000.

_____
UNITED STATES DISTRICT JUDGE
VANESSA D. GILMORE

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXA·
FILED

MAR 1 7 2000

Michael N. Milby, Clerk of Court

H 00 0943

| | |
|---|---|
| QUALITY CHEKD DAIRIES, INC. | § |
| Plaintiff, | § |
| | § |
| vs. | § |
| | § |
| COHYCO , INC., "F" STREET | § |
| INVESTMENTS, d/b/a SOUTHWEST | § |
| ICE CREAM SPECIALTIES (f/k/a | § |
| HYGEIA DAIRY COMPANY), and | § |
| H. LEE RICHARDS, | § |
| Defendants. | § |

CIVIL ACTION NO. _____

***JURY DEMANDED***

### ORIGINAL COMPLAINT

Quality Chekd Dairies Inc. ("Quality Chekd") complains of Cohyco, Inc. ("Cohyco"), "F"

Street Investments, Inc.,  d/b/a Southwest Ice Cream Specialties (f/k/a Hygeia Dairy Company)

("Hygeia"), and H. Lee Richards ("Richards").  For its causes of action Quality Chekd alleges:

### Parties

1.      Quality Chekd is a for profit cooperative corporation organized and existing under

the laws of Wisconsin and maintains its principal place of business at 1733 Park Street, Naperville,

Illinois 60563.

2.      Cohyco is a corporation which is organized under the laws of the state of Texas.  It

maintains its principal offices in Harlingen, Texas, and through its subsidiary Hygeia, did business

in the dairy industry throughout the state and had business establishments or property in Houston,

San Antonio, Harlingen, Brownsville, Corpus Christi, McAllen, Laredo, McKinney, and other parts

of Texas.  Cohyco may be served with summons through its registered agent for service of process,

H. Lee Richards, 700 S. "F" Street, Harlingen, Texas 78550.



EXHIBIT

1

3.     Hygeia is a corporation which is organized under the laws of the state of Texas.  It

maintains its principal offices in Harlingen, Texas, did business throughout the state in the dairy

industry and has business establishments or property in Harlingen, Corpus Christi, Houston,

McKinney, and other parts of Texas.  Hygeia may be served with summons through its registered

agent for service of process, H. Lee Richards, 700 S. "F" Street, Harlingen, Texas 78550.

4.     Richards is a citizen and resident of the state of Texas who resides in Harlingen,

Texas and maintains an office at 700 S. "F" Street, Harlingen, Texas 78550, where he may be served

with summons.

### Jurisdiction and Venue

5.     This Court has subject matter jurisdiction over this civil action under 28 U.S.C. §

1332 on the basis of diversity of citizenship because Quality Chekd is a corporation formed under

the laws of Wisconsin and maintains its principal place of business at 1733 Park Street, Naperville,

Illinois 60563, and is thus a corporate citizen of Illinois.  Cohyco, Hygeia, and Richards are citizens

of the state of Texas within the meaning of §1332 and this controversy involves an amount in excess

of $75,000 exclusive of interest and costs.  Venue is proper in this district and in this division of the

Court because Hygeia, of which Richards is Chairman of the Board, does business throughout Texas

and has places of business or property in the Southern District of Texas, including in Houston,

Texas.

### Nature of the Case

6.     This is a civil action to recover approximately $1.6 million dollars, plus interest and

attorneys' fees, owed to Quality Chekd by Cohyco and Hygeia for certain supplies and materials

which Hygeia purchased pursuant to Hygeia's membership in the Quality Chekd cooperative

2

organization and its participation in Quality Chekd's purchasing program.

7.      Richards is sued personally because of his wrongful conduct as a director of Quality Chekd in connection with the transactions between Hygeia on one hand, and Quality Chekd on the other. While a director of Quality Chekd, Richards breached his fiduciary duty as a director by failing to reveal and concealing material facts about Cohyco and Hygeia, and acting against the best interests of Quality Chekd, committing acts of fraud, constructive fraud, and misrepresentation. This conduct, more fully described below, consisted of, at least, failing to disclose the financial condition of Hygeia and Cohyco while at the same time accelerating Hygeia's purchases through Quality Chekd, and not paying for the purchases as agreed while negotiating the sale of Hygeia to Southern Foods Group ("Southern"). As Richards well knew, the sale of Hygeia's assets would take Cohyco and Hygeia out of the dairy business, eliminate their ability to generate revenue, and not leave sufficient assets to pay their debt. Hygeia's condition and the plans described above were not disclosed to Quality Chekd when Hygeia was creating additional accounts receivable balances with Quality Chekd, and increasing its own asset base. Since December 1, 1999, Southern operates an entity doing business as the new "Hygeia Dairy"; the entity known as Hygeia Dairy that dealt with Quality Chekd is now named "'F' Street Investments," and Lee Richards is now employed by Southern.

8.      Lee Richards, Cohyco, and Hygeia have essentially done this: they have bought materials through Quality Chekd over nine months in anticipation of an asset sale without paying Quality Chekd; they then sold some or all of those materials to Southern as part of an asset sale without paying Quality Chekd; and then they refused to pay Quality Chekd the full amount of the debt.

3

**Facts**

9.     Quality Chekd is a corporate, cooperative organization which serves a large segment of the United States' dairy industry and is owned by its respective members during their membership. At all relevant times, numerous major dairy companies, in all parts of the United States, including Hygeia, belonged to and supported the Quality Chekd cooperative organization. The members elect Quality Chekd's board of directors, pay certain fees and assessments to Quality Chekd, perform certain other duties, and receive the benefits of membership, including shares of any profits generated.

10.    One of the several services which Quality Chekd furnishes its members is a voluntary purchasing program which arranges for the participating members to purchase materials, equipment, services and supplies needed in their dairy businesses through a high volume purchasing program. The participating members achieve cost savings part of which is rebated to them in addition to a percentage of any annual profits. The program operates by the members ordering what they need through participating vendors. The vendors ship directly to the members, but bill Quality Chekd. Quality Chekd pays the vendors and then invoices the respective members for the amount of their orders. The purchasing program agreement requires the participating members to pay Quality Chekd within twenty-one days from the date of Quality Chekd's invoices. If this is not done, under the purchasing program agreement the unpaid balances are considered "over terms," and by agreement delinquent members are assessed interest on the amounts not paid within the twenty-one day period. Continued delinquency can lead to suspension or termination of purchasing privileges. The charge continues until the respective "over term" amounts are paid. This interest is not included in the current invoices, but is accumulated through the year and is deducted from the profits and purchase

4

savings "dividends" distributed to Coop members after the end of each fiscal year.

11.     Quality Chekd is governed by a board of directors which elects a president of the board and employs a paid Managing Director, who in turn manages the day-to-day operations. The Managing Director, the President, and the directors deal with members' account problems and related issues. From time to time, some members of Quality Chekd have had difficulty meeting their financial obligations to Quality Chekd and were given opportunities to extend payments or other relief to enable them to bring the accounts current. To date, it has been many years since any members' account balances have not been ultimately collected.

12.     From January 28, 1981 until December 1, 1992, Richards was a director of Quality Chekd. This included serving as President of the Board from December 1, 1987 until December 1, 1992. After coming off the board for a period as required by Quality Chekd's bylaws, he was re-elected to the board on December 6, 1994, and served until his term expired on December 5, 1999. During all of his board membership with Quality Chekd from 1994 through December 5, 1999, on information and belief, Richards was the Chairman and President of Hygeia, and Chairman of Cohyco.

13.     While serving as a director and officer of the Plaintiff, Richards participated in approving payout programs for delinquent members and was personally familiar with any leniency shown by the Coop to its members. Indeed, Hygeia needed and received this type of assistance during the early- to mid-1990s. In the course of Richards' participation in the management of Quality Chekd's operations, he developed close personal and business relationships with the other directors, executives, and staff.

14.     Since becoming a member of the Quality Chekd, Hygeia participated in the

5

purchasing program and over the years carried an account balance with Quality Chekd. During 1998. The billings were divided between Hygeia Dairy Company, and Hygeia/Southwest Ice Cream Specialities, although the latter name is actually a "d/b/a" for Hygeia Dairy Company. Therefore, although the addressees of the respective invoices were different, all of the bills were to Hygeia. Hygeia's balance averaged approximately $700,000 per month, ranging from approximately $485,000 to $1,100,000. In 1999, Hygeia's account balance averaged about $700,000 per month for the first four months, but rose from approximately $800,000 on March 31 to $1,140,000 on April 30. Its balance "over terms" rose from approximately $300,000 to $413,000 at the same time. This trend continued until early December 1999, and generally reflected increasing purchases through the program, larger accounts payable to Quality Chekd and a continual increase in the total amount of Hygeia's combined accounts which were "over terms." The three largest increases were from March 31 to April 30 ($341,000); May 31 to June 30 ($497,000) and August 31 to September 30 ($556,000). As of December 31, 1999, Hygeia's account with Quality Chekd was a total of approximately $1,801,000 of which approximately $1,625,000 was "over terms." In other words, for the nine months preceding December 1, 1999, Hygeia increased its average balance of debt to Quality Chekd by approximately $1,000,000, all the while knowing that it would sell its assets and attempt to avoid paying its debt to Quality Chekd.

15.    Quality Chekd has been informed and believes, and therefore alleges that Hygeia and its parent Cohyco have had financial difficulties for some time. It now understands that during the Spring of 1999, the Defendants lost the ability to secure bank or other commercial financing for some or all of their operating capital needs, were seeking new banking relationships, were and had been operating at a loss and apparently had other financial problems. This has now been confirmed

6

by financial information by Hygeia in late February, 2000. Copies of parts of its audited financial statements for 1996, 1997 and 1998 were finally furnished in connection with Hygeia attempting to settle with its unsecured creditors for between ten and fifteen cents on the dollar. This financial information reflected mounting losses, an increasing negative net worth and, in the 1998 statements, a liquidity warning from the auditors Deloitte & Touche, L.L.P. Although these problems were well-known to Richards and the other defendants, Richards deliberately concealed this financial information until it was too late, and never disclosed the nature and extent of these problems to Quality Chekd. As its losses mounted, Hygeia continued to increase its purchases and run up its account with Plaintiff. Had the true condition and plans of Hygeia and Cohyco been known to Quality Chekd, these extensions of credit would never have been allowed and earlier action would have been taken. Richards was only able to operate in this manner by using the relationship of trust and confidence that he had built up as an officer and director of Quality Chekd and deliberately violating his fiduciary duties in Quality Chekd.

16.     On December 1, 1999, Southern purchased all of Hygeia's assets and Hygeia and Cohyco closed the dairy business it was in when Hygeia increased its account receivable balance at Quality Chekd. After Southern purchased Hygeia's assets, an employee of Southern advised Quality Chekd that during the late Spring or early Summer of 1999, Richards had requested Southern to make an offer for Hygeia's assets. This fact was, of course, known to Richards but, again in violation of his fiduciary duties, he never disclosed this information to Plaintiff or any of its officers until late October of 1999, by which time Hygeia's account was almost $1,945,000.

17.     In early Summer of 1999, the senior management of Quality Chekd began attempts to get Hygeia to reduce the total amount of its account, the increasingly larger proportion of the

7

obligation which was "over terms." Numerous attempts were made to resolve this problem with Richards, who at all times acted and spoke for Hygeia. This resulted in an extended business conference between Richards and Quality Chekd's management on or about June 23, 1999, and an agreement that Hygeia was to make certain scheduled payments in order to bring the total amount owed to specified levels within a given time period, an agreement that the total credit would not exceed $496,296.97, and that the amount of the account "over terms" would be $200,000 or less, on or before July 14, 1999. The agreement is summarized in the copy of Quality Chekd's letter of June 23, 1999, which is attached as Exhibit "A." The parties all understood that failure to meet the payment and reduction obligations summarized in the June 23, 1999 letter would result in Hygeia's suspension or termination from the purchasing program and possible expulsion from membership in Quality Chekd. During these negotiations, Richards kept the true financial condition of Hygeia secret, in violation of his fiduciary duties.

18.    Hygeia's payments on its account did not conform to the agreed schedule and both the total amount of the balance and the amount "over terms" continued to grow. In fact the debt reached a maximum of approximately $2,228,000 by the end of September 1999, with approximately $1,426,000 "over terms." Small reductions, achieved by making payments greater than the amounts purchased, resulted in an account balance of approximately $1,801,000 at the end of December 1999. These payments were made to lull Quality Chekd and to keep its management at bay until its asset sale could be completed. A summary of the account balances and amounts "over terms," is attached as Exhibit "B."

19.    Despite its failure to comply with the June 23, 1999 agreement, Hygeia continued to increase purchases through the program. This resulted in a buildup in Hygeia's inventories of

8

supplies, products and material needed to continue its business. This use of credit from Quality Chekd also enabled Hygeia to pay its milk suppliers (who traditionally were dealt with on essentially a cash basis throughout the industry) and avoid a virtual shut-down of its operations . The result of this mode of operation of Hygeia was to increase its assets during the time that it was negotiating a sale of its assets to Southern.

     20.     At all material times during the course of events leading to this civil action, Richards served as a director of Quality Chekd. He also had been an active participant in the management of the Plaintiff and was trusted and respected by the other directors and the management. Richards' long tenure and participation in Quality Chekd's affairs and his position as Director at all relevant times created a legal fiduciary responsibility on Richards to act in the best interests of Quality Chekd, to avoid conduct harmful to Quality Chekd, and to disclose all material information to Quality Chekd bearing on its decisions concerning the extension of credit to Hygeia.

     21.     From July 1, 1999 through early November 1999, Richards and Quality Chekd's management continued to discuss the reduction and status of Hygeia's account. On or about October 28, 1999, Doug Purl, a Hygeia employee, told Quality Chekd that a sale of Hygeia's business was pending, would be completed in "the next few days" and that if Quality Chekd cut off credit, that act could result in the sale not being completed. This information was conveyed in response to Quality Chekd's advice, in the face of continued failures by Hygeia to live up to its agreements, that its participation in the purchasing program would be suspended unless the account was brought current. Purl implied that patience would be rewarded upon completion of the sale by payment of the account. Neither Purl nor Richards in any way indicated that less than the full

9

amount due would be paid. Purl did not reveal the terms, structure or status of the sale. Richards

insisted that Hygeia was under confidentiality restrictions. He led Quality Chekd's management to

believe that the account would be paid when accounts receivable were collected. Based on these

representations, Hygeia was allowed to continue in the program and no collection activities were

undertaken. In late November 1999, Richards, for the first time, indicated that he did not know if

there would be enough money to pay the account in full. Richards stated shortly before December

1, 1999, that no payments would be made to creditors until all of Hygeia's receivables were

collected. On January 25, 2000, Hygeia management advised Quality Chekd for the first time that

perhaps less than fifty percent of its balance would be paid. Not once during the preceding nine

months of Hygeia's build-up of its account at Quality Chekd, or during any discussion regarding

payment of the account, did Hygeia or Richards dispute the balance until January 25, 2000 when

Hygeia personnel first questioned the balance due. Prior to the sale of its assets, Hygeia never raised

any question about the amount of its account or indicated its debt would not be paid in full.

22.     On or about December 1, 1999, Hygeia sold its principal assets to Southern, which

notified Quality Chekd of this event by its letter of December 20, 1999, after having announced the

purchase of Hygeia in an earlier press release. Although the complete terms of the sale are not

known at this time, the December 20, 1999 letter advised that the transaction was a sale of assets and

that there was no assumption by Southern of any Hygeia liability incurred before December 1, 1999.

County public records, UCC filings with the Secretary of State and statements by Richards and

others indicate that a substantial part of Hygeia's assets were encumbered by liens given to secure

obligations due other creditors, that some of the real estate and possibly other assets were retained,

10

and some of the liens were released around December 3, 1999.

23.    Quality Chekd has not received any payment on Hygeia's account since December 13, 1999.  Quality Chekd declared the entire debt due and has continued to demand payment in full of all amounts due to it by its letter of December 7, 1999, a copy of which is attached as Exhibit "C."  Quality Chekd since then has continued to demand payment and defendants have failed and refused to pay.

24.    The invoices from Quality Chekd to Hygeia that were due and unpaid as of January 31, 2000 are described in the attached Exhibit "D."  Since that date, after allowing and charging offsets, payments and charges, there is now due and payable by Hygeia to Quality Chekd the total amount of such invoices, plus interest, through March 14, 2000 of $1,602,045.45, plus future interest as allowed by law on current balances and interest at the rate of at least twelve percent per annum on all amounts that are due as detailed by the voluntary purchases program agreement, and other charges due under Hygeia's agreements with Quality Chekd.  All of these amounts are just, due and unpaid, and arise from transactions of which systematic and accurate records have been kept.  The account is verified and sworn to by Mel W. Rapp, Managing Director of Quality Chekd.

