United States Courts
Southern District of Texas
FILED

APR 1 9 2001

Michael N. Milby, Clerk

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | **B-02-040** |
| **COHYCO, INC. and** | § | |
| **H. LEE RICHARDS** | § | |

**PLAINTIFF QUALITY CHEKD DAIRIES, INC.'S
RESPONSE AND OPPOSITION TO
DEFENDANTS COHYCO, INC.'S AND H. LEE RICHARDS'
MOTION FOR SUMMARY JUDGMENT, MOTION FOR REFERRAL
TO THE BANKRUPTCY COURT AND MOTION TO TRANSFER**

TO THE HONORABLE JUDGE OF SAID COURT:

Quality Chekd Dairies, Inc. ("Quality Chekd") opposes the Defendants Cohyco, Inc.'s

("Cohyco") and H. Lee Richards' ("Richards") Motion for Summary Judgment, Motion for Referral

to the Bankruptcy Court, and Motion to Transfer on the following grounds:

**I.
INTRODUCTION**

1.     This is a motion for partial summary judgment and for referral of all or part of this

civil action to the United States Bankruptcy Court for the Southern District of Texas, Brownsville

Division as part of Case No. 00-20953B-11 or transfer to the Brownsville Division of this Court.

Cohyco and Richards claim summary judgment should be rendered in favor of Cohyco because a

corporation cannot conspire with its officers and directors and, therefore, the Amended Complaint

does not state a cause of action.  Movants concede that the bankruptcy court cannot conduct a

Seventh Amendment Jury Trial as an Article III court.  However, they ask that the remainder of the

-1-

case be transferred to the bankruptcy court so that the bankruptcy judge can perform the functions of a Magistrate Judge on matters other than the jury trial or that the case be transferred to the Brownsville Division of this court. The plaintiff opposes all three motions. Quality Chekd will show that the Motion for Summary Judgment does not address the non-conspiracy grounds of liability under *respondeat superior* and causing, aiding and abetting and knowingly profiting from Richards' fraud and breach of fiduciary duty. Further, since Richards was, in part, acting in his own interest and adversely to Cohyco in some aspects of the underlying transactions, liability for conspiracy does lie. Referral to the Bankruptcy Court would create a cumbersome arrangement and create an unnecessary jurisdictional issue. Transfer to the Brownsville Division would inconvenience more parties and witnesses than it would assist. In support of this motion, plaintiff files the Affidavit of William L. Bowers, Jr., with attachments.

## II.
## SUMMARY OF ARGUMENT

2.      Partial summary judgment should not be granted in favor of Cohyco or Richards because Texas law permits recovery from a third party who knowingly causes, aids or abets or knowingly benefits from the fraud or breach of fiduciary duty of another. The conspiracy allegations should not be dismissed because Richards had a personal interest in the corporate organization, was acting not only as an officer and director of Cohyco, but also in his own interest adversely to the corporation. If, in fact, as the movants allege, the acts of Richards were the acts of Cohyco, then Cohyco is responsible under the doctrine of *respondeat superior*.

3.      This matter should not be referred to the bankruptcy court in Brownsville because, although the bankruptcy proceeding could have an effect on these defendants' liabilities, the

proceedings in this court will not affect the bankruptcy. This is because the measure of damages in this case is how much loss the conduct of the defendants proximately caused the plaintiffs because of Hygeia's inability to pay its debt. Defendants would be entitled to a credit for any amounts that are or in reasonable probability will be distributed to Quality Chekd as part of the bankruptcy proceeding. In the event that the adversary proceeding filed by F Street in the bankruptcy is successful or partially successful, the additional losses incurred by Quality Chekd would also be recoverable from the defendants Richards and Cohyco. Although any effect of the litigation on the bankruptcy estate would make this a related matter, the converse is not true.

4. The partial referral advocated by movants is impractical and is not envisioned by the organization of the magistrate and the bankruptcy courts. As demonstrated in the Quality Chekd's previously filed opposition to transfer, and as recognized by the movants' allegations in their motion, a jury trial of the issues in this case could not be conducted by the bankruptcy court. A referral of preliminary matters to the bankruptcy court for decision would be an awkward and inconvenient arrangement, and in view of the Bankruptcy Court's limited jurisdiction, raises a question of that Court's power to take even limited action. The pretrial matters in this case are already referred to Magistrate Judge Milloy who is familiar with the district court case, is convenient to the court in Houston, and has developed procedures that are compatible with handling this Court's business. Referring these matters to the bankruptcy judge would be a substantial departure from this Court's usual procedures. No convenience or economy advantage would be gained, and rather than conserving judicial resources, such a convoluted procedure would increase the opportunity for confusion, mishandling and inefficiency.

5. Transfer of this case to the Brownsville Division of the District Court would

inconvenience more parties and witnesses than it would help.

