UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

AUG 0 3 2001

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC. | § | B-02- U40 |
| Plaintiff, | § | |
| versus | § | CIVIL ACTION NO. H-00-943 |
| COHYO, INC., *ET AL*. | § | |
| Defendants. | § | |

### REVISED SCHEDULING ORDER

1. February 15, 2002     **DISCOVERY**
Counsel may, by agreement continue discovery beyond the deadline.  No continuance will be granted because of information acquired in post-deadline discovery.

2. April 26, 2002     **DOCKET CALL** is set at 1:30 p.m. in Courtroom 9A.

                                      **TRIAL**
3. May, 2002     Case is subject to being called to trial on short notice during this month.

All other deadlines have passed.

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the _2nd_ day of August, 2001, at Houston, Texas.

_____
**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**

69

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

**MICHAEL N. MILBY**
**CLERK**

Post Office Box 61010
Houston, Texas  77208

To:    Clerk, U.S. District Court

      SOUTHERN   District of  TX-BROWNSVILLE

Re:    Civil Action No. _____ 00-943 _____

      QUALITY CHEKD DAIRIES  vs.     COHYCO INC

Dear Sir/Madam:

      Enclosed is a certified copy of an order transferring the above-captioned case to your district/division.

      We are transmitting the entire original case file along with a certified copy of the docket sheet.

      Please acknowledge receipt of the file by signing the receipt below on the copy of this letter and returning it to us in the enclosed envelope.

                         Sincerely,

                         MICHAEL N. MILBY, CLERK

Date: _____ JAN 28, 2002 _____    By: _____

                                  Deputy Clerk

cc:    **Counsel of Record**

--------------------------------------------------------------------

      Please complete and return acknowledgment to our office.

      Received and filed under Civil Action No. _____ on _____.

      Clerk, United States District Court

          By: _____
                       Deputy Clerk

SDTX (cv_trans.ntc) 07/13/98



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**JAN 28 2002**

*Michael N. Milby, Clerk of Court*

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC. | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-00-00943 |
| | § | |
| COHYCO, INC., *et. al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO TRANSFER VENUE

This matter was referred by United States District Judge Vanessa D. Gilmore for full pretrial

management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry # 25). Before this court

is a motion by Defendants Cohyco, Inc. and H. Lee Richards (collectively, "Defendants") for a

referral to the bankruptcy court in the Brownsville Division for "non-dispositive pre-trial handling."

(Defendants Cohyco, Inc. and H. Lee Richards' Motion for Summary Judgment, Motion for Referral

to the Bankruptcy Court, and Motion to Transfer ["Defendants' Motion"], Docket Entry #50). Those

Defendants also ask for a partial summary judgment on one of the tort claims, and finally, they ask

that the case be transferred to the Brownsville Division of the United States District Court for the

Southern District of Texas, for disposition of the remaining causes of action. (*Id.*). After

considering the motions, the evidence submitted, and the applicable law, it is ORDERED that

Defendants' motion for transfer of venue be GRANTED. The remaining dispositive issues, as well

as the request for a referral to the bankruptcy court, are best left for determination by the transferee

court.

There is also pending before this court a motion by Plaintiff Quality Chekd Dairies, Inc.

("Plaintiff," "Quality Chekd") to strike a pleading filed by a former party to this litigation, F Street

75

Investment, Inc. ("F Street").  (Motion to Strike Response of F Street Investment's [sic] Inc. to Plaintiff's Opposition to Referral of Case and Motion for Reference of Case to Bankruptcy Court ["Plaintiff's Motion to Strike"], Docket Entry # 54).  That motion should be GRANTED.

**Background**

Quality Chekd is a for-profit cooperative corporation, organized under the laws of Wisconsin, and it maintains its principal place of business in Illinois. (First Amended Complaint ¶ 1, Docket Entry #41).  Defendant Cohyco, Inc. ("Cohyco") is a Texas corporation, with its principal office in Harlingen, Texas. (*Id.* ¶ 2).  Defendant H. Lee Richards ("Richards") is a Texas resident, living in Harlingen. (*Id.* ¶ 3).  During the time of the events alleged in Plaintiff's First Amended Complaint, Richards was a member of the Quality Chekd board of directors and was simultaneously the chairman of the board of Cohyco. (*Id.* ¶ 11).  He was also chairman of the board of Hygeia Dairy Company ("Hygeia"), a Cohyco subsidiary and a Texas corporation. (*Id.* ¶¶ 2, 11).  On or about December 1, 1999, Hygeia's assets were sold to Southern Food Groups ("Southern"); the restructured company is now known as "'F' Street Investments" ("F Street"). (*Id.* ¶¶ 2, 6).

In this action, Quality Chekd alleges that, in 1999, Richards deliberately and fraudulently concealed relevant financial information regarding Hygeia/F Street's economic health. (Plaintiff's Original Complaint ¶¶ 30, 34).  For that reason, Quality Chekd is suing Richards, individually, for fraud and breach of his fiduciary duties as a member of the Quality Chekd board of directors. (*Id.* ¶¶ 29-35).  Quality Chekd has also filed suit against Cohyco, claiming that Richard's wrongful conduct was committed on behalf of Cohyco and Hygeia/F Street, its subsidiary. (*Id.* ¶¶ 32, 35).  Finally, Quality Chekd claims that a civil conspiracy existed between Richards and Cohyco, which resulted in its economic injuries. (*Id.* ¶¶ 36-39).

Apparently, the dispute between these parties arose from Hygeia/F Street's actions while a member of the Quality Chekd dairy-industry cooperative. (Plaintiff's Amended Complaint ¶ 8). Hygeia/F Street participated in a "high volume purchasing program," administered by Quality Chekd, which allowed it to "benefit from the greater purchasing power of the group." (*Id.* ¶ 9; Defendants' Motion at 2). As Plaintiff describes this program, each member company is permitted to order dairy materials, equipment, services and supplies directly from the vendors. The vendors then deliver the products directly "to the members, but bill Quality Chekd. Quality Chekd pays the vendors and then invoices the respective members for the amount of their orders." (First Amended Complaint ¶ 9). Any balance that remains unpaid for twenty-one days, after the invoice date, is considered an "over term." (*Id.*). Quality Chekd is permitted, by agreement, to assess interest on the "over term" amounts. (*Id.*).

In this action, Plaintiff complains that Hygeia/F Street's "over terms" account increased dramatically, from March 31, 1999, to June 30, 1999. (*Id.* ¶ 13). During this period, Quality Chekd reportedly attempted to "resolve the problem of Hygeia's account with Richards, who at all times acted and spoke for Hygeia." (*Id.* ¶ 17). On June 23, 1999, Hygeia allegedly agreed to make scheduled payments to Quality Chekd to reduce its debt, and the two companies set a cap on the amount of credit that Quality Chekd would extend to Hygeia in the future. (*Id.*).

While this agreement was being negotiated, Quality Chekd's management allegedly "attempted to obtain financial information from Hygeia," but was refused that information. (*Id.* ¶ 14). Richards allegedly placated Quality Chekd by advising it that "Hygeia was seeking new banking relationships." (*Id.* ¶ 14). Plaintiff contends, however, that Richards knew at that time that "Hygeia's audited financial statements for 1998 . . . reflected a 'going concern' or 'liquidity' warning which essentially would have disqualified Hygeia from such financial assistance." (*Id.*). In fact,

Plaintiff claims that Richards knew that "sometime during late 1998 or early 1999, [Hygeia had] lost the ability to secure bank or other commercial financing for some or all of [its] operating capital needs" (*Id.*). Further, and also unknown to Quality Chekd, Richards was allegedly negotiating a sale of Hygeia's assets to Southern Food Group ("Southern"). (*Id.* ¶ 23). While he was assuring Quality Chekd of Hygeia's financial viability, Richards reportedly knew that Southern's negotiated purchase price "could not pay Hygeia's debts," and that Hygeia was to be restructured so that "virtually all" of that company's remaining assets would be diverted to Cohyco. (*Id.* ¶¶ 6, 16).

Plaintiff complains that Hygeia did not pay down its debt in compliance with the agreed schedule, and that "both the total amount of the balance and the amount [of] 'over terms' continued to grow" in excess of the agreed cap. (*Id.* ¶ 18). On October 28, 1999, Quality Chekd was informed about the pending sale to Southern by Doug Purl ("Purl"), a Hygeia officer and Richards' nephew. (*Id.* ¶ 21). Purl and Richards reportedly "led Quality Chekd's management to believe that the account would be paid in full when Hygeia's accounts receivable were collected." (*Id.*). In November, 1999, Quality Chekd again purportedly requested financial information from Hygeia, but again, it was refused. (*Id.* ¶ 14). It is uncontroverted that, "on or about November 30, 1999, Hygeia sold its principal assets to Southern." (*Id.* ¶ 22; *see also* Defendants' Motion at 2). Although Richards apparently did not inform Quality Chekd of the sale at that time, he allegedly indicated, "for the first time," that Hygeia might not be able to pay its debt to Quality Chekd. (First Amended Complaint ¶ 21). He also stated "that no payments would be made to creditors until all of Hygeia's receivables were collected." (*Id.*). Notwithstanding the significant "over terms," Hygeia continued to participate in the Quality Chekd purchasing program throughout December 1999. (*Id.* ¶ 19).

On December 20, 1999, Southern formally notified Quality Chekd that it had purchased Hygeia's assets, and that "there was no assumption by Southern of any Hygeia liability incurred

before December 1, 1999." (*Id.* ¶ 22). Subsequently, on January 25, 2000, Plaintiff alleges that "Hygeia management advised Quality Chekd for the first time that perhaps less than fifty percent of its balance would be paid." (*Id.* ¶ 21). Reportedly, $1,601,000 remains unpaid on Hygeia's account. (*Id.* ¶ 26).

In this suit, Plaintiff claims that Richards knowingly structured the sale of Hygeia's assets to Southern so that he, and Cohyco, would benefit financially to the detriment of the company's unsecured creditors, including Quality Chekd. (*Id.* ¶¶ 23-28). Plaintiff alleges that, prior to the sale, "Hygeia owed approximately $7 million to Congress Financial Services ('Congress'); $5.1 million to unsecured creditors; and . . . $16 million to Cohyco." (*Id.* ¶ 24). Southern then paid $9 million for all of Hygeia's assets, except for "five parcels of real estate, Hygeia's accounts receivable and certain of the processing and manufacturing equipment," which had a total value of approximately $3 million. (*Id.* ¶¶ 23, 24). Some time after the sale, Congress reportedly released its liens to Cohyco in return for $7 million. (*Id.* ¶ 24). Cohyco then "took deeds in lieu of foreclosure to all five parcels of real estate." (*Id.*). As a result of these transactions, Hygeia retained $3 million in assets, but owed approximately $12.5 million to Cohyco, its parent company. (*Id.*). Hygeia then changed its name to "'F' Street Investments." (*Id.* ¶ 6).

On March 17, 2000, Quality Chekd filed suit against Hygeia/F Street, Cohyco, and Richards in the Houston Division of the Southern District of Texas. (Complaint, Docket Entry #1). Two months later, F Street filed for bankruptcy in the Brownsville Division, and it asked that the entire matter be brought before the bankruptcy court. (Suggestion of Bankruptcy *and* Notice to Parties of Automatic Reference of Civil Action to the Bankruptcy Court *and Ex Parte* Motion for Order Confirming Automatic Reference to Bankruptcy Court, Docket Entry #11). F Street based its request on a 1984 general order, by then Chief Judge John Singleton, directing the automatic transfer of

5

cases to the bankruptcy court in certain circumstances. (*See id.*, Exhibit A: Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*). Quality Chekd opposed a reference of its claims to the bankruptcy court, and the district court refused to order the automatic reference. (Plaintiff's Opposition to *Ex Parte* Motion for Order Confirming Automatic Reference to Bankruptcy Court and Alternative Motion to Withdraw any Referral to the Bankruptcy Court, Docket Entry #12; Order Denying Defendant's *Ex Parte* Motion for Order Confirming Automatic Reference to Bankruptcy Court, Docket Entry #17; Amended Order Granting Plaintiff's Motion to Withdraw any Referral to the Bankruptcy Court, Docket Entry #19). That order was without written opinion.

Following that order, a flurry of motions ensued. Among other things, Defendants asked for a transfer of venue to the district court in the Brownsville Division. (Defendants Cohyco, Inc. and H. Lee Richards' Motion to Transfer Venue ["Defendants' First Motion to Transfer"], Docket Entry #22; Joinder of Defendant F Street Investments, Inc., in Co-Defendants' Motion to Transfer Venue, Docket Entry #24). Quality Chekd opposed any transfer; but in the event the court favored Brownsville over Houston, it conditionally requested a transfer to Illinois instead. (Plaintiff Quality Chekd, Inc.'s Opposition to Defendant's Motion to Transfer Venue *and* Plaintiff's Conditional Motion to Transfer Venue to Illinois ["Plaintiff's Opposition to Transfer"], Docket Entry #23). On August 15, 2000, Plaintiff moved to dismiss all claims against F Street, without prejudice. (Plaintiff's Motion to Dismiss Proceedings as to "F" Street Investments, Inc. Without Prejudice; Docket Entry #31). Two months later, it asked to amend its complaint to reflect the fact that it no longer made any claims against F Street/Hygeia. (Plaintiff Quality Chekd Dairies, Inc.'s Motion for Leave to File First Amended Complaint, Docket Entry #40).

On January 22, 2001, a motion conference took place before this court. (Minute Entry, Docket Entry #47; Transcript of Proceedings of Oral Motion Hearing ["Tr."], Docket Entry #72).

6

At that conference, Plaintiff's pending motion for leave to file an amended complaint was granted, but Quality Chekd was ordered to file a second amended complaint, on or before February 20, 2001, to clarify its claims against Cohyco and Richards. (Tr. at 12, 45). Further, because the parties disagreed on whether F Street's dismissal should be with prejudice, the court ordered Cohyco's lawyer to submit a proposed order on the motion to dismiss (Tr. at 44, 45). In addition, the court suggested that the remaining Defendants consider a request to refer the case to bankruptcy court. (Tr. at 31). Cohyco was ordered to submit any such motion to transfer or for dismissal on or before March 20, 2001, and all other outstanding motions were rendered moot. (Docket Entry #47; Tr. at 45).

