75

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAN 28 2002

Michael N. Milby, Clerk of Court

QUALITY CHEKD DAIRIES, INC. §
    Plaintiff, §
      §
vs. §
      §
COHYCO, INC., *et. al.*, §
      §
    Defendants. §

B-02-·040

CIVIL ACTION NO. H-00-00943

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO TRANSFER VENUE

This matter was referred by United States District Judge Vanessa D. Gilmore for full pretrial

management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry # 25). Before this court

is a motion by Defendants Cohyco, Inc. and H. Lee Richards (collectively, "Defendants") for a

referral to the bankruptcy court in the Brownsville Division for "non-dispositive pre-trial handling."

(Defendants Cohyco, Inc. and H. Lee Richards' Motion for Summary Judgment, Motion for Referral

to the Bankruptcy Court, and Motion to Transfer ["Defendants' Motion"], Docket Entry #50). Those

Defendants also ask for a partial summary judgment on one of the tort claims, and finally, they ask

that the case be transferred to the Brownsville Division of the United States District Court for the

Southern District of Texas, for disposition of the remaining causes of action. (*Id.*). After

considering the motions, the evidence submitted, and the applicable law, it is ORDERED that

Defendants' motion for transfer of venue be GRANTED. The remaining dispositive issues, as well

as the request for a referral to the bankruptcy court, are best left for determination by the transferee

court.

There is also pending before this court a motion by Plaintiff Quality Chekd Dairies, Inc.

("Plaintiff," "Quality Chekd") to strike a pleading filed by a former party to this litigation, F Street



75

Investment, Inc. ("F Street").  (Motion to Strike Response of F Street Investment's [sic] Inc. to Plaintiff's Opposition to Referral of Case and Motion for Reference of Case to Bankruptcy Court ["Plaintiff's Motion to Strike"], Docket Entry # 54).  That motion should be GRANTED.

**Background**

Quality Chekd is a for-profit cooperative corporation, organized under the laws of Wisconsin, and it maintains its principal place of business in Illinois. (First Amended Complaint ¶ 1, Docket Entry #41).  Defendant Cohyco, Inc. ("Cohyco") is a Texas corporation, with its principal office in Harlingen, Texas. (*Id.* ¶ 2).  Defendant H. Lee Richards ("Richards") is a Texas resident, living in Harlingen. (*Id.* ¶ 3).  During the time of the events alleged in Plaintiff's First Amended Complaint, Richards was a member of the Quality Chekd board of directors and was simultaneously the chairman of the board of Cohyco. (*Id.* ¶ 11).  He was also chairman of the board of Hygeia Dairy Company ("Hygeia"), a Cohyco subsidiary and a Texas corporation. (*Id.* ¶¶ 2, 11).  On or about December 1, 1999, Hygeia's assets were sold to Southern Food Groups ("Southern"); the restructured company is now known as "'F' Street Investments" ("F Street"). (*Id.* ¶¶ 2, 6).

In this action, Quality Chekd alleges that, in 1999, Richards deliberately and fraudulently concealed relevant financial information regarding Hygeia/F Street's economic health. (Plaintiff's Original Complaint ¶¶ 30, 34).  For that reason, Quality Chekd is suing Richards, individually, for fraud and breach of his fiduciary duties as a member of the Quality Chekd board of directors. (*Id.* ¶¶ 29-35).  Quality Chekd has also filed suit against Cohyco, claiming that Richard's wrongful conduct was committed on behalf of Cohyco and Hygeia/F Street, its subsidiary. (*Id.* ¶¶ 32, 35).  Finally, Quality Chekd claims that a civil conspiracy existed between Richards and Cohyco, which resulted in its economic injuries. (*Id.* ¶¶ 36-39).

2

Apparently, the dispute between these parties arose from Hygeia/F Street's actions while a member of the Quality Chekd dairy-industry cooperative. (Plaintiff's Amended Complaint ¶ 8). Hygeia/F Street participated in a "high volume purchasing program," administered by Quality Chekd, which allowed it to "benefit from the greater purchasing power of the group." (*Id.* ¶ 9; Defendants' Motion at 2). As Plaintiff describes this program, each member company is permitted to order dairy materials, equipment, services and supplies directly from the vendors. The vendors then deliver the products directly "to the members, but bill Quality Chekd. Quality Chekd pays the vendors and then invoices the respective members for the amount of their orders." (First Amended Complaint ¶ 9). Any balance that remains unpaid for twenty-one days, after the invoice date, is considered an "over term." (*Id.*). Quality Chekd is permitted, by agreement, to assess interest on the "over term" amounts. (*Id.*).

In this action, Plaintiff complains that Hygeia/F Street's "over terms" account increased dramatically, from March 31, 1999, to June 30, 1999. (*Id.* ¶ 13). During this period, Quality Chekd reportedly attempted to "resolve the problem of Hygeia's account with Richards, who at all times acted and spoke for Hygeia." (*Id.* ¶ 17). On June 23, 1999, Hygeia allegedly agreed to make scheduled payments to Quality Chekd to reduce its debt, and the two companies set a cap on the amount of credit that Quality Chekd would extend to Hygeia in the future. (*Id.*).

