IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

AUG 1 3 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| QUALITY CHEKD DAIRIES, INC., § | |
| Plaintiff, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 02-CV-040 |
| COHYCO, INC., and H. LEE § | |
| RICHARDS, § | |
| Defendants. § | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Pending before the Court is Defendants Cohyco, Inc., and H. Lee Richards's Motion for Partial Summary Judgment (Docket No. 50). After carefully considering the motion and the subsequent replies, surreplies, and responses that were filed by the parties (Docket Nos. 56, 58, 61, 68, 70, 71, 77), the Court is of the opinion that partial summary judgment should be GRANTED.

### I.

#### FACTUAL BACKGROUND

Plaintiff Quality Chekd Dairies, Inc., ("Quality Chekd") is a for-profit cooperative enterprise organized under the laws of Wisconsin, and it maintains its principal place of business in Illinois. (*See* First Amended Complaint, Docket No. 41, ¶ 1). Defendant Cohyco, Inc., ("Cohyco") is a Texas corporation with its principal office in Texas. (*Id.*, ¶ 2). Hygeia Dairy Company ("Hygeia") is a Cohyco subsidiary and a Texas corporation. (*Id.*). At the time of the events alleged in Quality Chekd's First Amended Complaint, Defendant H. Lee Richards ("Richards") was simultaneously a member of Quality Chekd's board of directors, the chairman of the board of Cohyco, and the chairman of the board of Hygeia. (*Id.*, ¶ 11).

The dispute between the parties arose from Hygeia's actions during its membership in the

Quality Chekd dairy-industry cooperative. (*Id.*, ¶ 8). According to Quality Chekd, the cooperative permitted each member to order dairy materials, equipment, services, and supplies directly from vendors. (*Id.*, 9). The vendors then delivered the products directly to the members but billed Quality Chekd. (*Id.*). Quality Chekd subsequently paid the vendors and invoiced its members for the amount of their respective orders. (*Id.*). The plaintiff considered any balance that remained unpaid 21 days after the invoice date as an "over term," and under the cooperative agreement, Quality Chekd assessed interest on any "over term" amounts. (*Id.*).

Quality Chekd alleges that between March 31, 1999, and June 30, 1999, Hygeia's "over terms" account increased dramatically. (*Id.*, ¶ 13). During this period, Quality Chekd reportedly attempted to "resolve the problem of Hygeia's account with Richards, who at all times acted and spoke for Hygeia." (*Id.*, ¶ 17). On June 23, 1999, Hygeia agreed to reduce its debt by making scheduled payments to Quality Chekd, and the two companies set a cap on the amount of credit Quality Check would extend to Hygeia in the future. (*Id.*).

During these negotiations, Richards refused to provide Quality Chekd with financial information regarding Hygeia, but he reassured Quality Chekd that "Hygeia was seeking new banking relationships." (*Id.*, ¶ 14). Quality Chekd claims that Richards knew, however, that "Hygeia's audited financial statements for 1998 . . . reflected a 'going concern' or 'liquidity' warning [that] essentially would have disqualified Hygeia from such financial assistance." (*Id.*). Moreover, unbeknownst to Quality Chekd, Richards sought to negotiate a sale of Hygeia's assets to Southern Foods Group ("Southern"). (*Id.*, ¶¶ 6, 23). According to Quality Chekd, Richards knew that Southern's negotiated purchase price was insufficient to pay Hygeia's debts and that Hygeia would be restructured so that "virtually all" of its remaining assets would be diverted to Cohyco. (*Id.*, ¶¶

6, 16).

Quality Chekd further complains that Hygeia did not reduce its debt in compliance with the agreed schedule, and the total amount of its "over terms" exceeded the agreed cap. (*Id.*, ¶ 18). On October 28, 1999, Doug Purl ("Purl"), a Hygeia officer and Richards's nephew, informed Quality Chekd about Hygeia's pending sale to Southern. (*Id.*, ¶ 21). Purl and Richards "led Quality Chekd's management to believe that the account would be paid in full when Hygeia's accounts receivable were collected." (*Id*). In November 1999, Quality Chekd's request for financial information from Hygeia was once again refused, and on or about November 30, 1999, Southern purchased Hygeia's principal assets. (*Id.*, ¶ 22). The newly restructured company became known as "F" Street Investments ("F Street"). (*Id.*, ¶ 6). Richards allegedly did not notify Quality Chekd of the sale, but "for the first time," he informed Quality Chekd that Hygeia/F Street might not be able to pay its debt. (*Id.*, ¶ 21). He also stated "that no payments would be made to creditors until all of Hygeia's receivables were collected." (*Id.*). Notwithstanding the substantial "over terms," Hygeia/F Street continued to participate in Quality Chekd's purchasing program through December 1999. (*Id.*, ¶ 19).