25.    Because of Hygeia's refusal and failure to pay the account described above, it has become necessary for Quality Chekd to retain attorneys to collect such amount and to pay them a reasonable and necessary fee.

26.    The allegations in this paragraph are made on information and belief.  At all relevant times, Cohyco owned and controlled Hygeia.  It used this control to aid, abet, encourage and cause Hygeia and its officers, directors, agents, and employees to commit the wrongful acts alleged herein.

11

Further, at all relevant times, Richards was Chairman of the Board of Cohyco, and Cohyco had full knowledge of Richards' conduct alleged herein. As owner of Hygeia, Cohyco, knowingly and intentionally benefitted from all of the wrongful conduct alleged herein. Further, the management of Cohyco and Hygeia were substantially the same, and Cohyco through its management controlled Hygeia and structured its relationships with Hygeia to benefit Cohyco at the expense of creditors of Hygeia.

### First Cause of Action
### Suit on a Sworn Account

27.    The allegations made in the prior paragraphs of this Complaint are incorporated by reference into this Cause of Action for all purposes.

28.    Pursuant to the substantive provisions of TEX. R. CIV. P. 185, under the laws of the state of Texas, this is an action by Quality Chekd against Hygeia and Cohyco on an open account, for the payment for goods, wares, and merchandise, or in the alternative for a liquidated amount of money due under a written contract or other business dealings between Quality Chekd, Hygeia, and Cohyco, as to which a systematic record has been kept. Such account is shown in Exhibit D which reflects all unpaid invoices. The account has been sworn to as being within the knowledge of the Plaintiff as just, true, and due, and Plaintiff has sworn that all lawful offsets, payments, and credits have been allowed against it.

29.    Accordingly, Quality Chekd is entitled to judgment in the amount of $1,602,045.45 plus interest against Hygeia and Cohyco for its costs of court and under the provisions of TEX. CIV. PRAC. & REM. CODE § 37.001, its attorneys' fees, and costs of litigation for which it sues.

12

**Second Cause of Action**
**Breach of Contract**

30.    The allegations made in the prior paragraphs of this Complaint are incorporated by reference into this Cause of Action for all purposes.

31.    Under the agreement with respect to Hygeia's participation in the Quality Chekd purchasing program, and the failure of Hygeia to pay its accounts under the terms of the contract, Hygeia has breached such contract and has proximately caused damage to Quality Chekd in the amount of $1,602,045.45 in direct and consequential damages.

32.    Accordingly, Quality Chekd is entitled to judgment in the amount of $1,602,045.45 against Hygeia and Cohyco, for interest allowed by law, its costs of court and under the provisions of TEX. CIV. PRAC. & REM. CODE § 37.001, its attorneys fees, and costs of litigation for which it sues.

**Third Cause of Action**
**Breach of Fiduciary Duty By Richards**

33.    The allegations made in the prior paragraphs of this Complaint are incorporated by reference into this Cause of Action for all purposes.

34.    The service by Richards as a director of Quality Chekd until December 5, 1999, imposed a fiduciary duty on him with respect to Quality Chekd.  During 1999, before his term expired, when Hygeia and Cohyco were in financial difficulty, running up their accounts with Quality Chekd and applying for special financial considerations, Richards had a duty of full disclosure and an obligation to act only in the best interests Quality Chekd.  Instead of disclosing Hygeia's precarious financial condition and using his position to assure payment of Hygeia's

13

obligations to Quality Chekd, he deliberately concealed relevant financial information and that he was engaged in negotiations to consummate the sale of Hygeia's assets; he concealed the details of such sale; and he knowingly and intentionally caused and permitted Hygeia to run up its accounts with Quality Chekd. He increased Hygeia's purchases through Quality Chekd's purchasing program, used his relationships and position of trust with Quality Chekd management for the benefit of Hygeia, and otherwise engaged in intentionally wrongful, reckless, grossly negligent, and negligent conduct with respect to his principal, Quality Chekd. Further, on information and belief, Richards served his own interests because he is or was a personal guarantor of other obligations of Hygeia and Cohyco, is a principal stockholder in Hygeia's parent Cohyco, and thus was personally motivated to so act. In all of his wrongful conduct Richards employed, whenever possible, the relationships of trust and confidence that he had developed over the years with the management and personnel of Quality Chekd.

35.    Richards' breach of his director's fiduciary duty to Quality Chekd as alleged in the preceding paragraphs had a direct and causal relationship to the increasing purchases of Hygeia and the continued extension of credit to Hygeia by Quality Chekd, and has proximately caused damage to Quality Chekd in an amount of at least $1,602,045.45 for which Plaintiff sues. Further, Richards engaged in such breach of his fiduciary knowingly, wilfully or in the alternative in reckless disregard or with gross negligence as to Quality Chekd. Therefore, Quality Chekd is entitled to recover exemplary or punitive damages from Richards in an amount determined by the jury as adequate to punish Richards for his wrongful conduct and deter others similarly situated from so acting. Accordingly, Quality Chekd also sues for punitive or exemplary damages.

36.    Cohyco, Hygeia, and Richards are all liable for the damages claimed under this cause

14

of action because Richards' wrongful conduct was committed in the course and scope of his

employment with Hygeia and Cohyco, was done on Cohyco and Hygeia's behalf, and Cohyco has

aided, abetted, encouraged and counseled the wrongful conduct alleged.  Cohyco and Hygeia have

accepted and have retained benefits from such wrongful conduct.

**Fourth Cause of Action**
**Fraud or in the Alternative Constructive Fraud**

37.    The allegations made in the prior paragraphs of this Complaint are incorporated by

reference into this Cause of Action for all purposes.

38.    Richards' conduct including but not limited to, withholding information about

Hygeia's financial condition, the existence and terms of the sale of Hygeia's assets, the fact that there

would not be sufficient funds to pay Hygeia's obligations to Quality Chekd and other material

information while at the same time running up Hygeia's accounts with Quality Chekd to improve

the asset base of Hygeia and Cohyco; obtaining financing through Quality Chekd for Hygeia's

operations; and making repeated false representations with respect to the payment of the account

constituted fraud.  Because of the close and inside relationship that Richards had with Quality Chekd

and its management, this fraudulent conduct was reasonably relied on the Quality Chekd and

proximately caused damage to Quality Chekd in the amount of at least $1,602,045.45 for which

Quality Chekd sues.  Further, Richards engaged in such fraudulent conduct knowingly, wilfully or

in the alternative in reckless disregard or with gross negligence as to Quality Chekd.  Therefore,

Quality Chekd is entitled to recover exemplary or punitive damages from Richards in an amount

determined by the jury as adequate to punish Richards for his wrongful conduct and deter others

similarly situated from so acting.  Accordingly, Quality Chekd also sues for punitive or exemplary

15

damages

39.     In the alternative, Richards' conduct is a constructive fraud because the relationships between Richards and the management of Quality Chekd was one of trust and confidence, including without limitation, one of a fiduciary nature which under all the circumstances of this case, gave rise to a duty of disclosure and a duty to refrain from the wrongful conduct alleged above. Such constructive fraud has proximately caused damage to Quality Chekd in an amount of at least $1,602,045.45 for which Plaintiff sues. Further, Richards engaged in such breach of his fiduciary duty knowingly, wilfully or in the alternative in reckless disregard or with gross negligence as to Quality Chekd. Therefore, Quality Chekd is entitled to recover exemplary or punitive damages from Richards in an amount determined by the jury as adequate to punish Richards for his wrongful conduct and deter others similarly situated from so acting. Accordingly, Quality Chekd also sues for punitive or exemplary damages.

40.     Cohyco, Hygeia, and Richards are all liable for the damages and punitive damages claimed under this cause of action because Richards' wrongful conduct was engaged in the course and scope of his employment with Hygeia and Cohyco, was done on Cohyco and Hygeia's behalf, Cohyco and Hygeia accepted and have retained benefits from such wrongful conduct and Cohyco has aided, abetted, encouraged and counseled the wrongful conduct alleged.

### Fifth Cause of Action
### Application for an Accounting and
### Imposition of a Constructive Trust or an Equitable Lien

41.     The allegations made in the prior paragraphs of this Complaint are incorporated by reference into this Cause of Action for all purposes.

42.     The conduct of Richards in increasing the assets of Hygeia through his breach of

16

fiduciary duty, fraud or constructive fraud has, in the good faith belief of Plaintiff, caused Hygeia

and Cohyco to acquire certain assets which they either currently possesses or have sold for a valuable

consideration and which in turn, they either have in their possession, or have distributed to its

shareholders or paid to other creditors. Because of Richards' failure to disclose information which

his position as a director of Quality Chekd obligated him to divulge, Plaintiff cannot allege the

amount and nature of such assets or proceeds. Under the laws of the state of Texas and the practices

of equity, Quality Chekd is entitled to have a complete accounting for all assets and or their proceeds

which Hygeia acquired through Richards' breach of fiduciary duty, fraud or constructive fraud. Such

assets include, without limitation, all of the material, supplies, equipment or other things acquired

through the Quality Chekd purchasing program and to the extent that such assets have been sold, the

proceeds or such assets as have been substituted for them, for which relief Quality Chekd sues.

     43.     Under the laws of the state of Texas, Quality Chekd is entitled to have a constructive

trust imposed on such assets as Richards, Hygeia or Cohyco acquired through Richards' breach of

fiduciary duty, fraud or constructive fraud or the proceeds or assets substituted for such wrongfully

acquired assets. In the alternative, Quality Chekd is entitled to the imposition of an equitable lien

on all such assets, for which relief Quality Chekd sues.

     WHEREFORE, Quality Chekd prays that summons be issued according to the law and that

on final hearing hereof, Quality Chekd be awarded actual and punitive damages against Richards,

Hygeia, and Cohyco as shown by the evidence; that Richards, Hygeia, and Cohyco be ordered to

make an accounting of these wrongfully acquired assets; and that a constructive trust or equitable

17

lien be imposed on all such assets, attorneys' fees, and such other general or special relief in law or equity to which Quality Chekd may be entitled.  Quality Chekd demands a trial by jury.

Respectfully submitted,

Lee Hamel
SBN:  08818000
Fed. ID: 2872
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:     (713) 659-2000
Fax:     (713) 659-3809
ATTORNEY FOR COMPLAINANT
QUALITY CHEKD DAIRIES, INC.

OF COUNSEL:
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:     (713) 650-1004
Fax:     (713) 659-3809

18

STATE OF ILLINOIS       §
             §
COUNTY OF COOK      §

## AFFIDAVIT OF MEL W. RAPP

BEFORE ME, the undersigned authority personally appeared Mel W. Rapp, who, first being duly sworn, did depose and swear on oath:

I am employed by Quality Chekd Dairies, Inc. as its Managing Director and am authorized to make this affidavit. I have read the foregoing Complaint and the facts set out therein are within my personal knowledge and they are true and correct to the best of my knowledge and belief; and, with respect to the account of Hygeia Dairy Company, such facts are true and correct:

1.   I have the care, custody and control of the records of the account of Hygeia Dairy Company.

2.   These records show the total principal balance payable by Hygeia Dairy Company to Quality Chekd Dairies, Inc. which, with interest, is $1,602,045.45 as of March 14, 2000.

3.   Hygeia Dairy Company's account, marked Exhibit "D" and attached to the Complaint, is within my personal knowledge just and true. The true amount of the account is due Quality Chekd Dairies, Inc. from Hygeia Dairy Company and all just and lawful offsets, payments and credits have been allowed.

4.   Demand for payment of the just amount owing by Hygeia Dairy Company to Quality Chekd Dairies, Inc. has been made more than thirty days prior hereto and payment for the just amount owing has not been tendered.

Further, Affiant sayeth naught.

           _____
           MEL W. RAPP

SIGNED AND SWORN TO before me on _March 14_____, 2000.

           Raymond Bikulcius
          Notary Public, State of Illinois
           No. 364920
          Commission Expires Sept. 10, 2001
Notary Public for the State of Illinois

**SENT VIA FAX**

June 23, 1999

Mr. Lee Richards
Hygeia Dairy Company
720 South "F" Street
P. O. Box 751
Harlingen, TX 78550

Dear Lee:

First, let me thank you for your cooperation in helping provide an arrangement whereby we can work together in reducing Hygeia's overdue balances to Quality Chekd.

Today, you and I discussed the following and agreed to such subject to approvals of Quality Chekd's president and treasurer, who have done so.

The balances due shown on our books as of June 23, 1999, were as follows:

| The amount due over Quality Chekd's 21-day terms: | | Total Owed: |
|---|---|---|
| Harlingen | $ 16,722.61 | $107,892.57 |
| Corpus Christi | 374,409.48 | 419,729.96 |
| Southwest Ice Cream Specialties | 280,763.98 | 968,674.44 |
| Total | $671,896.07 | $1,496,296.97 |

With the last payment posted (received) on June 14, the overall balances are as show above.

Lee, you and I have agreed on the following as a basis to avoid suspension of Hygeia's access to the Quality Chekd purchasing program:

1. By July 14 you expect to have the amount over 21-days to not more than $200,000.
2. The amount over 21-days will rise to not more than $460,000 as of July 21-23.
3. From July 23 it is your intention to work the over 21-day balance down to under $200,000 by mid-August.

**EXHIBIT "A**

4.   The Oak Brook B      can receive, and you are planning to :      all checks by U. S. Mail second-day delivery to avoid delays in the mail system.

5.   It is your expectation of having new banking relations established within 90 days, at which time the Quality Chekd balance will be current.

These conditions were approved by Quality Chekd's president and treasurer with the caveat that the total due from the three locations mentioned above would not exceed the total now due of $1,496,296.97.

It is our desire and intention to work through this matter with you, but should Hygeia or Southwest Ice Cream Specialties be unable to comply with the above, it will be necessary to promptly reinstate the steps outlined in our letter of June 15, 1999.