III.
## RESPONSE TO STATEMENT OF FACTS
## AND PROCEDURAL HISTORY

6.      Quality Chekd has sued Richards and Cohyco because Richards, as a director of

Quality Chekd, breached his fiduciary duty to disclose the disastrous financial condition of Hygeia

Dairy Company ("Hygeia") when he was causing Hygeia incur a large debt to Quality Chekd.  At

the same time, Cohyco was the only shareholder of Hygeia, and Richards served as an officer and

director of both Hygeia and Cohyco.  In fact, Mr. Richards was the ultimate corporate authority in

both companies, and oversaw the day-to-day operations of both Cohyco and Hygeia.  Cohyco was

aware of and knowingly profited from Richards' misconduct.

7.      During the period from 1995 to 1999, Hygeia was in serious financial condition.

During this period, Richards, attempting to save the Hygeia dairy business, had caused Cohyco to

have another subsidiary, originally Maverick Markets, now Carancahua, to sell assets and to apply

proceeds from these assets to Hygeia's benefit, either through repayment of Hygeia's debts or as

direct cash infusions into the company.  At one point, in 1999, Richards even personally borrowed

$300,000 which was paid to Hygeia in order to meet operating expenses (Affidavit of William L.

Bowers, Jr., Tabs 1 and 2).

8.      After Cohyco paid off Hygeia's debt to Texas Commerce Bank in 1996, it became

the owner and holder of real estate liens and personal property security interests on virtually all of

Hygeia's assets.  This situation prevailed until 1997, when an arrangement was made with Congress

Financial Services ("Congress") to obtain credit for both permanent improvements and operating

capital.  In order to obtain this financing, Cohyco subordinated its liens on Hygeia's real estate and

-4-

terminated its UCC filings with respect to the security interests in Hygeia's personal property (Tab B, Affidavit of William L. Bowers, Tabs 3 and 4). Cohyco also guaranteed Hygeia's debt to Congress. Until the sale of Hygeia's assets and the payoff of the Congress loan, Cohyco personally guaranteed Hygeia's debt, which had a $7,000,000 balance when Hygeia's assets were sold and Congress was repaid in December, 1999.

9.      Cohyco obtained audited, consolidated financial statements from Deloitte & Touche for each of the years in question, and Cohyco, Hygeia and Carancahua and other subsidiaries all filed consolidated income tax returns. The audited financial statement of Hygeia for the fiscal year ending September 30, 1998 (fiscal year, 1997) reflected a net loss of $4,129,284 by Hygeia and a negative net worth of Hygeia in the amount of $7,217,389. In addition, the auditors, Deloitte & Touche, qualified the financial statements with a liquidity or going concern warning as follows:

> *These recurring losses and liquidity issues raise substantial doubt about the company's ability to continue as a going concern. The financial statements do not include any adjustments that might result from the outcome of this uncertainty.* (Affidavit of William L. Bowers, Jr., Tab 3)

10.      After receiving the December, 1998 Hygeia financial statement, Richards began trying to sell Hygeia. Hygeia's credit was exhausted with many of its suppliers, and its debts far exceeded its assets. However, its affairs were so structured that Congress and Cohyco would have a first claim on the proceeds of the sale and any remaining assets . To keep Hygeia in business, Richards allowed the accounts with those creditors who would continue to supply Hygeia to increase. Eventually, Hygeia's account with Quality Chekd was $1,600,000 when Hygeia filed for bankruptcy on April, 2000 (Affidavit of William L. Bowers, Jr, Tabs 1, 2, 3, 4, 8 and 9).

11.      During the negotiations to sell Hygeia's assets to Southern Foods, Richards also

negotiated a $90,000, six year payout to himself as part of a non-competition agreement and a similar $38,000 three year payout for his sister, Merry Kay Richards. Ms. Richards, the mother of Doug Purl, who was another officer and director of Cohyco and Hygeia, was also a major shareholder of Cohyco (Affidavit of William L. Bowers, Jr., Tab 6).

12. During the course of the events outlined above, Richards was the person who oversaw and controlled the financial affairs of both Cohyco and Hygeia. Since he was Cohyco's senior officer and director (in fact, the most senior such official), Cohyco had full knowledge of all of the events described above. This included the details of Richards' participation in the Defendant Cohyco's affairs and that of its subsidiary, Hygeia, and also what Richards was doing as director of Quality Chekd. Cohyco had the power to prevent Richards from committing the tortuous conduct that injured the plaintiff, but did not do so. The obvious reason is that the tort feasor Richards controlled Cohyco, and Cohyco and Richards both were vitally interested in getting a large enough purchase price to avoid having to pay off Congress and recouping as much of its investment in Hygeia as possible. Further, Richards was interested in negotiating a payment by Southern Food sto himself and his sister (Affidavit of William L. Bowers, Jr., Tabs 4 and 5).