Following the hearing, Plaintiff never filed a second amended complaint, and its first amended complaint, therefore, sets out the relevant allegations. (*See generally* First Amended Complaint). That complaint makes claims against Richards and Cohyco only; Hygeia/F Street is no longer named as a defendant. (*Id.*). In that pleading, Quality Chekd alleges that it would not have extended credit to Hygeia if Richards had disclosed "the true condition and plans of Hygeia and Cohyco." (*Id.* ¶ 15). It alleges further that Richards breached his fiduciary duty as a director of Quality Chekd because he deliberately concealed relevant information about Hygeia's financial status, and he failed to "disclose that he was engaged in negotiations to consummate the sale of Hygeia's assets for a price and under a corporate relationship which would divert virtually all of the sales proceeds and remaining assets to Cohyco." (*Id.* ¶ 30). Plaintiff elaborates on this allegation with an assertion that Richards "used his relationships and position of trust with Quality Chekd's management for the benefit of Hygeia," and that he "served his own interests because he and his family interests were the principal owners of Cohyco." (*Id.*). Finally, Quality Chekd alleges that Richards committed fraud by knowingly and willfully withholding "information about Hygeia's

7

financial condition, the existence and terms of the sale of Hygeia's assets, the fact that there would not be sufficient funds to pay Hygeia's obligations to Quality Chekd, and other material information." (*Id.* ¶ 34). Quality Chekd alleges further that Richards made "repeated false representations with respect to the payment of [Hygeia's] account when he knew that could not be paid." (*Id.*). Plaintiff claims that Cohyco, as well as Richards, is liable for both fraud and breach of fiduciary duty "because Richards' wrongful conduct was committed in the course and scope of his employment with Hygeia and Cohyco, . . . on . . . [their] behalf." (*Id.* ¶¶ 32, 35). Plaintiff claims too that "Richards and Cohyco entered into a civil conspiracy to prevent the debt due from Hygeia to Quality Chekd from being paid and to divert any residual assets of Hygeia to Cohyco." (*Id.* ¶ 37). Plaintiff argues that "[t]he conspiracy was not merely between Richards as a director of Cohyco and the company, but also between Richards as an individual pursuing his own interests." (*Id.*). Quality Chekd seeks actual and punitive damages on the claims for fraud, conspiracy, and breach of fiduciary duty. (*Id.* ¶¶ 31, 34, 39). It also wants an accounting on any "assets and their proceeds which Cohyco acquired through Richards' breach of fiduciary duty or fraud." (*Id.* ¶ 41). In addition, Plaintiff asks the court to impose a constructive trust or an equitable lien on any Richards or Cohyco assets that were obtained through the allegedly wrongful conduct. (*Id.* ¶ 42).

On February 20, 2001, Plaintiff filed a written opposition to any referral to the bankruptcy court, as discussed at the motion conference. (Plaintiff's Opposition to Referral of Case ["Plaintiff's Opposition to Referral"], Docket Entry #48). In response, F Street expressly asked the court to make such a reference. (Response of F Street Investments Inc. to Plaintiff's Opposition to Referral of Case *and* Motion for Reference of Case to Bankruptcy Court, Docket Entry #51). Cohyco and Richards (collectively, "Defendants") filed a similar motion on the same date. (Defendants' Motion). With that request, Cohyco and Richards also moved for partial summary judgment on the civil conspiracy

8

claim, and for a transfer of venue to the Brownsville Division. (*Id.*). Quality Chekd moved to strike

F Street's pleading, noting that no claims were pending against that entity. (Plaintiff's Motion to

Strike). The court agrees with Quality Chekd, and that motion should be GRANTED.

While the motions were pending, Quality Chekd informed the court that the parties to this

case, and the parties to the bankruptcy proceeding, had agreed to enter into mediation before the

Honorable Ruby Sondock. (Notice of Agreement of a Mediator and Mediation Schedule, Docket

Entry #63). Accordingly, the case was referred to mediation and the proceedings before this court

were stayed. (Order Granting Motion for Continuance, Docket Entry # 65; Order Referring Case to

Mediation, Docket Entry #66). Apparently, the complexity of the claims and defenses required

several sessions with the mediator. Subsequently, the parties notified this court that there was no

hope of resolution. (Status Report by Quality Chekd Dairies, Inc., Docket Entry #67).

Three substantive issues are before the court. First, Defendants' request a judgment in their

favor on Plaintiff's civil conspiracy claim. (Defendants' Motion at 1, 4, 5). Defendants argue

specifically that "Richards is a shareholder, officer, and/or director of Cohyco, and therefore Cohyco

and Richards are not separate persons capable of forming a 'meeting of the minds' as required to

form a civil conspiracy." (*Id.* at 4). Second, Defendants ask for a "referral of the remaining causes

of action to the Bankruptcy Court in Brownsville . . . because this matter could conceivably have an

effect on the size of Hygeia's estate in bankruptcy, or the amount of funds distributable to creditors

of Hygeia, including Quality Chek'd." (*Id.*). Third, Defendants want the dispute transferred to the

Brownsville Division, contending that both convenience and the interest of justice require such a

transfer. (*Id.*). After a consideration of the motions, the evidence submitted, and the applicable law,

it is ORDERED that Defendants' motion to transfer venue is GRANTED. For obvious reasons,

those pending motions on dispositive issues, and the request for a referral to bankruptcy court,

should be left to the discretion of the transferee court. To assist that court, however, those two issues are addressed briefly below.

### Discussion

#### *Transfer of Venue*

Defendants ask the court to transfer these claims to the Brownsville Division of the Southern District of Texas for final disposition of this civil action, pursuant to 28 U.S.C. § 1404(a). (Defendants' Motion at 14). Defendants claim that such a transfer is appropriate because "none of the parties, witnesses or evidence is located in the Houston Division. Rather, all material witnesses and evidence are located in or near the Brownsville Division and all parties are actively participating in related litigation in the Brownsville Division." (*Id*.). On that basis, Defendants argue that a transfer of this case would be "in the interest of justice." (*Id*.). Plaintiff does not deny that it is a party to the F Street/Hygeia bankruptcy litigation in Brownsville. Nonetheless, it argues that "[t]ransfer of this case to the Brownsville Division of the District Court would inconvenience more parties and witnesses than it would help." (Plaintiff Quality Chekd Dairies, Inc.'s Response and Opposition to Defendants Cohyco, Inc.'s and H. Lee Richards' Motion for Summary Judgment, Motion for Referral to the Bankruptcy Court and Motion to Transfer ["Plaintiff's Response"] ¶ 5, Docket # 56). Quality Chekd contends that "numerous plaintiff's witnesses will have to come from Illinois and other points outside of Texas. The location, transportation, facilities and accommodations in Houston will be more convenient to them than those in Brownsville." (*Id*. ¶ 27). Plaintiff asks, therefore, that the case remain in the Houston Division. (*Id*.).

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district or division where it might have been brought," if such transfer is deemed to promote "the convenience of parties and witnesses, [and] . . . the interest of justice." 28 U.S.C. § 1404(a). District

courts have great discretion to decide whether to grant a transfer under § 1404(a), particularly when the transfer is within the same judicial district. *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 339 (5th Cir. 1999); *Peteet v. Dow Chemical*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied sub nom. Dow Chem. Co. v. Greenhill*, 493 U.S. 935 (1989); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). The United States Supreme Court has held that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In deciding whether to grant a § 1404(a) motion to transfer, a court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet*, 868 F.2d at 1436. The relevant factors include the following:

> the availability and convenience of witnesses and parties, the location of counsel, the location of pertinent books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference.

*Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1107 (S.D. Tex. 1997); *see also Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1065 (S.D. Tex. 1996); *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. 1996). However, how these factors are balanced depends on the specific facts of each case. *See Stewart Org.*, 487 U.S. at 29. And it is the movant's burden to show that the balance of factors weigh in favor of a change of venue. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

Even given the balancing required, however, a trial court will generally defer to the plaintiff's choice of forum in a venue dispute. *Robertson*, 979 F. Supp. at 1109. That choice is considered to

be "most influential and should rarely be disturbed unless the balance is strongly in [the] defendant's favor." *Id.* (quoting *United Sonics, Inc. v. Shock*, 661 F. Supp. 681, 683 (W.D. Tex. 1986)). That deference, however, is not absolute. In fact, "close scrutiny is given to Plaintiff's choice of forum when the Plaintiff does not live in the Southern District." *Id.*; *see also Henderson*, 918 F. Supp. at 1068; *Dupre*, 810 F. Supp. at 828). "Where . . . the other factors weigh strongly in favor of transferring the case, the Plaintiff's choice of forum alone cannot be controlling." *Henderson*, 918 F. Supp. at 1068. Here, Plaintiff is based in Naperville, Illinois, and it is incorporated in Wisconsin. (First Amended Complaint ¶ 4). It has not shown any connection with this district. Clearly, if the other factors weigh in favor of a transfer to the Brownsville Division, then Quality Chekd's preference for the Houston Division does not control.[1]

Further, among the factors considered, "[t]he place of the alleged wrong is perhaps the most important factor in venue determination." *Robertson*, 979 F. Supp. at 1108. It is easy to see that "suits involving plaintiffs who live and were injured in another judicial district work to delay the trials of resident plaintiffs." *Henderson*, 918 F. Supp. at 1067. Courts recognize that if the plaintiff's claims "have absolutely no connection" to the chosen district, and if he resides elsewhere, then "transfer is appropriate." *Id.* at 1065. Here, Quality Chekd insists that none of the transactions central to its claims occurred in the Brownsville Division. (*See* Plaintiff's Opposition to Transfer ¶ 21, *incorporated by reference in* Plaintiff's Response at 12, *and attached as* Exhibit A). It has not, however, pointed to any evidence that shows that the alleged wrongs took place in the Houston Division either. Indeed, Quality Chekd alleges that "the actual place of the incidents giving rise to this civil action was in Chicago where Mr. Richards breached his fiduciary duties." (*Id.*). For their

---

[1] It is unclear whether Plaintiff continues to urge its earlier "Conditional Motion to Transfer Venue to Illinois." However, given the fact that Plaintiff chose to file its suit in this district to begin with, such an argument is unavailing.

part, Defendants argue that Richards's alleged misconduct took place when he "was a shareholder, officer, and director of Hygeia and Cohyco." (Defendants' First Motion to Transfer at 4, *incorporated by reference in* Defendants' Motion at 14 n.17, *and attached as* Exhibit F). During the relevant time, the corporate offices of those two companies were located in Harlingen, Texas, a city within the Brownsville Division. (*Id.*). From this evidence, there is no showing that Houston is the place of the alleged wrong, and so that factor weighs in favor of a transfer to Brownsville. *See Robertson*, 979 F. Supp. at 1108; *Henderson*, 918 F. Supp. at 1065, 1067.

Another highly important factor, often considered the most important one, is the convenience to the witnesses and parties. *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994); *Dupre*, 810 F. Supp. at 825. In considering this factor, "a court must concentrate primarily upon the availability and convenience of key witnesses." *Dupre*, 810 F. Supp. at 825. For that reason, the moving party must make more than a general allegation that certain key witnesses reside outside the chosen forum. *Federal Trade Comm'n v. Multinet Mktg., LLC*, 959 F. Supp. 394, 396 (N.D. Tex. 1997); *Dupre*, 810 F. Supp. at 825 (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3851 at 425 (1986)). "The movant must specifically identify key witnesses and outline the substance of their testimony." *Multinet Mktg.*, 959 F. Supp. at 396; *Dupre*, 810 F. Supp. at 825. It has long been held that "[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Le Bouef v. Gulf Operators, Inc.*, 20 F. Supp.2d 1057, 1059 (S.D. Tex. 1998); *Dupre*, 810 F. Supp. at 825.

Here, the Rule 26 disclosures by the parties detail that three likely key witnesses reside in the Brownsville Division. (Defendants' First Motion to Transfer at 5; Defendants' Motion, Exhibit F5: Plaintiff Quality Chekd Dairies, Inc's Rule 26 Disclosures ["Plaintiff's Rule 26 Disclosures"]; Defendant's Motion, Exhibit F6: Defendants Cohyco, Inc. and H. Lee Richards' Initial Disclosures

13

Pursuant to Rule 26(A) ["Defendant's Rule 26 Disclosures"]). F. Lee Richards, Merry Richards,[2] and Doug Purl have been named by both parties as persons with information relevant to this case. (*See* Defendants' Rule 26 Disclosures at 1-2; Plaintiff's Rule 26 Disclosures ¶ 1(i)-(k)). All three of these witnesses were shareholders, officers, and directors of Hygeia and Cohyco during the relevant time frame. (*See* Defendants' Rule 26 Disclosures at 1-2; Plaintiff's Rule 26 Disclosures ¶ 1(i)-(k)). However as a Defendant, and employees of a Defendant, their convenience is afforded little weight when compared to that of other key witnesses. *See Robertson*, 979 F. Supp. at 1107; *Continental Airlines*, 805 F. Supp. at 1397. But in weighing the relative convenience to the witnesses in this case, it should be noted that none of the other designated witnesses reside in the Houston Division, or even in Texas. Instead, these witnesses live in Illinois, Oregon, Missouri, California, and Colorado. (Defendants' First Motion to Transfer at 5; Defendants' Rule 26 Disclosures; Plaintiff's Rule 26 Disclosures). For this reason, even Plaintiff's chosen forum cannot be said to be particularly convenient for any or all of these individuals.

In that regard, Quality Chekd argues that, although it could have sued Cohyco and Richards in Illinois,

> because of the probable application of Texas law to many of the issues involved, [it] brought this suit in one of the districts and divisions in Texas that was central geographically to transportation terminals from points throughout the country.

(Plaintiff's Opposition to Transfer ¶ 9). Plaintiff contends that Brownsville is not centrally located, and so its key witnesses will suffer more inconvenience if they must testify there, rather than in Houston. (*See* Plaintiff's Response ¶ 27). This court chooses not to explore the merits or relative comforts of one city against another in this district. Further, Plaintiff chose to litigate in this district, and its decision is relevant to the inquiry. The court anticipates that "[t]he only additional

---

[2] Merry Richards is H. Lee Richards's sister. (First Amended Complaint ¶ 23)

inconvenience will be the slightly longer travel time" that it may take these witnesses to reach Brownsville from their diverse locations. *See Continental Airlines*, 805 F. Supp. at 1397. Further, most, if not all, of these witnesses are Quality Chekd directors, and they surely anticipated certain inconvenience, and travel, as a result of the suit and Plaintiff's choice of this district as the forum in which to pursue its claims. (*See* Plaintiff's Rule 26 Disclosures ¶ 1(a)-(h)). Although Quality Chekd has also named certain Southern Foods employees as possible witnesses, it has not provided any addresses for them, or any statement of their probable testimony. (Plaintiff's Rule 26 Disclosures ¶ 1(l)-(o)). The court is, therefore, unable to determine if these individuals are key witnesses, or if they will be inconvenienced by a change of venue. For all of these reasons, the court concludes that Plaintiff's witnesses will not be unduly burdened by a transfer of this case to the Brownsville Division.