While this agreement was being negotiated, Quality Chekd's management allegedly "attempted to obtain financial information from Hygeia," but was refused that information. (*Id.* ¶ 14). Richards allegedly placated Quality Chekd by advising it that "Hygeia was seeking new banking relationships." (*Id.* ¶ 14). Plaintiff contends, however, that Richards knew at that time that "Hygeia's audited financial statements for 1998 . . . reflected a 'going concern' or 'liquidity' warning which essentially would have disqualified Hygeia from such financial assistance." (*Id.*). In fact,

3

Plaintiff claims that Richards knew that "sometime during late 1998 or early 1999, [Hygeia had] lost the ability to secure bank or other commercial financing for some or all of [its] operating capital needs" (*Id.*). Further, and also unknown to Quality Chekd, Richards was allegedly negotiating a sale of Hygeia's assets to Southern Food Group ("Southern"). (*Id.* ¶ 23). While he was assuring Quality Chekd of Hygeia's financial viability, Richards reportedly knew that Southern's negotiated purchase price "could not pay Hygeia's debts," and that Hygeia was to be restructured so that "virtually all" of that company's remaining assets would be diverted to Cohyco. (*Id.* ¶¶ 6, 16).

Plaintiff complains that Hygeia did not pay down its debt in compliance with the agreed schedule, and that "both the total amount of the balance and the amount [of] 'over terms' continued to grow" in excess of the agreed cap. (*Id.* ¶ 18). On October 28, 1999, Quality Chekd was informed about the pending sale to Southern by Doug Purl ("Purl"), a Hygeia officer and Richards' nephew. (*Id.* ¶ 21). Purl and Richards reportedly "led Quality Chekd's management to believe that the account would be paid in full when Hygeia's accounts receivable were collected." (*Id.*). In November, 1999, Quality Chekd again purportedly requested financial information from Hygeia, but again, it was refused. (*Id.* ¶ 14). It is uncontroverted that, "on or about November 30, 1999, Hygeia sold its principal assets to Southern." (*Id.* ¶ 22; *see also* Defendants' Motion at 2). Although Richards apparently did not inform Quality Chekd of the sale at that time, he allegedly indicated, "for the first time," that Hygeia might not be able to pay its debt to Quality Chekd. (First Amended Complaint ¶ 21). He also stated "that no payments would be made to creditors until all of Hygeia's receivables were collected." (*Id.*). Notwithstanding the significant "over terms," Hygeia continued to participate in the Quality Chekd purchasing program throughout December 1999. (*Id.* ¶ 19).

On December 20, 1999, Southern formally notified Quality Chekd that it had purchased Hygeia's assets, and that "there was no assumption by Southern of any Hygeia liability incurred

4

before December 1, 1999." (*Id.* ¶ 22).  Subsequently, on January 25, 2000, Plaintiff alleges that "Hygeia management advised Quality Chekd for the first time that perhaps less than fifty percent of its balance would be paid." (*Id.* ¶ 21).  Reportedly, $1,601,000 remains unpaid on Hygeia's account. (*Id.* ¶ 26).

In this suit, Plaintiff claims that Richards knowingly structured the sale of Hygeia's assets to Southern so that he, and Cohyco, would benefit financially to the detriment of the company's unsecured creditors, including Quality Chekd. (*Id.* ¶¶ 23-28).  Plaintiff alleges that, prior to the sale, "Hygeia owed approximately $7 million to Congress Financial Services ('Congress'); $5.1 million to unsecured creditors; and . . . $16 million to Cohyco." (*Id.* ¶ 24).  Southern then paid $9 million for all of Hygeia's assets, except for "five parcels of real estate, Hygeia's accounts receivable and certain of the processing and manufacturing equipment," which had a total value of approximately $3 million. (*Id.* ¶¶ 23, 24).  Some time after the sale, Congress reportedly released its liens to Cohyco in return for $7 million. (*Id.* ¶ 24).  Cohyco then "took deeds in lieu of foreclosure to all five parcels of real estate." (*Id.*).  As a result of these transactions, Hygeia retained $3 million in assets, but owed approximately $12.5 million to Cohyco, its parent company. (*Id.*).  Hygeia then changed its name to "'F' Street Investments." (*Id.* ¶ 6).

On March 17, 2000, Quality Chekd filed suit against Hygeia/F Street, Cohyco, and Richards in the Houston Division of the Southern District of Texas. (Complaint, Docket Entry #1).  Two months later, F Street filed for bankruptcy in the Brownsville Division, and it asked that the entire matter be brought before the bankruptcy court. (Suggestion of Bankruptcy *and* Notice to Parties of Automatic Reference of Civil Action to the Bankruptcy Court *and Ex Parte* Motion for Order Confirming Automatic Reference to Bankruptcy Court, Docket Entry #11). F Street based its request on a 1984 general order, by then Chief Judge John Singleton, directing the automatic transfer of

5

cases to the bankruptcy court in certain circumstances. (*See id.*, Exhibit A: Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc*). Quality Chekd opposed a reference of its claims to the bankruptcy court, and the district court refused to order the automatic reference. (Plaintiff's Opposition to *Ex Parte* Motion for Order Confirming Automatic Reference to Bankruptcy Court and Alternative Motion to Withdraw any Referral to the Bankruptcy Court, Docket Entry #12; Order Denying Defendant's *Ex Parte* Motion for Order Confirming Automatic Reference to Bankruptcy Court, Docket Entry #17; Amended Order Granting Plaintiff's Motion to Withdraw any Referral to the Bankruptcy Court, Docket Entry #19). That order was without written opinion.