Quality Chekd claims that Richards structured the sale of Hygeia's assets to Southern so that he and Cohyco would benefit financially to the detriment of Hygeia's unsecured creditors, including Quality Chekd. (*Id.*, ¶¶ 23-28). Prior to the sale, "Hygeia owed approximately $7 million to Congress Financial Services ("Congress"); $5.1 million to unsecured creditors; and . . . $16 million to Cohyco." (*Id.*, ¶ 24). Southern paid $9 million for all of Hygeia's assets, except for "five parcels of real estate, Hygeia's accounts receivable and certain . . . processing and manufacturing equipment," which had a total value of approximately $3 million. (*Id.*, ¶¶ 23, 24). Quality Chekd further alleges that after the sale Congress released its liens to Cohyco in return for $7 million. (*Id.*,

¶ 24). Cohyco subsequently "took deed in lieu of foreclosure to all five parcels of real estate." (*Id.*). As a result of these transactions, Hygeia retained $3 million in assets but owed approximately $12.5 million to Cohyco. (*Id.*).

On December 20, 1999, Southern formally notified Quality Chekd that it had purchased Hygeia's assets and had not assumed any of Hygeia's liability incurred before December 1, 1999. (*Id.*, ¶ 22). Quality Chekd further alleges that Hygeia management advised Quality Chekd for the first time on January 25, 2000, that perhaps less than fifty percent of its balance would be paid. (*Id.*, ¶ 21). Quality Chekd presently claims that $1,601,000 remains unpaid on Hygeia's account. (*Id.*, ¶ 26).

## PROCEDURAL HISTORY

On March 17, 2000, Quality Chekd originally filed suit against Richards, Cohyco, and Hygeia/F Street in the Houston Division of the Southern District of Texas. Two months later, F Street filed for bankruptcy in the Brownsville Division, and it asked that the entire matter be brought before the bankruptcy court. The district court refused to order the automatic reference (Docket No. 17), and Quality Chekd filed a claim against F Street in bankruptcy. Quality Chekd also moved to dismiss all the claims against F Street without prejudice (Docket No. 31) in the district court, and it sought leave to file a first amended complaint (Docket No. 40) eliminating the claims against F Street. F Street opposed both of these motions. (*See* Docket Nos. 33, 40).

On January 22, 2001, Magistrate Judge Mary Milloy held a hearing on pending motions, including Quality Chekd's motion to dismiss F Street and its motion to permit it to amend its pleadings. The court orally granted Quality Chekd's motion for leave to amend and further ruled that the parties should file a proposed order dismissing F Street. (*See* Docket No. 73.) No written orders,

however, confirming these rulings were ever entered formally.

On March 20, 2001, Quality Chekd filed a written opposition to any referral to the bankruptcy court, and in response, F Street asked the court to make such a reference. (*See* Docket Nos. 48, 51). Cohyco and Richards also filed a motion for referral, a motion for partial summary judgment, and a motion for a transfer of venue to the Brownsville Division. (*See* Docket No. 50). Quality Chekd moved to strike F Street's motion, noting that no claims were pending against that entity. (*See* Docket No. 54). On January 28, 2002, in a Memorandum and Order on Defendants' Motion to Transfer Venue, Magistrate Judge Milloy granted the motion to transfer venue. (*See* Docket No. 75). She further recommended that the district court grant Quality Chekd's motion to strike F Street's pleading because F Street was a "former party." (*Id.*). She also held that the transferee court should decide the defendants' motion for partial summary judgment and the motion for a reference to bankruptcy.[1] (*Id.*).

This case was transferred to the Brownsville Division of the Southern District of Texas on March 5, 2002, and the matter was referred to Magistrate Judge John Wm. Black. After holding an initial pretrial conference, Magistrate Judge Black issued several orders, including an order granting Quality Chekd's Motion for Leave to File its First Amended Complaint. (*See* Docket No. 89). The order provided that Quality Chekd's First Amended Complaint (Docket No. 41) was deemed filed as of January 22, 2001, the date Magistrate Judge Milloy orally granted Quality Chekd's request to file an amended complaint omitting the claims against F Street. (*Id.*).

---

[1] After the case was transferred to the Brownsville Division, Cohyco and Richards withdrew their motion for referral to bankruptcy, causing that issue to become moot.