Yours truly,

Mel Rapp

/nmd

| Date | Purchasing | | | | | Regular | | | | | Dues & Fees | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Current | Over 21 | Over 60 | Over 90 | Sub-total | Current | Over 21 | Over 60 | Over 90 | Sub-total | Current | Over 21 | Over 60 | Over 90 | Sub-total | |
| 1/31/97 | 193,433.42 | 25,534.46 | | | 218,967.88 | 590.63 | 1,250.00 | | | 1,885.63 | 9,111.00 | | | | 9,111.00 | 229,964.51 |
| 2/28/97 | 302,659.03 | 52,850.83 | | | 355,509.86 | 1,200.00 | | | | 1,200.00 | | | | | 0.00 | 356,709.86 |
| 3/31/97 | 336,215.46 | 488.35 | 906.63 | | 337,608.44 | 2,700.00 | | | | 2,700.00 | | | | | 0.00 | 340,308.44 |
| 4/30/97 | 406,189.51 | 21,724.63 | | | 427,914.14 | 593.97 | 1,380.00 | | | 1,973.97 | 9,111.00 | | | | 9,111.00 | 438,999.11 |
| 5/31/97 | 231,930.24 | 113,276.39 | | | 345,206.63 | | | 1,380.00 | | 1,380.00 | 9,111.00 | | | | 9,111.00 | 355,697.63 |
| 6/30/97 | 196,446.22 | 124.74 | 5,023.75 | | 201,594.71 | 662.76 | 1,380.00 | | | 2,042.76 | | | | | 0.00 | 203,637.47 |
| 7/31/97 | 183,089.30 | 25,705.49 | 30,092.12 | | 238,886.91 | 514.26 | 1,380.00 | | | 1,894.25 | 9,111.00 | | | | 9,111.00 | 249,892.17 |
| 8/31/97 | 322,149.75 | 16,783.85 | | | 338,933.60 | 600.00 | 1,380.00 | | | 1,980.00 | 9,111.00 | | | | 9,111.00 | 350,024.60 |
| 9/30/97 | 351,899.40 | 43,668.86 | | | 395,568.26 | 1,055.76 | 4,057.48 | | | 5,437.48 | | 9,111.00 | | | 9,111.00 | 410,116.74 |
| 10/31/97 | 299,728.24 | 4,137.96 | | | 303,866.20 | 813.50 | | | | 813.50 | 7,535.00 | | | | 7,535.00 | 312,464.77 |
| 11/30/97 | 282,042.72 | 6,010.86 | 1,297.00 | | 289,350.58 | 33.50 | | | | 33.50 | 7,535.00 | | | | 7,535.00 | 303,182.31 |
| 12/31/97 | 292,987.79 | 19,215.49 | 1,155.00 | | 313,359.28 | 813.50 | | | | 813.50 | 7,535.00 | | | | 7,535.00 | 321,706.78 |
| 1/31/98 | 297,244.14 | 8,527.49 | 1,155.00 | 712.18 | 307,638.79 | | 33.50 | | | 33.50 | 7,535.00 | | | | 7,535.00 | 315,207.29 |
| 2/28/98 | 269,458.02 | 55,027.81 | | | 324,485.83 | 1,200.00 | | | | 1,200.00 | 7,535.00 | | | | 7,535.00 | 333,220.83 |
| 3/31/98 | 352,295.74 | 120.88 | | | 351,086.42 | 750.00 | | | | 750.00 | 7,535.00 | | | | 7,535.00 | 351,836.42 |
| 4/30/98 | 165,446.19 | -1,330.20 | | | 162,061.19 | 2,842.00 | | | | 2,842.00 | 7,535.00 | | | | 7,535.00 | 426,607.73 |
| 5/31/98 | 309,288.99 | 899.05 | | | 416,230.73 | | 1,200.00 | 1,250.00 | | 1,250.00 | 7,535.00 | | | | 7,535.00 | 331,343.47 |
| 6/30/98 | 407,659.24 | -2,308.65 | | | 322,558.47 | 252.50 | | | | 252.50 | | | | | 0.00 | 177,613.12 |
| 7/31/98 | 173,776.71 | 3,934.86 | 2,560.36 | -350.95 | 177,360.62 | | | 252.50 | | 252.50 | 7,535.00 | | | | 7,535.00 | 342,024.35 |
| 8/31/98 | 314,875.74 | 17,351.70 | -16.00 | 1,310.16 | 334,236.85 | 920.38 | | 252.50 | | 1,172.88 | 7,482.76 | | | | 7,482.76 | 388,560.65 |
| 9/30/98 | 361,023.46 | -2,267.80 | -27.00 | 221,294.25 | 379,852.63 | 1,325.16 | | 252.50 | | 1,577.66 | 7,482.76 | | | | 7,482.76 | 230,334.67 |
| 10/31/98 | 222,150.89 | 36,479.55 | 1,428.16 | | 221,294.25 | | | 252.50 | | 252.50 | | 7,483.00 | | | 7,483.00 | 504,334.01 |
| 11/30/98 | 460,737.97 | 57,671.67 | -2,073.17 | 1,444.10 | 496,072.88 | 5,803.78 | | 252.50 | | 6,056.28 | 7,483.00 | | | | 7,483.00 | 201,562.97 |
| 12/31/98 | 221,072.17 | 468.74 | -1,189.00 | 399,861.70 | 278,023.69 | 1,016.16 | 21.65 | 252.50 | | 1,268.66 | | 7,483.00 | | | 7,483.00 | 408,613.36 |
| 1/31/99 | 340,156.95 | 18,612.88 | 42,201.82 | -1,111.59 | 399,861.70 | | | 252.50 | | 274.15 | 14,966.00 | | | | 14,966.00 | 373,909.33 |
| 2/28/99 | 294,586.69 | 64,956.18 | 238.31 | | 351,725.02 | | | 252.50 | | 252.50 | 14,966.00 | | | | 14,966.00 | 351,725.02 |
| 3/31/99 | 311,587.38 | 12,375.67 | 12,874.52 | -330.79 | 336,506.82 | 2,041.00 | | 252.50 | | 2,293.50 | 14,966.00 | | 7,483.00 | | 14,966.00 | 513,333.38 |
| 4/30/99 | 318,798.53 | 4,956.18 | | | 336,506.82 | | 375.00 | 252.50 | | 627.50 | 14,966.00 | | | | 14,966.00 | 535,025.20 |
| 5/31/99 | 317,547.09 | -50.78 | | | 519,807.70 | | | 252.50 | | 376.06 | 14,966.00 | | | | 14,966.00 | 448,704.58 |
| 6/30/99 | 132,091.55 | 238,593.83 | 12,543.77 | 496,072.88 | 496,072.88 | | | 252.50 | | 627.50 | 14,966.00 | 7,483.00 | | | 14,966.00 | 365,325.11 |
| 7/31/99 | 148,508.70 | 116,808.71 | 4,532.57 | 270,306.74 | 519,807.70 | 123.56 | 123.56 | 252.50 | | 376.06 | 7,483.00 | | | | 7,483.00 | 285,844.60 |
| 8/31/99 | 149,455.72 | 184,374.58 | 6,999.33 | 342,500.05 | 700,980.71 | | | 252.50 | | 1,373.56 | 7,483.00 | | 7,483.00 | | 7,483.00 | 365,325.11 |
| 9/30/99 | 333,249.82 | 271,727.95 | 8,720.53 | 700,980.71 | 700,980.71 | 1,250.00 | | | 1,250.00 | 1,250.00 | 22,449.00 | 7,483.00 | 7,483.00 | 7,475.36 | 22,449.00 | 717,232.27 |
| 10/31/99 | 151,182.85 | 417,087.80 | 16,561.44 | 319,244.06 | 685,467.35 | | | 1,250.00 | 1,250.00 | 1,384.50 | 7,483.00 | 14,947.36 | 14,958.36 | | 14,958.36 | 688,527.80 |
| 11/30/99 | 157,512.01 | 196,914.02 | 332,923.91 | 709,612.33 | | 134.50 | 123.56 | | 134.50 | 1,384.50 | 14,947.36 | 14,966.00 | | | 14,947.36 | 725,944.19 |
| 12/31/99 | 83,033.02 | 221,698.20 | 146,202.60 | 297,154.91 | 746,086.73 | | | 1,250.00 | 1,250.00 | 1,384.50 | 7,472.00 | 7,472.35 | 7,475.35 | 7,475.35 | 14,947.36 | 764,420.59 |

**EXHIBIT "B"**

J.C. (illeg.), et.al.

| Purchasing | | | | | Regular | | | | | Dues & Fees | | | | | Total | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Current | Over 21 | Over 60 | Over 90 | Sub-total | Current | Over 21 | Over 60 | Over 90 | Sub-total | Current | Over 21 | Over 60 | Over 90 | Sub-total | | |
| 266,092.70 | -67.30 | | | 266,025.40 | | | | | 0.00 | 1,428.00 | | | | 1,428.00 | 267,453.40 | 497,417.91 |
| 324,990.02 | 1,526.87 | | | 326,516.89 | | | | | 0.00 | 1,428.00 | | | | 1,428.00 | 328,016.89 | 683,226.75 |
| 4*4,264.23 | 2,320.00 | | | 408,564.23 | | | | | 0.00 | | | 1,428.00 | | 1,428.00 | 408,564.23 | 746,892.87 |
| 330,858.40 | 175.00 | | | 331,033.43 | | | | | 0.00 | | | 1,428.00 | | 1,428.00 | 332,461.43 | 771,460.54 |
| 311,887.78 | 34,833.39 | | | 496,727.00 | | | | | 0.00 | | | 1,428.00 | | 1,428.00 | 498,155.03 | 853,852.66 |
| 184,839.25 | 36,874.71 | | | 567,776.50 | | | | | 0.00 | | | 1,428.00 | | 1,428.00 | 567,776.50 | 771,413.97 |
| 532,943.11 | -1,574.08 | | | 385,271.74 | 750.00 | | | | 750.00 | | | | 1,428.00 | 1,428.00 | 387,449.74 | 637,341.91 |
| 3*7,971.11 | 36,874.71 | | | 476,166.25 | 600.00 | | | | 600.00 | | | | 1,428.00 | 1,428.00 | 478,184.25 | 828,208.85 |
| 376,799.90 | 99,356.35 | | | 350,358.07 | 675.00 | | | | 675.00 | | | | 1,428.00 | 1,428.00 | 352,461.07 | 762,577.81 |
| 275,161.28 | 68,125.73 | | 6,071.06 | 476,166.25 | 675.00 | | | | 675.00 | | | | | 0.00 | 560,513.72 | 560,513.72 |
| 230,049.91 | 1,927.98 | | 6,071.06 | 238,048.95 | | | | | 0.00 | | | | | 0.00 | 238,048.95 | 559,704.13 |
| 219,299.50 | 31,161.26 | | | 256,521.82 | | | | | 0.00 | | | | | 0.00 | 256,521.82 | 494,113.09 |
| 1,57,037.57 | 15,366.74 | | | 172,406.31 | | | | | 0.00 | | | | | 0.00 | 172,406.31 | 625,579.54 |
| 279,391.72 | 30,980.53 | | | 310,372.25 | | | | | 0.00 | | | | | 0.00 | 310,372.25 | 694,406.67 |
| 307,878.82 | 53,308.82 | | | 361,185.64 | | | | | 0.00 | | | | | 0.00 | 361,185.64 | 675,087.55 |
| 323,231.13 | | | | 323,231.13 | | | | | 0.00 | | | | | 0.00 | 675,087.55 | 765,714.47 |
| 323,087.46 | 16,039.28 | | | 339,106.74 | | | | | 0.00 | | | | | 0.00 | 339,106.74 | 687,985.92 |
| 279,500.23 | 57,142.22 | | | 336,642.45 | | | | | 0.00 | | | | | 0.00 | 336,642.45 | 1,033,199.23 |
| 869,889.12 | 1,448.82 | | | 871,138.04 | | | | | 0.00 | | | | | 0.00 | 667,985.92 | 1,102,846.80 |
| 924,908.46 | 325.20 | | | 925,233.68 | | | | | 0.00 | | | | | 0.00 | 871,138.04 | 621,292.44 |
| 294,908.46 | 14,833.09 | 111.85 | | 279,268.09 | 375.00 | | | | 375.00 | | | | | 0.00 | 1,033,199.23 | 545,650.57 |
| 170,507.62 | 37,188.67 | | -13,792.56 | 256,715.00 | | | | | 0.00 | | | | | 0.00 | 925,233.68 | 484,678.16 |
| -230,927.38 | 43,455.48 | 420.04 | | 254,323.49 | | | | | 0.00 | | | | | 0.00 | 1,102,846.80 | 816,045.88 |
| 297,846.33 | 37,438.90 | 465.00 | 420.04 | 311,721.85 | | | | | 0.00 | | | | | 0.00 | 279,268.09 | 465,714.76 |
| 135,827.65 | 108,049.94 | | 865.04 | 174,151.79 | 375.00 | | | 375.00 | 375.00 | | | | | 0.00 | 621,292.44 | 743,566.85 |
| 225,118.81 | 94,391.45 | 3,300.00 | | 337,353.49 | | | | | 0.00 | | | | | 0.00 | 157,090.06 | 397,218.39 |
| 259,061.94 | 71,290.49 | 3,765.00 | | 397,218.39 | | | | | 0.00 | | | | | 0.00 | 545,650.57 | 759,456.15 |
| 376,010.76 | 459.58 | | | 447,760.83 | | | | | 0.00 | | | | | 0.00 | 256,323.49 | 1,140,143.20 |
| 425,677.01 | 221,062.81 | | 626,739.82 | 626,739.82 | 375.00 | | | | 375.00 | | | | | 0.00 | 484,678.16 | 1,220,351.71 |
| 358,087.65 | 325,547.84 | 975.00 | | 684,610.49 | 350.02 | | | | 725.02 | | | | | 0.00 | 311,721.85 | 1,716,607.14 |
| 673,686.68 | 386,908.58 | | | 1,266,303.44 | 1,266,303.44 | | | | 1,600.00 | | | | | 0.00 | 816,045.88 | 1,655,251.45 |
| 556,178.67 | 607,673.40 | | 5,708.16 | 1,369,112.55 | 125.00 | 1,100.02 | 125.00 | 375.00 | 500.00 | | | | | 0.00 | 174,151.79 | 1,872,635.67 |
| 473,573.24 | 797,464.28 | 30,733.46 | 6,260.58 | 1,307,031.56 | | | | 375.00 | 500.00 | | | | | 0.00 | 465,714.76 | 2,226,687.69 |
| 477,338.63 | 801,214.96 | 207,023.71 | 25,395.72 | 1,510,972.42 | | | | 375.00 | 375.00 | | | | | 0.00 | 743,566.85 | 1,944,256.87 |
| 283,089.22 | 653,481.06 | 290,356.57 | 25,193.72 | 1,257,739.07 | | | | 375.00 | 375.00 | | | | | 0.00 | 397,218.39 | 1,791,779.58 |
| 125,415.41 | 344,096.20 | 550,123.81 | 31,432.22 | 1,065,632.39 | | | | 375.00 | 375.00 | | | | | 0.00 | 397,218.39 | 1,801,568.28 |
| 93,805.28 | 187,921.58 | 263,533.33 | 42,821.97 | 1,036,772.69 | | | | 375.00 | 375.00 | | | | | 0.00 | 447,760.83 | |
| | | | 491,507.50 | 1,065,457.39 | | | | | | | | | | | 1,037,147.69 | |



# QUALITY CHEKD DAIRIES, INC.

1733 Park Street, Naperville, Illinois 60563
(630) 717-1110 • fax (630) 717-1126 • www.qchekd.com

**SENT VIA FEDEX OVERNIGHT DELIVERY**

December 7, 1999

President
Paul Arbuthnot
Sunshine Dairy, Inc.
Portland, OR

Vice President
L.G. Oller
Hiland Dairy
Springfield, MO

Treasurer
Larry Losasso
Sinton Dairy
Colorado Springs, CO

Secretary
Dennis Winter
Super Store Industries
Stockton, CA

Directors
Randy Benson
Parmalat Canada
Toronto, Ontario

Jim Miklinski
Wendt's Dairy
Niagara Falls, NY

Doug Parr
Dean Foods
Franklin Park, IL

H. Lee Richards
Hygeia Dairy
Harlingen, TX

Ron Richardson
Hiland-Roberts Ice Cream
Norfolk, NE

Dan Scannien
Superior Dairy, Inc.
Canton, OH

Jerry Teel
Vitamilk Dairy, Inc
Seattle, WA

Director Emeritus
Irving B. Weber
Iowa City, IA
1900-1997

Managing Director
Mel W. Rapp

Mr. Lee Richards
Hygeia Dairy Company
720 South "F" Street
Harlingen, TX 78550

Dear Lee:

You have exhausted completely the patience of Quality Chekd Dairies, Inc. in connection with the long overdue debt to it of Hygeia Dairy and Southwest Ice Cream Specialties.

We have, as you know, cooperated and worked with you over a long period of time. You have continually promised payments and debt reduction. What we received, however, was a steady increase in the total amount of the debt. You asked for continued credit and maintenance of the license because the sale of your business would be the trigger for payment of all debt due to Quality Chekd. We requested prior to the closing of the sale for information regarding the sale and current financial statements, but you refused. You closed the sale and we received neither payments nor information. In short, we have received no money, no financial statements, no information regarding the closing, no information as to how much and when we will be paid and no realistic or near term prospects for receipt of payments and information.

You have allowed us no alternative but to make this demand for immediate payment *in full* of all amounts due to Quality Chekd by Hygeia Dairy and Southwest Ice Cream Specialties.

Failure to make immediate payment shall cause Quality Chekd to initiate all legal remedies it has available against all appropriate companies and individuals. The exercise of those rights are expected to include a detailed and involuntary legal exploration of all aspects of your companies' finances including the recent sale and any personal benefits you may have obtained.