13. Richards was successful in keeping Hygeia in business until the sale of its assets to Southern Foods was completed and closed around November 30, 1999. When the sale was closed, Congress and the Harlingen National Bank were paid off and the real estate that was not sold to Southern Foods was conveyed to Cohyco by deeds in lieu of foreclosure or sold to a third party and the proceeds paid to Cohyco. When Hygeia (then under the new name of F Street Investments) filed for bankruptcy, it actually had only about $1.5 to $2 million in assets and debt of about $5 million,

not including Cohyco's claims or $17 million if Cohyco's debt is valid. [1]  Cohyco initially claimed

to be a secured creditor and at the first meeting of creditors, and asserted through Mr. Purl, that it

was entitled to all of the assets of the debtor.  Later, it modified its position alleging that it was an

unsecured creditor with a claim of $12 million (Affidavit of William L. Bowers, Jr, Tabs 7-9).

14.     The facts cited above clearly establish that Cohyco knew what was going on between

Hygeia, Richards and Quality Chekd.  Cohyco was vitally interested in Hygeia's financial affairs,

not only from the point of profitability of a subsidiary, but from the point of view of its own liability

for Hygeia's debt to Congress; it was aware of Richards' fiduciary responsibilities to Quality Chekd;

the increase in Hygeia's debt; and Hygeia's inability to pay.  It then knew of Richards' breach of his

fiduciary duties to Quality Chekd; it was, likewise, aware that, although he had a duty to disclose

Hygeia's financial condition to Quality Chekd, he had not done so.  Cohyco accepted the benefits

of Richards' misconduct, viz, the payoff in full of Congress, the real estate , the increased price of

Hygeia's assets and its chance to claim all of most of the bankruptcy estate.

15.     In spite of Cohyco's claim that its assets are somehow involved in the bankruptcy,

no effort has been made by the Debtor in Possession, F Street, to recover any preferences or reserve

any fraudulent conveyances.  Of course, Doug Purl, Richards' nephew, is the President of F Street.

16.     Cohyco's characterization of Quality Chekd's claims against it as a conspiracy claim

ignores or omits plaintiff's other claims for aiding, abetting, causing and knowingly profiting from

Richard's breach of his fiduciary duty and fraud.  Pp. 13, pars. 30-32 and 14, pars. 34-35, Exhibit

---

[1]   The schedules listed a total of approximately $4 to $5 million in assets.  However, these included
interests in Mexican subsidiaries and accounts that were of no or minimal value, and equipment of questionable
value.

"A" to Cohyco's Motion for Summary Judgment.  In addition, page 2, paragraph 5 of Exhibit "A" to Cohyco's Motion for Summary Judgment reflects that defendant alleges that Richards' misconduct was in the course and scope of his duties as chairman of the board of Cohyco, and that Cohyco caused, aided, abetted and knowingly participated in benefitting from the wrongful conduct alleged.

IV.

**COHYCO IS LIABLE TO QUALITY CHEKD ON ALL
OF THE SEVERAL CAUSES OF ACTION ALLEGED**

17.     Texas Law recognizes that third parties who cause, aid, abet and knowingly benefit from fraud or breach of fiduciary duty are liable for the damage that the misconduct causes.  <u>See</u> *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation, et al.,* 160 S.W.2d 509 (Tex. 1942); *Brewer & Prichard, P.C. v. Johnson,* 7 S.W.3d 862, 866 (Tex. App. -- Houston [1st]1999); *David B. Hendricks, Trustee v. Grant Thornton,* 973 S.W.2d 348, 371 (Tex. App. – Beaumont [9th] 1998) and *Kline v. O'Quinn,* 874 S.W.2d 776, 786 (Tex. App. – Houston [14th] 1994), writ denied;and *Earl Steven Wilson, Trustee, et al. v. Cinemark Corporation,* 858 S.W.2d 645 (Tex. App. -- Fort Worth 1993).

18.     The *David B. Hendricks* case dealt specifically with an aiding and abetting allegation.  It held that the aiding and abetting claim is not just a "tag-along close claim," but characterized it as a cause of action for participating in the breach of a fiduciary duty.  The opinion cited the *Kinzbach Tool* case and affirmed a summary judgment in favor of the plaintiffs.

19.     The core of Quality Chekd's claim against Cohyco is that Richards, as a director of Quality Chekd, was a fiduciary to the plaintiff.  *International Bankers Life Insurance Company v. Holloway,* 368 S.W.2d 567 (Tex. 1963).  It alleges that Richards breached his fiduciary duty and