Plaintiff next argues, and the court agrees, that it must also consider the location of pertinent books and records. On that issue, Defendants have provided undisputed evidence that "[a]ll important corporate documents needed to disprove Plaintiff's allegations are located in either the corporate offices of Hygeia or Cohyco, both of which are in Harlingen." (Defendants' First Motion to Transfer at 6) (citing Defendants Motion, Exhibit F2: Affidavit of H. Lee Richards ["Richards Affidavit"] ¶ 2). Richards swears, by affidavit, that neither he, Hygeia, nor Cohyco maintain "assets, facilities, records or employees" in Houston. (Richards Affidavit ¶ 3). Further, it is likely that some of the Hygeia records needed for this litigation are also be relevant to the F Street bankruptcy litigation, which is currently proceeding in Brownsville. On the other hand, Quality Chekd argues that all of its relevant records are kept in Naperville, Illinois. (Plaintiff's Rule 26 Disclosures ¶ 2). But, without a more compelling showing, the court concludes that it is no more inconvenient to bring

these records to Brownsville than it is to bring them to Houston. Given the evidence presented, this factor weighs in favor of a transfer to the Brownsville Division.

The court must also consider the location of trial counsel and the cost of obtaining attendance of witnesses, as well as other trial expenses. *Robertson*, 979 F. Supp. at 1107. Neither party argues that trial costs will be any different in Brownsville than in Houston, so that factor has little significance here. Further, the location of counsel is "entitled to the least consideration" of all the factors. *Robertson*, 979 F. Supp. at 1108. Nonetheless, the court must "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *See id.*; *Dupre*, 810 F. Supp. at 823. Quality Chekd has, indeed, chosen a Houston law firm to prosecute its claims. Because Defendants' attorneys are located in the Corpus Christi Division, this factor may weigh against a change of venue, but it is of little significance in this instance

Finally, the court must consider issues of delay and prejudice. Plaintiff argues that Defendants may be seeking a litigation advantage along with a transfer. (Plaintiff's Opposition to Transfer ¶ 16). Quality Chekd contends that "[i]t would be to [Defendants'] advantage to try the case where the jury panel would be much more likely to have heard of their former dairy operations and know of or be aware of the individual Defendant Richards, who is a long time citizen in Harlingen." (*Id.*). This court is confident, however, that the Brownsville court will ensure that *voir dire* is conducted so as to minimize the possibility of jury bias. Further, there is little likelihood that a change of venue will unduly delay the proceedings, as either this court or the Brownsville Division must still address the question of a referral to the bankruptcy court. If the referral is granted, it will be to the bankruptcy court sitting in Brownsville. In fact, the undisputed evidence shows that Quality Chekd has already appeared in the Brownsville Division, in connection with Hygeia's

16

bankruptcy proceeding. (Defendants' Motion, Exhibit F8). Delay and prejudice do not seem to be significant factors in this analysis.

On consideration of the evidence submitted, the balance of the relevant factors is persuasive that "the litigation would more conveniently proceed and the interests of justice be better served by transfer" to the Brownsville District, under § 1404(a). *See Peteet*, 868 F.2d at 1436; *see also Stewart Org.*, 487 U.S. at 29. For that reason, it is ORDERED that Defendants' motion for a transfer of venue be GRANTED. If, for some reason, this ruling is deemed to have a dispositive effect then, in the alternative, it is RECOMMENDED, under 28 U.S.C. §636(b)(1)(B), that Defendants' motion for a transfer of venue be GRANTED. The parties will have ten (10) days to object to the factual and legal findings in this recommendation.

### Civil Conspiracy

Although Defendants' motion for partial summary judgment is best left for the transferee court to decide, to assist that court in a resolution of that motion, it is RECOMMENDED that it be GRANTED, for the reasons set out below.

Defendants argue that they are entitled to summary judgment on Plaintiff's claim of conspiracy because "Cohyco cannot conspire with its own officer and director." (Defendant's Motion at 5). Defendants contend that, under Texas law, a conspiracy requires "a meeting of minds" between two or more persons who "specifically intend to accomplish an unlawful purpose." (*Id.* at 6) (citing *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995); *Massey v. Armco Steel Co.*, 652 S.W.2d 716, 719 (Tex. 1983)). Defendants point out that there cannot be a conspiracy between Richards and Cohyco, under the relevant law, because "a person cannot conspire with himself, even though he may have had legal capacities." (*Id.* at 7). Defendants argue further that a corporation cannot conspire with its own employees, as a matter of law, and a parent corporation

cannot conspire with its wholly owned subsidiary. (*Id.*) (citing *Griffin v. GK Intelligent Systems*, 87 F. Supp.2d 684, 690 (S.D. Tex. 1999); *Atlantic Richfield Co. v. Misty Products, Inc.*, 820 S.W.2d 414, 420 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Defendants insist that, under this line of reasoning, "an agent of a parent corporation cannot conspire, within the course and scope of his agency relationship, with an agent of a wholly-owned subsidiary." (*Id.*) (citing *Atlantic Richfield*, 820 S.W.2d at 421). Finally, Defendants argue that holding a parent liable, through civil conspiracy, for the tort of a subsidiary, "would allow a piercing of the corporate veil without a showing of actual fraud, in contravention of Texas statutory law." (*Id.* at 8) (citing TEX. BUS. CORP. ACT § 2.21 (Vernon Supp. 2000); *Menetti v. Chavers*, 974 S.W.2d 168, 173-74 (Tex. App.—San Antonio 1998, no writ).

In response, Quality Chekd alleges that "Richards was not only acting on behalf of Cohyco, he was also acting on behalf of himself and his sister." (Plaintiff's Response ¶ 21). It argues that "if the officer or director is acting at least in part in his own interest," then there is no longer a presumption that the act of the individual is an act of the corporation. (Plaintiff's Answer to Defendants Cohyco, Inc.'s and H. Lee Richards' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment ¶ 24, Docket Entry #68)

Plaintiff's claim of a civil conspiracy is governed by Texas law. The Texas Supreme Court has defined "civil conspiracy" as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 975 S.W.2d 546, 553 (Tex. 1998); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 938 (Tex. 1983). It is axiomatic that a person cannot conspire with himself. In that regard, it is also a well-settled "rule of law that agents and their principals cannot conspire together." *Bradford v. Vento*, 997 S.W.2d 713, 729 (Tex. App.—Corpus

18

Christi 1999), *aff'd* 48 S.W.3d 749, 761 (Tex. 2001). Further, "a corporation can not conspire with itself, no matter how many corporate agents participate in the alleged conspiracy." *Id*. All parties here agree that, at the time of the events alleged, Richards was an officer and director of Cohyco. (*See* Plaintiff's Response ¶ 20). Further, Plaintiff has insisted that "Richards was, at all times, the controlling person [who] . . . made the decisions." (*Id*.). Plaintiff has not alleged that any other individual was involved in these decisions. Essentially, Quality Chekd's argument is that Richards, acting as a Cohyco fiduciary, conspired with himself, acting in his own interests. That allegation does not state a cause of action for civil conspiracy under the current law. Accordingly, Defendants' motion for partial summary judgment, on the civil conspiracy claim, should be GRANTED.

### *Referral to Bankruptcy Court*

As noted throughout, Defendants want this dispute referred to the bankruptcy court, albeit for resolution of all "pre-trial" matters. (Defendants' Motion at 9). It seems obvious, however, that a reference to the bankruptcy court should be for all purposes or for none at all. Defendants argue that a referral to the bankruptcy court is appropriate, under Fifth Circuit precedent, because these claims "relate to" the Hygeia/F Street bankruptcy because Quality Chekd's success could affect the amount of the bankruptcy estate that is available for distribution to unsecured creditors. (*Id*. at 9) (citing 28 U.S.C. § 157; *In re J.R. Canion, Jr. v. Evans*, 196 F.3d 579, 585-87 (5th Cir. 1999)). And, more importantly, Defendants insist that a referral would increase judicial efficiency because discovery would not be duplicated, and the risk of inconsistent findings between the bankruptcy and district courts would be eliminated. (*Id*. at 13). In response, Plaintiff insists that "[r]eferral to Bankruptcy court would create a cumbersome arrangement and create an unnecessary jurisdictional issue" by carving the case up among several courts. (Plaintiff's Response ¶1).

19

Under 28 U.S.C. § 1334(c)(1), district courts have "original, but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(c)(1). It is clear that Quality Chekd's argument, that referral would create an unnecessary jurisdictional issue, is without merit. Moreover, the Bankruptcy Code permits a district court to refer such proceedings to the bankruptcy court in appropriate circumstances. 28 U.S.C. § 157(a); *In re Canion*, 196 F.3d at 584-85. The United States Court of Appeals for the Fifth Circuit has determined that "A proceeding is 'related to' a bankruptcy 'if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id.* at 585; *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995)). However, "common facts alone are insufficient to confer 'related to' jurisdiction." *Id.*

Here, Defendants insist that this case "could conceivably have an effect on the Hygeia bankruptcy estate because it could [a]ffect the amount of the estate available to be distributed to Quality Chek'd and/or other unsecured creditors of Hygeia." (Defendants' Motion at 9). They argue that this circuit has "found 'related to' jurisdiction in situations where the bankruptcy estate would either be increased or reduced as a result of a separate claim between two non-debtors." (*Id.* at 10) (citing *In re Canion*, 196 F.3d at 586-87). They maintain that the damages sought by Quality Chekd are "based upon the debt owed to Quality Chekd by Hygeia," and so "if Quality Chekd is successful in prosecuting its claim against Cohyco and/or Richards, Quality Chekd would lose its right to recover for its debt from the Hygeia bankruptcy estate." (*Id.* at 11). Further, any recovery by Quality Chekd from Cohyco or Richards would allegedly decrease "the total amount due on Quality Chekd's claims against Hygeia's bankruptcy estate." (*Id.*). In sum, Defendants contend that other unsecured creditors would have an increased "share in the disbursement that would otherwise have been paid to Quality Chekd." (*Id.*).

Plaintiff argues, in response, that a case "relates to" a bankruptcy proceeding only if that case could conceivably have some effect on the bankruptcy estate. (Plaintiff's Response ¶ 25). Quality Chekd contends that, in truth, the reverse situation is present here. (*Id.*). Plaintiff claims that while the Hygeia/F Street bankruptcy litigation might affect these claims, this case cannot impact the bankruptcy litigation. (*Id.* ¶ 25). It outlines its contentions in the following terms:

> The measure of damages against these defendants is how much the plaintiff lost due to their conduct. Defendants are entitled to a credit for any amount that Quality Chekd recovers form the bankruptcy estate. If the bankruptcy estate is not closed by the time that this case becomes final, any probable amount of recovery from the bankruptcy estate would be an issue for the jury, based on testimony about the facts. The verdict would thus fix a net amount due. If later the bankruptcy court distributed a greater amount of dividends to the plaintiff, the defendants would be entitled to a further credit. However, a recovery in this case would not affect the bankruptcy estate and since the jury verdict and judgment would take any actual and probable proceeds from the bankruptcy proceedings into account.

(*Id.*). It remains for the Brownsville district court to determine whether referral to the bankruptcy court is appropriate under these facts.

**Conclusion**

Based on the foregoing, it is ORDERED that Defendants' motion to transfer venue, under 28 U.S.C. § 1404(a), be GRANTED, and that this case be transferred to the United States District Court for the Southern District of Texas, Brownsville Division.

The Clerk shall enter this Order and provide a true copy to all counsel of record.

In the alternative, should this be considered a dispositive matter, the parties will have ten (10) days from the receipt of it to file written objections thereto, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 80-5, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the

chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

SIGNED at Houston, Texas, this _____ of January, 2002.

_____
MARY MILLOY
UNITED STATES MAGISTRATE JUDGE

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, Clerk
By_____
Deputy Clerk

22



United States Courts
Southern District of Texas
FILED
JAN 3 1 2002
Michael N. Milby, Clerk

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## UNOPPOSED MOTION OF H. LEE RICHARDS FOR LEAVE
## TO FILE HIS SECOND AMENDED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant H. Lee Richards, and moves this Court to allow him to amend his answer, and in support thereof would show as follows:

### I.

Plaintiff Quality Chek'd Dairies, Inc. recently produced a copy of their Bylaws dated December 7, 1999 (See Exhibit "A" attached). Section 8 of the attached Bylaws creates an obligation on behalf of Quality Chek'd to indemnify its directors and agents for liability incurred as a result of lawsuits brought by Quality Chek'd against such directors or agents (See Exhibit "A" attached). The basis of this lawsuit against Defendant H. Lee Richards is that he allegedly breached his fiduciary duty as a director to Quality Chek'd. Based upon this action, the attached Bylaws give

47527:999472.1:012902

Defendant Richards the right of indemnity against Quality Chek'd under the circumstances described by the Bylaws.  Richards seeks to amend his pleadings to assert this indemnity right.

## II.

None of the other parties to this litigation, including Plaintiff Quality Chek'd, object to the amendment of pleadings requested by this Motion.  No pretrial or trial setting will be delayed as a result of this amendment.

## III.

Defendant Richards' proposed amended pleading is attached to this Motion as Exhibit "B."

WHEREFORE, PREMISES CONSIDERED, Defendant H. Lee Richards moves this Court to allow him to amend his answer, and for such other and further relief to which he is entitled.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____
     Christopher Lowrance
     Attorney-in-Charge
     State Bar No. 00784502
     1700 Wilson Plaza West
     606 North Carancahua
     Corpus Christi, Texas 78476
     (361) 884-8808
     (361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS
COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

47527:999472.1:012902                                    -2-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated below to counsel of record on this the 21th day of January, 2002.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Hamel, Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007

Mr. Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

Of Royston, Rayzor, Vickery & Williams, L.L.P.

47527:999472.1:012902                    -3-

_**Amended: December 7, 1999**_

**BYLAWS**

**of**

**QUALITY CHEKD DAIRIES, INC. (Cooperative)**

<u>**ARTICLE I**</u>    (Name and Location)

The name of this Organization shall be QUALITY CHEKD DAIRIES, INC. (Cooperative), and its principal office shall be in the City of Naperville, Illinois. The Organization's registered agent is C T Corporation System at 44 East Mifflin Street, Madison, Wisconsin 53703.