Following that order, a flurry of motions ensued. Among other things, Defendants asked for a transfer of venue to the district court in the Brownsville Division. (Defendants Cohyco, Inc. and H. Lee Richards' Motion to Transfer Venue ["Defendants' First Motion to Transfer"], Docket Entry #22; Joinder of Defendant F Street Investments, Inc., in Co-Defendants' Motion to Transfer Venue, Docket Entry #24). Quality Chekd opposed any transfer; but in the event the court favored Brownsville over Houston, it conditionally requested a transfer to Illinois instead. (Plaintiff Quality Chekd, Inc.'s Opposition to Defendant's Motion to Transfer Venue *and* Plaintiff's Conditional Motion to Transfer Venue to Illinois ["Plaintiff's Opposition to Transfer"], Docket Entry #23). On August 15, 2000, Plaintiff moved to dismiss all claims against F Street, without prejudice. (Plaintiff's Motion to Dismiss Proceedings as to "F" Street Investments, Inc. Without Prejudice; Docket Entry #31). Two months later, it asked to amend its complaint to reflect the fact that it no longer made any claims against F Street/Hygeia. (Plaintiff Quality Chekd Dairies, Inc.'s Motion for Leave to File First Amended Complaint, Docket Entry #40).

On January 22, 2001, a motion conference took place before this court. (Minute Entry, Docket Entry #47; Transcript of Proceedings of Oral Motion Hearing ["Tr."], Docket Entry #72).

6

At that conference, Plaintiff's pending motion for leave to file an amended complaint was granted, but Quality Chekd was ordered to file a second amended complaint, on or before February 20, 2001, to clarify its claims against Cohyco and Richards. (Tr. at 12, 45). Further, because the parties disagreed on whether F Street's dismissal should be with prejudice, the court ordered Cohyco's lawyer to submit a proposed order on the motion to dismiss (Tr. at 44, 45). In addition, the court suggested that the remaining Defendants consider a request to refer the case to bankruptcy court. (Tr. at 31). Cohyco was ordered to submit any such motion to transfer or for dismissal on or before March 20, 2001, and all other outstanding motions were rendered moot. (Docket Entry #47; Tr. at 45).

Following the hearing, Plaintiff never filed a second amended complaint, and its first amended complaint, therefore, sets out the relevant allegations. (*See generally* First Amended Complaint). That complaint makes claims against Richards and Cohyco only; Hygeia/F Street is no longer named as a defendant. (*Id.*). In that pleading, Quality Chekd alleges that it would not have extended credit to Hygeia if Richards had disclosed "the true condition and plans of Hygeia and Cohyco." (*Id.* ¶ 15). It alleges further that Richards breached his fiduciary duty as a director of Quality Chekd because he deliberately concealed relevant information about Hygeia's financial status, and he failed to "disclose that he was engaged in negotiations to consummate the sale of Hygeia's assets for a price and under a corporate relationship which would divert virtually all of the sales proceeds and remaining assets to Cohyco." (*Id.* ¶ 30). Plaintiff elaborates on this allegation with an assertion that Richards "used his relationships and position of trust with Quality Chekd's management for the benefit of Hygeia," and that he "served his own interests because he and his family interests were the principal owners of Cohyco." (*Id.*). Finally, Quality Chekd alleges that Richards committed fraud by knowingly and willfully withholding "information about Hygeia's

7

financial condition, the existence and terms of the sale of Hygeia's assets, the fact that there would not be sufficient funds to pay Hygeia's obligations to Quality Chekd, and other material information." (*Id.* ¶ 34). Quality Chekd alleges further that Richards made "repeated false representations with respect to the payment of [Hygeia's] account when he knew that could not be paid." (*Id.*). Plaintiff claims that Cohyco, as well as Richards, is liable for both fraud and breach of fiduciary duty "because Richards' wrongful conduct was committed in the course and scope of his employment with Hygeia and Cohyco, . . . on . . . [their] behalf." (*Id.* ¶¶ 32, 35). Plaintiff claims too that "Richards and Cohyco entered into a civil conspiracy to prevent the debt due from Hygeia to Quality Chekd from being paid and to divert any residual assets of Hygeia to Cohyco." (*Id.* ¶ 37). Plaintiff argues that "[t]he conspiracy was not merely between Richards as a director of Cohyco and the company, but also between Richards as an individual pursuing his own interests." (*Id.*). Quality Chekd seeks actual and punitive damages on the claims for fraud, conspiracy, and breach of fiduciary duty. (*Id.* ¶¶ 31, 34, 39). It also wants an accounting on any "assets and their proceeds which Cohyco acquired through Richards' breach of fiduciary duty or fraud." (*Id.* ¶ 41). In addition, Plaintiff asks the court to impose a constructive trust or an equitable lien on any Richards or Cohyco assets that were obtained through the allegedly wrongful conduct. (*Id.* ¶ 42).