## II.

**CAUSES OF ACTION RAISED IN QUALITY CHEKD'S FIRST AMENDED COMPLAINT**

In its First Amended Complaint, Quality Chekd raises claims against Richards and Cohyco. According to Quality Chekd, Richards committed fraud by knowingly and willfully withholding "information about Hygeia's financial condition, the existence and terms of the sale of Hygeia's assets, the fact that there would not be sufficient funds to pay Hygeia's obligations to Quality Chekd and other material information." (Docket No. 41, ¶ 34). Quality Chekd further contends that Richards breached his fiduciary duty as a director of Quality Chekd because he deliberately concealed relevant information about Hygeia's financial status, and he failed to "disclose that he was engaged in negotiations to consummate the sale of Hygeia's assets for a price and under a corporate relationship [that] would divert virtually all of the sales proceeds and remaining assets to Cohyco." (*Id.*, ¶ 30). According to Quality Chekd, Richards "used his relationships and position of trust with Quality Chekd's management for the benefit of Hygeia," and he "served his own interests because he and his family interests were the principal owners of Cohyco." (*Id.*). Quality Chekd alleges that it would not have extended credit to Hygeia if Richards had disclosed "the true condition and plans of Hygeia and Cohyco." (*Id.*, ¶ 15).

Quality Chekd also believes that "Richards and Cohyco entered into a civil conspiracy to prevent the [payment of the] debt due from Hygeia to Quality Chekd . . . and to divert any residual assets of Hygeia to Cohyco." (*Id.*, ¶ 37). According to Quality Chekd, "[t]he conspiracy was not merely between Richards as a director of Cohyco and the company, but also between Richards as an individual pursuing his own interests." (*Id.*). Moreover, Quality Chekd asserts that as a third party, Cohyco caused, participated in, and aided and abetted Richards's fraud and breach of fiduciary

duty. Finally, Quality Chekd avers that Cohyco should be held liable for Richards's actions based on the doctrine of *respondeat superior* because "[Richards's] wrongful conduct was committed in the course and scope of his employment with Hygeia and Cohyco and was done on Cohyco's and Hygeia's behalf." (*Id.*, ¶¶ 32, 35).

Quality Chekd seeks actual and punitive damages on the claims for fraud, breach of fiduciary duty, aiding and abetting, conspiracy, and *respondeat superior*. (*Id.*, ¶¶ 31, 34, 39). It also wants an accounting on any "assets and their proceeds [that] Cohyco acquired through [Richards's] breach of fiduciary duty or fraud." (*Id.*, ¶ 41). Additionally, Quality Chekd asks the court to impose a constructive trust or an equitable lien on any of [Richards's] or Cohyco's assets that were obtained through the allegedly wrongful conduct. (*Id.*, ¶ 42).

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The defendants argue that summary judgment should be granted in favor of Cohyco on all the causes of action and in favor of Richards with respect to the civil conspiracy claim. First, the defendants contend that Richards acted as a shareholder, officer, and/or director of Cohyco; consequently, Cohyco and Richards are not separate persons capable of the requisite "meeting of the minds" required to form a civil conspiracy. Moreover, they argue that just as a corporation and its agents are not separate entities for purposes of forming a civil conspiracy, a corporation cannot constitute a separate entity from its agents for purposes of a claim of aiding and abetting fraud and breach of fiduciary duty. Finally, the defendants argue that the doctrine of *respondeat superior* does not apply in this case because no evidence exists to suggest that the actions Richards took on behalf of Hygeia were performed in the course and scope of his employment with Cohyco.

## III.

### SUMMARY JUDGMENT STANDARD

Summary judgment evidence is viewed in the light most favorable to the nonmovant. *See Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456 (1992). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Once the movant establishes the absence of a factual dispute, the burden shifts to the nonmovant to show that summary judgment is inappropriate. The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *See Anderson*, 477 U.S. at 256. Instead, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *See id.* at 242. An issue is material if it involves a fact that might affect the outcome of the suit under governing law. *See Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). This evidence must do more than create a metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Anderson*, 477 U.S. at 256. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.* at 248.

## IV.

### CIVIL CONSPIRACY

In Texas, a civil conspiracy requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998) (citing *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)). Generally, the acts of a corporate agent are the acts of the corporation; consequently, a corporation cannot conspire with itself. *See Elliott v. Tilton*, 89 F.3d 260, 265 (5th Cir. 1996) (relying on *Fojtik v. First Nat'l Bank*, 752 S.W.2d 669, 673 (Tex.App.—Corpus Christi 1988, *writ denied*)). A conspiracy may lie, however, if a corporate agent (1) acts outside the scope of his employment or (2) acts for a personal purpose of his own. *See Texas-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 138 (Tex.App.—Texarkana 2000, *no writ*).