Yours truly,

Mel Rapp
Managing Director

cc:  P. Arbuthnot
L. Losasso
J. Moehling

**EXHIBIT "C"**



# QUALITY CHEKD DAIRIES, INC.

### 1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
### (630) 717-1110

## STATEMENT

| MEMBER NO |
|---|
| 102500 |

| DATE |
|---|
| 1/31/00 |

HYGEIA DAIRY CO-HARLINGEN
P. O. BOX 751

HARLINGEN,                TX 78550

| | | | | | |
|---|---|---|---|---|---|
| 9/23/99 | 163342 | IV | 4570.63 | 4570.63 | Liquid Sugars Inc. |
| 9/23/99 | 163345 | IV | 4337.61 | 8908.24 | Liquid Sugars Inc. |
| 9/23/99 | 163347 | IV | 19949.10 | 28857.34 | PHILLIPS CHEM. |
| 9/23/99 | 163351 | IV | 47.42 | 28904.76 | ECOLAB INC. -PES |
| 9/23/99 | 163366 | IV | 65.41 | 28970.17 | ECOLAB INC. -PES |
| 9/23/99 | 163367 | IV | 675.87 | 29646.04 | ECOLAB INC. -PES |
| 9/23/99 | 163368 | IV | 92.75 | 29738.79 | ECOLAB INC. -PES |
| 9/23/99 | 163369 | IV | 82.04 | 29820.83 | ECOLAB INC. -PES |
| 9/23/99 | 163370 | IV | 475.85 | 30296.68 | ECOLAB INC. -PES |
| 9/23/99 | 163371 | IV | 92.98 | 30389.66 | ECOLAB INC. -PES |
| 9/23/99 | 163372 | IV | 92.98 | 30482.64 | ECOLAB INC. -PES |
| 9/23/99 | 163401 | IV | 9674.73 | 40157.37 | GIVAUDAN ROURE FLAVI |
| 9/24/99 | 163468 | IV | 16718.72 | 56876.09 | ECOLAB INC. |
| 9/27/99 | 163544 | IV | 4303.23 | 61179.32 | Liquid Sugars Inc |
| 9/27/99 | 163626 | IV | 215.96 | 61395.28 | GIVAUDAN ROURE FLAVI |
| 9/30/99 | 163856 | IV | 100.00 | 61495.28 | INPACO CORPORATION |
| 9/30/99 | 163890 | IV | 20888.70 | 82383.98 | PHILLIPS CHEM. |
| 9/30/99 | 163915 | IV | 2349.96 | 84733.94 | CONTINENTAL COLLOID: |
| 9/30/99 | 164233 | IV | 749.00 | 85482.94 | GERMANTOWN (U S.A.) |
| 9/30/99 | 164280 | IV | 7186.48 | 92669.42 | REHRIG PACIFIC COMP. |
| 9/30/99 | 164284 | IV | 675.87 | 93345.29 | ECOLAB INC. -PES |
| 9/30/99 | 164313 | IV | 260.50 | 93605.79 | UNILOY MILACRON, IN( |
| 9/30/99 | 164323 | IV | 8436.41 | 102042.20 | TETRA PAK INC. |
| 9/30/99 | 164324 | IV | 31071.30 | 133113.50 | TETRA PAK INC. |

-- CONTINUE --

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 |
|---|---|---|---|---|
| PURCHASES | | | | |
| REGULAR | | | | |
| DUES & FEES | | | | |
| TOTAL | | | | |

**EXHIBIT "**

Case 1:02-cv-00040   Document 50   Filed in TXSD on 03/20/2001   Page 112 of 162



# QUALITY CHEKD DAIRIES, INC.

### 1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
### (630) 717-1110

## STATEMENT

102500

1/31/00

```
HYGEIA DAIRY CO-HARLINGEN
P. O. BOX 751

HARLINGEN,              TX 78550
```

| Date | Invoice | Type | Amount | Balance | Vendor |
|---|---|---|---|---|---|
| 9/30/99 | 164326 | IV | 34473.60 | 167587.10 | TETRA PAK INC. |
| 9/30/99 | 164356 | IV | 35197.36 | 202784.46 | TETRA PAK INC. |
| 9/30/99 | 164413 | IV | 32763.84 | 235548.30 | TETRA PAK INC. |
| 9/30/99 | 164422 | IV | 34504.98 | 270053.28 | TETRA PAK INC. |
| 10/12/99 | 164489 | IV | 4494.23 | 274547.51 | Liquid Sugars Inc. |
| 10/13/99 | 164525 | IV | 14787.93 | 289335.44 | TETRA PAK INC. |
| 10/13/99 | 164562 | IV | 12707.41 | 302042.85 | ECOLAB INC. |
| 10/13/99 | 164577 | IV | 381.53 | 302424.38 | ECOLAB INC. |
| 10/13/99 | 164593 | IV | 1292.17 | 303716.55 | ECOLAB INC. |
| 10/13/99 | 164594 | IV | 753.35 | 304469.90 | ECOLAB INC. |
| 10/14/99 | 164657 | IV | 19856.42 | 324326.32 | AIRLITE PLASTICS CO. |
| 10/14/99 | 164659 | IV | 719.24 | 325045.56 | AIRLITE PLASTICS CO. |
| 10/14/99 | 164760 | IV | 21430.50 | 346476.06 | PHILLIPS CHEM. |
| 10/14/99 | 164765 | CM | 340.93- | 346135.13 | ECOLAB INC. |
| 10/15/99 | 164804 | IV | 748.62 | 346883.75 | 3M SCW8736 |
| 10/15/99 | 164850 | IV | 262.40 | 347146.15 | FEDEX |
| 10/15/99 | 164851 | IV | 62.75 | 347208.90 | FEDEX |
| 10/15/99 | 164852 | IV | 92.10 | 347301.00 | FEDEX |
| 10/15/99 | 164892 | IV | 273.19 | 347574.19 | EDGAR A. WEBER & CO |
| 10/15/99 | 164934 | IV | 9459.72 | 357033.91 | GIVAUDAN ROURE FLAV |
| 10/19/99 | 165036 | IV | 84.33 | 357118.24 | ECOLAB INC. |
| 10/19/99 | 165077 | IV | 1374.52 | 358492.76 | 3M SCW8736 |
| 10/21/99 | 165244 | IV | 243.36 | 358736.12 | ECOLAB INC. |
| 10/21/99 | 165247 | IV | 10296.69 | 369032.81 | ECOLAB INC. |

– CONTINUE –

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 |
|---|---|---|---|---|
| PURCHASES | | | | |
| REGULAR | | | | |
| DUES & FEES | | | | |
| TOTAL | | | | |



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563

(630) 717-1110

## STATEMENT

| MEMBER NO. |
|---|
| 102500 |

| DATE |
|---|
| 1/31/00 |

HYGEIA DAIRY CO-HARLINGEN
P. O. BOX 751

HARLINGEN,                TX 78550

| Date | Invoice | Type | Amount | Balance | Vendor |
|---|---|---|---|---|---|
| 10/21/99 | 165254 | IV | 128.56 | 369161.37 | WEBER SCIENTIFIC |
| 10/21/99 | 165280 | IV | 7507.24 | 376668.61 | REHRIG PACIFIC COMPA |
| 10/21/99 | 165288 | IV | 7507.24 | 384175.85 | REHRIG PACIFIC COMPA |
| 10/21/99 | 165313 | IV | 542.35 | 384718.20 | FEDEX |
| 10/21/99 | 165314 | IV | 109.50 | 384827.70 | FEDEX |
| 10/21/99 | 165319 | IV | 433.10 | 385260.80 | FEDEX |
| 10/21/99 | 165348 | IV | 29.90 | 385290.70 | FEDEX |
| 10/21/99 | 165349 | IV | 17.50 | 385308.20 | FEDEX |
| 10/21/99 | 165350 | IV | 19.50 | 385327.70 | FEDEX |
| 10/25/99 | 165448 | IV | 14802.96 | 400130.66 | TETRA PAK INC. |
| 10/25/99 | 165504 | IV | 273.58 | 400404.24 | WEBER SCIENTIFIC |
| 10/26/99 | 165635 | IV | 354.40 | 400758.64 | FEDEX |
| 10/26/99 | 165636 | IV | 138.10 | 400896.74 | FEDEX |
| 10/28/99 | 165726 | IV | 4566.81 | 405463.55 | Liquid Sugars Inc. |
| 10/28/99 | 165741 | IV | 3285.09 | 408748.64 | MID-AMERICA FARMS |
| 10/31/99 | 165926 | IV | 7507.24 | 416255.88 | REHRIG PACIFIC COMPA |
| 11/03/99 | 166024 | IV | 21157.50 | 437413.38 | PHILLIPS CHEM. |
| 11/03/99 | 166032 | IV | 1868.21 | 439281.59 | ECOLAB INC. |
| 11/03/99 | 166066 | IV | 360.50 | 439642.09 | FEDEX |
| 11/03/99 | 166067 | IV | 9.85 | 439651.94 | FEDEX |
| 11/03/99 | 166068 | IV | 116.20 | 439768.14 | FEDEX |
| 11/04/99 | 166137 | IV | 4360.53 | 444128.67 | Liquid Sugars Inc. |
| 11/05/99 | 166184 | IV | 11002.25 | 455130.92 | ECOLAB INC. |
| 11/05/99 | 166186 | IV | 2270.99 | 457401.91 | ECOLAB INC. |

- CONTINUE -

## DAYS PAST DUE

|  | CURRENT | OVER 30 | OVER 60 | OVER 90 |  |
|---|---|---|---|---|---|
| PURCHASES |  |  |  |  |  |
| REGULAR |  |  |  |  |  |
| DUES & FEES |  |  |  |  |  |
| TOTAL |  |  |  |  |  |



# QUALITY CHEKD DAIRIES, INC.

### 1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
### (630) 717-1110

## STATEMENT

| MEMBER NO |
|---|
| 102500 |

| DATE |
|---|
| 1/31/00 |

HYGEIA DAIRY CO-HARLINGEN
P. O. BOX 751

HARLINGEN,                 TX 78550

| 11/05/99 | 166256 | IV | 7431.61 | 464833.52 | REHRIG PACIFIC COMPA |
| 11/08/99 | 166304 | IV | 1579.00 | 466412.52 | ECOLAB INC. |
| 11/10/99 | 166406 | IV | 29.69 | 466442.21 | ECOLAB INC. |
| 11/10/99 | 166488 | IV | 15129.24 | 481571.45 | TETRA PAK INC. |
| 11/11/99 | 166512 | IV | 21212.10 | 502783.55 | PHILLIPS CHEM |
| 11/11/99 | 166523 | IV | 1292.17 | 504075.72 | ECOLAB INC. |
| 11/11/99 | 166524 | IV | 753.35 | 504829.07 | ECOLAB INC. |
| 11/11/99 | 166528 | CM | 1198.72- | 503630.35 | ECOLAB INC. |
| 11/11/99 | 166592 | IV | 215.70 | 503846.05 | FEDEX |
| 11/11/99 | 166593 | IV | 24.00 | 503870.05 | FEDEX |
| 11/12/99 | 166626 | CM | 4056.00- | 499814.05 | ECOLAB INC. |
| 11/15/99 | 166710 | IV | 2458.26 | 502272.31 | SKW BIOSYSTEMS, INC. |
| 11/16/99 | 166727 | IV | 9559.29 | 511831.60 | ECOLAB INC. |
| 11/16/99 | 166732 | IV | 240.86 | 512072.46 | ECOLAB INC. |
| 11/16/99 | 166751 | IV | 18677.44 | 530749.90 | M. A. HANNA COLOR |
| 11/18/99 | 166787 | IV | 9904.27 | 540654.17 | GIVAUDAN ROURE FLAV |
| 11/18/99 | 166941 | IV | 475.85 | 541130.02 | ECOLAB INC. -PES |
| 11/18/99 | 166942 | IV | 675.87 | 541805.89 | ECOLAB INC. -PES |
| 11/18/99 | 166943 | IV | 92.75 | 541898.64 | ECOLAB INC. -PES |
| 11/18/99 | 166944 | IV | 92.98 | 541991.62 | ECOLAB INC. -PES |
| 11/18/99 | 166945 | IV | 82.04 | 542073.66 | ECOLAB INC. -PES |
| 11/18/99 | 166946 | IV | 92.98 | 542166.64 | ECOLAB INC. -PES |
| 11/22/99 | 167039 | IV | 308.50 | 542475.14 | FEDEX |
| 11/23/99 | 167040 | IV | 9.25 | 542484.39 | FEDEX |

— CONTINUE —

| | DAYS PAST DUE | | | | |
|---|---|---|---|---|---|
| | CURRENT | OVER 30 | OVER 60 | OVER 90 | |
| PURCHASES | | | | | |
| REGULAR | | | | | |
| DUES & FEES | | | | | |
| TOTAL | | | | | |



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
(630) 717-1110

## STATEMENT

| | MEMBER NO. |
|---|---|
| | 102500 |

HYGEIA DAIRY CO-HARLINGEN
P. O. BOX 751

HARLINGEN,             TX 78550

| | 1/31/00 |
|---|---|

| INVOICE DATE | INVOICE | | AMOUNT | BALANCE | |
|---|---|---|---|---|---|
| 11/22/99 | 167063 | IV | 7333.50 | 549817.89 | PARISH MANUFACTURIN |
| 11/22/99 | 167098 | IV | 5755.95 | 555573.84 | AIRLITE PLASTICS CO |
| 11/23/99 | 167131 | CM | 217.31- | 555356.53 | ECOLAB INC. |
| 11/23/99 | 167135 | CM | 94.85- | 555261.68 | ECOLAB INC. |
| 11/29/99 | 167369 | IV | 116.60 | 555378.28 | FEDEX |
| 11/29/99 | 167395 | IV | 164.12 | 555542.40 | CREST FOODS CO., IN |
| 11/29/99 | 167396 | IV | 164.32 | 555706.72 | CREST FOODS CO., IN |
| 11/29/99 | 167397 | IV | 7721.08 | 563427.80 | REHRIG PACIFIC COMP |
| 11/29/99 | 167398 | IV | 7721.08 | 571148.88 | REHRIG PACIFIC COMP |
| 11/29/99 | 167399 | IV | 7721.08 | 578869.96 | REHRIG PACIFIC COMP |
| 11/29/99 | 167400 | IV | 7487.05 | 586357.01 | REHRIG PACIFIC COMP |
| 11/29/99 | 167401 | IV | 7721.08 | 594078.09 | REHRIG PACIFIC COMP |
| 11/30/99 | 167451 | IV | 7492.29 | 601570.38 | ECOLAB INC. |
| 11/30/99 | 167554 | IV | 21840.00 | 623410.38 | PHILLIPS CHEM. |
| 11/30/99 | 167567 | IV | 514.15 | 623924.53 | 3M SCW8736 |
| 12/03/99 | 167732 | IV | 575.09 | 624499.62 | GERMANTOWN (U.S.A. |
| 12/03/99 | 167753 | IV | 955.75 | 625455.37 | UNILOY MILACRON, I |
| 12/07/99 | 167932 | CM | 2992.86- | 622462.51 | ECOLAB INC. |
| 12/08/99 | 168137 | IV | 15127.27 | 637589.78 | ECOLAB INC. |
| 12/09/99 | 168229 | IV | 327.90 | 637917.68 | FEDEX |
| 12/09/99 | 168230 | IV | 8.25 | 637925.93 | FEDEX |
| 12/09/99 | 168231 | IV | 28.15 | 637954.08 | FEDEX |
| 12/13/99 | 168312 | IV | 18600.00 | 656554.08 | TETRA PAK MATWEST |
| 12/13/99 | 168313 | IV | 18600.00 | 675154.08 | TETRA PAK MATWEST |

– CONTINUE –

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 | |
|---|---|---|---|---|---|
| PURCHASES | | | | | |
| REGULAR | | | | | |
| DUES & FEES | | | | | |
| TOTAL | | | | | |




# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
(630) 717-1110

## STATEMENT

102500

1/31/00

```
HYGEIA DAIRY CO-HARLINGEN
P. O. BOX 751

HARLINGEN,              TX 78550
```

| Date | Invoice | Type | Amount | Balance | Description |
|---|---|---|---|---|---|
| 12/13/99 | 168314 | IV | 18600.00 | 693754.08 | TETRA PAK MATWEST IN |
| 12/13/99 | 168386 | IV | 7721.08 | 701475.16 | REHRIG PACIFIC COMPA |
| 12/13/99 | 168442 | IV | 4328.06 | 705803.22 | LIQUID SUGARS |
| 12/13/99 | 168443 | IV | 4350.96 | 710154.20 | LIQUID SUGARS |
| 12/13/99 | 168444 | IV | 4385.36 | 714539.56 | LIQUID SUGARS |
| 12/13/99 | 168443 | IV | 4454.12 | 718993.68 | LIQUID SUGARS |
| 12/14/99 | 168499 | IV | 236.15 | 719229.83 | FEDEX |
| 12/14/99 | 168500 | IV | 15.50 | 719245.33 | FEDEX |
| 12/14/99 | 168501 | IV | 15.50 | 719260.83 | FEDEX |
| 12/17/99 | 168767 | IV | 63.20 | 719324.03 | ECOLAB INC.-PES |
| 12/17/99 | 168782 | IV | 475.85 | 719799.88 | ECOLAB INC.-PES |
| 12/17/99 | 168783 | IV | 675.87 | 720475.75 | ECOLAB INC.-PES |
| 12/17/99 | 168784 | IV | 92.75 | 720568.50 | ECOLAB INC.-PES |
| 12/17/99 | 168785 | IV | 92.95 | 720661.45 | ECOLAB INC.-PES |
| 12/17/99 | 168786 | IV | 82.04 | 720743.52 | ECOLAB INC.-PES |
| 12/17/99 | 168787 | IV | 92.98 | 720836.50 | ECOLAB INC.-PES |
| 12/17/99 | 168840 | IV | 70.55 | 720907.05 | FEDEX |
| 12/17/99 | 168841 | IV | 22.50 | 720931.55 | FEDEX |
| 12/20/99 | 168993 | IV | 37.30 | 720968.85 | FEDEX |
| 12/31/99 | 169620 | IV | 18.25 | 720987.10 | FEDEX |
| 1/20/00 | 170766 | IV | 1244.00 | 722231.10 | UNILOY MILACRON, INC |
| | | | PURCHASING | 722231.10 | |
| | | | | | |
| 9/27/99 | 163389 | IV | 550.00 | 550.00 | QUALITY CHEKD DAIRIE |
| 9/27/99 | 163595 | IV | 700.00 | 1250.00 | QUALITY CHEKD DAIRIE |