-8-

committed fraud by failing to disclose the true financial condition of Hygeia while obtaining credit for Hygeia from Quality Chekd.  The claim against Cohyco is based on the fact that Richards was its chief executive officer; that Quality Chekd had a vital interest in keeping Hygeia in business until its assets could be sold; and that it knowingly benefitted from Richards' breach of his fiduciary duties and fraud by realizing a higher price for the assets of its subsidiary, Hygeia; avoiding possibly having to make good on his guarantee of Hygeia's debt and positioning itself to obtain most, if not all of Hygeia's assets.  A critical factor in this equation is that, under the sales agreement with Southern Foods, approximately $3 million to $3.5 million of the $9.5 million purchase price was for inventory, much of which was milk and ice cream with a very short shelf life.  In addition, the sale of the assets while Hygeia was still in operation maximized the price of the assets.  As shown above, Cohyco, under Richards' control and guidance, had structured Hygeia's obligations so that it, as the parent, would have first call on all of the remaining assets.  As noted, Cohyco had deed of trust liens on all of Hygeia's real estate, and had security interest in all of its personal property.  It initially filed a secured claim, claiming all of the assets of Hygeia after the bankruptcy and, had it not been for the termination and necessity of refiling a financing statement covering with the security interest in the personal property, Cohyco would, in fact, be asserting a claim for all of the assets in the bankruptcy (Tab B, Affidavit of William L. Bowers, Jr.).

20.     A key fact is that Richards was, at all times, the controlling person of Cohyco, Hygeia, Carancahua and all of the other subsidiaries.  He made the decisions on who should be paid, how the transactions were to be structured, used the same accountants and lawyers for both companies, and negotiated the sale of Hygeia's assets to Southern Foods.

21.     In view of these facts, Richards was not only acting on behalf of Cohyco, he was also

acting on behalf of himself and his sister.  This factor takes the conspiracy allegations in this case out of the normal rule that a corporation and its officers may not conspire with each other because the officer's acts are deemed to be that of the corporation. [2]

22.    The defendants' arguments under §2.21, Tex. Bus. Corp Act and *Menetti v. Chavers*, 974 S.W.2d 168 (Tex App San Antonio 1998), no writ, are likewise without merit.  The effect of §2.21 is to reinforce the separate identity of the corporations and their owners, but the statute does not protect them from the consequences of their own conduct.  The *Menetti* case, *supra*, dealt with the issue of whether it was necessary to allege personal, fraudulent conduct on the part of the shareholders in order to hold them liable under an alter ego or similar theory.  In this case, as has often been reiterated, Cohyco is sued for what it did, caused or aided and abetted.  Through Richards, it allowed, caused and enabled Hygeia to bring itself and its creditors to their present posture, and in the process, countenanced and accepted benefits from Richards wrongful conduct.  It was a participant, not a passive investor and §2.21 does not help it.

### V.
### THIS CIVIL ACTION SHOULD NOT BE REFERRED TO BANKRUPTCY COURT FOR ANY PURPOSE

23.    The plaintiff previously filed an opposition to referring this case to the bankruptcy court[3] and in lieu of repeating the argument and authorities here, attaches a copy of the opposition under Tab A and incorporates the arguments and authorities set out there by reference.

---

[2]  If Cohyco's contentions are true that Richards' acts are those of Cohyco, then this simply confirms the basis of liability which is asserted to the effect that what Richards was doing in the course of his breaches of fiduciary duties and fraud was in the course and scope of his employment as an officer and director of Cohyco.  In either event, a grounds for liability is stated and Cohyco is not entitled to summary judgment.

[3]  Under *In Re Clay*, 35 F3d 190 (5th Cir. 1994) the bankruptcy court does not have jurisdiction to hold a Seventh Amendment Jury trial as an Article III Court.  This is apparently conceded by the defendants.

24.     Conceding that the bankruptcy court cannot hold a Seventh Amendment Jury Trial, the defendants now want a partial reference to the bankruptcy court for apparently everything except the actual jury trial.  Defendants seem to urge that the Bankruptcy Judge in Brownsville should perform the duties normally discharged by the Magistrate Judge in Houston.  The cumbersome and inefficient nature of such a device is apparent on its face.  The Bankruptcy Courts have busy, specialized, independent dockets and are not designed to the work that normally falls to the Magistrate Judges.  There are no bankruptcy issues in this case, but it does entail preliminary issues and procedures that are incident to a Seventh Amendment Jury Trial and which are not normally handled by the Bankruptcy Court.  There is also the question of the distance of the seat of the Bankruptcy Judge, which adds a further, practical complication.[4]

25.     The case presents a serious question of whether this is, in fact, a "related matter" under 28 U.S.C. §151.  As the memorandum in Tab A points out, while some possibility of this case having an effect on the Bankruptcy Estate could make it a "related matter", the converse is not true.[5]  The measure of damages against these defendants is how much the plaintiff lost due to their conduct.  Defendants are entitled to a credit for any amount that Quality Chekd recovers from the bankruptcy estate.  If the bankruptcy estate is not closed by the time that this case becomes final, any probable amount of recovery from the bankruptcy estate would be an issue for the jury, based on testimony about the facts.  The verdict would thus fix a net amount due.  If later the bankruptcy court

---

[4] The plaintiff opposes the transfer of this case to the Brownsville Division for the reasons stated in its prior opposition to such transfer as discussed *infra.*

[5] See *In the Matter of Daniel Bass, Jr., Debtor*, 171 F.3d 1016, 1024 (5th Cir. 1999) and discussion Tab 1, P.8,

distributed a greater amount of dividends to the plaintiff, the defendants would be entitled to a

further credit. However, a recovery in this case would not affect the bankruptcy estate and since the

jury verdict and judgment would take any actual or probable proceeds from the bankruptcy

proceedings into account. Of course, if the bankruptcy proceedings were concluded *before* any

payment was made by the defendants in this case, this case could not possibly affect bankruptcy

proceedings.