<u>**ARTICLE II**</u>    (Business and Purpose)

The business and purpose of this Organization shall be:

<u>Section 1.</u>    To develop and maintain advertising, merchandising, sales assistance and promotional plans for the sale of dairy products, frozen foods, and other food specialties manufactured by members of this Organization;

<u>Section 2.</u>    To develop and promote a program for the purchase of merchandising supplies by members;

<u>Section 3.</u>    To borrow and loan money and to pledge any of the property of the Organization (real or personal) as security thereof;

<u>Section 4.</u>    To provide services of an advisory character on accounting, merchandising, distribution, procurement and manufacturing for the use and benefit of the members;

<u>Section 5.</u>    To adopt trademarks, brand names, standards of identity and standards of quality for the various products manufactured by members;

<u>Section 6.</u>    To issue licenses to members governing the manufacture and sale of products bearing the certification mark or trademarks owned by the Organization;

<u>Section 7.</u>    To lease, purchase, own and mortgage real and personal property;

<u>Section 8.</u>    The Organization shall designate and/or establish one or more laboratories for the purpose of research, improvement and maintenance of quality standards in the production of food products manufactured by members;

<u>Section 9.</u>    To enter into any and all contracts necessary or convenient for the business of the Organization;



DP 00005        1

QCD 000006

Section 10.   To do each and everything necessary, suitable or proper for the accomplishment of the purposes herein enumerated. To effectuate said purposes, the Organization shall have all the powers specified and provided by the laws of the State of Wisconsin.

## ARTICLE III   (Non-Stock)

This Organization is formed without capital stock and shall operate on a non-profit basis. The Organization shall not commence business until at least $500 membership capital has been subscribed.

## ARTICLE IV   (Property Rights)

The property right of the members shall be unequal and shall be in proportion to the amount of the respective contributions of the members to the Organization.

## ARTICLE V   (Membership)

The methods and conditions upon which members shall be accepted, discharged or expelled shall be as follows:

Section 1.   Classes of Members.  The Organization shall have the following classes of members:

(a)   Members (when the term "member" is used without qualification, it means one who has been qualified and accepted as a full voting member in the Organization as hereinafter set forth),

(b)   Associated Affiliate Members,

(c)   Independent Affiliate Members.

Section 2.   Members.  Membership as a member shall be limited to manufacturers and distributors of dairy products, frozen food products, and other food specialties;

Section 3.   Application for Admission as a Member.  Application for membership shall be promptly submitted to all members of the Organization. For admission to membership any applicant must be approved by a majority vote of all the members of the Organization whose votes are received within thirty (30) days of such submission.

Section 4.   Licensing and Membership Agreements.  As a condition of membership, the approved applicant shall sign the membership agreement approved by the members. At its option, the member may enter into a license agreement for the use of trademarks owned or controlled by Quality Chekd Dairies, Inc. Such License Agreement shall be in a form approved by a 2/3 vote of the Board of Directors in office as of entering into the License Agreement. The secretary shall issue a certificate of membership to each member.

Section 5.   Voting Power.  The voting power of all members shall be equal; each member shall have one vote and one vote only.

DP 00006        2

QCD 000007

**Section 6.**    **Discharge or Expulsion.**    A member may be discharged or expelled for cause by a three-fourths (3/4) affirmative vote of the Board of Directors in a duly constituted meeting; and approved by a three-fourths (3/4) affirmative vote of the members whose votes are received within thirty (30) days of such submission to all members of the Organization providing a majority vote.

**Section 7.**    **Associated Affiliate Members.**    Associated affiliate members shall be limited to manufacturers and distributors of dairy products, frozen food products and other food specialty products who are affiliated in a formal legal relationship with another member of the Organization. Such legal relationship is exemplified by way of illustration, but not by way of limitation, by being a corporate subsidiary or an affiliate of a member or a joint venturer with a member or be under a common ownership and control with a member.

**Section 8.**    **Application for Admission as an Associated Affiliate.**    Applications for associated affiliate membership shall be promptly submitted to the Executive Committee and must be approved by a majority vote of the Executive Committee duly convened pursuant to notice, providing that such approval by the Executive Committee shall be withdrawn if two-thirds (2/3) of the members vote against such applicant within thirty (30) days after the Managing Director notifies the regular membership as to the approval of the Executive Committee of such associated affiliate member, providing that such votes are cast in writing by the members and are signed by an officer of the member and are received by the Organization within the thirty (30) day period. A ballot will be forwarded for member vote.

**Section 9.**    **Licensing and Associated Affiliate Membership Agreement.**    As a condition of associated affiliate membership, the approved applicant shall sign the associated affiliate membership agreement approved by the Board of Directors. The Secretary shall issue a certificate of associated affiliate membership to each associated affiliate member.

**Section 10.**    **Independent Affiliate Members.**    Independent affiliate members shall be limited to manufacturers and distributors of dairy products, frozen food products and other food specialties.

**Section 11.**    **Application for Admission as an Independent Affiliate.**    Applications for independent affiliate memberships shall be promptly submitted to the Executive Committee and must be approved by a majority vote of the Executive Committee duly convened pursuant to notice, providing that such approval by the Executive Committee shall be withdrawn if two-thirds (2/3) of the members vote against such applicant within thirty (30) days after the Managing Director notifies the regular membership as to the approval of the Executive Committee of such independent affiliate members, providing that such votes are cast in writing by the members and are signed by an officer of the member and are received by the Organization within the thirty (30) day period. A ballot will be forwarded for member use.

**Section 12.**    **Independent Affiliate Membership Agreement.**    As a condition of independent, affiliate membership, the approved applicant shall sign the independent affiliate membership agreement approved by the Executive Committee. The Secretary shall issue a certificate of independent affiliate membership to each independent affiliate member.

QCD 000008

3

DP 00007

**Section 13.** Restrictions on Affiliate Membership. An affiliate member, either an associated affiliate member or an independent affiliate member, shall have no vote and may be discharged or expelled for cause by a three-fourths (3/4) affirmative vote of the Board of Directors in a duly constituted meeting.

**Section 14.** Rights and Privileges of Affiliate Members. Both associated affiliate members and independent affiliate members shall have only the following privileges of Organization membership:

(a) Staff personnel and services will be made available in the areas of quality control and manufacturing; marketing, advertising and sales; accounting, computer systems and software; and purchasing; as well as training and educational activities in each of such areas.

(b) Affiliate members may attend seminars and meetings sponsored by the Organization for affiliate members and excluding any meetings which are designated by the Board of Directors as reserved for members, such as the Annual Meeting of the Organization.

**Section 15.** Membership in the Organization shall only be transferable or assignable as provided in the following:

In the event the majority or controlling stock interest (fifty percent (50%) or more of the voting capital stock) of a corporate member or the controlling ownership or interest of a non-corporate member shall be transferred to, or controlled by, any person or corporation other than the ownership or control existing at the time of acceptance of such member by this Organization (whether accomplished by assignment, merger, consolidation, death, operation of law or otherwise), then any such assignee, successor or legal representative shall automatically succeed to and retain the membership of the predecessor (including the existing Licensing Agreement and the territorial rights thereunder) subject to the following:

(a) Written notice of any such transfer in ownership or control shall be given by such successor, assignee or legal representative, to the Managing Director of the Organization within sixty (60) days following such transfer; or within ninety (90) days after death in the case of the death of a member who is a natural person.

(b) Upon receipt of such written notice as provided in Section 6(a) above, the Managing Director of the Organization shall promptly give written notice thereof to the members. The membership shall be automatically retained by such successor, assignee, or legal representative unless two-thirds (2/3) of the members object, in writing, to such retention and such objections are received by the Managing Director within thirty (30) days after the mailing of such notice.

(c) In any instance where a member wishes to obtain a vote in advance of any proposed merger or transfer as herein above provided, then such member may do so and the above-specified procedure shall be followed, provided, that any such proposed transfer or merger takes place within twelve (12) months of the effective date of the approval of the membership retention.

QCD 000009

4

DP 00008

(d)    In the event any successor or assignee is already a member of the Organization, such successor or assignee shall have only one membership and one vote, but shall be authorized to retain existing territorial rights under any existing Licensing Agreement, in addition to succeeding to the transferred or assigned Licensing Agreement and the territorial rights thereunder.

## ARTICLE VI    (Finance)

Section 1.    Each new member shall pay a $500.00 membership fee upon application for membership and in addition thereto shall pay annual membership dues as shall be determined by Board of Directors, payable on the first day of October of the same year in which he becomes a member and on the anniversary of said date each year thereafter. EXCEPT that the initial membership fee shall be credited against annual membership dues for the first year or a portion of a year in which he became a member, with respect to the first day of October.

Section 2.    The business of the Organization shall be financed by funds paid in as membership fees, annual dues and contributions by members to cover the ordinary and necessary expenses of the operation. The annual contributions of members shall be determined by the Board of Directors.

Section 3.    Net proceeds in excess of the amount required for ordinary and necessary operating expenses shall be distributed at least once annually in proportion to the contribution made to the Organization by each member. Such distribution may be in the form of cash, fixed redemption value certificates with or without due dates or unfixed redemption value certificates with a fixed due date.

Each person who hereafter applies for and is accepted to membership in this cooperative, and each member of this cooperative, on the effective date of this Bylaw, who continues as a member after such date shall, by such act alone, consent that the amount of any distributions with respect to his patronage occurring after November 19, 1963, which are made in written notices of allocation (as defined in 26, U.S.C. 1388) and which are received by him from the cooperative, will be taken into account by him at their stated dollar amounts in the manner provided in 26 U.S.C. 1385 (a) in the taxable year in which such written notices of allocation are received by him.

Said written notices of allocation heretofore and hereafter issued constitute an indebtedness of the cooperative to the member receiving the same, but the repayment of such indebtedness to the members shall be limited until a permanent surplus reserve has been created which the Board of Directors determines is ample properly to finance the operations of the cooperative.

Section 4.    In the event of sale or liquidation (voluntary or involuntary, partial or total) any accumulation of reserves or assets, tangible or intangible, such as good will, sales rights, patent rights, or contracts, in excess of the amount necessary to retire all of the indebtedness of the Organization and to retire all of the certificates outstanding shall, after having been converted to cash, be distributed in an equitable manner in proportion to the respective contributions to said accumulated assets.

QCD 000010

5

DP 00009

## ARTICLE VII  (Membership Meetings)

**Section 1.**    The Annual Meeting of the members of the Organization shall be held on such date, at such time and at such locations as are from time-to-time designated by the Board of Directors.

**Section 2.**    Notice of the Annual Meetings of members and of any special meeting of members shall be given by the Secretary to all members of record by mail addressed to the last known post office address of the member, at least ten days before the holding of such meeting. In the case of special meetings, the notice shall state the purpose of the meeting.

**Section 3.**    The President shall preside at all such meetings. In the event the President is absent, the Vice President shall preside.

**Section 4.**    All voting at membership meetings, whether regular or special, shall be by ballot, subject to suspension of rules by unanimous vote.

In the election of Directors, each member shall have the right to vote for as many persons as there are Directors to be elected; and

Each member shall be entitled to one vote on each question submitted to the membership. Votes by mail shall be accepted, if in writing, certified to and signed by the member so voting; PROVIDING that a notice containing the exact text of the motion or resolution to be voted upon has been mailed to such member at the member's last known post office address; and that a copy of such motion or resolution is attached to, and forwarded with, the vote so mailed by the absent member.

**Section 5.**    Twenty percent (20%) of the membership shall constitute a quorum at any membership meeting.

**Section 6.**    _Consent Meetings_.  The members may meet at any time and for any purpose without notice, providing all members are present at each meeting or consent in writing to the holding of such meeting.

## ARTICLE VIII  (Board of Directors)

**Section 1.**    The management of the Organization shall be vested in a Board of Directors consisting of:

(a)    A total of nine (9) Directors.

(b)    The term of office of all Directors shall be three (3) years, subject to carryovers and such other terms and conditions prescribed by the Board of Directors then in office as specified in sub-section (f).

QCD 000011

The Board of Directors shall be elected as follows:

(c)    Not less than ninety (90) days prior to each Annual Meeting the President of the Organization shall appoint a Nominating Committee consisting of five (5) members who have been members of the Organization for at least five (5) years and who are not currently serving as members of the Board of Directors, and the President shall

6

DP 00010

designate one of their number as Chairman. The Nominating Committee shall prepare a list of nominees for at least the number of positions to be filled taking into account the geographical location and the size of the nominee's organization in order to achieve meritorious balance and diversified membership representation on the Board. The list of nominees shall be submitted to the Secretary in time for circulation to the members at least forty-five (45) days prior to the Annual Meeting. Additional nominations may be made by petition filed with the Secretary at least twenty (20) days prior to the Annual Meeting. Any such petition shall state whether the nominee is a willing candidate and if so, the names of candidates nominated by petition shall be submitted to the membership by the Secretary at least fifteen (15) days prior to the Annual Meeting. Nominations shall not be permitted from the floor.

(d)     The election of Directors shall be by ballot, with each member having the right to vote for as many persons as there are Directors to be elected. No member shall be permitted to cumulate his votes and cast them for a lesser number of nominees than the total number of Directors to be elected. Those nominees for the number of Directors to be elected, who receive the largest number of votes, shall be declared to be the Directors for the ensuing term.

(e)     No more than one Director shall be elected from any one member. In the event any nominees for Director shall receive the same number of votes, the Director elected shall be determined by lot.

(f)     No Director who has served two full consecutive terms shall be eligible for re-election until after the lapse of at least one year provided, however, that the term of eligibility of any director who is elected and serves as a principal officer of the organization may be extended for the time corresponding to the time of service as an officer, but for not longer than one additional three (3) year term. Any nominee who otherwise qualifies for election is eligible for election to succeed a retiring Director although employed by the same member.

<u>Section 2</u>.     (Meetings)

(a)     The Board of Directors shall hold regular meetings quarterly with an additional meeting to be held immediately following the adjournment of the Annual Membership Meeting. The other regular meetings of the full Board shall be held at such time and place as designated in the notice of the meeting.

(b)     Special meetings of the Board may be called by the President, or in his absence, by the vice President, or by a majority of the members of the Board; and such special meetings shall be held at such time and place as designated in the notice of the meeting.

(c)     A majority of the Board shall be necessary to constitute a quorum to transact business, but less than a quorum may adjourn from time to time.

(d)     Notice of all regular meetings shall be given to each Director by the Secretary at least fifteen (15) days previous to the time fixed for the meeting. Notice of special meetings shall be given not less than five (5) days previous to the meeting and shall state the purpose of the meeting.