On February 20, 2001, Plaintiff filed a written opposition to any referral to the bankruptcy court, as discussed at the motion conference. (Plaintiff's Opposition to Referral of Case ["Plaintiff's Opposition to Referral"], Docket Entry #48). In response, F Street expressly asked the court to make such a reference. (Response of F Street Investments Inc. to Plaintiff's Opposition to Referral of Case *and* Motion for Reference of Case to Bankruptcy Court, Docket Entry #51). Cohyco and Richards (collectively, "Defendants") filed a similar motion on the same date. (Defendants' Motion). With that request, Cohyco and Richards also moved for partial summary judgment on the civil conspiracy

8

claim, and for a transfer of venue to the Brownsville Division. (*Id.*). Quality Chekd moved to strike F Street's pleading, noting that no claims were pending against that entity. (Plaintiff's Motion to Strike). The court agrees with Quality Chekd, and that motion should be GRANTED.

While the motions were pending, Quality Chekd informed the court that the parties to this case, and the parties to the bankruptcy proceeding, had agreed to enter into mediation before the Honorable Ruby Sondock. (Notice of Agreement of a Mediator and Mediation Schedule, Docket Entry #63). Accordingly, the case was referred to mediation and the proceedings before this court were stayed. (Order Granting Motion for Continuance, Docket Entry # 65; Order Referring Case to Mediation, Docket Entry #66). Apparently, the complexity of the claims and defenses required several sessions with the mediator. Subsequently, the parties notified this court that there was no hope of resolution. (Status Report by Quality Chekd Dairies, Inc., Docket Entry #67).

Three substantive issues are before the court. First, Defendants' request a judgment in their favor on Plaintiff's civil conspiracy claim. (Defendants' Motion at 1, 4, 5). Defendants argue specifically that "Richards is a shareholder, officer, and/or director of Cohyco, and therefore Cohyco and Richards are not separate persons capable of forming a 'meeting of the minds' as required to form a civil conspiracy." (*Id.* at 4). Second, Defendants ask for a "referral of the remaining causes of action to the Bankruptcy Court in Brownsville . . . because this matter could conceivably have an effect on the size of Hygeia's estate in bankruptcy, or the amount of funds distributable to creditors of Hygeia, including Quality Chek'd." (*Id.*). Third, Defendants want the dispute transferred to the Brownsville Division, contending that both convenience and the interest of justice require such a transfer. (*Id.*). After a consideration of the motions, the evidence submitted, and the applicable law, it is ORDERED that Defendants' motion to transfer venue is GRANTED. For obvious reasons, those pending motions on dispositive issues, and the request for a referral to bankruptcy court,

9

should be left to the discretion of the transferee court. To assist that court, however, those two issues are addressed briefly below.

### Discussion

### *Transfer of Venue*

Defendants ask the court to transfer these claims to the Brownsville Division of the Southern District of Texas for final disposition of this civil action, pursuant to 28 U.S.C. § 1404(a). (Defendants' Motion at 14). Defendants claim that such a transfer is appropriate because "none of the parties, witnesses or evidence is located in the Houston Division. Rather, all material witnesses and evidence are located in or near the Brownsville Division and all parties are actively participating in related litigation in the Brownsville Division." (*Id.*). On that basis, Defendants argue that a transfer of this case would be "in the interest of justice." (*Id.*). Plaintiff does not deny that it is a party to the F Street/Hygeia bankruptcy litigation in Brownsville. Nonetheless, it argues that "[t]ransfer of this case to the Brownsville Division of the District Court would inconvenience more parties and witnesses than it would help." (Plaintiff Quality Chekd Dairies, Inc.'s Response and Opposition to Defendants Cohyco, Inc.'s and H. Lee Richards' Motion for Summary Judgment, Motion for Referral to the Bankruptcy Court and Motion to Transfer ["Plaintiff's Response"] ¶ 5, Docket # 56). Quality Chekd contends that "numerous plaintiff's witnesses will have to come from Illinois and other points outside of Texas. The location, transportation, facilities and accommodations in Houston will be more convenient to them than those in Brownsville." (*Id.* ¶ 27). Plaintiff asks, therefore, that the case remain in the Houston Division. (*Id.*).

Under 28 U.S.C. § 1404(a), a district court may "transfer any civil action to any other district or division where it might have been brought," if such transfer is deemed to promote "the convenience of parties and witnesses, [and] . . . the interest of justice." 28 U.S.C. § 1404(a). District

courts have great discretion to decide whether to grant a transfer under § 1404(a), particularly when the transfer is within the same judicial district. *Casarez v. Burlington Northern/Santa Fe Co.,* 193 F.3d 334, 339 (5th Cir. 1999); *Peteet v. Dow Chemical,* 868 F.2d 1428, 1436 (5th Cir.), *cert. denied sub nom. Dow Chem. Co. v. Greenhill,* 493 U.S. 935 (1989); *Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir. 1988). The United States Supreme Court has held that "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). In deciding whether to grant a § 1404(a) motion to transfer, a court must consider "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet,* 868 F.2d at 1436. The relevant factors include the following:

> the availability and convenience of witnesses and parties, the location of counsel, the location of pertinent books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum, which is generally entitled to great deference.