In this case, Quality Chekd relies on the "personal purposes" exception, arguing that a fact issue exists as to whether Richards was acting "at least in part in his own interest." (Docket No. 68, ¶ 24). In order to prove personal interest, "the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests." *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). "[T]he mere existence of a personal stake in the outcome, especially when any personal benefit is derivative of the improved financial condition of the corporation or consists of the continued entitlement to draw a salary, cannot alone constitute proof that the defendant committed" an unlawful act against the corporation. *Id.* The reasons must be personal to the agent, and an agent's "mixed motives" are insufficient to establish liability. *Id.*

Quality Chekd argues that the summary judgment evidence shows that Richards acted solely for personal gain. Quality Chekd first points out that the sale of Hygeia's assets to Southern resulted in Richards's receipt of an annual payment of $90,000 for six years in exchange for a covenant not to compete. (*See* Docket No. 56, Affidavit of William L. Bowers, Tab 4-6; Docket No. 68, Affidavit of William L. Bowers, Tab 1). Quality Chekd further indicates that Richards's sister, Merry Kay Richards, a director of both companies, similarly received from the sale a $38,000 three-year payout in exchange for her covenant not to compete. (*See* Docket No. 56, Affidavit of William L. Bowers, Tab 4-6; Docket No. 68, Affidavit of William L. Bowers, Tab 1). Moreover, Quality Chekd claims that the sale of Hygeia's assets permitted Richards to pay off a personal debt to Harlingen National Bank. (*See* Docket No. 56, Affidavit of William L. Bowers, Tab 1-2; Docket No. 68, Affidavit of William L. Bowers, Tab 1). Finally, Quality Chekd asserts that it is apparent that the Richards family acted for personal gain because they were the principal shareholders of Cohyco. (*See* Docket No. 77, ¶ 4a; Docket No. 68, Affidavit of William L. Bowers, Tab 1).

As a matter of law, this evidence is insufficient to establish that a genuine issue of material fact exists as to whether Richards acted for a personal purpose, thus conspiring with Cohyco. Quality Chekd fails to demonstrate how the employment contracts Richards and his sister received from Southern constituted actions so contrary to Quality Chekd's best interests that they could have been motivated solely by personal interests. Moreover, the "personal debt" to which Quality Chekd refers was actually a loan incurred by Richards in order to alleviate Hygeia's financial distress. Nothing prohibits an individual from loaning money to a corporation for business purposes. Richards testified that he borrowed money to lend to Hygeia because the company was losing money and needed to satisfy its creditors. (*See* Docket No. 68, Affidavit of William L. Bowers, Tab 1).

There is no evidence to suggest that Hygeia's repayment of its debt to Richards and Richards's subsequent repayment of that obligation to Harlingen National Bank constituted an unlawful act against Quality Chekd. Quality Chekd is evidently unhappy that Hygeia paid its obligation to Richards prior to filing bankruptcy. This Court is hard-pressed to conclude that this alone demonstrates that Richards purposefully or wrongfully diverted Hygeia's sale proceeds from the hands of unsecured creditors, such as Quality Chekd, for his own personal benefit. Finally, Quality Chekd's bare assertion that members of the Richards family are the principal shareholders of Cohyco is insufficient to establish a genuine fact issue as to whether Richards acted purely for personal gain.

### AIDING OR ABETTING BREACH OF FIDUCIARY DUTY AND FRAUD

Quality Chekd cites several cases in support of the proposition that a third party who knowingly participates, aids, or assists in the breach of a fiduciary may be held liable along with the fiduciary. *E.g., Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574 (1942); *Anton v. Merrill Lynch*, 36 S.W.3d 251, 259 n. 7 (Tex.App.—Austin 2001, *pet. denied*); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 867 (Tex.App.—Houston [1st Dist.] 1999), *aff'd on other grounds*, 73 S.W.3d 193 (Tex. 2002); *Osuna v. Quintana*, 993 S.W.2d 201, 208 (Tex.App.—Corpus Christi 1999, *n.w.h.*); *Hendricks v. Thornton*, 973 S.W.2d 348, 372 (Tex.App.—Beaumont 1998, *pet. denied*); *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994). Significantly, none of the cases upon which Quality Chekd relies involved a corporation that aided and abetted a corporate agent to breach the fiduciary duty that the agent had to another entity. Even more importantly, however, "[c]orporations, by their very nature, cannot function without human agents," and "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway*, 898 S.W.2d at 795. While it is true that Texas recognizes

11

corporations as separate and distinct from the members who comprise it, with attributes, rights, and liabilities of its own, it can only act through its officers or agents. *See Hirsh v. Tex. Lawyers' Ins. Exch.*, 808 S.W.2d 561, 563 (Tex.App.—El Paso 1991, *writ denied*).