- CONTINUE -

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 |
|---|---|---|---|---|
| PURCHASES | | | | |
| REGULAR | | | | |
| DUES & FEES | | | | |
| TOTAL | | | | |



# QUALITY CHEKD DAIRIES, INC.
### 1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
### (630) 717-1110
## STATEMENT

102500

```
┌                              ┐
    HYGEIA DAIRY CO-HARLINGEN
    P. O. BOX 751                        1/31/00

    HARLINGEN,           TX 78550
└                              ┘
```

| 11/08/99 | 166362 | IV | 134.50 | 1384.50 | QUALITY CHEKD DAIRI |
| 1/26/00 | 171222 | IV | 17631.56 | 19016.06 | QUALITY CHEKD DAIRI |
| 1/27/00 | 171341 | IV | 368.66 | 19384.72 | QUALITY CHEKD DAIRI |
| 1/28/00 | 171353 | IV | 368.66 | 19753.38 | QUALITY CHEKD DAIRI |
| 1/31/00 | 171495 | IV | 368.66 | 20122.04 | QUALITY CHEKD DAIRI |
| 1/31/00 | 171496 | IV | 368.66 | 20490.70 | QUALITY CHEKD DAIRI |
| | | | REGULAR | 20490.70 | |
| | | | | | |
| 10/19/99 | 165055 | IV | 7475.36 | 7475.36 | QUALITY CHEKD DAIRI |
| 11/05/99 | 166213 | IV | 7472.00 | 14947.36 | QUALITY CHEKD DAIRI |
| | | | DUES&FEES | 14947.36 | |

PLEASE NOTE: PAYMENT TERMS FOR PURCHASES AS ESTABLISHED BY THE BOARD OF
DIRECTORS ARE 21 DAYS FROM THE DATE OF INDIVIDUAL QUALITY CHEKD INVOICE

| DAYS PAST DUE | | | | |
|---|---|---|---|---|
| | CURRENT | OVER 30 XX 21 XX | OVER 60 | OVER 90 |
| PURCHASES | 1244.00 | 97062.57 | 207668.65 | 416255.88 | 722231. |
| REGULAR | 19106.20 | .00 | 134.50 | 1250.00 | 20490. |
| DUES & FEES | 00 | .00 | 7472.00 | 7475.36 | 14947. |
| TOTAL | 20350.20 | 97062.57 | 215275.15 | 424981.24 | 757669. |



# QUALITY CHEKD DAIRIES, INC.

### 1733 PARK STREET, NAPERVILLE, ILLINOIS 60563
### (630) 717-1110

## STATEMENT

102503

HYGEIA/SOUTHWEST I C SPEC
1220 NORTH TENNESSEE

MCKINNEY,          TX 75069

1/31/00

| Date | Number | Type | Amount | Balance | Description |
|---|---|---|---|---|---|
| 9/16/99 | 162935 | IV | 9277.50 | 9277.50 | GERMANTOWN (U.S.A. |
| 1/26/00 | 162935 | PA | 2076.73- | 7200.77 | GERMANTOWN (U.S.A. |
| 9/16/99 | 162960 | IV | 96.60 | 7297.37 | FEDEX |
| 9/17/99 | 163015 | IV | 36703.47 | 44000.84 | CHICAGO DAIRY CORP |
| 9/17/99 | 163050 | IV | 280.27 | 44281.11 | WEBER SCIENTIFIC |
| 9/20/99 | 163065 | IV | 10803.48 | 55084.59 | Fort James Corp. |
| 9/21/99 | 163107 | IV | 10038.02 | 65122.61 | Liquid Sugars Inc. |
| 9/21/99 | 163108 | IV | 5075.96 | 70198.57 | Liquid Sugars Inc. |
| 9/21/99 | 163141 | IV | 27053.31 | 97251.88 | INTERBAKE FOODS INC |
| 9/21/99 | 163175 | IV | 7471.23 | 104723.11 | SEALRIGHT COMPANY, |
| 9/21/99 | 163176 | IV | 6504.50 | 111227.61 | SHADE FOODS INC. |
| 9/21/99 | 163197 | IV | 246.00 | 111473.61 | VWR SCIENTIFIC |
| 9/21/99 | 163179 | IV | 361.12 | 111834.73 | VWR SCIENTIFIC |
| 9/21/99 | 163199 | IV | 280.63 | 112115.36 | VWR SCIENTIFIC |
| 9/21/99 | 163200 | IV | 107.42 | 112224.78 | VWR SCIENTIFIC |
| 9/22/99 | 163233 | IV | 64.25 | 112289.03 | FEDEX |
| 9/22/99 | 163289 | IV | 241.59 | 112530.62 | VWR SCIENTIFIC |
| 9/22/99 | 163290 | IV | 42.76 | 112573.38 | VWR SCIENTIFIC |
| 9/22/99 | 163292 | IV | 32241.18 | 144814.56 | CHICAGO DAIRY CORP |
| 9/22/99 | 163297 | IV | 1197.45 | 146012.01 | DOT FOODS INC.-OTH |
| 9/22/99 | 163298 | IV | 3944.63 | 149956.64 | DOT FOODS INC.-OTH |
| 9/20/99 | 163344 | IV | 10052.04 | 160008.68 | Liquid Sugars Inc. |
| 9/20/99 | 163398 | IV | 3100.00 | 163108.68 | GERMANTOWN (U.S.A. |
| 9/20/99 | 163431 | IV | 7259.25 | 170367.93 | UNIVERSAL FLAVORS |

- CONTINUE -

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 |
|---|---|---|---|---|
| PURCHASES | | | | |
| REGULAR | | | | |
| DUES & FEES | | | | |
| TOTAL | | | | |

EXHIBIT



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563

(630) 717-1110

## STATEMENT

102503

HYGEIA/SOUTHWEST I C SPEC
1220 NORTH TENNESSEE

MCKINNEY,                TX 75069

1/31/00

| Date | Invoice | | Amount | Balance | Vendor |
|---|---|---|---|---|---|
| 9/23/99 | 163435 | IV | 2649.01 | 173016.94 | UNIVERSAL FLAVORS |
| 9/24/99 | 163451 | IV | 3256.60 | 176273.54 | Liquid Sugars Inc. |
| 9/24/99 | 163488 | IV | 12913.05 | 189166.59 | BURD & FLETCHER |
| 9/24/99 | 163491 | IV | 4365.36 | 193551.95 | BURD & FLETCHER |
| 9/27/99 | 163557 | IV | 789.93 | 194341.88 | ECOLAB INC. |
| 9/27/99 | 163599 | IV | 400.69 | 194742.57 | 3M SCW8736 |
| 9/28/99 | 163618 | IV | 1850.89 | 196593.46 | 3M SCW8736 |
| 9/27/99 | 163639 | IV | 309.87 | 196903.33 | NORTHVILLE LABORATO |
| 9/28/99 | 163673 | IV | 1060.00 | 197963.33 | ADM COCOA PRODUCTS |
| 9/28/99 | 163687 | IV | 4922.55 | 202885.88 | SEALRIGHT COMPANY, |
| 9/28/99 | 163727 | IV | 639.65 | 203525.53 | VWR SCIENTIFIC |
| 9/28/99 | 163748 | IV | 10053.51 | 213579.04 | Liquid Sugars Inc. |
| 9/28/99 | 163749 | IV | 2811.44 | 216390.48 | Liquid Sugars Inc. |
| 9/28/99 | 163751 | IV | 7680.56 | 224071.04 | ECOLAB INC. |
| 9/29/99 | 163800 | IV | 191.00 | 224262.04 | FEDEX |
| 9/30/99 | 163840 | IV | 1083.73 | 225345.77 | 3M SCW8736 |
| 9/30/99 | 163841 | IV | 646.42 | 225992.19 | ECOLAB INC. |
| 9/30/99 | 163948 | IV | 220.52 | 226212.71 | WEBER SCIENTIFIC |
| 9/30/99 | 164036 | IV | 1000.64 | 227213.35 | SEALRIGHT COMPANY, |
| 9/30/99 | 164047 | IV | 12625.67 | 239839.02 | EDGAR A. WEBER & Co |
| 9/30/99 | 164150 | IV | 8083.16 | 247922.18 | SEALRIGHT COMPANY, |
| 9/30/99 | 164151 | IV | 2863.34 | 250785.52 | SEALRIGHT COMPANY, |
| 9/30/99 | 164155 | IV | 3330.16 | 254115.68 | SHADE FOODS INC. |
| 9/30/99 | 164165 | IV | 24977.70 | 279093.38 | TERRI LYNN INC. |

— CONTINUE —

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 |
|---|---|---|---|---|
| PURCHASES | | | | |
| REGULAR | | | | |
| DUES & FEES | | | | |
| TOTAL | | | | |



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563

(630) 717-1110

## STATEMENT

| | 102503 |
|---|---|

HYGEIA/SOUTHWEST I C SPEC
1220 NORTH TENNESSEE

MCKINNEY,            TX 75069

| | 1/31/00 |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 10/14/99 | 164703 | IV | 20466.68 | 395812.82 | SEALRIGHT COMPANY, |
| 10/14/99 | 164744 | IV | 15620.38 | 411433.20 | GIVAUDAN ROURE FLAV |
| 10/14/99 | 164774 | IV | 9539.45 | 420972.65 | Fort James Corp. |
| 10/15/99 | 164853 | IV | 175.55 | 421148.20 | FEDEX |
| 10/15/99 | 164890 | IV | 178.33 | 421326.33 | DANISCO INGREDIENTS |
| 10/15/99 | 164897 | IV | 13225.00 | 434551.50 | GERMANTOWN (U.S.A.) |
| 10/18/99 | 164958 | IV | 7889.26 | 442440.79 | DOT FOODS INC.-OTHER |
| 10/18/99 | 164961 | IV | 7650.84 | 450091.63 | SEALRIGHT COMPANY, |
| 10/18/99 | 165006 | IV | 389.52 | 450481.15 | SWEETHEART CUP COMP |
| 10/19/99 | 165106 | IV | 677.68 | 451158.83 | STAR KAY WHITE, INC |
| 10/19/99 | 165118 | IV | 759.34 | 451917.17 | DAVID MICHAEL & CO., |
| 10/19/99 | 165145 | IV | 6344.98 | 458262.15 | SEALRIGHT COMPANY, |
| 10/19/99 | 165150 | IV | 10161.20 | 468423.35 | SHADE FOODS INC. |
| 10/21/99 | 165287 | IV | 5605.21 | 474058.56 | BURD & FLETCHER |
| 10/21/99 | 165316 | IV | 77.35 | 474105.91 | FEDEX |
| 10/21/99 | 165351 | IV | 24.30 | 474130.21 | FEDEX |
| 10/25/99 | 165473 | IV | 27785.48 | 501916.69 | INTERBAKE FOODS INC. |
| 10/25/99 | 165493 | IV | 1226.52 | 503143.21 | UNIVERSAL FLAVORS |
| 10/25/99 | 165494 | IV | 2151.49 | 505294.70 | UNIVERSAL FLAVORS |
| 10/25/99 | 165493 | IV | 11176.87 | 516471.57 | UNIVERSAL FLAVORS |
| 10/25/99 | 165554 | IV | 4327.23 | 520798.80 | SEALRIGHT COMPANY, |
| 10/25/99 | 165556 | IV | 10271.63 | 531070.43 | SEALRIGHT COMPANY, |
| 10/26/99 | 165637 | IV | 128.05 | 531198.48 | FEDEX |
| 10/27/99 | 165654 | IV | 9967.79 | 541166.27 | Liquid Sugars Inc. |

— CONTINUE —

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 | |
|---|---|---|---|---|---|
| PURCHASES | | | | | |
| REGULAR | | | | | |
| DUES & FEES | | | | | |
| TOTAL | | | | | |



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563

(630) 717-1110

## STATEMENT

102503

```
        HYGEIA/SOUTHWEST I C SPEC
        1220 NORTH TENNESSEE                                    1/31/00

        MCKINNEY,              TX 75069
```

| | | | | | |
|---|---|---|---|---|---|
| 10/26/99 | 165680 | IV | 218.60 | 541404.87 | UNIVERSAL FLAVORS |
| 10/27/99 | 165703 | IV | 7889.26 | 549294.13 | DOT FOODS INC. -OTHE |
| 10/28/99 | 165732 | IV | 630.88 | 549775.01 | ECOLAB INC. |
| 10/29/99 | 165804 | IV | 859.68 | 550634.69 | ECOLAB INC. |
| 10/28/99 | 165817 | IV | 76.15 | 550710.84 | SEALRIGHT COMPANY, |
| 10/28/99 | 165818 | IV | 930.59 | 551641.43 | SEALRIGHT COMPANY, |
| 10/31/99 | 165832 | IV | 8591.51 | 560252.94 | Fort James Corp. |
| 10/31/99 | 165919 | IV | 8169.48 | 568422.42 | EDGAR A. WEBER & CO |
| 10/31/99 | 165920 | IV | 2575.00 | 570997.42 | GERMANTOWN (U.S.A.) |
| 10/31/99 | 165966 | IV | 73.04 | 571070.46 | VWR SCIENTIFIC |
| 11/03/99 | 166013 | IV | 6429.69 | 577500.15 | Liquid Sugars Inc. |
| 11/03/99 | 166069 | IV | 88.85 | 577589.00 | FEDEX |
| 11/03/99 | 166113 | IV | 7422.68 | 585011.68 | SEALRIGHT COMPANY, |
| 11/03/99 | 166114 | IV | 11513.76 | 596525.44 | SEALRIGHT COMPANY, |
| 11/04/99 | 166126 | IV | 5121.16 | 601646.60 | Liquid Sugars Inc. |
| 11/05/99 | 166179 | IV | 2587.30 | 604233.90 | ECOLAB INC |
| 11/05/99 | 166185 | IV | 5743.75 | 609977.65 | ECOLAB INC. |
| 11/05/99 | 166187 | IV | 2736.75 | 612714.40 | ECOLAB INC. |
| 11/05/99 | 166244 | IV | 11630.28 | 624344.68 | GIVAUDAN ROURE FLAV |
| 11/05/99 | 166269 | IV | 2120.00 | 626464.68 | ADM COCOA PRODUCTS |
| 11/05/99 | 166284 | IV | 2805.66 | 629270.34 | SWEETHEART CUP COMP |
| 11/08/99 | 166303 | IV | 3807.10 | 633077.44 | Fort James Corp. |
| 11/11/99 | 166383 | IV | 1216.67 | 634294.11 | ECOLAB INC. |
| 11/11/99 | 166394 | IV | 60.60 | 634354.71 | FEDEX |

— CONTINUE —

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 | |
|---|---|---|---|---|---|
| PURCHASES | | | | | |
| REGULAR | | | | | |
| DUES & FEES | | | | | |
| TOTAL | | | | | |

Case 1:02-cv-00040  Document 50  Filed in TXSD on 03/20/2001  Page 122 of 162



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563

(630) 717-1110

## STATEMENT

102503

```
┌                                         ┐
   HYGEIA/SOUTHWEST I C SPEC
   1220 NORTH TENNESSEE

   MCKINNEY,              TX 75069
└                                         ┘
```

1/31/00

| Date | Number | Type | Amount | Balance | Description |
|------|--------|------|--------|---------|-------------|
| 11/15/99 | 166674 | IV | 17112.61 | 651467.52 | SEALRIGHT COMPANY, |
| 11/15/99 | 166675 | IV | 1970.46 | 653437.98 | SWEETHEART CUP COM |
| 11/15/99 | 166688 | IV | 2179.51 | 655617.49 | DOT FOODS, INC.-RAI |
| 11/15/99 | 166689 | IV | 2266.40 | 657383.89 | DOT FOODS INC.-OTHI |
| 11/15/99 | 166690 | IV | 1972.31 | 659856.20 | DOT FOODS INC.-OTHI |
| 11/15/99 | 166708 | IV | 10803.73 | 670659.93 | SHADE FOODS INC. |
| 11/16/99 | 166764 | IV | 3725.00 | 679334.93 | GERMANTOWN (U.S.A. |
| 11/18/99 | 166920 | IV | 1688.70 | 681073.65 | SWEETHEART CUP COM |
| 11/18/99 | 166922 | IV | 11686.36 | 692750.01 | TERRI LYNN INC. |
| 11/18/99 | 166940 | IV | 789.78 | 693549.79 | ECOLAB INC.-PES |
| 11/19/99 | 166984 | IV | 16958.06 | 710507.85 | SEALRIGHT COMPANY, |
| 11/22/99 | 167041 | IV | 63.90 | 710571.75 | FEDEX |
| 11/23/99 | 167127 | IV | 735.90 | 711307.65 | ECOLAB INC. |
| 11/23/99 | 167165 | IV | 12933.89 | 724441.54 | SEALRIGHT COMPANY, |
| 11/23/99 | 167166 | IV | 13653.33 | 738094.87 | SEALRIGHT COMPANY, |
| 11/23/99 | 167168 | IV | 1478.91 | 739573.78 | SWEETHEART CUP COM |
| 11/23/99 | 167184 | IV | 342.37 | 739916.15 | VWR SCIENTIFIC |
| 11/23/99 | 167185 | IV | 248.50 | 740164.65 | VWR SCIENTIFIC |
| 11/23/99 | 167193 | IV | 303.99 | 740468.64 | WEBER SCIENTIFIC |
| 11/23/99 | 167202 | CM | 1503.84- | 738964.80 | INTERBAKE FOODS INC |
| 11/29/99 | 167339 | IV | 1152.94 | 740117.74 | EDGAR A. WEBER & CI |
| 11/29/99 | 167370 | IV | 18.15 | 740135.89 | FEDEX |
| 11/29/99 | 167389 | IV | 1392.63 | 741528.52 | BURD & FLETCHER |
| 11/29/99 | 167390 | IV | 3345.00 | 744873.52 | GERMANTOWN (U.S.A.) |