26.     Referral of matters to the bankruptcy court is governed by 28 U.S.C. §§157, 158 and

1334. The Bankruptcy Court's jurisdiction is statutory and referral of a non-related matter, for any

purpose, would create an unnecessary jurisdictional issue. All of this can and should be avoided by

simply leaving this case where it is.

VI.
**THIS CIVIL ACTION SHOULD NOT BE TRANSFERRED
TO THE BROWNSVILLE DIVISION.**

27.     The defendants note that the issues defendants' renewed motion to transfer this case

to the Brownsville Division raises have been presented before in extensive motions, responses and

memoranda, recently declared moot. In lieu of repeating all of the previous material here, reference

is made to the prior responses to defendants' motion to transfer. Quality Chekd would remind the

Court that numerous plaintiff's witnesses will have to come from Illinois and other points outside

of Texas. The location, transportation, facilities and accommodations in Houston will be more

convenient to them than those in Brownsville. Since Hygeia (F Street) is no longer a party, the

arguments and authorities that they advanced on this issue should be disregarded. It is, therefore,

obvious that more parties and witnesses would be inconvenienced by transferring this case to

Brownsville than by leaving it in Houston.

-12-

WHEREFORE, the Defendants Motions for Summary Judgement, Referral to the Bankruptcy Court and Transfer to the Brownsville Division should be, in all things, denied. In the alternative, ruling on the motions should be deferred pending completion of discovery and opportunity to supplement Quality Chekd's opposition.

Respectfully submitted,

Lee Hamel
SBN: 08818000
William L. Bowers, Jr.
SBN: 02740000
Hamel Bowers & Clark L.L.P.
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000
Fax:    (713) 659-3809
Attorneys for Quality Chekd Dairies, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served by

U.S. Mail and/or fax to counsel of record on this the 19th day of April, 2001.

Harlin C. Womble, Jr.
Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

    *Attorneys for F Street Investments*

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

    *Attorneys for Cohyco, Inc. and H. Lee Richards*

William L. Bowers, Jr.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC. and** | § | |
| **H. LEE RICHARDS** | § | |
| | § | |

## ORDER

The Defendants Richards' and Cohyco's Motions for Summary Judgment, for Referral to the

Bankruptcy Court and Transfer to the Brownsville Division are, in all things, DENIED.

SIGNED in Houston, Texas on April _____, 2001.

_____

MARY MILLOY
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC. and | § | |
| H. LEE RICHARDS, | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S OPPOSITION TO REFERRAL OF CASE

Plaintiff in this case opposes the transfer of this case to the Bankruptcy Court to be litigated as part of the pending bankruptcy proceeding involving F Street Investments, Inc, Case No. 00-20953-B-11; *In Re F Street Investments, Inc., A Texas Corporation f/k/a Hygeia Dairy Company*; In the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division, for the following reasons:

### Summary of Plaintiff's Objections

1. A transfer of this case to the Bankruptcy Court would deprive the Plaintiff of its right under the **Seventh** Amendment to the Constitution of the United States to a trial by jury before a court of the United States created under Article III of the Constitution. This is so because if the case were referred to the Bankruptcy Court, that court could only act as an adjunct to the District Court, and its rulings would only be advisory. If a jury were used, either party could apply to the District for *de novo* review of any findings or rulings to which it had objected. Such a review would be in violation of the Seventh Amendment's prohibition of review of a jury's findings by another court

1

by other than ordinary appellate procedures.

2.     The Bankruptcy Court does not have jurisdiction over this case and, in any event, it cannot render a final judgment in these proceedings unless all of the parties consent to such action.

3.     The referral of this case to the Bankruptcy Court will, at best, be an inefficient use of judicial resources.

### Argument

4.     Background and Status of the Case:

a.     This civil action was originally a suit against F Street Investments, Inc (formerly Hygeia Dairy Company) ("F Street"), its parent company, Cohyco, Inc. ("Cohyco") and F. Lee Richards ("Richards"), who was the principal corporate head of the other defendants. F Street was originally sued by Quality Chekd on its delinquent $1.6 million account and all three defendants were sued because Richards, while a director of Quality Chekd, acting for Cohyco, breached his fiduciary duties as a director to benefit Cohyco and F Street and committed other torts as alleged in the amended complaint. Liability of the present defendants is predicated only on their pre-petition conduct and is based on the law of the State of Texas prohibiting fraud and breach of fiduciary duties. Recovery is sought only out of Cohyco's and Richards' personal estates. This civil action was brought in the United States District Court for the Southern District of Texas as a diversity case because the Plaintiff is a citizen of Illinois and all of the defendants are citizens of Texas.