QCD 000012

7

DP 00011

(e)     The Directors may meet at any time and for any purpose without notice, provided all Directors are present at such meeting or consent in writing to the holding of such meeting.

## Section 3.     (Officers)

The Directors shall elect the officers of the Organization; such election (except in the case of vacancy) shall be held at the Directors' meeting following each Annual Meeting.

## Section 4.     (Vacancies)

The Board may, by a majority vote, fill any unscheduled vacancies on the Board of Directors for the balance of the corresponding unexpired term, taking into account that such vacancy shall be filled with a member possessing the qualifications of a successor nominee.

## Section 5.     (Compensation)

The Directors shall be entitled to reimbursement for transportation and expenses incident to attendance at meetings and such additional compensation for any other service rendered as the entire board shall deem just.

## Section 6.

The Directors may employ and fix the terms of employment and the compensation of such managers, employees, and agents as they deem advisable.

## ARTICLE IX   (Officers)

### Section 1.     (Number and Term)

The principal officers of the Organization shall be a President, a Vice President, a Secretary and a Treasurer. Each principal officer must be a Director of the Organization. The Board may designate an assistant secretary and/or an assistant treasurer who is not a Director of the Organization.

The term of office shall be for one year and until a successor is duly elected and qualified. Any vacancy in office shall be filled by the Board of Directors.

### Section 2.     (Executive Committee)

The Executive Committee shall be composed of the directors of the Organization.  The President shall serve as Chairman of the Executive Committee. The Executive Committee shall have all the powers and duties of the Board of Directors to conduct the business of the Organization between meetings of the Board of Directors, subject to resolutions adopted or directions given by the Board of Directors in its meetings and subject to limitations in the Articles of Incorporation and the Bylaws.

In order to promptly and effectively respond to any emergency problem that may arise between meetings of the Board, the President, with the concurrence of only the Principal Officers of the Organization, may act on behalf of the Organization; provided, however, that

QCD 000013   8

DP 00012

such action shall be subject to subsequent approval of the entire Board of Directors.

<u>Section 3</u>.    (Duties)

(a)    The President shall preside at all meetings of the members and of the Board of Directors; and with said Board have a general supervision of the affairs of the Organization; and, sign all deeds, documents, and contracts requiring the corporate seal;

(b)    The Vice President shall discharge the duties of the President in the absence or disability of the latter;

(c)    The Secretary shall keep a true and correct record of the proceedings of all meetings of the members and of the Board of Directors; and safely and systematically keep all books, papers, records, and documents belonging to the Organization or pertaining to the business thereof. He shall countersign and affix the seal of the Organization to such papers and documents as shall be required to be so countersigned or sealed.

(d)    The Treasurer shall:

(1)    Supervise generally the accounting procedures adopted for the control of the money and other property of the Organization; and

(2)    Require the preparation of such periodic accounts, statements, and inventories as may be required by the Board of Directors.

<u>Section 4</u>.    (Bond)

The Board of Directors shall require that the officers and employees of the Organization give bond to ensure faithful performance of their duties. The premium for such bond shall be paid by the Organization.

<u>Section 5</u>.    (Other Officers)

The Board of Directors may provide for such other officers as they deem for the best interest of the Organization.

<u>Section 6</u>.    (Combined Offices)

Whenever the Board of Directors so orders, the offices of Secretary and Treasurer shall be held by the same person.

<u>Section 7</u>.    (Additional Duties)

The officers shall perform such additional or different duties as shall from time to time be required by the Board of Directors, or as may be prescribed from time to time by the Bylaws.

<u>Section 8.</u>    (Indemnification of Officers, Directors, Employees and Agents)

(a)    (Actions Not Brought by Cooperative)

The Cooperative shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Cooperative) by reason of the fact that he is or was a director, officer, employee or agent of the Cooperative against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Cooperative and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment or settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the Cooperative, and with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. No indemnification shall be made if otherwise prohibited by applicable law.

(b)    (Actions Brought by Cooperative)

The Cooperative shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Cooperative to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the cooperative against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Cooperative and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty at the Cooperative unless and only to the extent that the court in which such action or suit was brought shall determine upon application that despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper. No indemnification shall be made if otherwise prohibited by applicable law.

(c)    (Mandatory Indemnification)

To the extent that a director, officer, employee or agent of a Cooperative has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections 1 and 2, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses(including attorneys' fees) actually and reasonably incurred by him in connection therewith.

QCD 000015

10

DP 00014

(d)     (Indemnification Determined by Board)

Any indemnification under Sections 1 and 2 (unless ordered by the court) shall be made by the cooperative only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in Sections 1 and 2 and because indemnification is not prohibited by applicable statutes of the State of Wisconsin governing cooperatives or any other applicable law. Such determination shall be made (a) by the board of directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (b) if such a quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (c) by the members.

(e)     (Other Rights)

The indemnification provided by this article shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any contract, agreement, vote of members or disinterested directors on otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

(f)     (Insurance)

The Cooperative shall have the power, but not the duty, to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the cooperative against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Cooperative would have the power to indemnify him against such liability under the provisions of this article.

## ARTICLE X    (Fiscal Year)

The fiscal year shall end with the 30th day of September in each year.

## ARTICLE XI    (Amendments)

These Bylaws may be amended at any special or Annual Meeting of the membership by a 2/3 vote of the members whose votes are cast in accordance with the Bylaws then in force and effect.

QCD 000016

11

DP 00015

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| **Defendants.** | § | |

## DEFENDANT H. LEE RICHARDS'
## SECOND AMENDED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, H. Lee Richards, and files this his Second Amended Answer to

the Plaintiff's First Amended Original Complaint, showing as follows:

### I.

Defendant is without sufficient information to either admit or deny the allegations contained

in Paragraph I of the Plaintiff's Complaint.   Consequently, Defendant denies the allegations of

Paragraph I.

### II.

Defendant denies the allegations contained in Paragraph II of the Plaintiff's Complaint.

### III.

Defendant admits that he is a citizen and resident of the State of Texas who resides and

maintains an office in Harlingen, Texas.  This Defendant denies the remaining allegations contained

in Paragraph III of the Plaintiff's Complaint.

47527:999477.1:012902

## IV.

Defendant admits that this is an action within the Court's subject matter jurisdiction. This Defendant denies the remaining allegations contained in Paragraph IV of the Plaintiff's Complaint.

## V.

This Defendant denies the allegations contained in Paragraph V of the Plaintiff's Complaint.

## VI.

This Defendant denies the allegations contained in Paragraph VI of the Plaintiff's Complaint.

## VII.

This Defendant denies the allegations contained in Paragraph VII of the Plaintiff's Complaint.

## VIII.

This Defendant denies the allegations contained in Paragraph VIII of the Plaintiff's Complaint.

## IX.

This Defendant denies the allegations contained in Paragraph IX of the Plaintiff's Complaint.

## X.

This Defendant denies the allegations contained in Paragraph X of the Plaintiff's Complaint.

## XI.

This Defendant denies the allegations contained in Paragraph XI of the Plaintiff's Complaint.

## XII.

This Defendant denies the allegations contained in Paragraph XII of the Plaintiff's Complaint.

## XIII.

This Defendant denies the allegations contained in Paragraph XIII of the Plaintiff's Complaint.

## XIV.

This Defendant denies the allegations contained in Paragraph XIV of the Plaintiff's Complaint.

## XV.

This Defendant denies the allegations contained in Paragraph XV of the Plaintiff's Complaint.

## XVI.

This Defendant denies the allegations contained in Paragraph XVI of the Plaintiff's Complaint.

## XVII.

This Defendant denies the allegations contained in Paragraph XVII of the Plaintiff's Complaint.

## XVIII.

This Defendant denies the allegations contained in Paragraph XVIII of the Plaintiff's Complaint.

## XIX.

This Defendant denies the allegations contained in Paragraph XIX of the Plaintiff's Complaint.

## XX.

This Defendant denies the allegations contained in Paragraph XX of the Plaintiff's Complaint.

## XXI.

This Defendant denies the allegations contained in Paragraph XXI of the Plaintiff's Complaint.

## XXII.

This Defendant denies the allegations contained in Paragraph XXII of the Plaintiff's Complaint.

## XXIII.

This Defendant denies the allegations contained in Paragraph XXIII of the Plaintiff's Complaint.

## XXIV.

This Defendant denies the allegations contained in Paragraph XXIV of the Plaintiff's Complaint.

## XXV.

This Defendant denies the allegations contained in Paragraph XXV of the Plaintiff's Complaint.

## XXVI.

This Defendant denies the allegations contained in Paragraph XXVI of the Plaintiff's Complaint.

## XXVII.

This Defendant denies the allegations contained in Paragraph XXVII of the Plaintiff's Complaint.

## XXVIII.

This Defendant denies the allegations contained in Paragraph XXVIII of the Plaintiff's Complaint.

## XXIX.

This Defendant denies the allegations contained in Paragraph XXIX of the Plaintiff's Complaint.

## XXX.

This Defendant denies the allegations contained in Paragraph XXX of the Plaintiff's Complaint.

## XXXI.

This Defendant denies the allegations contained in Paragraph XXXI of the Plaintiff's Complaint.

## XXXII.

This Defendant denies the allegations contained in Paragraph XXXII of the Plaintiff's Complaint.

## XXXIII.

This Defendant denies the allegations contained in Paragraph XXXIII of the Plaintiff's Complaint.

## XXXIV.

This Defendant denies the allegations contained in Paragraph XXXIV of the Plaintiff's Complaint.

## XXXV.

This Defendant denies the allegations contained in Paragraph XXXV of the Plaintiff's Complaint.

## XXXVI.

This Defendant denies the allegations contained in Paragraph XXXVI of the Plaintiff's Complaint.

## XXXVII.

This Defendant denies the allegations contained in Paragraph XXXVII of the Plaintiff's Complaint.

## XXXVIII.

This Defendant denies the allegations contained in Paragraph XXXVIII of the Plaintiff's Complaint.

## XXXIX.

This Defendant denies the allegations contained in Paragraph XXXIX of the Plaintiff's Complaint.

## XXXX.

This Defendant denies the allegations contained in Paragraph XXXX of the Plaintiff's Complaint.

## XXXXI.

This Defendant denies the allegations contained in Paragraph XXXXI of the Plaintiff's Complaint.

## XXXXII.

This Defendant denies the allegations contained in Paragraph XXXXII of the Plaintiff's Complaint.

### FIRST AFFIRMATIVE DEFENSE

Defendant contends that he is not a proper party.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiff's causes of action arise from the alleged acts, omissions, and breaches of obligations by "F" Street Investments, Defendant contends that he is not personally liable or otherwise responsible for such alleged acts, omissions, and breaches of obligations by "F" Street Investments.

### THIRD AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for constructive fraud as alleged by the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for imposition of a constructive trust or an equitable lien as alleged by the Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Any and all transactions made the subject of the Plaintiff's pleadings were fair to the Plaintiff at the time they were made.

### SIXTH AFFIRMATIVE DEFENSE

Lee Richards was a disinterested director for purposes of the transactions made the subject of the Plaintiff's pleadings.

### SEVENTH AFFIRMATIVE DEFENSE

All transactions made the subject of the Plaintiff's pleadings were validated and/or ratified by the Plaintiff and/or its directors, officers, or representatives.

### EIGHTH AFFIRMATIVE DEFENSE

The damages claimed by the Plaintiff were proximately caused, in whole or in part, by its negligence.

### NINTH AFFIRMATIVE DEFENSE

Material facts regarding the transactions made the subject of the Plaintiff's pleadings were timely disclosed and/or known by the Plaintiff.

### TENTH AFFIRMATIVE DEFENSE

Defendant is entitled to indemnity from the Plaintiff for his attorneys' fees and other defense costs of this litigation under the terms of the Plaintiff's Bylaws.

WHEREFORE, PREMISES CONSIDERED, Defendant H. Lee Richards prays that the Plaintiff's Complaint be dismissed with costs taxed against the Plaintiff, and that Defendant receive all the relief to which he is entitled, at law or in equity.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.


By: _____
      Christopher Lowrance
      Attorney-in-Charge
      State Bar No. 00784502
      1700 Wilson Plaza West
      606 North Carancahua
      Corpus Christi, Texas 78476
      (361) 884-8808
      (361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS
COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served via

the means indicated to counsel of record listed below on this _____ day of January, 2002.

**CERTIFIED MAIL**
**<u>RETURN RECEIPT REQUESTED</u>**

Mr. Lee Hamel
Hamel, Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007

Mr. Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471


_____
**Of Royston, Rayzor, Vickery & Williams, L.L.P.**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

JAN 3 1 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| | § | |
| Defendants. | § | |

### UNOPPOSED MOTION OF H. LEE RICHARDS FOR LEAVE
### TO FILE HIS SECOND AMENDED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant H. Lee Richards, and moves this Court to allow him to amend his answer, and in support thereof would show as follows:

### I.

Plaintiff Quality Chek'd Dairies, Inc. recently produced a copy of their Bylaws dated December 7, 1999 (See Exhibit "A" attached). Section 8 of the attached Bylaws creates an obligation on behalf of Quality Chek'd to indemnify its directors and agents for liability incurred as a result of lawsuits brought by Quality Chek'd against such directors or agents (See Exhibit "A" attached). The basis of this lawsuit against Defendant H. Lee Richards is that he allegedly breached his fiduciary duty as a director to Quality Chek'd. Based upon this action, the attached Bylaws give

Defendant Richards the right of indemnity against Quality Chek'd under the circumstances described by the Bylaws. Richards seeks to amend his pleadings to assert this indemnity right.

## II.

None of the other parties to this litigation, including Plaintiff Quality Chek'd, object to the amendment of pleadings requested by this Motion. No pretrial or trial setting will be delayed as a result of this amendment.

## III.

Defendant Richards' proposed amended pleading is attached to this Motion as Exhibit "B."

WHEREFORE, PREMISES CONSIDERED, Defendant H. Lee Richards moves this Court to allow him to amend his answer, and for such other and further relief to which he is entitled.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____
      Christopher Lowrance
      Attorney-in-Charge
      State Bar No. 00784502
      1700 Wilson Plaza West
      606 North Carancahua
      Corpus Christi, Texas 78476
      (361) 884-8808
      (361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS
COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

47527:999472.1:012902                    -2-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated below to counsel of record on this the _____ day of January, 2002.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Hamel, Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007

Mr. Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

Of Royston, Rayzor, Vickery & Williams, L.L.P.