*Robertson v. M/V Cape Hunter,* 979 F. Supp. 1105, 1107 (S.D. Tex. 1997); *see also Henderson v. AT&T Corp.,* 918 F. Supp. 1059, 1065 (S.D. Tex. 1996); *Dupre v. Spanier Marine Corp.,* 810 F. Supp. 823, 825 (S.D. 1996). However, how these factors are balanced depends on the specific facts of each case. *See Stewart Org.,* 487 U.S. at 29. And it is the movant's burden to show that the balance of factors weigh in favor of a change of venue. *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir. 1966).

Even given the balancing required, however, a trial court will generally defer to the plaintiff's choice of forum in a venue dispute. *Robertson,* 979 F. Supp. at 1109. That choice is considered to

11

be "most influential and should rarely be disturbed unless the balance is strongly in [the] defendant's favor." *Id.* (quoting *United Sonics, Inc. v. Shock*, 661 F. Supp. 681, 683 (W.D. Tex. 1986)). That deference, however, is not absolute. In fact, "close scrutiny is given to Plaintiff's choice of forum when the Plaintiff does not live in the Southern District." *Id.*; *see also Henderson*, 918 F. Supp. at 1068; *Dupre*, 810 F. Supp. at 828). "Where . . . the other factors weigh strongly in favor of transferring the case, the Plaintiff's choice of forum alone cannot be controlling." *Henderson*, 918 F. Supp. at 1068. Here, Plaintiff is based in Naperville, Illinois, and it is incorporated in Wisconsin. (First Amended Complaint ¶ 4). It has not shown any connection with this district. Clearly, if the other factors weigh in favor of a transfer to the Brownsville Division, then Quality Chekd's preference for the Houston Division does not control.[1]

Further, among the factors considered, "[t]he place of the alleged wrong is perhaps the most important factor in venue determination." *Robertson*, 979 F. Supp. at 1108. It is easy to see that "suits involving plaintiffs who live and were injured in another judicial district work to delay the trials of resident plaintiffs." *Henderson*, 918 F. Supp. at 1067. Courts recognize that if the plaintiff's claims "have absolutely no connection" to the chosen district, and if he resides elsewhere, then "transfer is appropriate." *Id.* at 1065. Here, Quality Chekd insists that none of the transactions central to its claims occurred in the Brownsville Division. (*See* Plaintiff's Opposition to Transfer ¶ 21, *incorporated by reference in* Plaintiff's Response at 12, *and attached as* Exhibit A). It has not, however, pointed to any evidence that shows that the alleged wrongs took place in the Houston Division either. Indeed, Quality Chekd alleges that "the actual place of the incidents giving rise to this civil action was in Chicago where Mr. Richards breached his fiduciary duties." (*Id.*). For their

---

[1] It is unclear whether Plaintiff continues to urge its earlier "Conditional Motion to Transfer Venue to Illinois." However, given the fact that Plaintiff chose to file its suit in this district to begin with, such an argument is unavailing.

12

part, Defendants argue that Richards's alleged misconduct took place when he "was a shareholder, officer, and director of Hygeia and Cohyco." (Defendants' First Motion to Transfer at 4, *incorporated by reference in* Defendants' Motion at 14 n.17, *and attached as* Exhibit F). During the relevant time, the corporate offices of those two companies were located in Harlingen, Texas, a city within the Brownsville Division. (*Id.*). From this evidence, there is no showing that Houston is the place of the alleged wrong, and so that factor weighs in favor of a transfer to Brownsville. *See Robertson*, 979 F. Supp. at 1108; *Henderson*, 918 F. Supp. at 1065, 1067.

Another highly important factor, often considered the most important one, is the convenience to the witnesses and parties. *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994); *Dupre*, 810 F. Supp. at 825. In considering this factor, "a court must concentrate primarily upon the availability and convenience of key witnesses." *Dupre*, 810 F. Supp. at 825. For that reason, the moving party must make more than a general allegation that certain key witnesses reside outside the chosen forum. *Federal Trade Comm'n v. Multinet Mktg., LLC*, 959 F. Supp. 394, 396 (N.D. Tex. 1997); *Dupre*, 810 F. Supp. at 825 (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3851 at 425 (1986)). "The movant must specifically identify key witnesses and outline the substance of their testimony." *Multinet Mktg.*, 959 F. Supp. at 396; *Dupre*, 810 F. Supp. at 825. It has long been held that "[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Le Bouef v. Gulf Operators, Inc.*, 20 F. Supp.2d 1057, 1059 (S.D. Tex. 1998); *Dupre*, 810 F. Supp. at 825.