The plaintiff insists that Cohyco, through Richards, aided and abetted Richards in committing fraud and breaching his fiduciary duty to Quality Chekd. This is a tautological argument. Cohyco could only act through Richards's actions within the scope of his agency. Thus, the actions that allegedly demonstrate that Cohyco aided and abetted Richards's wrongful conduct could have been committed only through Richards, for Cohyco. Accordingly, because Cohyco could have acted only by and through Richards within the scope of Richards's agency, Cohyco cannot be regarded a third party separate and apart from Richards for purposes of the plaintiff's aiding and abetting claim.

### RESPONDEAT SUPERIOR

Under the doctrine of *respondeat superior*, a principal is vicariously liable for the negligence of an agent acting within the scope of his agency, although the principal has not personally committed a wrong. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). The rationale for imposing liability on the principal is that the principal has the right to control the means and methods of the agent's work. *See id.* Quality Chekd claims that Cohyco should be held liable for Richards's actions because his "wrongful conduct was committed in the course and scope of his employment with . . . Cohyco, and was done on [Cohyco's] behalf." (Docket No. 41, ¶ 32, 35). In response, Cohyco charges that no genuine issue of material fact exists to show that Richards's actions on behalf of Hygeia were committed in the course of his employment with Cohyco. This Court agrees.

The doctrine of *respondeat superior* does not apply to Richards and the actions he took on

behalf of Hygeia.[2] The basis of the present lawsuit is the trade debt incurred by Hygeia, a dairy company. Other than owning Hygeia stock, Cohyco is not in the dairy business. Unlike Hygeia, Cohyco was not a member of the Quality Chekd cooperative, and it purchased nothing from or through Quality Chekd. Moreover, Cohyco neither had an account with Quality Chekd nor owed a debt to Quality Chekd. The mere fact that Richards held the position as chairman of Cohyco does not mean that the actions he took with respect to Hygeia (i.e., its sale to Southern, ordering dairy products from vendors, making payments on its Quality Chekd account, and so forth) were actions also taken within the scope of his duties to Cohyco. Quality Chekd has failed to produce evidence that Richards was acting in his capacity as an officer of Cohyco when he conducted the credit transactions with Quality Chekd on behalf of Hygeia, and there is no summary judgment evidence showing that it was within the course and scope of Richards's duties for Cohyco to communicate with and perform business transactions with Quality Chekd on behalf of Hygeia. A parent corporation is a separate entity from its subsidiary, and each possesses its own corporate purpose. *See Metro. Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd.*, 762 S.W.2d 646, 652 (Tex.App.—San Antonio 1988, *writ dism'd*) (holding that under the common law, a parent corporation and its subsidiary are separate legal entities). Cohyco did not have any business reason to communicate with a vendor of its subsidiary, and when Richards communicated with Quality Chekd, he did so on behalf of Hygeia, not Cohyco. *See, e.g.,* Letter from Mel Rapp, Managing

---

[2]Quality Chekd's *respondeat superior* theory of liability reveals the fatal flaw of its factual allegations behind the civil conspiracy claim. Quality Chekd hangs its hat on the "personal purposes" exception, contending that Cohyco conspired with Richards because Richards acted for Cohyco as well as for his own personal benefit. It fails to plead, in the alternative, that Richards acted outside the scope of his agency and was simultaneously involved with another entity with conflicting interests. *See Bayou Terrace Investment Corp. v. Lyles*, 881 S.W.2d 810, 815 (Tex.App.—Houston [1st Dist.] 1994, *no writ*); *Fojtik v. First Nat'l Bank*, 752 S.W.2d 669, 673 (Tex.App.—Corpus Christi 1988, *writ denied*). As a debtor, Hygeia arguably had conflicting interests with its creditor Quality Chekd. It bemuses the Court that this theory was not posed; nevertheless, it is not this Court's job to write or formulate the legal arguments for the parties.

Director of Quality Chekd, to Richards, 7/23/99 (addressed to Richards as agent of Hygeia); Letter from Mel Rapp to Richards, 12/7/99 (addressed same).

Quality Chekd has failed to establish that a genuine issue of material fact exists as to the civil conspiracy claim against Richards and Cohyco; the aiding and abetting claim against Cohyco; and the *respondeat superior* claim against Cohyco. IT IS therefore **RECOMMENDED** that defendants Cohyco and Richards's Motion for Partial Summary Judgment (Docket No. 50) be **GRANTED**. Accordingly, no causes of action remain in this case against Cohyco.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 12th day of August, 2002.

_____
John Wm. Black
United States Magistrate Judge