- CONTINUE -

## DAYS PAST DUE

|  | CURRENT | OVER 30 | OVER 60 | OVER 90 | |
|--|---------|---------|---------|---------|--|
| PURCHASES |  |  |  |  |  |
| REGULAR |  |  |  |  |  |
| DUES & FEES |  |  |  |  |  |
| TOTAL |  |  |  |  |  |



# QUALITY CHEKD DAIRIES, INC.

**1733 PARK STREET, NAPERVILLE, ILLINOIS 60563**

**(630) 717-1110**

## STATEMENT

| MEMBER NO. |
| --- |
| 102503 |

| DATE |
| --- |
| 1/31/00 |

HYGEIA/SOUTHWEST I C SPEC
1220 NORTH TENNESSEE

MCKINNEY,                    TX 75069

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| 11/29/99 | 167391 | IV | 368.60 | 745242.12 | UNIVERSAL FLAVORS |
| 11/29/99 | 167392 | IV | 10873.64 | 756115.76 | UNIVERSAL FLAVORS |
| 12/13/99 | 167392 | CM | 74.18- | 756041.58 | UNIVERSAL FLAVORS |
| 11/29/99 | 167394 | IV | 2929.81 | 758971.39 | EDGAR A. WEBER & COMP |
| 12/09/99 | 168232 | IV | 20.65 | 758992.04 | FEDEX |
| 12/13/99 | 168316 | CM | 398.00- | 758594.04 | GERMANTOWN (U.S.A.) C |
| 12/13/99 | 168446 | IV | 10967.32 | 769561.36 | LIQUID SUGARS |
| 12/13/99 | 168447 | IV | 5521.18 | 775082.54 | LIQUID SUGARS |
| 12/13/99 | 168448 | IV | 9838.35 | 784920.89 | LIQUID SUGARS |
| 12/13/99 | 168449 | IV | 4339.52 | 789260.41 | LIQUID SUGARS |
| 12/13/99 | 168452 | IV | 10050.59 | 797311.00 | LIQUID SUGARS |
| 12/13/99 | 168453 | IV | 10075.70 | 807386.70 | LIQUID SUGARS |
| 12/13/99 | 168454 | IV | 5127.94 | 814514.64 | LIQUID SUGARS |
| 12/13/99 | 168455 | IV | 10151.05 | 824665.69 | LIQUID SUGARS |
| 12/13/99 | 168456 | IV | 5127.94 | 829793.63 | LIQUID SUGARS |
| 12/13/99 | 168457 | IV | 10017.10 | 839810.73 | LIQUID SUGARS |
| 12/13/99 | 168458 | IV | 5132.04 | 844942.77 | LIQUID SUGARS |
| 12/13/99 | 168459 | IV | 3941.44 | 848884.21 | LIQUID SUGARS |
| 12/14/99 | 168505 | IV | 65.80 | 848950.01 | FEDEX |
| 12/17/99 | 168780 | IV | 164.09 | 849114.10 | ECOLAB INC.-PES |
| 12/17/99 | 168781 | IV | 789.78 | 849903.88 | ECOLAB INC.-PES |
| 12/17/99 | 168842 | IV | 10.15 | 849914.03 | FEDEX |
| 12/20/99 | 168896 | IV | 9.20 | 849923.23 | FEDEX |
| 12/21/99 | 168950 | CM | 83.50- | 849839.73 | WEBER SCIENTIFIC |

– CONTINUE –

## DAYS PAST DUE

| | CURRENT | OVER 30 | OVER 60 | OVER 90 | |
| --- | --- | --- | --- | --- | --- |
| PURCHASES | | | | | |
| REGULAR | | | | | |
| DUES & FEES | | | | | |
| TOTAL | | | | | |



# QUALITY CHEKD DAIRIES, INC.

1733 PARK STREET, NAPERVILLE, ILLINOIS 60563

(630) 717-1110

## STATEMENT

| MEMBER NO |
|---|
| 102503 |

| DATE |
|---|
| 1/31/00 |

HYGEIA/SOUTHWEST I C SPEC
1220 NORTH TENNESSEE

MCKINNEY,            TX 75069

| 12/21/99 | 168986 | IV | 2957.59 | 852797.32 | GIVAUDAN ROURE FLAVORS |
| 1/12/00 | 170336 | CM | 156.00- | 852641.32 | SHADE FOODS INC. |
| 1/12/00 | 170342 | IV | 2120.00 | 854761.32 | ADM COCOA PRODUCTS |
| 1/26/00 | 171192 | CM | 62.44- | 854698.88 | GRAPHIC PACKAGING CORP |
| 1/26/00 | 171202 | CM | 235.61- | 854463.27 | VWR SCIENTIFIC |
| | | | PURCHASING | 854463.27 | |
| | | | | | |
| 1/26/00 | 171223 | IV | 27467.55 | 27467.55 | QUALITY CHEKD DAIRIES, |
| 1/27/00 | 171342 | IV | 426.40 | 27893.95 | QUALITY CHEKD DAIRIES, |
| 1/28/00 | 171354 | IV | 426.40 | 28320.35 | QUALITY CHEKD DAIRIES, |
| 1/31/00 | 171497 | IV | 426.40 | 28746.75 | QUALITY CHEKD DAIRIES, |
| 1/31/00 | 171498 | IV | 426.40 | 29173.15 | QUALITY CHEKD DAIRIES, |
| | | | REGULAR | 29173.15 | |

PLEASE NOTE: PAYMENT TERMS FOR PURCHASES AS ESTABLISHED BY THE BOARD OF
DIRECTORS ARE 21 DAYS FROM THE DATE OF INDIVIDUAL QUALITY CHEKD INVOICE

| | DAYS PAST DUE | | | | |
|---|---|---|---|---|---|
| | CURRENT | OVER 30  XX 21 XX | OVER 60 | OVER 90 | |
| PURCHASES | 1665.95 | 93825.93 | 187900.93 | 571070.46 | 854463.27 |
| REGULAR | 29173.15 | .00 | .00 | .00 | 29173.15 |
| DUES & FEES | .00 | .00 | .00 | .00 | .00 |
| TOTAL | 30839.10 | 93825.93 | 187900.93 | 571070.46 | 883636.42 |

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| QUALITY CHEKD DAIRIES, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-00-0943 |
| § | |
| COHYCO, INC., "F" STREET § | |
| INVESTMENTS, d/b/a SOUTHWEST § | |
| ICE CREAM SPECIALTIES (f/k/a § | |
| HYGEIA DAIRY COMPANY), and § | |
| H. LEE RICHARDS, § | |
| § | |
| Defendants, § | |

## AFFIDAVIT OF H. LEE RICHARDS IN SUPPORT OF
## DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS'
## MOTION TO TRANSFER VENUE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF NUECES | § |

BEFORE ME, the undersigned authority, on this day personally appeared H. Lee Richards, being first duly sworn by me, and stated that he has personal knowledge of the facts stated below and that said facts are true and correct.

1.      My name is H. Lee Richards. I am over the age of eighteen (18), fully competent in all respects to make the following affidavit, and currently reside in Harlingen, Texas. I was personally involved in the business transactions between Quality Checkd Dairies, Inc. ("Quality Chekd"), and "F" Street Investments ("Hygeia"). I was a shareholder, officer, and director of Hygeia and Cohyco at certain times relevant to the allegations made by Quality Chekd in this lawsuit.

47527:926401.1:062100



Furthermore, I was a member of the board of directors of Quality Chekd at times relevant to the allegations made by Quality Chekd in this lawsuit.

2.      All important corporate and financial documents of Cohyco and Hygeia are housed in the corporate offices of Cohyco and/or Hygeia which are located in Harlingen, Texas. These documents include, but are not limited to: all financial records of Hygeia and Cohyco, all records of transactions and/or agreements between Hygeia and Cohyco, all contracts and other agreements between Hygeia and Quality Chekd, all corporate minutes of Hygeia and Cohyco, and all documents regarding the sale of a substantial portion of Hygeia's assets to Southern Foods. To my knowledge, there are no documents relevant to this lawsuit which are located in Houston, Texas.

3.      There are no assets, facilities, records, or employees of Hygeia or Cohyco that are found or reside in Houston. Likewise, none of my assets, facilities, or records are found in Houston.

4.      My testimony regarding allegations contained in the Original Complaint will include the following. Cohyco was not involved in the arms-length business dealings between Hygeia and Quality Chekd. At the time Hygeia's debts were incurred with Quality Chekd, it was my intention for Hygeia to fully pay its debts to Quality Chekd. As a director of Quality Chekd, I did not participate in any decisions or actions by Quality Chekd to extend credit to Hygeia at any time relevant to the allegations made by Quality Chekd. The letter attached as Exhibit "A" to the Original Complaint does not accurately reflect the agreements I reached with Quality Chekd on behalf of Hygeia. The amount of Hygeia's debt to Quality Chekd is incorrect as claimed in the Original Complaint. Contrary to the allegations contained in the Original Complaint, detailed information regarding the financial condition of Hygeia was available to Quality Chekd, and Hygeia's other creditors, through business information services such as Dun & Bradstreet.

regarding the financial condition of Hygeia was available to Quality Chekd, and Hygeia's other

creditors, through business information services such as Dun & Bradstreet.

Further, AFFIANT sayeth not.

H. Lee Richards

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the 21st

day of _June_, 2000.

Sherry A. Parchman

Notary Public, in and for the State of Texas, County
of Nueces

My Commission Expires: 3/1/04

SHERRY A. PARCHMAN
MY COMMISSION EXPIRES
March 1, 2004

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| | § | |
| Defendants, | § | |

## AFFIDAVIT OF MERRY RICHARDS IN SUPPORT OF DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS' MOTION TO TRANSFER VENUE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF NUECES | § |

BEFORE ME, the undersigned authority, on this day personally appeared Merry Richards, being first duly sworn by me, and stated that she has personal knowledge of the facts stated below and that said facts are true and correct.

1.      My name is Merry Richards.  I am over the age of eighteen (18), fully competent in all respects to make the following affidavit, and currently reside in Harlingen, Texas.

2.      I was a shareholder, officer, and director of "F" Street Investments ("Hygeia") and Cohyco, Inc. ("Cohyco") at times relevant to this lawsuit.  As a result of my relationship with Hygeia and Cohyco, I have personal knowledge of the financial condition of Hygeia over periods relevant to this

47527:926426.1:062100



lawsuit, the status of Cohyco as a parent of Hygeia, and the business dealings, including loan transactions, between Hygeia and Cohyco.

2.     All important corporate and financial documents of Hygeia and Cohyco are housed in the corporate offices which are located in Harlingen, Texas.  These documents include, but are not limited to:  all financial records of Hygeia and Cohyco, all records of transactions between Hygeia and Cohyco, all contracts and other agreements between Hygeia and Quality Chekd, all records of transactions between Hygeia and Quality Chekd, all corporate minutes of Hygeia and Cohyco, and all documents regarding the sale of a substantial portion of Hygeia's assets to Southern Foods.  To my knowledge, there are no documents relevant to this lawsuit which are located in Houston, Texas.

3.     There are no assets, facilities, records, or employees of Hygeia or Cohyco that are found or reside in Houston.

4.     My testimony regarding allegations contained in the Original Complaint will include the following.  Cohyco was not involved in the arms-length business dealings between Hygeia and Quality Chekd.  At the time Hygeia's debts were incurred with Quality Chekd, it was the intention of Hygeia to fully pay its debts to Quality Chekd.  The amount of Hygeia's debt to Quality Chekd is incorrect as claimed in the Original Complaint.  Contrary to the allegations contained in the Original Complaint, detailed information regarding the financial condition of Hygeia was available to Quality Chekd, and Hygeia's other creditors, through business information services such as Dun & Bradstreet.

Further, AFFIANT sayeth not.



Merry Richards

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the 23rd

day of June , 2000.

SONIA E. RODRIGUEZ
Notary Public,
State of Texas My
Comm. Exp. 2-9-2002

Notary Public, in and for the State of Texas, County of Nueces

My Commission Expires: 2-9-2002

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEKD DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants,** | § | |

## AFFIDAVIT OF DOUG PURL IN SUPPORT OF
## DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS'
## MOTION TO TRANSFER VENUE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF NUECES | § |

BEFORE ME, the undersigned authority, on this day personally appeared Doug Purl, being first duly sworn by me, and stated that he has personal knowledge of the facts stated below and that said facts are true and correct.

1.      My name is Doug Purl.  I am over the age of eighteen (18), fully competent in all respects to make the following affidavit, and currently reside in La Feria, Cameron County, Texas. Brownsville, Texas is also in Cameron County, Texas.

2.      I was a shareholder, officer, and director of "F" Street Investments ("Hygeia") and Cohyco, Inc. ("Cohyco") at times relevant to this lawsuit.  As a result of my relationship with Hygeia and



Cohyco, I have personal knowledge of the financial condition of Hygeia over periods relevant to this lawsuit, the status of Cohyco as a parent of Hygeia, and the business dealings, including loan transactions, between Hygeia and Cohyco.

2.      All important corporate and financial documents of Hygeia and Cohyco are housed in their corporate offices which are located in Harlingen, Texas. These documents include, but are not limited to: all financial records of Hygeia and Cohyco, all records of transactions and/or agreements between Hygeia and Cohyco, all contracts and other agreements between Hygeia and Quality Chekd, all records of transactions between Hygeia and Quality Chekd, all corporate minutes of Hygeia and Cohyco, and all documents regarding the sale of a substantial portion of Hygeia's assets to Southern Foods. To my knowledge, there are no documents relevant to this lawsuit which are located in Houston, Texas.

3.      There are no assets, facilities, records, or employees of Hygeia or Cohyco that are found or reside in Houston.

4.      My testimony regarding allegations contained in the Original Complaint will include the following. Cohyco was not involved in the arms-length business dealings between Hygeia and Quality Chekd. At the time Hygeia's debts were incurred with Quality Chekd, it was the intention of Hygeia to fully pay its debts to Quality Chekd. The amount of Hygeia's debt to Quality Chekd is incorrect as claimed in the Original Complaint. Contrary to the allegations contained in the Original Complaint, detailed information regarding the financial condition of Hygeia was available to Quality Chekd, and Hygeia's other creditors, through business information services such as Dun & Bradstreet.

Further, AFFIANT sayeth not.

_____

Doug Purl

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the 23RD

day of June , 2000.

_____

Notary Public, in and for the State of Texas, County
of Nueces

My Commission Expires: 08-19-2002

CHRISELLA F. REYNA
Notary Public
State of Texas
My Comm. Exp. 8-19-2002

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC. | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| COHYCO , INC., "F" STREET | § | CIVIL ACTION NO. H-00-0943 |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| Defendants. | § | |

## PLAINTIFF QUALITY CHEKD DAIRIES, INC'S RULE 26 DISCLOSURES

Pursuant to Fed. R. Civ. P. 26 (a) (1), Plaintiff QUALITY CHEKD DAIRIES, INC

("Quality Chekd") makes the following initial disclosures based on the information available to it,

reserving the right to amend such disclosures as further information becomes available and relevant

through discovery and investigation:

1.    Persons Likely to Have Discoverable Information:

The following persons who are officers, directors and employees of Quality Chekd

should be contacted through the undersigned counsel for the plaintiff:

(a)    Mel W. Rapp
Managing Director
1733 Park Street
Naperville, IL 60563

Mr. Rapp will testify that the is the Executive Manager of Quality Chek'd,

is familiar with the defendant Lee Richards' ("Richards") tenure and activities as an officer and

director of Quality Chekd, with the account of Hygeia Dairies, Inc. ("Hygeia"), the facts and

circumstances leading up to the defaults and other events which have occasioned this litigation, the

background records and other materials of Quality Chekd and other relevant information concerning

the background of this case, including the facts that he has verified in the Complaint.