b.     After this civil action was filed, F Street filed the F Street Bankruptcy to obtain protection under the provisions of Chapter 11 of the Bankruptcy Code. Later, Quality Chekd moved to sever F Street from this civil action and transfer the case against F Street to the Bankruptcy Court as part of that proceeding. The Motion to Sever and Transfer was granted and leave was given

2

to amend the complaint in this case to sue only Richards and Cohyco. The case is now pending on Plaintiff's First Amended Complaint, which names only Cohyco and Richards.

        c.      During the motion hearings, the United States Magistrate Judge instructed the Plaintiff to amend its pleadings to allege a cause of action which could only be brought in the District Court. Although the Magistrate Judge did not articulate such a ruling, counsel for Plaintiff are concerned that if such an amendment of the pleadings is not filed, the case might be referred to the Bankruptcy Court as part of the F Street Bankruptcy.

        d.      After the recent hearing before the Magistrate Judge, the Plaintiff reviewed its First Amended Complaint and has determined, based on the facts of the case as they are known in this stage of discovery, that the First Amended Complaint cannot be amended to allege substantially different facts or causes of action at this time. Upon completion of discovery, further information may provide a basis for requesting leave to file a further amendment, and Quality Chekd reserves such rights as it has to do so. However, the Plaintiff does not choose to further amend its complaint at this time and does not consent to the referral of this case to the Bankruptcy Court or to a trial by jury before that court. Plaintiff believes it has plead a case which cannot be filed as such in the Bankruptcy Court.

        5.      Discussion of the Reasons Why this Case Should Not Be Referred to the Bankruptcy Court and Authorities Supporting Plaintiff's Objections.

        a.      Referral would deprive Quality Chekd of its Seventh Amendment right to a trial by Jury in an Article III United States Court because the Bankruptcy Court does not have jurisdiction to conduct such a trial.

        The Supreme Court recognized that the Bankruptcy Courts are not Article III

Courts in *Northern Pipeline Construction Co. v. Marathon Pipeline Co,* 458 U.S. 50, 102 S .Ct. 2858 (1982), and, in so doing, invalidated most of the then most recent Bankruptcy Reform Act. In the wake of the *Marathon* decision, the Congress attempted to accommodate the Supreme Court's decision that the Bankruptcy Courts have jurisdiction to enter final judgments only in what have become known as "core" bankruptcy matters and may act only as adjuncts to the District Courts in what are termed as "related" matters.

      b.      The principal jurisdictional statutes are 28 U.S.C. §§157, 158 and 28 U.S.C. 1334. The statutory scheme enacted in §§ 157 and 1334, has provided exclusive jurisdiction in the District of Courts ". . . of all cases under Title 11" (28 U.S.C. 1334 [a]) and ". . . original but not exclusive jurisdiction of all civil proceedings arising under Chapter 11, or arising in or related to cases under Title 11." ( 28 U.S.C. 1334 [b] ). The provisions of 28 U.S.C. 157 allow referral of cases under Title 11, and all proceedings arising under Chapter 11 or arising in or related to a case under Title 11 ( 28 U.S.C. 157 [a] ) to the Bankruptcy Court. The next section, § (b) (1) permits bankruptcy judges to hear and determine all cases under Title 11 in all *core* proceedings arising under Chapter 11 or arising in a case under Chapter 11. The next subsection, §§ (b) (2) defines *core* proceedings with a non-exclusive list, and a final §§ (b)(2)(O) is a catchall for other matters related to the administration of bankruptcy estates.

      c.      The seminal case in the Fifth Circuit which defines *core* and related proceedings is *In Re Wood,* 825 F.2d 90 (5th Cir. 1987), recently cited with approval by *In the Matter of R. Daniel Bass, Jr., Debtor, et al,* 171 F.3d 1016, 1022 (5th Cir.1999). In *Wood,* 825 F.2d 93, the Fifth Circuit defined a *core* proceeding as:

      *A proceeding is core under section 157 if it invokes a substantive*

4

*right provided by title 11 or if it is a proceeding that, by its nature,*
*could arise only in the context of a bankruptcy case.*

d.      The Court also considered what constituted a "related" claim.  Adopting the

rationale of an earlier Third Circuit case, *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984),

it stated:

> *The Act does not define "related" matters. Courts have*
> *articulated various definitions of "related", but the definition of*
> *the Court of Appeals for the Third Circuit appears to have the*
> *most support: "whether the outcome of that proceeding could*
> *conceivably have any effect on the estate being administered in*
> *bankruptcy." This definition comports with the legislative*
> *history of the statutory predecessor to section 1334. Neither*
> *Marathon nor general concerns of comity counsel against its*
> *use. We adopt it as our own.*

e.      If a core case is referred, the Bankruptcy Court could enter dispositive orders

under 28 U.S.C. 157 and its action would be reviewed as an ordinary appeal under 28 U.S.C. §158.