**_Amended:  December 7, 1999_**

**BYLAWS**

**of**

**QUALITY CHEKD DAIRIES, INC. (Cooperative)**

**ARTICLE I**     (Name and Location)

The name of this Organization shall be QUALITY CHEKD DAIRIES, INC. (Cooperative), and its principal office shall be in the City of Naperville, Illinois. The Organization's registered agent is C T Corporation System at 44 East Mifflin Street, Madison, Wisconsin 53703.

**ARTICLE II**     (Business and Purpose)

The business and purpose of this Organization shall be:

> **Section 1.**     To develop and maintain advertising, merchandising, sales assistance and promotional plans for the sale of dairy products, frozen foods, and other food specialties manufactured by members of this Organization;

> **Section 2.**     To develop and promote a program for the purchase of merchandising supplies by members;

> **Section 3.**     To borrow and loan money and to pledge any of the property of the Organization (real or personal) as security thereof;

> **Section 4.**     To provide services of an advisory character on accounting, merchandising, distribution, procurement and manufacturing for the use and benefit of the members;

> **Section 5.**     To adopt trademarks, brand names, standards of identity and standards of quality for the various products manufactured by members;

> **Section 6.**     To issue licenses to members governing the manufacture and sale of products bearing the certification mark or trademarks owned by the Organization;

> **Section 7.**     To lease, purchase, own and mortgage real and personal property;

> **Section 8.**     The Organization shall designate and/or establish one or more laboratories for the purpose of research, improvement and maintenance of quality standards in the production of food products manufactured by members;

> **Section 9.**     To enter into any and all contracts necessary or convenient for the business of the Organization;



DP 00005     1

QCD 000006

Section 10.    To do each and everything necessary, suitable or proper for the accomplishment of the purposes herein enumerated.  To effectuate said purposes, the Organization shall have all the powers specified and provided by the laws of the State of Wisconsin.

## ARTICLE III    (Non-Stock)

This Organization is formed without capital stock and shall operate on a non-profit basis. The Organization shall not commence business until at least $500 membership capital has been subscribed.

## ARTICLE IV    (Property Rights)

The property right of the members shall be unequal and shall be in proportion to the amount of the respective contributions of the members to the Organization.

## ARTICLE V    (Membership)

The methods and conditions upon which members shall be accepted, discharged or expelled shall be as follows:

Section 1.    Classes of Members.  The Organization shall have the following classes of members:

(a)    Members (when the term "member" is used without qualification, it means one who has been qualified and accepted as a full voting member in the Organization as hereinafter set forth),

(b)    Associated Affiliate Members,

(c)    Independent Affiliate Members.

Section 2.    Members.  Membership as a member shall be limited to manufacturers and distributors of dairy products, frozen food products, and other food specialties;

Section 3.    Application for Admission as a Member.  Application for membership shall be promptly submitted to all members of the Organization.  For admission to membership any applicant must be approved by a majority vote of all the members of the Organization whose votes are received within thirty (30) days of such submission.

Section 4.    Licensing and Membership Agreements.  As a condition of membership, the approved applicant shall sign the membership agreement approved by the members.  At its option, the member may enter into a license agreement for the use of trademarks owned or controlled by Quality Chekd Dairies, Inc.  Such License Agreement shall be in a form approved by a 2/3 vote of the Board of Directors in office as of entering into the License Agreement.  The secretary shall issue a certificate of membership to each member.

Section 5.    Voting Power.  The voting power of all members shall be equal; each member shall have one vote and one vote only.

DP 00006    2

QCD 000007

**Section 6.**   **Discharge or Expulsion.**   A member may be discharged or expelled for cause by a three-fourths (3/4) affirmative vote of the Board of Directors in a duly constituted meeting; and approved by a three-fourths (3/4) affirmative vote of the members whose votes are received within thirty (30) days of such submission to all members of the Organization providing a majority vote.

**Section 7.**   **Associated Affiliate Members.**   Associated affiliate members shall be limited to manufacturers and distributors of dairy products, frozen food products and other food specialty products who are affiliated in a formal legal relationship with another member of the Organization. Such legal relationship is exemplified by way of illustration, but not by way of limitation, by being a corporate subsidiary or an affiliate of a member or a joint venturer with a member or be under a common ownership and control with a member.

**Section 8.**   **Application for Admission as an Associated Affiliate.**   Applications for associated affiliate membership shall be promptly submitted to the Executive Committee and must be approved by a majority vote of the Executive Committee duly convened pursuant to notice, providing that such approval by the Executive Committee shall be withdrawn if two-thirds (2/3) of the members vote against such applicant within thirty (30) days after the Managing Director notifies the regular membership as to the approval of the Executive Committee of such associated affiliate member, providing that such votes are cast in writing by the members and are signed by an officer of the member and are received by the Organization within the thirty (30) day period. A ballot will be forwarded for member vote.

**Section 9.**   **Licensing and Associated Affiliate Membership Agreement.**   As a condition of associated affiliate membership, the approved applicant shall sign the associated affiliate membership agreement approved by the Board of Directors. The Secretary shall issue a certificate of associated affiliate membership to each associated affiliate member.

**Section 10.**   **Independent Affiliate Members.**   Independent affiliate members shall be limited to manufacturers and distributors of dairy products, frozen food products and other food specialties.

**Section 11.**   **Application for Admission as an Independent Affiliate.**   Applications for independent affiliate memberships shall be promptly submitted to the Executive Committee and must be approved by a majority vote of the Executive Committee duly convened pursuant to notice, providing that such approval by the Executive Committee shall be withdrawn if two-thirds (2/3) of the members vote against such applicant within thirty (30) days after the Managing Director notifies the regular membership as to the approval of the Executive Committee of such independent affiliate members, providing that such votes are cast in writing by the members and are signed by an officer of the member and are received by the Organization within the thirty (30) day period. A ballot will be forwarded for member use.

**Section 12.**   **Independent Affiliate Membership Agreement.**   As a condition of independent, affiliate membership, the approved applicant shall sign the independent affiliate membership agreement approved by the Executive Committee. The Secretary shall issue a certificate of independent affiliate membership to each independent affiliate member.

QCD 000008

3

DP 00007

**Section 13.   Restrictions on Affiliate Membership.**  An affiliate member, either an associated affiliate member or an independent affiliate member, shall have no vote and may be discharged or expelled for cause by a three-fourths (3/4) affirmative vote of the Board of Directors in a duly constituted meeting.

**Section 14.   Rights and Privileges of Affiliate Members.**  Both associated affiliate members and independent affiliate members shall have only the following privileges of Organization membership:

(a)   Staff personnel and services will be made available in the areas of quality control and manufacturing; marketing, advertising and sales; accounting, computer systems and software; and purchasing; as well as training and educational activities in each of such areas.

(b)   Affiliate members may attend seminars and meetings sponsored by the Organization for affiliate members and excluding any meetings which are designated by the Board of Directors as reserved for members, such as the Annual Meeting of the Organization.

**Section 15.**   Membership in the Organization shall only be transferable or assignable as provided in the following:

In the event the majority or controlling stock interest (fifty percent (50%) or more of the voting capital stock) of a corporate member or the controlling ownership or interest of a non-corporate member shall be transferred to, or controlled by, any person or corporation other than the ownership or control existing at the time of acceptance of such member by this Organization (whether accomplished by assignment, merger, consolidation, death, operation of law or otherwise), then any such assignee, successor or legal representative shall automatically succeed to and retain the membership of the predecessor (including the existing Licensing Agreement and the territorial rights thereunder) subject to the following:

(a)   Written notice of any such transfer in ownership or control shall be given by such successor, assignee or legal representative, to the Managing Director of the Organization within sixty (60) days following such transfer; or within ninety (90) days after death in the case of the death of a member who is a natural person.

(b)   Upon receipt of such written notice as provided in Section 6(a) above, the Managing Director of the Organization shall promptly give written notice thereof to the members. The membership shall be automatically retained by such successor, assignee, or legal representative unless two-thirds (2/3) of the members object, in writing, to such retention and such objections are received by the Managing Director within thirty (30) days after the mailing of such notice.

(c)   In any instance where a member wishes to obtain a vote in advance of any proposed merger or transfer as herein above provided, then such member may do so and the above-specified procedure shall be followed, provided, that any such proposed transfer or merger takes place within twelve (12) months of the effective date of the approval of the membership retention.

QCD 000009

4

(d)    In the event any successor or assignee is already a member of the Organization, such successor or assignee shall have only one membership and one vote, but shall be authorized to retain existing territorial rights under any existing Licensing Agreement, in addition to succeeding to the transferred or assigned Licensing Agreement and the territorial rights thereunder.

## ARTICLE VI    (Finance)

Section 1.    Each new member shall pay a $500.00 membership fee upon application for membership and in addition thereto shall pay annual membership dues as shall be determined by Board of Directors, payable on the first day of October of the same year in which he becomes a member and on the anniversary of said date each year thereafter. EXCEPT that the initial membership fee shall be credited against annual membership dues for the first year or a portion of a year in which he became a member, with respect to the first day of October.

Section 2.    The business of the Organization shall be financed by funds paid in as membership fees, annual dues and contributions by members to cover the ordinary and necessary expenses of the operation. The annual contributions of members shall be determined by the Board of Directors.

Section 3.    Net proceeds in excess of the amount required for ordinary and necessary operating expenses shall be distributed at least once annually in proportion to the contribution made to the Organization by each member. Such distribution may be in the form of cash, fixed redemption value certificates with or without due dates or unfixed redemption value certificates with a fixed due date.

Each person who hereafter applies for and is accepted to membership in this cooperative, and each member of this cooperative, on the effective date of this Bylaw, who continues as a member after such date shall, by such act alone, consent that the amount of any distributions with respect to his patronage occurring after November 19, 1963, which are made in written notices of allocation (as defined in 26, U.S.C. 1388) and which are received by him from the cooperative, will be taken into account by him at their stated dollar amounts in the manner provided in 26 U.S.C. 1385 (a) in the taxable year in which such written notices of allocation are received by him.

Said written notices of allocation heretofore and hereafter issued constitute an indebtedness of the cooperative to the member receiving the same, but the repayment of such indebtedness to the members shall be limited until a permanent surplus reserve has been created which the Board of Directors determines is ample properly to finance the operations of the cooperative.

Section 4.    In the event of sale or liquidation (voluntary or involuntary, partial or total) any accumulation of reserves or assets, tangible or intangible, such as good will, sales rights, patent rights, or contracts, in excess of the amount necessary to retire all of the indebtedness of the Organization and to retire all of the certificates outstanding shall, after having been converted to cash, be distributed in an equitable manner in proportion to the respective contributions to said accumulated assets.

QCD 000010

5

DP 00009

## ARTICLE VII   (Membership Meetings)

**Section 1.**    The Annual Meeting of the members of the Organization shall be held on such date, at such time and at such locations as are from time-to-time designated by the Board of Directors.

**Section 2.**    Notice of the Annual Meetings of members and of any special meeting of members shall be given by the Secretary to all members of record by mail addressed to the last known post office address of the member, at least ten days before the holding of such meeting. In the case of special meetings, the notice shall state the purpose of the meeting.

**Section 3.**    The President shall preside at all such meetings. In the event the President is absent, the Vice President shall preside.

**Section 4.**    All voting at membership meetings, whether regular or special, shall be by ballot, subject to suspension of rules by unanimous vote.

In the election of Directors, each member shall have the right to vote for as many persons as there are Directors to be elected; and

Each member shall be entitled to one vote on each question submitted to the membership. Votes by mail shall be accepted, if in writing, certified to and signed by the member so voting; PROVIDING that a notice containing the exact text of the motion or resolution to be voted upon has been mailed to such member at the member's last known post office address; and that a copy of such motion or resolution is attached to, and forwarded with, the vote so mailed by the absent member.

**Section 5.**    Twenty percent (20%) of the membership shall constitute a quorum at any membership meeting.

**Section 6.**    _Consent Meetings._  The members may meet at any time and for any purpose without notice, providing all members are present at each meeting or consent in writing to the holding of such meeting.

## ARTICLE VIII  (Board of Directors)

**Section 1.**    The management of the Organization shall be vested in a Board of Directors consisting of:

(a)    A total of nine (9) Directors.

(b)    The term of office of all Directors shall be three (3) years, subject to carryovers and such other terms and conditions prescribed by the Board of Directors then in office as specified in sub-section (f).

QCD 000011

The Board of Directors shall be elected as follows:

(c)    Not less than ninety (90) days prior to each Annual Meeting the President of the Organization shall appoint a Nominating Committee consisting of five (5) members who have been members of the Organization for at least five (5) years and who are not currently serving as members of the Board of Directors, and the President shall

6

DP 00010

designate one of their number as Chairman. The Nominating Committee shall prepare a list of nominees for at least the number of positions to be filled taking into account the geographical location and the size of the nominee's organization in order to achieve meritorious balance and diversified membership representation on the Board. The list of nominees shall be submitted to the Secretary in time for circulation to the members at least forty-five (45) days prior to the Annual Meeting. Additional nominations may be made by petition filed with the Secretary at least twenty (20) days prior to the Annual Meeting. Any such petition shall state whether the nominee is a willing candidate and if so, the names of candidates nominated by petition shall be submitted to the membership by the Secretary at least fifteen (15) days prior to the Annual Meeting. Nominations shall not be permitted from the floor.

(d) The election of Directors shall be by ballot, with each member having the right to vote for as many persons as there are Directors to be elected. No member shall be permitted to cumulate his votes and cast them for a lesser number of nominees than the total number of Directors to be elected. Those nominees for the number of Directors to be elected, who receive the largest number of votes, shall be declared to be the Directors for the ensuing term.

(e) No more than one Director shall be elected from any one member. In the event any nominees for Director shall receive the same number of votes, the Director elected shall be determined by lot.

(f) No Director who has served two full consecutive terms shall be eligible for re-election until after the lapse of at least one year provided, however, that the term of eligibility of any director who is elected and serves as a principal officer of the organization may be extended for the time corresponding to the time of service as an officer, but for not longer than one additional three (3) year term. Any nominee who otherwise qualifies for election is eligible for election to succeed a retiring Director although employed by the same member.

## Section 2.    (Meetings)

(a) The Board of Directors shall hold regular meetings quarterly with an additional meeting to be held immediately following the adjournment of the Annual Membership Meeting. The other regular meetings of the full Board shall be held at such time and place as designated in the notice of the meeting.

(b) Special meetings of the Board may be called by the President, or in his absence, by the vice President, or by a majority of the members of the Board; and such special meetings shall be held at such time and place as designated in the notice of the meeting.