Here, the Rule 26 disclosures by the parties detail that three likely key witnesses reside in the Brownsville Division. (Defendants' First Motion to Transfer at 5; Defendants' Motion, Exhibit F5: Plaintiff Quality Chekd Dairies, Inc's Rule 26 Disclosures ["Plaintiff's Rule 26 Disclosures"]; Defendant's Motion, Exhibit F6: Defendants Cohyco, Inc. and H. Lee Richards' Initial Disclosures

13

Pursuant to Rule 26(A) ["Defendant's Rule 26 Disclosures"]).  F. Lee Richards, Merry Richards,[2] and Doug Purl have been named by both parties as persons with information relevant to this case. (*See* Defendants' Rule 26 Disclosures at 1-2; Plaintiff's Rule 26 Disclosures ¶ 1(i)-(k)).  All three of these witnesses were shareholders, officers, and directors of Hygeia and Cohyco during the relevant time frame. (*See* Defendants' Rule 26 Disclosures at 1-2; Plaintiff's Rule 26 Disclosures ¶ 1(i)-(k)).  However as a Defendant, and employees of a Defendant, their convenience is afforded little weight when compared to that of other key witnesses. *See Robertson*, 979 F. Supp. at 1107; *Continental Airlines*, 805 F. Supp. at 1397.  But in weighing the relative convenience to the witnesses in this case, it should be noted that none of the other designated witnesses reside in the Houston Division, or even in Texas.  Instead, these witnesses live in Illinois, Oregon, Missouri, California, and Colorado.  (Defendants' First Motion to Transfer at 5; Defendants' Rule 26 Disclosures; Plaintiff's Rule 26 Disclosures).  For this reason, even Plaintiff's chosen forum cannot be said to be particularly convenient for any or all of these individuals.

In that regard, Quality Chekd argues that, although it could have sued Cohyco and Richards in Illinois,

> because of the probable application of Texas law to many of the issues involved, [it] brought this suit in one of the districts and divisions in Texas that was central geographically to transportation terminals from points throughout the country.

(Plaintiff's Opposition to Transfer ¶ 9).  Plaintiff contends that Brownsville is not centrally located, and so its key witnesses will suffer more inconvenience if they must testify there, rather than in Houston. (*See* Plaintiff's Response ¶ 27).  This court chooses not to explore the merits or relative comforts of one city against another in this district.  Further, Plaintiff chose to litigate in this district, and its decision is relevant to the inquiry.  The court anticipates that "[t]he only additional

---

[2] Merry Richards is H. Lee Richards's sister.  (First Amended Complaint ¶ 23)

14

inconvenience will be the slightly longer travel time" that it may take these witnesses to reach Brownsville from their diverse locations. *See Continental Airlines*, 805 F. Supp. at 1397. Further, most, if not all, of these witnesses are Quality Chekd directors, and they surely anticipated certain inconvenience, and travel, as a result of the suit and Plaintiff's choice of this district as the forum in which to pursue its claims. (*See* Plaintiff's Rule 26 Disclosures ¶ 1(a)-(h)). Although Quality Chekd has also named certain Southern Foods employees as possible witnesses, it has not provided any addresses for them, or any statement of their probable testimony. (Plaintiff's Rule 26 Disclosures ¶ 1(l)-(o)). The court is, therefore, unable to determine if these individuals are key witnesses, or if they will be inconvenienced by a change of venue. For all of these reasons, the court concludes that Plaintiff's witnesses will not be unduly burdened by a transfer of this case to the Brownsville Division.

Plaintiff next argues, and the court agrees, that it must also consider the location of pertinent books and records. On that issue, Defendants have provided undisputed evidence that "[a]ll important corporate documents needed to disprove Plaintiff's allegations are located in either the corporate offices of Hygeia or Cohyco, both of which are in Harlingen." (Defendants' First Motion to Transfer at 6) (citing Defendants Motion, Exhibit F2: Affidavit of H. Lee Richards ["Richards Affidavit"] ¶ 2). Richards swears, by affidavit, that neither he, Hygeia, nor Cohyco maintain "assets, facilities, records or employees" in Houston. (Richards Affidavit ¶ 3). Further, it is likely that some of the Hygeia records needed for this litigation are also be relevant to the F Street bankruptcy litigation, which is currently proceeding in Brownsville. On the other hand, Quality Chekd argues that all of its relevant records are kept in Naperville, Illinois. (Plaintiff's Rule 26 Disclosures ¶ 2). But, without a more compelling showing, the court concludes that it is no more inconvenient to bring

15

these records to Brownsville than it is to bring them to Houston. Given the evidence presented, this factor weighs in favor of a transfer to the Brownsville Division.