        (b)     Tom Bruce
                  Director Finance & New Business Development
                  Quality Chekd Dairies, Inc.
                  1733 Park Street
                  Naperville, IL 60563

Mr. Bruce will testify that the is the Director of Finance and New Business

of Quality Chekd, is familiar with the defendant Lee Richards' ("Richards") tenure and activities

as an officer and director of Quality Chekd, with the account of Hygeia, the facts and circumstances

leading up to the defaults and other events which have occasioned this litigation, the background

records and financial information relevant to this case and other materials of Quality Chekd and

other relevant information concerning the background of this case.

        (c)     Paul Arbuthnot
                  President
                  Sunshine Dairy, Inc.
                  801 N.E. 21st Avenue
                  Portland, OR 97232

Mr. Arbuthnot will testify that he is a director of Quality Chekd, and that he

is familiar with the matters involving the board with respect to Hygeia's accounts, Richards'

involvement in these matters, proceedings before the board and related matters.

        (d)     Lynn Oller
                  Vice President
                  Hiland Dairy Company
                  1133 E. Kearney
                  P.O. Box 2270
                  Springfield, MO 65801

Mr. Oller will testify that he is a director of Quality Chekd, and that he is

familiar with the matters involving the board with respect to Hygeia's accounts, Richards' involvement in these proceedings before the board and related matters.

(e)    Doug Parr
Secretary
Dean Foods Company
O'Hare International Center II
10255 West Higgins Road, Suite 500
Rosemont, IL 60018

Mr. Parr will testify that he is a director of Quality Chekd, and that he is familiar with the matters involving the board with respect to Hygeia's accounts, Richards' involvement in these proceedings before the board and related matters.

(f)    Dennis Winter
Treasurer
Super Store Industries
2800 W. March Lane, Suite 210
Stockton, CA 95219

Mr. Winter will testify that he is a director of Quality Chekd, and that he is familiar with the matters involving the board with respect to Hygeia's accounts, Richards' involvement in these proceedings before the board and related matters.

(g)    Larry Losasso
Sinton Dairy Foods Company
3801 North Sinton Road
Colorado Springs, CO 80907

Mr. Losasso will testify that he is a former treasurer of Quality Chekd, and that he is familiar with the matters involving the board with respect to Hygeia's accounts, Richards' involvement in these proceedings before the board and related matters.

(h)    Gary Hess
Purchasing Director
Quality Chekd Dairies
1733 Park Street
Naperville, IL 60565

Mr. Hess will testify that he is the purchasing director of Quality Chekd, and that he is familiar with the matters involving the his department with respect to Hygeia's accounts, Richards' involvement in these proceedings before the board and related matters.

    (i)    H. Lee Richards:
            5300 Papaya Circle
            Harlingen, Texas 78552

Mr. Richards is able to testify as to his positions as an officer and director of the defendant corporations and of Quality Chekd, the financial and operational affairs of the defendants, the sale of the assets of the defendant "F" Street to Southern Foods, the terms of the sales and the documents executed connection therewith his and others' participation in the financial and operational affairs of the defendants and his participation as an officer and director in Quality Chekd and other matters relevant to this case. The full extent of Mr. Richard' s knowledge and testimony will be developed in discovery.

    (j)    Doug Purl
            RR 1, Box 108-B
            La Feria, Tx. 78559

Mr. Purl is able to testify as to his positions as an officer and director of the defendant corporations, the financial and operational affairs of the defendants, the sale of the assets of the defendant "F" Street to Southern foods, the terms of the sales and the documents executed in connection therewith, his and others' participation in the financial and operational affairs of the defendants and his and others' participation in the events and circumstances and other matters relevant to this case. The full extent of Mr. Purl' s knowledge and testimony will be developed in discovery.

    (k)    Merry K. Richards
            5802 Sunrise Blvd.
            Harlingen, Tx. 78552

Ms. Richards is able to testify about her activities as an officer and director of the defendant companies, her participation in the sale of the assets of "F" Street Investments, the financial and operational affairs of the defendants, the sale of the assets of the defendant "F" Street to Southern foods, the terms of the sales and the documents executed connection therewith her and others' participation in the financial and operational affairs of the defendants and her and others' participation in the events and circumstances and other matters relevant to this case. The full extent of Ms. Richards' knowledge and testimony will be developed in discovery.

(l)     Pete Schenkel is able to testify about his position as President of Southern Foods, the financial and operational affairs of Southern Foods, the sale of the assets of the defendant "F" Street to Southern foods, the terms of the sales and the documents executed in connection therewith, his and others' participation in the financial and operational affairs of the defendants and his and others' participation in the events and circumstances and other matters relevant to this case. The full extent of Mr. Schenkel's knowledge and testimony will be developed in discovery.

(m)     Jackie Jackson is able to testify as to his position as an employee of Suiza Foods or one of its subsidiaries, the financial and operational affairs of Southern Foods, the sale of the assets of the defendant "F" Street to Southern foods, the terms of the sales and the documents executed in connection therewith, his and others' participation in the financial and operational affairs of the defendants and his and others' participation in the events and circumstances and other matters relevant to this case. The full extent of Mr. Jackson's knowledge and testimony will be developed in discovery.

(n)     Rick Beaman is able to testify as to his position as director of operations for Southern Foods, the financial and operational affairs of Southern Foods, the sale of the assets of the

defendant "F" Street to Southern foods, the terms of the sales and the documents executed in connection therewith, his and others' participation in the financial and operational affairs of the defendants and his and others' participation in the events and circumstances and other matters relevant to this case. The full extent of Mr. Jackson's knowledge and testimony will be developed in discovery.

(o)     The other officers and directors and present and former employees of the defendant "F" Street listed in the schedules filed in the Chapter 11 proceedings filed by "F" Street also have knowledge of facts of this case, which will be developed in discovery. In addition, present and former officers, agents and employees of Southern Foods and Suiza, whose identity is, at the present time, unknown to the plaintiff, may have knowledge of relevant facts, which will be disclosed by discovery in this case.

2.     Relevant Documents:

The Quality Chekd records reflecting Richard's tenure and activities as an officer and director of Quality Chekd and all Quality Chekd records pertaining to its transactions with Hygeia are kept in Naperville, Illinois. A copy of these records will be made available to defendants if any of the facts alleged as to the relationship of Richards to Quality Chekd or as the relationship of Hygeia to Quality Chekd are disputed by defendants.

3.     Calculation of Damages:

The plaintiff claims the amount of its unpaid accounts due from the defendant "F" Street Investments; prejudgment interest as allowed by law; attorney's fees and costs of litigation; consequential damages and punitive damages as awarded by the jury.

4.     Insurance Agreements:

Not applicable.

5.    Expert Witnesses:

No expert witnesses have been selected at this time.  Plaintiff anticipates it will wish

to retain expert witnesses in accounting, asset valuation, fraud detection and the dairy industry.  Such

witnesses will be disclosed in conformity with the Federal Rules of Civil Procedure.

Dated: May 23, 2000.

Respectfully submitted,

Lee Hamel
SBN:  08818000
Fed. ID: 2872
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000
Fax:    (713) 659-3809
ATTORNEY-IN CHARGE FOR PLAINTIFF
QUALITY CHEKD DAIRIES, INC.

OF COUNSEL:
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 650-1004
Fax:    (713) 659-3809

## CERTIFICATE OF SERVICE

A copy of the foregoing was mailed or faxed to the following parties, on May 23 2000.

C. Scott Kinzel
Royston, Rayzor, Vickery & Williams
2200 Chase Tower
600 Travis Street
Houston, Texas 77002-2913

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

*Attorneys for Cohyco, Inc. and H. Lee Richards*

A courtesy copy has been sent to:

Harlin C. Womble, Jr.
Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

Paul Lee Wiley
621 East Tyler
P.O. Box 2764
Harlingen, Texas 78551-2764

*Attorneys for F Street Investments*

Lee Hamel

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS'
## INITIAL DISCLOSURES PURSUANT TO RULE 26(A)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendants Cohyco, Inc. and H. Lee Richards, and provides this their Initial

Disclosures pursuant to Rule 26(A) of the Federal Rules of Civil Procedure as follows:

### I.

Any individuals likely to have discoverable information relevant to disputed facts include:

H. Lee Richards
5300 Papaya Circle
Harlingen, Texas 78552

> Mr. Richards will have knowledge of the business and financial dealings of Quality
> Chekd Dairies, Inc., COHYCO, Inc., and "F" Street Investments.

Doug Purl
R.R. 1, Box 108-B
La Feria, Texas 78559

47527:924200.1:060200



Mr. Purl will have knowledge of the financial and business operations of "F" Street Investments, COHYCO, Inc., and Quality Chekd Dairies, Inc.

Merry K. Richards
2802 Sunrise Boulevard
Harlingen, Texas 78552

> Ms. Richards will have knowledge of the financial and business operations of "F" Street Investments, COHYCO, Inc., and Quality Chekd Dairies, Inc.

Mel W. Rapp, Managing Director
Quality Chekd Dairies, Inc.
1733 Park Street
Naperville, Illinois 60563

> Mr. Rapp is the executive manager for Quality Chekd Dairies, Inc., and he is expected to have knowledge of the business relationship between "F" Street Investments and Quality Chekd Dairies, Inc.

Tom Bruce
Director Finance & New Business Development
Quality Chekd Dairies, Inc.
1733 Park Street
Naperville, Illinois 60563

> Mr. Bruce is an executive manager for Quality Chekd Dairies, Inc., and he is expected to have knowledge of the business relationship between "F" Street Investments and Quality Chekd Dairies, Inc.

Paul Arbuthnot, President
Sunshine Dairy, Inc.
801 N. E. 21st Avenue
Portland, Oregon 97232

> Mr. Arbuthnot is the Director of Quality Chekd Dairies, Inc. and, therefore, may have knowledge of its business practices and relationship with "F" Street Investments that are relevant to this matter.

Lynn Oller, Vice-President
Highland Dairy Company
1133 E. Kearney
Post Office Box 2270
Springfield, Missouri 65801

Mr. Oller is the Vice-President of Highland Dairy Company and Quality Chekd Dairies, Inc. and, therefore, may have knowledge of its business practices and relationship with "F" Street Investments that are relevant to this matter.

Doug Parr, Secretary
Dean Foods Company
O'Hare International Center II
10255 W. Higgins Rd., Suite 500
Rosemont, Illinois 60018

Mr. Parr is the Secretary of Dean Foods Company and Quality Chekd Dairies, Inc. and, therefore, may have knowledge of their business practices and relationship with "F" Street Investments that are relevant to this matter.

Dennis Winter, Treasurer
Super Store Industries
2800 W. March Lane, Suite 210
Stockton, California 95219

Mr. Winter is the Treasurer of Super Store Industries and Quality Chekd Dairies, Inc. and, therefore, may have knowledge of their business practices and relationship with "F" Street Investments that are relevant to this matter.

Larry Losasso
Sinton Dairy Foods Company
3801 N. Sinton Road
Colorado Springs, Colorado 80907

Mr. Lasasso is a manager with Sinton Dairy Foods Company and Quality Chekd Dairies, Inc. and, therefore, may have knowledge of their business practices and relationship with "F" Street Investments that are relevant to this matter.

Gary Hess, Purchasing Director
Quality Chekd Dairies, Inc.
1733 Parker Street
Naperville, Illinois 60565

Mr. Hess is the Purchasing Director of Quality Chekd Dairies, Inc., and therefore is anticipated to have knowledge relevant to the accounts of "F" Street Investments with its creditor, Quality Chekd Dairies, Inc.

Peter Schenkel, President
Southern Foods

Mr. Schenkel is President of Southern Foods, and therefore is anticipated to have knowledge of the circumstances of the sale of the assets of "F" Street Investments to Southern Foods.

Rick Beaman, Director of Operations
Southern Foods

Mr. Beaman is the Director of Operations of Southern Foods, and therefore is anticipated to have knowledge of the circumstances of the sale of the assets of "F" Street Investments to Southern Foods.

Dwight Holcomb
(Address Unknown)

Mr. Holcomb is a former Director of Quality Chekd Dairies, Inc. and may have personal knowledge of the relationship between the Plaintiff and the Defendants.

Dan Sholan
(Address Unknown)

Mr. Sholan is a former Director of Quality Chekd Dairies, Inc. and may have personal knowledge of the relationship between the Plaintiff and the Defendants.

Bob Murphy
(Address Unknown)

Mr. Murphy is a former Director of Quality Chekd Dairies, Inc. and may have personal knowledge of the relationship between the Plaintiff and the Defendants.

Rick Sturgeon
(Address Unknown)

Mr. Sturgeon is a former Director of Quality Chekd Dairies, Inc. and may have personal knowledge of the relationship between the Plaintiff and the Defendants.

## II.

A copy of documents, data compilations, and tangible things in the possession, custody, or control of Defendants that are relevant to disputed facts alleged with particularity in the pleadings are attached hereto as Exhibit "A."

## III.

There is no insurance agreement relevant to the allegations made in this lawsuit.

Respectfully submitted,

Christopher Lowrance
Attorney-in-Charge
State Bar No. 00784502
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 Facsimile

C. Scott Kinzel
State Bar No. 00785499
2200 Chase Tower
600 Travis Street
Houston, Texas 77002-2913
(713) 224-8380
(713) 225-9945 Facsimile

**ATTORNEYS FOR DEFENDANTS COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated to counsel of record on this the 2nd day of June, 2000.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Law Office of Lee Hamel & Associates
1200 Smith, Suite 2900
Houston, Texas 77002

Mr. Harlin Womble
Jordan, Hyden, Womble & Culbreth, P.C.
500 N. Shoreline, Suite 900
Corpus Christi, Texas 78471

Of Royston, Rayzor, Vickery & Williams, L.L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

QUALITY CHECKD DAIRIES, INC.,　　　§
　　　　　　　　　　　　　　　　　　§
　　　　　　　　Plaintiff　　　　　　 §
vs.　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. H-00-0943
COHYCO, INC., F STREET INVESTMENTS, §
d/b/a SOUTHWEST ICE CREAM　　　　 §
SPECIALTIES (f/k/a HYGEIA DAIRY　　 §
COMPANY), and H. LEE RICHARDS　　 §
　　　　　　　　Defendants　　　　　 §

---

### SUGGESTION OF BANKRUPTCY
*and*
### NOTICE TO PARTIES OF
### AUTOMATIC REFERENCE OF CIVIL ACTION TO
### THE BANKRUPTCY COURT
*and*
### *EX PARTE* MOTION FOR ORDER CONFIRMING
### AUTOMATIC REFERENCE TO BANKRUPTCY COURT

---

TO THE HONORABLE DISTRICT JUDGE OF SAID COURT:

COMES NOW F Street Investment Company, Inc., f/k/a Hygeia Dairy Company

("Referring Defendant" or herein "F STREET") and files this Suggestion of Bankruptcy, Notice

to Parties of Automatic Reference of Civil Action to the Bankruptcy Court, and *Ex Parte* Motion

For Order Confirming Automatic Reference To Bankruptcy Court ("Notice"), pursuant to the

Standing Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*, dated

August 9, 1984, for the Southern District of Texas, as follows:

1.　　Referring Defendant files this Notice pursuant to the Standing Order of Reference

of Bankruptcy Cases and Proceedings Nunc Pro Tunc, dated August 9, 1984, for the Southern

District of Texas (herein the "Standing Order of Reference For The Southern District of Texas")

(a copy of which is attached hereto as Exhibit "A"), and the applicable Bankruptcy Local Rules

for the U.S. Bankruptcy Courts for the Southern District of Texas, based on the following facts:



1.    On March 27, 2000, F STREET filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. with the Clerk of the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, which case is still pending. See copy of docket sheet attached as Exhibit "B."

2.    Prior to the Bankruptcy filing the above-captioned Plaintiff commenced the above captioned case (herein the "Referred Case") against F STREET and other Defendants in this Court.

3.    As a result of the filing of the bankruptcy case, all action in the Referred Case and by any party in the Referred Case in this Honorable District Court are stayed.  *See, Pope vs. Manville Forest Product Corporation*, 778 F.2d 239 (5th Cir. 1985).

4.    The Bankruptcy Court has original jurisdiction of the Referred Case pursuant to 11 U.S.C. § 1334 as a "unit" of this honorable District Court.  Automatic reference of the Referred Case from this honorable Court to the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, is appropriate pursuant to the Standing Order of Reference of Bankruptcy Cases for the Southern District of Texas.