However, under *In re Clay*, 35 F3d 190 (5th Cir. 1994), it is doubtful that a bankruptcy court could

hold a jury trial, even in a *core* proceeding, without the consent of all of the parties.  See discussion,

*infra.*

f.      The other type of case over which the District Courts have bankruptcy

jurisdiction is a "related" matter governed by the provisions of 28 U.S.C. 157 (c) (1).  Such a case,

in the context of a jury trial, involves the difficult questions posed in *Northern Pipeline Construction*

*Co. v. Marathon Pipeline Co, supra*.  While a Bankruptcy Court may hear such a case, it may not

enter dispositive orders and may only recommend findings and conclusions to the District Court,

which must enter all final orders.  A key provision, found in 28 U.S.C. §(c)(1), states that the District

Court must consider any Bankruptcy Court findings or conclusions which are objected to *de novo,*

5

and the Bankruptcy Court may exercise final jurisdiction over a related matter only with the consent of all of the parties. Under 28 U.S.C. §157 (c) (2), the District Court can only refer a "related" matter to the Bankruptcy Court for final disposition with the consent of all of the parties. Further, a binding jury trial can only be held by a Bankruptcy Court with the consent of all of the parties. *See* 28 U.S.C. 157 (e).

g.      The *Marathon* case and the resulting statutes have led to the holding that the Bankruptcy Court is without jurisdiction to hear a related matter where a party is entitled to a Seventh Amendment Jury Trial is an Article III Court. *See In Re Clay*, *supra*; and more recently, *see In the Matter of R. Daniel Bass, Jr., Debtor, et al,* 171 F.3d 1016 (5th Cir. 1999); *In the Matter of Texas General Petroleum Corporation,* 53 F.3d 1330, 1336 (5th Cir. 1995); *In Re: Doris Hofman, Debtor*, 248 B.R. 79, 90 (W. D. Tex. 2000), citing *In Re Clay, supra*; and *In Re: Pierre A. Lapeyre*, No. 99-1312 (E.D. La. 1999).

h.      The main problem that Judge Higginbotham saw in the *Clay* case was that, outside of a core proceeding, there is not even statutory jurisdiction for the Bankruptcy Court to act as an Article III Court. If it acts as an adjunct to a District Court in a jury trial, the requirement of 28 U.S.C. 157 (c) that the District Court's review be *de novo* runs afoul of the Seventh Amendment's prohibition of a review of a jury's findings on other than traditional appellate review. The result of any referral of a related matter, especially where a party is entitled to a jury, is a circuitous procedure that would, in all probability, be invalid because it violates the Seventh Amendment.

i.      Judge Higginbotham's analysis in *Clay*, 35 F.3d 192 is instructive. He reasoned:

> *The inadequacy of district court review of jury trials is fatal to*

6

*delegation to adjuncts. In upholding a magistrate's power to rule on a pretrial motion, the Court stressed the importance of de novo review maintaining sufficient Article III control over an adjunct. United States v. Raddatz, 447 U.S. 667, 681-82, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980); see also Gomez, 490 U.S. at 875 n.29 (suggesting that Raddatz requires that district court be able to rehear witnesses and decide for itself de novo). Marathon likewise emphasized the need for ample review of an adjunct by an Article III court. 458 U.S. at 85 (Brennan, J., plurality opinion) (disapproving of clearly erroneous standard of review of bankruptcy court judgments); id. at 91 (Rehnquist, J., concurring in the judgment) (holding that bankruptcy courts were not adjuncts because they were subject "only [to] traditional appellate review").*

*De novo review is inconsistent with the Seventh Amendment, which states: "No fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law. In other words, the 7th Amendment permits only ordinary appellate review. This court has recognized the clash between Article III review of adjunct proceedings and 7th Amendment sanctity of jury verdicts. "The reference [to a magistrate for jury trial] either effectively denies the right to trial by jury, or impermissibly abrogates the decisive role of the district judge, or both." Ford v. Estelle, 740 F.2d 374, 380 (5th Cir. 1984).*

*De novo review by a district court is also impossible in practice, because a cold record cannot capture the atmosphere, the expressions, the attitudes that are the marrow of a jury trial. Gomez, 490 U.S. at 874-75; United States v. Ford, 824 F.2d at 1435-36; see also Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037, 1049 (7th Cir. 1984) (Posner, J., dissenting) (noting that appellate review leaves trial judge wide latitude in evidentiary rulings, instructions, and comments). Only verbal acrobatics could label the autonomous conduct of a trial as adjunct to anything.*

j.      Turning to this case, we have the following factors: this is *not* a core proceeding; it neither arises under Title 11 nor is it a case that could only arise in a bankruptcy situation. *See In Re Wood*, *supra*. If this case has anything to do with the F Street Bankruptcy Proceeding, it is only a "related" matter in which a Bankruptcy Court cannot conduct a Seventh