(c) A majority of the Board shall be necessary to constitute a quorum to transact business, but less than a quorum may adjourn from time to time.

(d) Notice of all regular meetings shall be given to each Director by the Secretary at least fifteen (15) days previous to the time fixed for the meeting. Notice of special meetings shall be given not less than five (5) days previous to the meeting and shall state the purpose of the meeting.

QCD 000012

7

DP 00011

(e)    The Directors may meet at any time and for any purpose without notice, provided all Directors are present at such meeting or consent in writing to the holding of such meeting.

**Section 3.**    **(Officers)**

The Directors shall elect the officers of the Organization; such election (except in the case of vacancy) shall be held at the Directors' meeting following each Annual Meeting.

**Section 4.**    **(Vacancies)**

The Board may, by a majority vote, fill any unscheduled vacancies on the Board of Directors for the balance of the corresponding unexpired term, taking into account that such vacancy shall be filled with a member possessing the qualifications of a successor nominee.

**Section 5.**    **(Compensation)**

The Directors shall be entitled to reimbursement for transportation and expenses incident to attendance at meetings and such additional compensation for any other service rendered as the entire board shall deem just.

**Section 6.**

The Directors may employ and fix the terms of employment and the compensation of such managers, employees, and agents as they deem advisable.

**ARTICLE IX**   **(Officers)**

**Section 1.**    **(Number and Term)**

The principal officers of the Organization shall be a President, a Vice President, a Secretary and a Treasurer. Each principal officer must be a Director of the Organization. The Board may designate an assistant secretary and/or an assistant treasurer who is not a Director of the Organization.

The term of office shall be for one year and until a successor is duly elected and qualified. Any vacancy in office shall be filled by the Board of Directors.

**Section 2.**    **(Executive Committee)**

The Executive Committee shall be composed of the directors of the Organization. The President shall serve as Chairman of the Executive Committee. The Executive Committee shall have all the powers and duties of the Board of Directors to conduct the business of the Organization between meetings of the Board of Directors, subject to resolutions adopted or directions given by the Board of Directors in its meetings and subject to limitations in the Articles of Incorporation and the Bylaws.

In order to promptly and effectively respond to any emergency problem that may arise between meetings of the Board, the President, with the concurrence of only the Principal Officers of the Organization, may act on behalf of the Organization; provided, however, that

QCD 000013      8

DP 00012

such action shall be subject to subsequent approval of the entire Board of Directors.

<u>Section 3</u>.     (Duties)

(a)     The President shall preside at all meetings of the members and of the Board of Directors; and with said Board have a general supervision of the affairs of the Organization; and, sign all deeds, documents, and contracts requiring the corporate seal;

(b)     The Vice President shall discharge the duties of the President in the absence or disability of the latter;

(c)     The Secretary shall keep a true and correct record of the proceedings of all meetings of the members and of the Board of Directors; and safely and systematically keep all books, papers, records, and documents belonging to the Organization or pertaining to the business thereof. He shall countersign and affix the seal of the Organization to such papers and documents as shall be required to be so countersigned or sealed.

(d)     The Treasurer shall:

(1)     Supervise generally the accounting procedures adopted for the control of the money and other property of the Organization; and

(2)     Require the preparation of such periodic accounts, statements, and inventories as may be required by the Board of Directors.

<u>Section 4</u>.     (Bond)

The Board of Directors shall require that the officers and employees of the Organization give bond to ensure faithful performance of their duties. The premium for such bond shall be paid by the Organization.

<u>Section 5</u>.     (Other Officers)

The Board of Directors may provide for such other officers as they deem for the best interest of the Organization.

<u>Section 6</u>.     (Combined Offices)

Whenever the Board of Directors so orders, the offices of Secretary and Treasurer shall be held by the same person.

<u>Section 7</u>.     (Additional Duties)

The officers shall perform such additional or different duties as shall from time to time be required by the Board of Directors, or as may be prescribed from time to time by the Bylaws.

QCD 000014          9

DP 00013

**Section 8.**     (Indemnification of Officers, Directors, Employees and Agents)

**(a)**     (Actions Not Brought by Cooperative)

The Cooperative shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Cooperative) by reason of the fact that he is or was a director, officer, employee or agent of the Cooperative against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Cooperative and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment or settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the Cooperative, and with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. No indemnification shall be made if otherwise prohibited by applicable law.

**(b)**     (Actions Brought by Cooperative)

The Cooperative shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Cooperative to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the cooperative against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Cooperative and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his duty at the Cooperative unless and only to the extent that the court in which such action or suit was brought shall determine upon application that despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the court shall deem proper. No indemnification shall be made if otherwise prohibited by applicable law.

**(c)**     (Mandatory Indemnification)

To the extent that a director, officer, employee or agent of a Cooperative has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections 1 and 2, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses(including attorneys' fees) actually and reasonably incurred by him in connection therewith.

QCD 000015

10

DP 00014

**(d)      (Indemnification Determined by Board)**

Any indemnification under Sections 1 and 2 (unless ordered by the court) shall be made by the cooperative only as authorized in the specific case upon a determination that indemnification of the director, officer, employee or agent is proper in the circumstances because he has met the applicable standard of conduct set forth in Sections 1 and 2 and because indemnification is not prohibited by applicable statutes of the State of Wisconsin governing cooperatives or any other applicable law. Such determination shall be made (a) by the board of directors by a majority vote of a quorum consisting of directors who were not parties to such action, suit or proceeding, or (b) if such a quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, or (c) by the members.

**(e)      (Other Rights)**

The indemnification provided by this article shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any contract, agreement, vote of members or disinterested directors on otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.

**(f)      (Insurance)**

The Cooperative shall have the power, but not the duty, to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the cooperative against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Cooperative would have the power to indemnify him against such liability under the provisions of this article.

**ARTICLE X**      **(Fiscal Year)**

The fiscal year shall end with the 30th day of September in each year.

**ARTICLE XI**      **(Amendments)**

These Bylaws may be amended at any special or Annual Meeting of the membership by a 2/3 vote of the members whose votes are cast in accordance with the Bylaws then in force and effect.

QCD 000016

11

DP 00015

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| **Defendants.** | § | |

### DEFENDANT H. LEE RICHARDS'
### SECOND AMENDED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, H. Lee Richards, and files this his Second Amended Answer to the Plaintiff's First Amended Original Complaint, showing as follows:

### I.

Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph I of the Plaintiff's Complaint.  Consequently, Defendant denies the allegations of Paragraph I.

### II.

Defendant denies the allegations contained in Paragraph II of the Plaintiff's Complaint.

### III.

Defendant admits that he is a citizen and resident of the State of Texas who resides and maintains an office in Harlingen, Texas.  This Defendant denies the remaining allegations contained in Paragraph III of the Plaintiff's Complaint.

47527:999477.1:012902

## IV.

Defendant admits that this is an action within the Court's subject matter jurisdiction. This Defendant denies the remaining allegations contained in Paragraph IV of the Plaintiff's Complaint.

## V.

This Defendant denies the allegations contained in Paragraph V of the Plaintiff's Complaint.

## VI.

This Defendant denies the allegations contained in Paragraph VI of the Plaintiff's Complaint.

## VII.

This Defendant denies the allegations contained in Paragraph VII of the Plaintiff's Complaint.

## VIII.

This Defendant denies the allegations contained in Paragraph VIII of the Plaintiff's Complaint.

## IX.

This Defendant denies the allegations contained in Paragraph IX of the Plaintiff's Complaint.

## X.

This Defendant denies the allegations contained in Paragraph X of the Plaintiff's Complaint.

## XI.

This Defendant denies the allegations contained in Paragraph XI of the Plaintiff's Complaint.

## XII.

This Defendant denies the allegations contained in Paragraph XII of the Plaintiff's Complaint.

## XIII.

This Defendant denies the allegations contained in Paragraph XIII of the Plaintiff's Complaint.

## XIV.

This Defendant denies the allegations contained in Paragraph XIV of the Plaintiff's Complaint.

## XV.

This Defendant denies the allegations contained in Paragraph XV of the Plaintiff's Complaint.

## XVI.

This Defendant denies the allegations contained in Paragraph XVI of the Plaintiff's Complaint.

## XVII.

This Defendant denies the allegations contained in Paragraph XVII of the Plaintiff's Complaint.

## XVIII.

This Defendant denies the allegations contained in Paragraph XVIII of the Plaintiff's Complaint.

## XIX.

This Defendant denies the allegations contained in Paragraph XIX of the Plaintiff's Complaint.

## XX.

This Defendant denies the allegations contained in Paragraph XX of the Plaintiff's Complaint.

## XXI.

This Defendant denies the allegations contained in Paragraph XXI of the Plaintiff's Complaint.

## XXII.

This Defendant denies the allegations contained in Paragraph XXII of the Plaintiff's Complaint.

## XXIII.

This Defendant denies the allegations contained in Paragraph XXIII of the Plaintiff's Complaint.

## XXIV.

This Defendant denies the allegations contained in Paragraph XXIV of the Plaintiff's Complaint.

## XXV.

This Defendant denies the allegations contained in Paragraph XXV of the Plaintiff's Complaint.

## XXVI.

This Defendant denies the allegations contained in Paragraph XXVI of the Plaintiff's Complaint.

-4-

## XXVII.

This Defendant denies the allegations contained in Paragraph XXVII of the Plaintiff's Complaint.

## XXVIII.

This Defendant denies the allegations contained in Paragraph XXVIII of the Plaintiff's Complaint.

## XXIX.

This Defendant denies the allegations contained in Paragraph XXIX of the Plaintiff's Complaint.

## XXX.

This Defendant denies the allegations contained in Paragraph XXX of the Plaintiff's Complaint.

## XXXI.

This Defendant denies the allegations contained in Paragraph XXXI of the Plaintiff's Complaint.

## XXXII.

This Defendant denies the allegations contained in Paragraph XXXII of the Plaintiff's Complaint.

## XXXIII.

This Defendant denies the allegations contained in Paragraph XXXIII of the Plaintiff's Complaint.

## XXXIV.

This Defendant denies the allegations contained in Paragraph XXXIV of the Plaintiff's Complaint.

## XXXV.

This Defendant denies the allegations contained in Paragraph XXXV of the Plaintiff's Complaint.

## XXXVI.

This Defendant denies the allegations contained in Paragraph XXXVI of the Plaintiff's Complaint.

## XXXVII.

This Defendant denies the allegations contained in Paragraph XXXVII of the Plaintiff's Complaint.

## XXXVIII.

This Defendant denies the allegations contained in Paragraph XXXVIII of the Plaintiff's Complaint.

## XXXIX.

This Defendant denies the allegations contained in Paragraph XXXIX of the Plaintiff's Complaint.

## XXXX.

This Defendant denies the allegations contained in Paragraph XXXX of the Plaintiff's Complaint.

## XXXXI.

This Defendant denies the allegations contained in Paragraph XXXXI of the Plaintiff's Complaint.

## XXXXII.

This Defendant denies the allegations contained in Paragraph XXXXII of the Plaintiff's Complaint.

### FIRST AFFIRMATIVE DEFENSE

Defendant contends that he is not a proper party.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiff's causes of action arise from the alleged acts, omissions, and breaches of obligations by "F" Street Investments, Defendant contends that he is not personally liable or otherwise responsible for such alleged acts, omissions, and breaches of obligations by "F" Street Investments.

### THIRD AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for constructive fraud as alleged by the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for imposition of a constructive trust or an equitable lien as alleged by the Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Any and all transactions made the subject of the Plaintiff's pleadings were fair to the Plaintiff at the time they were made.

## SIXTH AFFIRMATIVE DEFENSE

Lee Richards was a disinterested director for purposes of the transactions made the subject of the Plaintiff's pleadings.

## SEVENTH AFFIRMATIVE DEFENSE

All transactions made the subject of the Plaintiff's pleadings were validated and/or ratified by the Plaintiff and/or its directors, officers, or representatives.

## EIGHTH AFFIRMATIVE DEFENSE

The damages claimed by the Plaintiff were proximately caused, in whole or in part, by its negligence.

## NINTH AFFIRMATIVE DEFENSE

Material facts regarding the transactions made the subject of the Plaintiff's pleadings were timely disclosed and/or known by the Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

Defendant is entitled to indemnity from the Plaintiff for his attorneys' fees and other defense costs of this litigation under the terms of the Plaintiff's Bylaws.

WHEREFORE, PREMISES CONSIDERED, Defendant H. Lee Richards prays that the Plaintiff's Complaint be dismissed with costs taxed against the Plaintiff, and that Defendant receive all the relief to which he is entitled, at law or in equity.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.


By: _____

     Christopher Lowrance
     Attorney-in-Charge
     State Bar No. 00784502
     1700 Wilson Plaza West
     606 North Carancahua
     Corpus Christi, Texas 78476
     (361) 884-8808
     (361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS
COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

47527:999477.1:012902          -9-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via

the means indicated to counsel of record listed below on this _____ day of January, 2002.

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Hamel, Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007

Mr. Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

_____

**Of Royston, Rayzor, Vickery & Williams, L.L.P.**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED
JAN 3 1 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| **Defendants.** | § | |

## DEFENDANT H. LEE RICHARDS'
## SECOND AMENDED ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, H. Lee Richards, and files this his Second Amended Answer to the Plaintiff's First Amended Original Complaint, showing as follows:

### I.

Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph I of the Plaintiff's Complaint.  Consequently, Defendant denies the allegations of Paragraph I.

### II.

Defendant denies the allegations contained in Paragraph II of the Plaintiff's Complaint.

### III.

Defendant admits that he is a citizen and resident of the State of Texas who resides and maintains an office in Harlingen, Texas.  This Defendant denies the remaining allegations contained in Paragraph III of the Plaintiff's Complaint.

47527:999477.1:012902

## IV.

Defendant admits that this is an action within the Court's subject matter jurisdiction. This Defendant denies the remaining allegations contained in Paragraph IV of the Plaintiff's Complaint.

## V.

This Defendant denies the allegations contained in Paragraph V of the Plaintiff's Complaint.

## VI.

This Defendant denies the allegations contained in Paragraph VI of the Plaintiff's Complaint.

## VII.

This Defendant denies the allegations contained in Paragraph VII of the Plaintiff's Complaint.

## VIII.

This Defendant denies the allegations contained in Paragraph VIII of the Plaintiff's Complaint.

## IX.

This Defendant denies the allegations contained in Paragraph IX of the Plaintiff's Complaint.

## X.

This Defendant denies the allegations contained in Paragraph X of the Plaintiff's Complaint.