The court must also consider the location of trial counsel and the cost of obtaining attendance of witnesses, as well as other trial expenses. *Robertson*, 979 F. Supp. at 1107. Neither party argues that trial costs will be any different in Brownsville than in Houston, so that factor has little significance here. Further, the location of counsel is "entitled to the least consideration" of all the factors. *Robertson*, 979 F. Supp. at 1108. Nonetheless, the court must "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *See id.*; *Dupre*, 810 F. Supp. at 823. Quality Chekd has, indeed, chosen a Houston law firm to prosecute its claims. Because Defendants' attorneys are located in the Corpus Christi Division, this factor may weigh against a change of venue, but it is of little significance in this instance

Finally, the court must consider issues of delay and prejudice. Plaintiff argues that Defendants may be seeking a litigation advantage along with a transfer. (Plaintiff's Opposition to Transfer ¶ 16). Quality Chekd contends that "[i]t would be to [Defendants'] advantage to try the case where the jury panel would be much more likely to have heard of their former dairy operations and know of or be aware of the individual Defendant Richards, who is a long time citizen in Harlingen." (*Id.*). This court is confident, however, that the Brownsville court will ensure that *voir dire* is conducted so as to minimize the possibility of jury bias. Further, there is little likelihood that a change of venue will unduly delay the proceedings, as either this court or the Brownsville Division must still address the question of a referral to the bankruptcy court. If the referral is granted, it will be to the bankruptcy court sitting in Brownsville. In fact, the undisputed evidence shows that Quality Chekd has already appeared in the Brownsville Division, in connection with Hygeia's

16

bankruptcy proceeding. (Defendants' Motion, Exhibit F8). Delay and prejudice do not seem to be significant factors in this analysis.

On consideration of the evidence submitted, the balance of the relevant factors is persuasive that "the litigation would more conveniently proceed and the interests of justice be better served by transfer" to the Brownsville District, under § 1404(a). *See Peteet*, 868 F.2d at 1436; *see also Stewart Org.*, 487 U.S. at 29. For that reason, it is ORDERED that Defendants' motion for a transfer of venue be GRANTED. If, for some reason, this ruling is deemed to have a dispositive effect then, in the alternative, it is RECOMMENDED, under 28 U.S.C. §636(b)(1)(B), that Defendants' motion for a transfer of venue be GRANTED. The parties will have ten (10) days to object to the factual and legal findings in this recommendation.

### *Civil Conspiracy*

Although Defendants' motion for partial summary judgment is best left for the transferee court to decide, to assist that court in a resolution of that motion, it is RECOMMENDED that it be GRANTED, for the reasons set out below.

Defendants argue that they are entitled to summary judgment on Plaintiff's claim of conspiracy because "Cohyco cannot conspire with its own officer and director." (Defendant's Motion at 5). Defendants contend that, under Texas law, a conspiracy requires "a meeting of minds" between two or more persons who "specifically intend to accomplish an unlawful purpose." (*Id.* at 6) (citing *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995); *Massey v. Armco Steel Co.*, 652 S.W.2d 716, 719 (Tex. 1983)). Defendants point out that there cannot be a conspiracy between Richards and Cohyco, under the relevant law, because "a person cannot conspire with himself, even though he may have had legal capacities." (*Id.* at 7). Defendants argue further that a corporation cannot conspire with its own employees, as a matter of law, and a parent corporation

17

cannot conspire with its wholly owned subsidiary. (*Id.*) (citing *Griffin v. GK Intelligent Systems*, 87 F. Supp.2d 684, 690 (S.D. Tex. 1999); *Atlantic Richfield Co. v. Misty Products, Inc.*, 820 S.W.2d 414, 420 (Tex. App.—Houston [14th Dist.] 1991, writ denied). Defendants insist that, under this line of reasoning, "an agent of a parent corporation cannot conspire, within the course and scope of his agency relationship, with an agent of a wholly-owned subsidiary." (*Id.*) (citing *Atlantic Richfield*, 820 S.W.2d at 421). Finally, Defendants argue that holding a parent liable, through civil conspiracy, for the tort of a subsidiary, "would allow a piercing of the corporate veil without a showing of actual fraud, in contravention of Texas statutory law." (*Id.* at 8) (citing TEX. BUS. CORP. ACT § 2.21 (Vernon Supp. 2000); *Menetti v. Chavers*, 974 S.W.2d 168, 173-74 (Tex. App.—San Antonio 1998, no writ).

In response, Quality Chekd alleges that "Richards was not only acting on behalf of Cohyco, he was also acting on behalf of himself and his sister." (Plaintiff's Response ¶ 21). It argues that "if the officer or director is acting at least in part in his own interest," then there is no longer a presumption that the act of the individual is an act of the corporation. (Plaintiff's Answer to Defendants Cohyco, Inc.'s and H. Lee Richards' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment ¶ 24, Docket Entry #68)

Plaintiff's claim of a civil conspiracy is governed by Texas law. The Texas Supreme Court has defined "civil conspiracy" as "a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 975 S.W.2d 546, 553 (Tex. 1998); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 938 (Tex. 1983). It is axiomatic that a person cannot conspire with himself. In that regard, it is also a well-settled "rule of law that agents and their principals cannot conspire together." *Bradford v. Vento*, 997 S.W.2d 713, 729 (Tex. App.—Corpus

18

Christi 1999), *aff'd* 48 S.W.3d 749, 761 (Tex. 2001). Further, "a corporation can not conspire with itself, no matter how many corporate agents participate in the alleged conspiracy." *Id.* All parties here agree that, at the time of the events alleged, Richards was an officer and director of Cohyco. (*See* Plaintiff's Response ¶ 20). Further, Plaintiff has insisted that "Richards was, at all times, the controlling person [who] . . . made the decisions." (*Id.*). Plaintiff has not alleged that any other individual was involved in these decisions. Essentially, Quality Chekd's argument is that Richards, acting as a Cohyco fiduciary, conspired with himself, acting in his own interests. That allegation does not state a cause of action for civil conspiracy under the current law. Accordingly, Defendants' motion for partial summary judgment, on the civil conspiracy claim, should be GRANTED.