5.    Referring Defendant has filed this Notice as an *Ex Parte* Motion to confirm the effect of the Standing Order of Reference for the Southern District of Texas with this Honorable United States District Court, seeking confirmation of the automatic reference to the United States Bankruptcy Court so as to avoid confusion with the Clerks of the respective courts within this District.  Because this Notice and the relief sought in the *Ex Parte* Motion is ministerial in nature, and is intended only to clarify to the Judge and the Clerk of the United States Bankruptcy Court and the Clerk of the District Court the automatic reference and transfer of this Referred Case pursuant to the Standing Order of Reference for the Southern District of Texas, no notice or hearing is required for entry of the proposed *Ex Parte* Order Confirming Automatic Reference.

---------------------------------------------------------------

Suggestion of Bankruptcy, Notice of Automatic Reference of
Civil Action to the Bankruptcy Court and *Ex Parte* Motion for
Order Confirming Automatic Reference to Bankruptcy Court                    Page 2

6.    This Notice and the entry of the requested order is expressly without prejudice of any party to seek withdrawal of the reference of this case to the appropriate District Court as may be warranted under the law or facts.

WHEREFORE, PREMISES CONSIDERED, F STREET prays that this District Court enter an order confirming the automatic reference of this Referred Case to the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, where the Defendant/Debtor's bankruptcy case is pending, and for such other and further relief, both at law and in equity, as Movant is entitled.

Respectfully submitted,

Harlin C. Womble, Jr.
State Bar No. 21880300/Admissions No. 8959
Nathaniel Peter Holzer
State Bar No. 00793971/Admissions No. 21503
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471
Telephone No. (361) 884-5678
Telecopier No. (361) 888-5555

ATTORNEYS FOR DEBTOR/DEFENDANT

Paul Lee Wiley
State Bar No.  21471000
Admissions No. 1502
P. O. Box 2764
Harlingen, Texas  78551
Telephone No. (956) 425-1818
Telecopier No. (956) 425-2849

ATTORNEYS FOR DEBTOR/DEFENDANT

Suggestion of Bankruptcy, Notice of  Automatic Reference of
Civil Action to the Bankruptcy Court and *Ex Parte* Motion for
Order Confirming Automatic Reference to Bankruptcy Court                    Page 3

## CERTIFICATE OF CONFERENCE

I, Nathaniel Peter Holzer, hereby certify that no prior conference is required under the local rules for the Southern District of Texas, because (i) the foregoing Notice does not require consent of any party; and (ii) this Notice is *Ex Parte*, ministerial in nature, and does not require notice or conference. Pursuant to the certificate of service below, each party has received a copy of the foregoing Notice.

Nathaniel Peter Holzer

## CERTIFICATE OF SERVICE

I, Nathaniel Peter Holzer, do hereby certify that a true and correct copy of the foregoing document was served by U.S. First Class Mail on this 2cd day of May, 2000 on the following:

Ms. Patricia Constant
One Shoreline Plaza
800 N. Shoreline, Suite 320
Corpus Christi, Texas 78401

Paul Lee Wiley
P. O. Box 2764
Harlingen, Texas 78551

C. Leland Hamel
William L. Bowers, Jr.
Lee Hamel & Associates
1200 Smith Street, Suite 2900
Houston, Texas 77002

Barbara Kurtz
U. S. Trustee's Office
606 N. Carancahua, Suite 1107
Corpus Christi, Texas 78476

U. S. Trustee
515 Rusk, Suite 3516
Houston, Texas 77002

Christian Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

Nathaniel Peter Holzer

--------------------------------------------------------------------------------------------
Suggestion of Bankruptcy, Notice of Automatic Reference of
Civil Action to the Bankruptcy Court and *Ex Parte* Motion for
Order Confirming Automatic Reference to Bankruptcy Court                    Page 4

Order of Reference of Bankruptcy Cases
and Proceedings Nunc Pro Tunc

United States District Court
Southern District of Texas

## ORDER OF REFERENCE OF BANKRUPTCY CASES AND PROCEEDINGS NUNC PRO TUNC

Pursuant to Section 104 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, 28 U.S.C. Section 157, it is hereby

ORDERED nunc pro tunc as of June 27, 1984 that any or all casees under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11 which were pending in the Bankruptcy Court of the Southern District of Texas on June 27, 1984, which have been filed in this district since that date and which may be filed herein hereafter (except those cases and proceedings now pending on appeal) be and they hereby are referred to the Bankruptcy Judges of this district for consideration and resolution consistent with law.

It is further ORDERED that the Bankruptcy Judges for the Southern District of Texas be, and they hereby are, directed to exercise the authority and responsibilities conferred upon them as Bankruptcy Judges by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and this court's order of reference, as to all cases and proceedings covered by this order from and after June 27, 1984.

In accordance with 28 U.S.C. Section 157(b)(5), it is further ORDERED that all personal injury tort and wrongful death claims arising in or related to a case under Title 11 pending in this court shall be tried in, or as determined by, this court and shall not be referred by this order.

So ORDERED this 9th day of August, 1984.

*John V. Singleton*
Chief United States District Judge

EXHIBIT "A



# U.S. Bankruptcy Court

Southern District of Texas (Brownsville)

- *Bankruptcy Petition #:*  00-20953 *Date filed:*  3/27/00
- *Assigned to:*  Richard S. Schmidt
- Chapter 11, voluntary, asset

| * Parties * | * Attorneys * |
|---|---|
| **F STREET INVESTMENTS INC A** TEXAS CORPORATION dba Hygiea Dairy Company P O Box 751 Harlingen, TX 78550 * Debtor * | **Paul Lee Wiley** Attorney at Law P O Box 2764 Harlingen, TX 78551-2764 956-425-1818 <br><br> **Nathaniel Peter Holzer** Jordan Hyden et al 500 N Shoreline Ste 900 Corpus Christi, TX 78471 361-884-5678 |
| **UNITED STATES TRUSTEE** 515 Rusk Ste 3516 Houston, TX 77002 * U.S. Trustee * | **Barbara C Kurtz** Office of U S Trustee 606 N Carancahua Ste 1107 Corpus Christi, TX 78476 512-361-888-3261 |

## Docket Proceedings

| Date | Doc. No. | Docket Entry |
|---|---|---|
| 3/27/00 | 1 | *Voluntary Petition missing documents:*  Statement of Financial Affairs Schedules A-J Debtors Statement Of Intent Equity Security Holders Due on 4/11/00 , Disclosure , statement due 7/25/00 Chapter 11 Plan due 7/25/00 ;Proof of Claim (gov) *Deadline:*  9/23/00 . ( Filing Fee $ 830.00 Receipt # 945234) (swm) [EOD 03/30/00] |
| 3/27/00 | 2 | Application By Debtor F Street Investments Inc To Employ Attorney . (swm) [EOD 03/30/00] |
| 3/27/00 | 4 | Receipt of Creditors List / Matrix (jg) [EOD 04/04/00] |
| 4/3/00 | 3 | Order Approving [2-1] Application To Employ Attorney by F Street Investments Inc . Parties Notified. (cgn) [EOD 04/03/00] |
| 4/5/00 | 5 | Order to Set Hearing and Setting Deadline for Filing Disclosure Statement and Plan of Reorganization. Debtor is ordered to propose and file a plan of reorganization and disclosure statement within 120 days. Debtor is to appear at a hearing set for 9:00 8/9/00 at 600 E Harrison, Brownsville for further orders to effectuate a plan of Reorganization. Parties notified. (cgn) [EOD 04/05/00] |
| 4/6/00 | 6 | Application By Debtor F Street Investments Inc To Employ Jordan, Hyden, Womble & Culbreth, PC, Pay Post-Petition Retainer, and Monthly Draws Subject to Court Approval to Case Manager. (cgn) [EOD 04/07/00] |

| 4/7/00 | 7 | Notice of Appearance And Request For Service Of Notice By Edward M Lavin for Creditor Ramsen, Inc. (cgn) [EOD 04/07/00] |
|---|---|---|
| 4/7/00 | 14 | Notice of Appearance And Request For Service Of Notice By Mark H Ralston for Creditor Suiza Foods Inc . (jg) [EOD 04/18/00] |
| 4/11/00 | 8 | Expedited Motion By Debtor F Street Investments Inc For Extension of Time To File Lists, Schedules and Statement Pursuant to Rule 1007 (Motion for Expedited Hearing filed simultaneously.) -- to Case Manager. (cgn) [EOD 04/11/00] [Edit date 04/13/00] |
| 4/11/00 | 9 | Motion By Debtor F Street Investments Inc To Expedite Hearing Re: ( [8-1] Expedited Motion For Extension of Time To File Lists, Schedules and Statement Pursuant to Rule 1007 by F Street Investments Inc) -- to Case Manager. (cgn) [EOD 04/11/00] |
| 4/11/00 | 10 | Motion By Debtor F Street Investments Inc To Extend Time To File Schedules, Statement of Financial Affairs, and Disclosure of Compensation -- to Case Manager. (cgn) [EOD 04/12/00] |
| 4/12/00 | 11 | Order Approving [6-1] Application To Employ Jordan, Hyden, Womble & Culbreth, PC, Pay Post-Petition Retainer, and Monthly Draws Subject to Court Approval by F Street Investments Inc . Parties Notified. (cgn) [EOD 04/12/00] |
| 4/13/00 | 12 | Order Granting [10-1] Motion To Extend Time To File Schedules, Statement of Financial Affairs, and Disclosure Compensation by F Street Investments Inc; Missing Documents due: 5/12/00. Parties Notified. (cgn) [EOD 04/13/00] |
| 4/13/00 | 13 | Order Granting [9-1] Motion To Expedite Hearing Re: ( [8-1] Expedited Motion For Extension of Time To File Lists, Schedules and Statement Pursuant to Rule 1007 by F Street Investments Inc) . The Court finds that a hearing should be held and that the same is set for 5/17/00 by standby am telephone conference, in Brownsville, Texas, 600 East Harrison, Brownsville, Texas. Parties Notified. (cgn) [EOD 04/13/00] [Edit date 04/18/00] |
| 4/18/00 | 15 | 341 (a) Meeting of Creditors Scheduled For 11:15 5/16/00 At 222 E.Van Buren, Harlingen,TX Last Day To Oppose Discharge: 7/15/00 Last Day to File Proofs of Claim : 8/14/00 . Parties Notified Pursuant to FRBP 2002(a)(1). (gl) [EOD 04/18/00] |
| 4/20/00 | 16 | Report Of Operations from 3/1/00 to 3/31/00 (cgn) [EOD 04/24/00] |
| 4/24/00 | 17 | Notice of Appointment of Creditors' Committee. (jg) [EOD 04/27/00] |
| 4/24/00 | 19 | Request by Creditor Sealright Co Inc For Notice. (jg) [EOD 04/28/00] |
| 4/26/00 | 18 | Certificate Of Service By Paul Lee Wiley for Debtor F Street Investments Inc Of [5-1] 120 Day Order . (jg) [EOD 04/28/00] |
| 4/27/00 | 20 | Notice of Appearance And Request For Service Of Notice By David V Herin for Creditor Air Specialty & Equipment Company . (jg) [EOD 04/28/00] |

| 4/28/00 | 21 | Notice of Appearance And Request For Service Of Notice By Henry Lee Hardwick for Cred SSP Petroleum Company . (jg) [EOD 05/01/00] |

## Report Criteria

| Case Num: | 00-20953 |
| Filed between: | 01/01/31 and 05/02/00 |

## End of Report

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 05/02/2000 18:33:54 | | |
| PACER Login: | gs0001 | Client Code: | 4015.001 |
| Description: | docket report | Case Number: | 2000-20953 |
| Billable Pages: | 3 | Cost: | 0.21 |

Need help? Try the PACER User's Guide.

For information or comments, please contact  Pacer Service Center

PACER Home .

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 00-20953-B-11 |
| F STREET INVESTMENTS, INC. | § | |
| a Texas Corporation | § | |
| f/k/a HYGEIA DAIRY COMPANY | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

---

|  |  |  |
|---|---|---|
| Quality Chekd Dairies, Inc. | § | |
| Movant | § | |
| Vs. | | Motion To Lift Stay |
| | § | |
| F Street Investments, Inc. | § | |
| Respondent | § | |

## MOTION FOR RELIEF FROM SECTION 362 AUTOMATIC STAY

Quality Chekd Dairies, Inc. ("Quality Chekd"), pursuant to the provisions of 11 U.S.C. 362 (d), requests this Court to modify the automatic stay proposed in the above captioned Chapter 11 proceeding and, as cause therefore, would show:

1.     Quality Chekd filed suit in the United States District Court for the Southern District of Texas in Civil Action No. H-00-0943, *Quality Chekd Dairies, Inc. v. Cohyco, Inc., "F" Street Investments, d/b/a Southwest Ice Cream Specialties (f/k/a Hygeia Dairy Company) and H. Lee Richards.* A copy of the complaint in that cause is attached as Exhibit "1" to this motion.

2.     Quality Chekd sued "F" Street Investments for approximately $1,600,000 owed for materials, equipment, supplies and services purchased under an agreement with Quality Chekd, and for which payment had not been made. The complaint alleges that "F" Street, its Chairman, H. Lee Richards ("Richards") and its parent, Cohyco, Inc. ("Cohyco") committed acts of fraud, aided or abetted acts of fraud, and either committed, aided or abetted and participated in



would be no funds to pay unsecured creditors. In addition, the schedules filed in this proceeding reflect security interests held by Cohyco in the assets of "F" Street that were purportedly given to secure debt in excess of the declared value of the assets. Therefore, it is obvious that any meaningful recovery for Quality Chekd will have to come from Richards and Cohyco, as there are insufficient assets in "F" Street to make any significant payment to the creditors of "F" Street.

7.    The district court proceeding against Richards and Cohyco will not interfere with the administration of the bankrupt estate, and, in fact, a recovery from Richards and/or Cohyco will be an advantage to the other creditors in the estate because it will reduce the amount of Quality Chekd's debt which is, with the exception of the parent company Cohyco's claim, the largest debt owed by "F" Street.

8.    The discovery in this case will be extensive, and will involve depositions, document discovery and other discovery from Cohyco, Richards and current and former employees of the defendants. In addition, such discovery will be needed from the purchaser of the assets of "F" Street and possibly its parent. It is unnecessary to burden the bankruptcy court with this litigation, which primarily involves the liability of parties who are not in bankruptcy.

WHEREFORE, Quality Chekd prays that the automatic stay of the civil action against "F" Street under the provisions of 11 U.S.C. § 362(a) be lifted to permit the civil action against "F" Street to go forward, to resolve the issues brought before it, and to conduct appropriate judicial proceedings therein. In the alternative, Quality Chekd prays that the stay be modified to permit discovery in the civil action against "F" Street through and including such time as the stay may be further modified to permit full litigation of the issues against "F" Street, and for such other and further relief as the Court deems just.

3

Case 1:02-cv-00040   Document 50   Filed in TXSD on 03/20/2001   Page 158 of 162

Respectfully submitted,

Lee Hamel *
SBN: 08818000/Fed. ID: 2872
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000/Fax:(713) 659-3809
ATTORNEY-IN CHARGE FOR PLAINTIFF
QUALITY CHEKD DAIRIES, INC.

OF COUNSEL:
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 650-1004
Fax:    (713) 659-3809

*Signed With Permission By Diane W. Sanders

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Having considered Cohyco, Inc. and H. Lee Richards' Motion for Summary Judgment along with any supporting materials and responses thereto, the Court hereby finds this Motion to be meritorious.

THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Defendant Cohyco, Inc. against the Plaintiff, Quality Chek'd Dairies, Inc., dismissing with prejudice all claims and causes of action by the Plaintiff against Cohyco, Inc. with costs to be awarded in favor of Cohyco, Inc.

It is also hereby ORDERED, ADJUDGED, AND DECREED that this judgment and decision is final with regards to the claims brought by Quality Chek'd Dairies, Inc. against Cohyco, Inc., and that there is no just reason for delay, and the Court hereby directs the entry of judgment in favor of Cohyco, Inc. pursuant to Federal Rule of Civil Procedure 54(b).

SIGNED on this _____ day of _____, 2001, in Houston, Texas.

_____

HONORABLE VANESSA GILMORE
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court, having heard and considered Defendants Cohyco, Inc. and H. Lee Richards' Motion for Referral to the Bankruptcy Court, and Motion to Transfer, along with any supporting evidence and responses thereto, hereby finds these Motions to be meritorious.

THEREFORE, it is ORDERED, ADJUDGED, AND DECREED that all pre-trial matters in this case are referred to the Honorable Judge Richard Schmidt of the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, with such case to be handled for all non-dispositive pre-trial purposes by the Bankruptcy Court.

It is also hereby ORDERED, ADJUDGED, AND DECREED that all dispositive matters, whether pre-trial or otherwise, be transferred to the Brownsville Division of the Southern District of Texas.

SIGNED this _____ day of _____, 2001, in Houston, Texas.


_____
HONORABLE VANESSA GILMORE
UNITED STATES DISTRICT JUDGE