Amendment jury trial as an Article III Court unless all parties consent to such a proceeding. Such consent has not been given and the Plaintiff's rights to a jury trial have clearly been preserved.

      k.    There is a serious question if this is even a related matter under *In re Wood*. There must be at least some impact on the F Street Bankruptcy for this to be a related matter. *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, 171 F.3d 1024. Under *Bass*, without the "related." matter *nexis*, there is no jurisdiction at all in the Bankruptcy Court, and none in the District Court unless there is an independent basis of jurisdiction, such as diversity of citizenship. Of course, jurisdiction can be raised at any time during a proceeding, and if this case were sent to the Bankruptcy Court, that issue would still be alive. If it were later determined that this is not even a related case, everything would have to start over.

      l.    The case alleges conduct by the two defendants and the damages, based on legal grounds not available to the debtor in possession or the unsecured creditor's committee. Recovery would not be out of the debtor's assets and would not make additional assets available to the debtor's estate for distribution to the other creditors. If a distribution is paid to creditors by F Street's bankruptcy estate, it would impact the damages in this case. However, that is not enough to make this a "related case." Under *In the Matter of R. Daniel Bass, Jr., Debtor, et al*, the non-bankruptcy must impact the administration of the estate in order to make the matter "related to" the bankruptcy. *Bass* teaches that the fact that the bankruptcy may conversely impact the civil action does not make the civil action a related matter.

      m.    Returning to the court's original request of the Plaintiff, Quality Chekd respectfully submits that it has plead a case which cannot be prosecuted in the Bankruptcy Court. This is because Plaintiff has plead a case in which it has a right to a Seventh Amendment jury trial

8

conducted by an Article III United States Court.  The Bankruptcy Court is not such a court and cannot conduct a Seventh Amended Jury Trial because, absent consent of the parties, it lacks jurisdiction to do so.

6.    Referral of this case over the Plaintiff's objection to the Bankruptcy Court not only would be improper, but would also be an inefficient use of judicial resources.

From the foregoing analysis, it is evident that the procedure that would have to be followed is a complex, multiple step process:

- Trial with a jury before the Bankruptcy Court;

- Preparation of recommended findings and conclusions by the Bankruptcy Court for submission to the District Court;

- Objections by either or both parties to any proposals with which they disagree;

- District Court *de novo* consideration of the issues that are the subject of the objections by either party, and ruling on them; and

- Proceedings before the District Court to enter its final judgment.

At the conclusion of this cumbersome procedure, there will still remain the troublesome question of whether there should have been a jury trial before the Bankruptcy Court at all and whether it even had jurisdiction to conduct any proceedings.  *See In Re Clay, supra* and related arguments above.

9

WHEREFORE, Plaintiff respectfully submits that referring this case would be improper and would cause unnecessary work for this Court and the Bankruptcy Court.

Respectfully submitted,

HAMEL BOWERS & CLARK L.L.P.

Lee Hamel
SBN: 08818000
William L. Bowers, Jr.
SBN: 02740000
1200 Smith, Suite 2900
Houston, Texas 77002
Tel:    (713) 659-2000
Fax: (713) 659-3809
Attorneys for Quality Chekd Dairies, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served by U.S. Mail and/or fax to counsel of record on this the 20th day of February, 2001.

Christopher Andrew Lowrance
Royston, Rayzor, Vickery & Williams
606 N. Carancahua, Suite 1700
Corpus Christi, Texas 78476

*Attorneys for Cohyco, Inc. and H. Lee Richards*

William L. Bowers, Jr.

10

**HAMEL BOWERS & CLARK L.L.P.**
ATTORNEYS AND COUNSELORS
TWO ALLEN CENTER
1200 SMITH, SUITE 2900
HOUSTON, TEXAS 77002
────────────
TELEPHONE: (713) 659-2000
FAX: (713) 659-3809

February 20, 2001

Michael Milby,  Clerk                                   ***By Hand***
United States District Court
Bob Casey United States Court House
515 Rusk Street , Room 1217
Houston, Texas 77002

Re:     Cause No. H-00-00943; *Quality Chekd Dairies, Inc. v. Cohyco, Inc. and H. Lee
        Richards*; In the United States District Court for the Southern District of Texas,
        Houston Division

Dear Sir:

Enclosed are an original and one copy of the following:

1.      **PLAINTIFF'S OPPOSITION TO REFERRAL OF CASE**

                                        Sincerely,

                                        William L. Bowers, Jr.

WLB:ser
Enclosure

cc:     (with enclosure)

        Christopher Andrew Lowrance
        Royston, Rayzor, Vickery & Willliams
        606 N. Carancahua, Suite 1700
        Corpus Christi, Texas 78476

        *Attorney for Cohyco, Inc. and H. Lee Richards*

Michael Milby
February 20, 2001
Page 2

bcc:    (with enclosure)

      Mr. James Moehling
      Mr. Peter Horvath
      Mr. Lee Hamel (firm)