## XI.

This Defendant denies the allegations contained in Paragraph XI of the Plaintiff's Complaint.

## XII.

This Defendant denies the allegations contained in Paragraph XII of the Plaintiff's Complaint.

## XIII.

This Defendant denies the allegations contained in Paragraph XIII of the Plaintiff's Complaint.

## XIV.

This Defendant denies the allegations contained in Paragraph XIV of the Plaintiff's Complaint.

## XV.

This Defendant denies the allegations contained in Paragraph XV of the Plaintiff's Complaint.

## XVI.

This Defendant denies the allegations contained in Paragraph XVI of the Plaintiff's Complaint.

## XVII.

This Defendant denies the allegations contained in Paragraph XVII of the Plaintiff's Complaint.

## XVIII.

This Defendant denies the allegations contained in Paragraph XVIII of the Plaintiff's Complaint.

## XIX.

This Defendant denies the allegations contained in Paragraph XIX of the Plaintiff's Complaint.

## XX.

This Defendant denies the allegations contained in Paragraph XX of the Plaintiff's Complaint.

## XXI.

This Defendant denies the allegations contained in Paragraph XXI of the Plaintiff's Complaint.

## XXII.

This Defendant denies the allegations contained in Paragraph XXII of the Plaintiff's Complaint.

## XXIII.

This Defendant denies the allegations contained in Paragraph XXIII of the Plaintiff's Complaint.

## XXIV.

This Defendant denies the allegations contained in Paragraph XXIV of the Plaintiff's Complaint.

## XXV.

This Defendant denies the allegations contained in Paragraph XXV of the Plaintiff's Complaint.

## XXVI.

This Defendant denies the allegations contained in Paragraph XXVI of the Plaintiff's Complaint.

## XXVII.

This Defendant denies the allegations contained in Paragraph XXVII of the Plaintiff's Complaint.

## XXVIII.

This Defendant denies the allegations contained in Paragraph XXVIII of the Plaintiff's Complaint.

## XXIX.

This Defendant denies the allegations contained in Paragraph XXIX of the Plaintiff's Complaint.

## XXX.

This Defendant denies the allegations contained in Paragraph XXX of the Plaintiff's Complaint.

## XXXI.

This Defendant denies the allegations contained in Paragraph XXXI of the Plaintiff's Complaint.

## XXXII.

This Defendant denies the allegations contained in Paragraph XXXII of the Plaintiff's Complaint.

## XXXIII.

This Defendant denies the allegations contained in Paragraph XXXIII of the Plaintiff's Complaint.

## XXXIV.

This Defendant denies the allegations contained in Paragraph XXXIV of the Plaintiff's Complaint.

## XXXV.

This Defendant denies the allegations contained in Paragraph XXXV of the Plaintiff's Complaint.

## XXXVI.

This Defendant denies the allegations contained in Paragraph XXXVI of the Plaintiff's Complaint.

## XXXVII.

This Defendant denies the allegations contained in Paragraph XXXVII of the Plaintiff's Complaint.

## XXXVIII.

This Defendant denies the allegations contained in Paragraph XXXVIII of the Plaintiff's Complaint.

## XXXIX.

This Defendant denies the allegations contained in Paragraph XXXIX of the Plaintiff's Complaint.

## XXXX.

This Defendant denies the allegations contained in Paragraph XXXX of the Plaintiff's Complaint.

## XXXXI.

This Defendant denies the allegations contained in Paragraph XXXXI of the Plaintiff's Complaint.

## XXXXII.

This Defendant denies the allegations contained in Paragraph XXXXII of the Plaintiff's Complaint.

### FIRST AFFIRMATIVE DEFENSE

Defendant contends that he is not a proper party.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiff's causes of action arise from the alleged acts, omissions, and breaches of obligations by "F" Street Investments, Defendant contends that he is not personally liable or otherwise responsible for such alleged acts, omissions, and breaches of obligations by "F" Street Investments.

### THIRD AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for constructive fraud as alleged by the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for imposition of a constructive trust or an equitable lien as alleged by the Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Any and all transactions made the subject of the Plaintiff's pleadings were fair to the Plaintiff at the time they were made.

### SIXTH AFFIRMATIVE DEFENSE

Lee Richards was a disinterested director for purposes of the transactions made the subject of the Plaintiff's pleadings.

### SEVENTH AFFIRMATIVE DEFENSE

All transactions made the subject of the Plaintiff's pleadings were validated and/or ratified by the Plaintiff and/or its directors, officers, or representatives.

### EIGHTH AFFIRMATIVE DEFENSE

The damages claimed by the Plaintiff were proximately caused, in whole or in part, by its negligence.

### NINTH AFFIRMATIVE DEFENSE

Material facts regarding the transactions made the subject of the Plaintiff's pleadings were timely disclosed and/or known by the Plaintiff.

### TENTH AFFIRMATIVE DEFENSE

Defendant is entitled to indemnity from the Plaintiff for his attorneys' fees and other defense costs of this litigation under the terms of the Plaintiff's Bylaws.

WHEREFORE, PREMISES CONSIDERED, Defendant H. Lee Richards prays that the Plaintiff's Complaint be dismissed with costs taxed against the Plaintiff, and that Defendant receive all the relief to which he is entitled, at law or in equity.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____
     Christopher Lowrance
     Attorney-in-Charge
     State Bar No. 00784502
     1700 Wilson Plaza West
     606 North Carancahua
     Corpus Christi, Texas 78476
     (361) 884-8808
     (361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS
COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated to counsel of record listed below on this _____ day of January, 2002.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Hamel, Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007

Mr. Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

Of Royston, Rayzor, Vickery & Williams, L.L.P.

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**



United States Courts
Southern District of Texas
FILED

JAN 3 1 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| QUALITY CHEK'D DAIRIES, INC., | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-00-0943 |
| | § | |
| COHYCO, INC., "F" STREET | § | |
| INVESTMENTS, d/b/a SOUTHWEST | § | |
| ICE CREAM SPECIALTIES (f/k/a | § | |
| HYGEIA DAIRY COMPANY), and | § | |
| H. LEE RICHARDS, | § | |
| Defendants. | § | |

**DEFENDANT H. LEE RICHARDS'**
**SECOND AMENDED ORIGINAL ANSWER**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendant, H. Lee Richards, and files this his Second Amended Answer to

the Plaintiff's First Amended Original Complaint, showing as follows:

**I.**

Defendant is without sufficient information to either admit or deny the allegations contained

in Paragraph I of the Plaintiff's Complaint.   Consequently, Defendant denies the allegations of

Paragraph I.

**II.**

Defendant denies the allegations contained in Paragraph II of the Plaintiff's Complaint.

**III.**

Defendant admits that he is a citizen and resident of the State of Texas who resides and

maintains an office in Harlingen, Texas. This Defendant denies the remaining allegations contained

in Paragraph III of the Plaintiff's Complaint.

47527:999477.1:012902

## IV.

Defendant admits that this is an action within the Court's subject matter jurisdiction. This Defendant denies the remaining allegations contained in Paragraph IV of the Plaintiff's Complaint.

## V.

This Defendant denies the allegations contained in Paragraph V of the Plaintiff's Complaint.

## VI.

This Defendant denies the allegations contained in Paragraph VI of the Plaintiff's Complaint.

## VII.

This Defendant denies the allegations contained in Paragraph VII of the Plaintiff's Complaint.

## VIII.

This Defendant denies the allegations contained in Paragraph VIII of the Plaintiff's Complaint.

## IX.

This Defendant denies the allegations contained in Paragraph IX of the Plaintiff's Complaint.

## X.

This Defendant denies the allegations contained in Paragraph X of the Plaintiff's Complaint.

## XI.

This Defendant denies the allegations contained in Paragraph XI of the Plaintiff's Complaint.

## XII.

This Defendant denies the allegations contained in Paragraph XII of the Plaintiff's Complaint.

## XIII.

This Defendant denies the allegations contained in Paragraph XIII of the Plaintiff's Complaint.

## XIV.

This Defendant denies the allegations contained in Paragraph XIV of the Plaintiff's Complaint.

## XV.

This Defendant denies the allegations contained in Paragraph XV of the Plaintiff's Complaint.

## XVI.

This Defendant denies the allegations contained in Paragraph XVI of the Plaintiff's Complaint.

## XVII.

This Defendant denies the allegations contained in Paragraph XVII of the Plaintiff's Complaint.

## XVIII.

This Defendant denies the allegations contained in Paragraph XVIII of the Plaintiff's Complaint.

## XIX.

This Defendant denies the allegations contained in Paragraph XIX of the Plaintiff's Complaint.

## XX.

This Defendant denies the allegations contained in Paragraph XX of the Plaintiff's Complaint.

## XXI.

This Defendant denies the allegations contained in Paragraph XXI of the Plaintiff's Complaint.

## XXII.

This Defendant denies the allegations contained in Paragraph XXII of the Plaintiff's Complaint.

## XXIII.

This Defendant denies the allegations contained in Paragraph XXIII of the Plaintiff's Complaint.

## XXIV.

This Defendant denies the allegations contained in Paragraph XXIV of the Plaintiff's Complaint.

## XXV.

This Defendant denies the allegations contained in Paragraph XXV of the Plaintiff's Complaint.

## XXVI.

This Defendant denies the allegations contained in Paragraph XXVI of the Plaintiff's Complaint.

## XXVII.

This Defendant denies the allegations contained in Paragraph XXVII of the Plaintiff's Complaint.

## XXVIII.

This Defendant denies the allegations contained in Paragraph XXVIII of the Plaintiff's Complaint.

## XXIX.

This Defendant denies the allegations contained in Paragraph XXIX of the Plaintiff's Complaint.

## XXX.

This Defendant denies the allegations contained in Paragraph XXX of the Plaintiff's Complaint.

## XXXI.

This Defendant denies the allegations contained in Paragraph XXXI of the Plaintiff's Complaint.

## XXXII.

This Defendant denies the allegations contained in Paragraph XXXII of the Plaintiff's Complaint.

## XXXIII.

This Defendant denies the allegations contained in Paragraph XXXIII of the Plaintiff's Complaint.

## XXXIV.

This Defendant denies the allegations contained in Paragraph XXXIV of the Plaintiff's Complaint.

## XXXV.

This Defendant denies the allegations contained in Paragraph XXXV of the Plaintiff's Complaint.

## XXXVI.

This Defendant denies the allegations contained in Paragraph XXXVI of the Plaintiff's Complaint.

## XXXVII.

This Defendant denies the allegations contained in Paragraph XXXVII of the Plaintiff's Complaint.

## XXXVIII.

This Defendant denies the allegations contained in Paragraph XXXVIII of the Plaintiff's Complaint.

## XXXIX.

This Defendant denies the allegations contained in Paragraph XXXIX of the Plaintiff's Complaint.

## XXXX.

This Defendant denies the allegations contained in Paragraph XXXX of the Plaintiff's Complaint.

## XXXXI.

This Defendant denies the allegations contained in Paragraph XXXXI of the Plaintiff's Complaint.

## XXXXII.

This Defendant denies the allegations contained in Paragraph XXXXII of the Plaintiff's Complaint.

### FIRST AFFIRMATIVE DEFENSE

Defendant contends that he is not a proper party.

### SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiff's causes of action arise from the alleged acts, omissions, and breaches of obligations by "F" Street Investments, Defendant contends that he is not personally liable or otherwise responsible for such alleged acts, omissions, and breaches of obligations by "F" Street Investments.

### THIRD AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for constructive fraud as alleged by the Plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

No cause of action exists or is available under Texas law for imposition of a constructive trust or an equitable lien as alleged by the Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

Any and all transactions made the subject of the Plaintiff's pleadings were fair to the Plaintiff at the time they were made.

## SIXTH AFFIRMATIVE DEFENSE

Lee Richards was a disinterested director for purposes of the transactions made the subject of the Plaintiff's pleadings.

## SEVENTH AFFIRMATIVE DEFENSE

All transactions made the subject of the Plaintiff's pleadings were validated and/or ratified by the Plaintiff and/or its directors, officers, or representatives.

## EIGHTH AFFIRMATIVE DEFENSE

The damages claimed by the Plaintiff were proximately caused, in whole or in part, by its negligence.

## NINTH AFFIRMATIVE DEFENSE

Material facts regarding the transactions made the subject of the Plaintiff's pleadings were timely disclosed and/or known by the Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

Defendant is entitled to indemnity from the Plaintiff for his attorneys' fees and other defense costs of this litigation under the terms of the Plaintiff's Bylaws.

WHEREFORE, PREMISES CONSIDERED, Defendant H. Lee Richards prays that the Plaintiff's Complaint be dismissed with costs taxed against the Plaintiff, and that Defendant receive all the relief to which he is entitled, at law or in equity.

Respectfully submitted,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____
Christopher Lowrance
Attorney-in-Charge
State Bar No. 00784502
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 Facsimile

**ATTORNEYS FOR DEFENDANTS
COHYCO, INC. AND H. LEE RICHARDS**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served via the means indicated to counsel of record listed below on this _____ day of January, 2002.

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Lee Hamel
Hamel, Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007

Mr. Nathaniel Peter Holzer
Jordan, Hyden, Womble & Culbreth, P.C.
500 North Shoreline, Suite 900
Corpus Christi, Texas 78471

Of Royston, Rayzor, Vickery & Williams, L.L.P.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

It is hereby ORDERED that Defendant H. Lee Richards' Unopposed Motion for Leave to File His Second Amended Original Answer is hereby GRANTED and that the Second Amended Original Answer attached to said Motion shall be filed by the Clerk of the Court.

SIGNED this _____ day of _____, 2002.

_____
**HONORABLE VANESSA GILMORE**
**UNTIED STATED DISTRICT JUDGE**

47527:999472.1:012902

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **QUALITY CHEK'D DAIRIES, INC.,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. H-00-0943** |
| | § | |
| **COHYCO, INC., "F" STREET** | § | |
| **INVESTMENTS, d/b/a SOUTHWEST** | § | |
| **ICE CREAM SPECIALTIES (f/k/a** | § | |
| **HYGEIA DAIRY COMPANY), and** | § | |
| **H. LEE RICHARDS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

It is hereby ORDERED that Defendant H. Lee Richards' Unopposed Motion for Leave to

File His Second Amended Original Answer is hereby GRANTED and that the Second Amended

Original Answer attached to said Motion shall be filed by the Clerk of the Court.

SIGNED this _____ day of _____, 2002.


_____
**HONORABLE VANESSA GILMORE**
**UNTIED STATED DISTRICT JUDGE**


47527:909472.1:012902