### *Referral to Bankruptcy Court*

As noted throughout, Defendants want this dispute referred to the bankruptcy court, albeit for resolution of all "pre-trial" matters. (Defendants' Motion at 9). It seems obvious, however, that a reference to the bankruptcy court should be for all purposes or for none at all. Defendants argue that a referral to the bankruptcy court is appropriate, under Fifth Circuit precedent, because these claims "relate to" the Hygeia/F Street bankruptcy because Quality Chekd's success could affect the amount of the bankruptcy estate that is available for distribution to unsecured creditors. (*Id.* at 9) (citing 28 U.S.C. § 157; *In re J.R. Canion, Jr. v. Evans*, 196 F.3d 579, 585-87 (5th Cir. 1999)). And, more importantly, Defendants insist that a referral would increase judicial efficiency because discovery would not be duplicated, and the risk of inconsistent findings between the bankruptcy and district courts would be eliminated. (*Id.* at 13). In response, Plaintiff insists that "[r]eferral to Bankruptcy court would create a cumbersome arrangement and create an unnecessary jurisdictional issue" by carving the case up among several courts. (Plaintiff's Response ¶1).

19

Under 28 U.S.C. § 1334(c)(1), district courts have "original, but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(c)(1). It is clear that Quality Chekd's argument, that referral would create an unnecessary jurisdictional issue, is without merit. Moreover, the Bankruptcy Code permits a district court to refer such proceedings to the bankruptcy court in appropriate circumstances. 28 U.S.C. § 157(a); *In re Canion*, 196 F.3d at 584-85. The United States Court of Appeals for the Fifth Circuit has determined that "A proceeding is 'related to' a bankruptcy 'if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Id.* at 585; *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999) (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995)). However, "common facts alone are insufficient to confer 'related to' jurisdiction." *Id.*

Here, Defendants insist that this case "could conceivably have an effect on the Hygeia bankruptcy estate because it could [a]ffect the amount of the estate available to be distributed to Quality Chek'd and/or other unsecured creditors of Hygeia." (Defendants' Motion at 9). They argue that this circuit has "found 'related to' jurisdiction in situations where the bankruptcy estate would either be increased or reduced as a result of a separate claim between two non-debtors." (*Id.* at 10) (citing *In re Canion*, 196 F.3d at 586-87). They maintain that the damages sought by Quality Chekd are "based upon the debt owed to Quality Chekd by Hygeia," and so "if Quality Chekd is successful in prosecuting its claim against Cohyco and/or Richards, Quality Chekd would lose its right to recover for its debt from the Hygeia bankruptcy estate." (*Id.* at 11). Further, any recovery by Quality Chekd from Cohyco or Richards would allegedly decrease "the total amount due on Quality Chekd's claims against Hygeia's bankruptcy estate." (*Id.*). In sum, Defendants contend that other unsecured creditors would have an increased "share in the disbursement that would otherwise have been paid to Quality Chekd." (*Id.*).

20

Plaintiff argues, in response, that a case "relates to" a bankruptcy proceeding only if that case could conceivably have some effect on the bankruptcy estate. (Plaintiff's Response ¶ 25). Quality Chekd contends that, in truth, the reverse situation is present here. (*Id.*). Plaintiff claims that while the Hygeia/F Street bankruptcy litigation might affect these claims, this case cannot impact the bankruptcy litigation. (*Id.* ¶ 25). It outlines its contentions in the following terms:

> The measure of damages against these defendants is how much the plaintiff lost due to their conduct. Defendants are entitled to a credit for any amount that Quality Chekd recovers form the bankruptcy estate. If the bankruptcy estate is not closed by the time that this case becomes final, any probable amount of recovery from the bankruptcy estate would be an issue for the jury, based on testimony about the facts. The verdict would thus fix a net amount due. If later the bankruptcy court distributed a greater amount of dividends to the plaintiff, the defendants would be entitled to a further credit. However, a recovery in this case would not affect the bankruptcy estate and since the jury verdict and judgment would take any actual and probable proceeds from the bankruptcy proceedings into account.

(*Id.*). It remains for the Brownsville district court to determine whether referral to the bankruptcy court is appropriate under these facts.

**Conclusion**

Based on the foregoing, it is ORDERED that Defendants' motion to transfer venue, under 28 U.S.C. § 1404(a), be GRANTED, and that this case be transferred to the United States District Court for the Southern District of Texas, Brownsville Division.

The Clerk shall enter this Order and provide a true copy to all counsel of record.

In the alternative, should this be considered a dispositive matter, the parties will have ten (10) days from the receipt of it to file written objections thereto, pursuant to 28 U.S.C. § 636(b)(1)(c), General Order 80-5, S.D. Texas. Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the

21

chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

SIGNED at Houston, Texas, this _____ of January, 2002.

_____
MARY MILLOY
UNITED STATES MAGISTRATE JUDGE

22