UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
AUG 2 3 2002
Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| QUALITY CHEKD DAIRIES, INC. | § § | |
| VS. | § § | CIVIL ACTION NO. 02-CV-40 |
| COHYCO, INC. and H. LEE RICHARDS | § § | |

### OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION OF AUGUST 12, 2002

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Pursuant to 28 U.S.C. § 636(b)(1), Quality Chekd Dairies, Inc. ("Quality Chekd") objects to the Report and Recommendations of United States Magistrate Judge Black dated August 12, 2002 (the "Report") as follows:

#### Summary of Objections to the Report

Quality Chekd objects to the recommendation to grant partial summary judgment to Cohyco's because:

> **(1) The Report does not address Quality Chekd's allegations that Cohyco is liable to it because it knowingly accepted financial benefits that were the result of Richards' fraud and breach of fiduciary duties owed to Quality Chekd as a member of its Board of Directors. These allegations and the supporting summary judgment evidence require denial of Cohyco's Motion for Summary Judgment.** The pleadings and summary judgment evidence present material fact issues that Richards defrauded Quality Chekd by not disclosing material information about Hygeia's dire financial situation when he was seeking more credit from Quality Chekd, and by making affirmative misrepresentations about material facts. The summary judgment evidence includes Richards' admission that F Street Investments, Inc ("F Street") remained in business long enough on Quality Chekd's credit (when no other lenders were available) that he was able to sell its assets at a higher price than had it been forced to cease operations. Cohyco directly benefitted from Richards' fraud on Quality Chekd since, as a result, Cohyco no longer had to honor its guarantee of F Street's multi-million dollar bank loan (viz., a large part of sales

1

proceeds from Hygeia's assets were used to extinguish this debt), and Cohyco received real estate deeds in lieu of foreclosure from F Street worth about $1.9 million.

(2) The Report misapplies the cases and disregards summary judgment evidence supporting Quality Chekd's claim that Cohyco is liable for causing, conspiring with, or aiding and abetting Richards to defraud Quality Chekd by self-dealing and not disclosing material information that violated his fiduciary duties owed to Quality Chekd as a member of its Board of Directors.

(3) The Report never addresses the cases and summary judgment evidence pled and offered by Quality Chekd about the "personal purposes exception" to the intercorporate conspiracy defense, that allows imposing liability on Cohyco since Richards was acting for his own purposes as well as for Cohyco's interests when he defrauded Quality Chekd. Such evidence establishes that Richards reaped about $831,000 from his misconduct, and that his sister also reaped about $99,000 from this fraud, even though these funds should have gone to Hygeia (which ultimately benefitted Cohyco).

(4) The Report overlooks and misapplies summary judgment evidence that creates a fact issue about Cohyco's liability to Quality Chekd because Richard's fraudulent acts and breach of fiduciary duties owed to Quality Chekd were done when he was a Cohyco employee. Richards served as the Chairman of the Board for both Cohyco and F Street, he and his family members served as officers and directors of both companies, and they also held the controlling interest in Cohyco.

(5) Cohyco may not now prosecute its Motion for Summary Judgment because the doctrine of issue preclusion (collateral estoppel) applies. The bankruptcy court has already ruled against Cohyco by holding that there are issues of material fact as to Cohyco's responsibility for Richards' conduct.

These objections are specifically addressed below, with citation to the supporting authorities and references to the summary judgment evidence.

## I.

### Objection to the Report Because it Did Not Consider Plaintiff's Causes of Action Against Cohyco for Knowingly Benefitting From Richards' Fraud and Breach of Fiduciary Duty

1. **The Report Failed to Consider Relevant Legal Principles and Evidentiary Material That Should Have Defeated the Motion for Summary Judgment Because Cohyco Knowingly Benefitted from Richards' Misconduct**

Quality Chekd's First Amended Complaint alleges causes of action against Cohyco and Richards for both fraud and breach of fiduciary duty. In the cause of action for breach of fiduciary duty at page 14 of the First Amended Complaint, Quality Chekd alleges that Cohyco is liable because it "... knowingly accepted and retained benefits from such [Richards'] wrongful conduct." The same basis of liability is alleged against Cohyco in the cause of action for fraud at page 15. The Report totally disregards these allegations, the cases cited to support this ground of liability, and the summary judgment evidence that demonstrates the material fact issues for this cause of action. Specifically, page 11 of the Report describes Quality Chekd's *non*-conspiracy grounds for holding Cohyco liable:[1] "... that a third party who knowingly participates, aids or assists in the breach of a fiduciary may be held liable along with the fiduciary." Then, on page 14 the Report concludes:

> Quality Chekd has failed to establish that a genuine issue of material fact exists as to the civil conspiracy claim against Richards and Cohyco; the aiding and abetting claim against Cohyco; and the *respondeat superior* claim against Cohyco.

Despite the authorities cited by Quality Chekd, and the summary judgment evidence filed to support its pleadings, the Report never discusses Cohyco's liability to Quality Chekd for having knowingly benefitted from Richards' misconduct. Therefore, this conclusion, the limited analyses

---

[1] The Report's consideration of the conspiracy theory will be discussed, *infra*.

3

at pages 11 through 13, and the Report's ultimate conclusions and recommendations are objectionable since they are incomplete, incorrect, and do not constitute a valid legal basis for recommending partial summary judgment.

### 3. **Cohyco is Liable to Quality Chekd Because it Knowingly Benefitted From Richards' Fraud: Legal Principles and Authorities**

The elements of fraud are (1) knowingly making a false representation or deceptively withholding information that one has a duty to disclose; (2) reasonable reliance on the misrepresentation or silence; (3) intent to deceive; and (4) damage proximately resulting from (1), (2) and (3). *Crawford Painting & Drywall Co. v. J. W. Bateson Co.*, 857 F.2d 981, 985 (5th Cir. 1988) *cert. denied*, 488 U.S. 1035 (1989).

The first element may be committed by remaining silent when there is a duty to speak. *Anderson, Greenwood & Co. v. Martin,* 44 S.W.3d 200 (Tex. App.– Houston [14th Dist.] 2001, no pet.) and *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.–Austin 1988, no writ) ("If ... the [parties'] relationship ... is a 'fiduciary relationship,' ... the law imputes ... additional and higher duties and their breach may constitute a fraud. [The duties include] the duty of full disclosure respecting matters affecting the principal's interests and a general prohibition against the fiduciary's using the relationship to benefit his personal interest except with the full knowledge and consent of the principal"). An officer or corporate director has a fiduciary duty to the corporation he serves. *International Bankers Life Insurance Company v. Holloway,* 368 S.W.2d 567 (Tex.1963). Therefore, Richards had a fiduciary duty to make a full disclosure of all material facts in any transaction he conducted with Quality Chekd. The summary evidence shows that he did not.

Intent, the second element of fraud, is normally proven by circumstantial evidence. *Branson*

*v. Standard Hardware, Inc.*, 874 S.W.2d 919, 924 (Tex. App.– Fort Worth 1994, writ denied) (..."[w]here one is seeking to prove knowledge of a party in interest, the fraud is always proven by circumstantial evidence from which inferences may be drawn from the facts proved ... [if sufficient to support the inferences]") and *Hendricks v. Grant Thornton*, 973 S.W.2d 348, 359 (Tex. App.– Beaumont 1998, pet. denied) ("issues of intent and knowledge are not susceptible of being readily controverted and are generally inappropriate for summary judgment"). The summary judgment evidence, taken as a whole and viewed in the light most favorable to the Plaintiff, amply supports the inference that Richards intended for Quality Chekd to rely on his silence to induce it to extend the credit he requested.

In addition to the person actually committing the fraud, a third party who knowingly benefits from the fraud is also liable for the damage that the fraud causes.[2] *Branson v. Standard Hardware Co., Inc.*, 874 S.W.2d 919 (Tex. App.- Ft. Worth 1994); *First State Bank of Miami v. Fatheree*, 847 S.W.2d 391 (Tex. App.- Amarillo 1993); *Corpus Christi Area Teacher's Credit Union v. Hernandez*, 814 S.W.2d 195 (Tex. App.- Corpus Christi 1991); *Hruska v. First State Bank of Deanville*, 727 S.W.2d 732 (Tex. App.- Houston 1st Dist. 1987); *Southwestern Indemnity Co. v. Cimarron Insurance Company*, 334 S.W.2d 831 (Tex. App.- Waco 1960); *Five Star Transfer and Terminal Warehouse Corporations v. Flusche*, 339 S.W.2d 384 (Tex. App.-Texarkana 1960) (citing the early case of *Pierce v. Fort*, 60 Tex. 464 (1883) and *Brach v. Moen*, 35 F. 475, 482 (5th Cir.1929)). These cases refuse to let a party who, like Cohyco, although not actively participating in a fraud, knowingly profit from another's illegal activity.

---

[2] Quality Chekd's Objections to the Report's error on the aiding abetting and participating in Richard's misconduct will be discussed, *infra*.

5

Summary judgment evidence establishes that Cohyco knew, through Richards, that he was cheating Quality Chekd by being silent about F Street's dire financial circumstances when seeking more credit from Quality Chekd (while trying to unload F Street's assets) and by his affirmative misstatements to Mr. Rapp. The law forbids Cohyco from profiting from this misconduct since it was legally charged with knowledge of Richards' conduct. Cohyco's knowledge is established because obviously Richards, Cohyco's Chairman, knew what he was doing. Further, as a senior executive and director, Richards' knowledge is charged or imputed to Cohyco. *Hellenic, Inc. v. Bridgeline Gas Distrib., L.L.C. ) (In re Hellenic)*, 252 F.3d. 391 (5th Cir.2001); *Askanase v. Fatjo*, 130 F.3d 657 (5th Cir.1997); *Poth v. Small, Craig & Werkenthin, L.L.P.*, 967 SW. 2d 511 (Tex. App. -- Austin 1998); *Republic National Bank v. Whitten*, 383 SW.2d 207 (Tex. App. -- Dallas 1964). Thus, Cohyco knew and is deemed to know what Richards knew. On pages 125 and 126 of his deposition, Richard

### 4.     Issues of Material Fact Raised by the Summary Judgment Evidence

The summary judgment evidence[3] establishes material fact issues on the following pivotal questions. The specific points itemized below are set out as an aid to the court. However, in view of the nature of the evidence and the sequence in which it was obtained, a complete review of the material and an evaluation of the evidence as a whole is requested.

- Richards was the Chairman of the Board of Directors of both Cohyco and F

---

[3] The summary evidence was submitted in two parts. The first was the Affidavit of William L. Bowers Jr. attached to the initial answer to the motion. It included Cohyco's and its subsidiary's consolidated, audited financial statements (1994-95); Cohyco and it subsidiary's 1998 consolidated federal income tax return; the audited financial statements for 1996 through 1998; excerpts from Lee Richards and Doug Purl's depositions taken in the bankruptcy case and excerpts from the original and amended schedules in the bankruptcy. The second affidavit after Mr. Richards' deposition, was submitted with a supplemental answer and included excerpts from Mr. Richards' deposition in this case and material from the bankruptcy case. The excerpts were authenticated by a second affidavit of William L. Bowers, Jr. The first summary judgment evidence will be cited "(Aff. 1, Tab___, p.____)" and the second will be cited "(Aff. 2, Tab __, p. __ )."

6

- Street[4] during the period relevant to these proceedings. Richards was the top executive officer and handled the financial matters of both companies; (Aff. 1, Tab 4, p. 2; Aff. 2, Tab 2, p. 87);

- Richards was a director of Quality Chekd during 1999, served on Quality Chekd's Board of Directors for a number of years, and had been the President of the Board of Quality Chekd; (Aff. 2, Tab 2, pp. 89, 119-121);

- Cohyco was the sole shareholder of F Street, had guaranteed F Street's debt to Congress Financial Services ("Congress") to which F Street owed approximately $7.5 million at the time of the sale of F Street's Assets; (Aff. 1, Tab 3; Aff. 2, Tab 2, pp. 131-134);

- F Street had lost money for a number of years; its 1998 audited financial statements were qualified by a "going concern" or liquidity warning and reflected a negative net worth of in excess of $7 million; (Aff. 1, Tab 3, all pages;

- Cohyco had attempted to position itself as a secured creditor subordinated to Congress; there was not enough equity in F Street to pay the debts alleged to be owed to Congress and then pay the other creditors; (Aff. 1, Tab 3, all pages; Aff. 2, Tab 2, p. 155);

- In at least 1997, 1998 and 1999, Richards was attempting to sell F Street's assets but had not obtained (and never obtained) a price high enough, when added to the retained asset(s), to pay the unsecured (mainly trade) creditors. (Aff. 2, Tab 2, pp. 95-102);

- Cohyco had to approve any sale of F Street's operating assets[5];

- Richards personally conducted the negotiations to continue using Quality Chekd's purchasing program in the face of F Street's continually growing, more delinquent account balances with Mr. Mel Rapp, Quality Chekd's Managing Director during the period in question (Aff. 2, Tab 2, pp. 107-118);

- Richards did not reveal the information about F Street's finances and the sales negotiations outlined above to Rapp or any other management personnel of Quality Chekd (*See* Rapp affidavit attached to Opposition to Motion to

---

[4] F Street was formerly known as Hygeia Dairy Company. In November 1999, when Hygeia sold its assets to Southern Foods Corporation, under the terms of the sale it changed its name to F Street Investments, Inc. F Street/Hygeia will be referred to in these Objections as F Street.

[5] See Art. 510, Tex. Bus. Corp. Act

Transfer Venue, Docket No. 23);

- The assets of F Street were worth more if they could be sold as a going concern (Aff. 2, Tab 2, pp. 107);

- F Street was using credit from Quality Chekd and other creditors to keep F Street in business (Aff. 2, Tab 3, pp. 120-122); and

- Cohyco received benefits from Richards misconduct because it got more money from the sale of F Street's assets and did not have to honor its guarantee of F Street's debt to Congress ( Aff. 2, Tab 2, pp. 131-134).

Richards has not filed a motion for summary judgment, nor does Cohyco's motion contest his personal responsibility. The summary judgment raises issues of material fact on all theories alleged against Richards and demonstrates that Cohyco knew what he was doing wrong, but still accepted the following benefits from his conduct.

- Cohyco's principal operating subsidiary was kept in business until the sale price of its assets could be maximized;

- Cohyco did not have to honor its $7.3 million guarantee to Congress;

- Cohyco recovered real estate from F Street of a value of up to $1.9 million; and

- Liens on real estate of its subsidiary Carancahua were released when Richards' loan was paid off.

**5. Argument**

The Report erred by not considering the "knowingly benefitting from fraud and breach of fiduciary duty" grounds for imposing liability on Cohyco. The authorities and summary judgment evidence cited raise material fact issues about Cohyco's liability for accepting and retaining benefits from Richards' fraud and breach of fiduciary duty which should defeat the motion for summary judgment. Under the cases cited, Cohyco need not have actively participated in the fraud, nor aided

8

and abetted Richards. None of the cases cited require that Richards' activities be done during the course and scope of his employment of Cohyco before it may be held liable. The elements of this cause of action instead address what Cohyco got as a result of Richards' fraud and misconduct, as well as what it knew about his misconduct.

A review of the initial and subsequent exchanges of argument, authorities, and summary judgment evidence[6] reflects that the principal thrust of Cohyco's motions has always been to attack the conspiracy issue. Movant's argument and authorities did not rebut authorities cited and the summary judgment evidence offered to demonstrate triable issues on Cohyco's liability for accepting the fruits of Richards' misconduct (or for that matter, even discuss these questions). If the summary judgment evidence is accepted as true, and properly viewed in the light most favorable to the non-movant, Cohyco is not entitled to judgment as a matter of law because a reasonable jury could find that while Cohyco knew what Richards was doing was wrong, it still accepted the benefits from his misconduct.

The evidence paints a picture of a parent corporation deliberately allowing its subsidiary to run up accounts it could not pay, by using every device that it could muster, included using Richards' position as a long-time, trusted board member of Quality Chekd, and then reaping the benefits of this

---

[6] Defendants Motion for Summary Judgment, Motion for Referral to the Bankruptcy Court and Motion to Transfer was filed March 15, 2001; F Street's Response to Plaintiff's Opposition to Referral of Case's and Motion for Reference of Case to Bankruptcy Court was filed March 20. Plaintiff Response and Opposition to Defendants' Cohyco's and H. Lee Richards' Motion for Summary Judgment, Motion for Referral to the Bankruptcy Court and Motion to Transfer (accompanied by initial summary judgment evidence) was filed April 19, 2001. On July 7, 2001, after Lee Richards' deposition was taken, Quality Chekd filed Plaintiff's Answer the Defendant Cohyco, Inc's and H. Lee Richards' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment with additional summary judgment evidence. The Defendants Surreply to Plaintiff's Answer to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment was filed on August 7, 2001. The authorities cited and the summary judgment evidence deal primarily with the conspiracy cause of action. They never mention or address the knowingly benefitting from the misconduct.

misconduct. Case law does not let companies like Cohyco escape liability by sitting in the wings, ignoring what they know, and then accepting the rewards of known misconduct. The summary judgment evidence more than amply supports this cause of action.

## II.

### Objection to the Report Because the Summary Judgment Evidence Raises Issues of Material Fact as to Whether Cohyco Participated In, Caused or Aided and Abetted Richards In His Fraud and Breach of Fiduciary Duty to Quality Chekd

6. **The Report Misapplied the Authorities and Summary Judgment Evidence Cited by Quality Chekd**

Although, at pages 11 and 12, the Report tries to distinguish the authorities Quality Chekd cited to support its allegations that Cohyco participated in, caused, or aided and abetted Richards in his misconduct, the Report fails to consider the summary judgment evidence on this point. For the reasons stated below, the Report is in error and objectionable.

7. The Cohyco is Liable to Quality Chekd Because it Either Participated In, Caused or Aided and Abetted Richards' Illegal Conduct: Legal Principles and Authorities

The Report attempts to limit the rule laid down by *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex.1942); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 866 (Tex. App. -- Houston [1st Dist.]1999), *aff'd on other grounds*, 2000 WL 33716714 (Tex., Mar. 21, 2002); *Hendricks v. Grant Thornton*, 973 S.W.2d at 371; and *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex. App. – Houston [14th Dist.] 1994, writ den'd) to the specific facts before those courts. These cases teach that if a third party knowingly causes or participates[7] with a fiduciary in breaching its duty or committing fraud, then the third party is liable as a joint tortfeasor. See *Wilson v.*

---

[7] These causes of action are in addition to those for knowingly benefitting from fraud or breach of fiduciary duty. See I, *supra*.

10

*Cinemark Corp.*, 858 S.W.2d 645 (Tex. App. -- Fort Worth 1993, no writ) and *First Bank of Miami v. Fatheree*, 847 S.W.2d 391, 396 (Tex. App. – Amarillo 1993, writ denied) ("each party to a fraudulent transaction is responsible for the acts of the others done in furtherance of the fraudulent scheme ... and all who participate are liable for the fraud").

Although none of the cases cited deal with the precise fact situation here, neither they nor the cases cited in the Report limit the application of the rule of *Kinzbach* and its progeny to fact situations outside the specific record before them. Liability is imposed on someone who participates in the corrupt conduct of another engaged in fraud or breach of fiduciary duty because of the harm they do and the necessity of protecting persons who are owed fiduciary duties. Liability is imposed on the basis of what the party did, not the existence or absence of a particular corporate relationship. Further, if, as the Report finds, what Richards did was in the course and scope of his duties as an employee of F Street, then Cohyco must have been a third party and was not identical to Richards. As shown above, Richards' knowledge of what he was doing is imputed to Cohyco. Therefore, there is a factual and legal basis for a jury to find for Quality Chekd on this cause of action.

8. **The Summary Judgment Evidence Raises Issues of Material Fact On Cohyco's Causing, Participating In or Aiding and Abetting Richards**

The key facts shown by the Summary Judgment Evidence cited above raise issues on which a jury could reasonably find that Cohyco caused, participated in or aided and abetted Richards' conduct. Cohyco, as the sole shareholder controlled Hygeia's Board of Directors and who the officers were. Richards was the top executive authority of both companies. He could not have acted as he did if Cohyco had not placed him as Chairman of F Street's Board. Cohyco had a motive to have Richards keep F Street in business (i.e. to get more out of F Street and not have to pay off

11

Congress). Richards and members of his family held the controlling interest in Cohyco. It was their principal business investment and means of livelihood for several members of the family. Cohyco had the opportunity to participate in Richards misconduct. It knew what bad shape F Street was in, about Richards' inside connections with Quality Chekd and through Richards, and Cohyco controlled Hygeia policy. This is both circumstantial and direct evidence of Cohyco's involvement in these facts.

## III.

**Objection to the Report Because the Summary Judgment Evidence
Supports the Contention that Richards, At Least In Part,
Was Acting in His Own Interest and Against the Interests of Cohyco**

9.  **The Intercorporate Conspiracy Defense Is Not Applicable or, Alternatively, the Report Has Misapplied the Legal Standard to Require That the Corporate Officer must Act Exclusively in His Own Interest in Order to Conspire with the Corporation**

The Report rejects application of the personal purposes exception to the facts of this case. However, a unanimous Supreme Court recently made the limited scope of this doctrine clear in *Cedric Kusner Promotions, Ltd. v. King*, 533 U.S. 158, 121 S.Ct. 2087 (2001) (reversing the dismissal of a RICO case filed by a boxing promoter and finding that the intercorporate conspiracy doctrine turns on specific antitrust law objectives). The Supreme Court said:

> "King argues that the lower court's rule [that a conspiracy wasn't possible because of the intercorporate conspiracy doctrine] is consistent with (1) the principle that a corporation acts only through its directors, officers, and agents. . . ., (2) the principle that a corporation should not be liable for the criminal acts of its employees where Congress so intends, . . . and (3) the Sherman Act principle limiting liability under 15 U.S.C. § 1 by excluding "from unlawful combinations or conspiracies . . . activities of a single firm," *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-70, n.15, 104 S.Ct. 2731 (1984). The alternative that we endorse . . . is no less consistent with these principles. It does not deny that a corporation acts through its employees; it says only that the corporation and its employees are not legally

12

> identical. It does not assert that ordinary *respondeat superior* principles make a corporation legally liable under RICO for the criminal acts of its employees[.] . . . *Neither is it inconsistent with antitrust law's intercorporate conspiracy doctrine; that doctrine turns on specific antitrust objectives.* See *Copperweld Corp., supra,* at 770-771."

121 S.Ct. at 2092. (emphasis added and internal citations omitted).

Cohyco's *Motion for Summary Judgment* did not consider the holding in *Cedric Kusner Promotions, Ltd.* that the intercorporate conspiracy doctrine is limited to antitrust matters or that, even prior to that decision, the Texas Courts of Appeal have split over the applicability of the intercorporate conspiracy doctrine outside of the antitrust context. *See Grizzle v. Texas Commerce Bank, N.A.,* 38 S.W.3d 265, 284 (Tex. App.-- Dallas 2001, review granted, Feb. 7, 2002) (noting that it falls within the *majority* of Texas Courts of Appeal in holding that the doctrine is limited to the antitrust context).

> Texas courts are split on whether the holding in *Copperweld Corp.* applies to common law conspiracies. In *Metropolitan Life Insurance Co. v. La Mansion Hotels & Resorts, Ltd.,* 762 S.W.2d 646, 651-52 (Tex. App.--San Antonio 1988, writ dism'd w.o.j.), the Fourth Court of Appeals concluded that the *Copperweld Corp.* holding applies only to the antitrust context and is not applicable to common law conspiracies because the Supreme Court limited its holding to cases involving alleged violations of the Sherman Act. Other courts agree. *See, e.g., Holloway v. Atlantic Richfield Co.,* 970 S.W.2d 641, 644 (Tex. App.--Tyler 1998, no pet.); *Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 447 (Tex. App. --Texarkana 1993, writ denied). However, *the Fourteenth Court of Appeals ignored the antitrust context and cited Copperweld Corp. for the proposition that, "[a]s a matter of law, a parent corporation cannot conspire with its fully owned subsidiary." Atlantic Richfield Co. v. Misty Prods., Inc.,* 820 S.W.2d 414, 420 (Tex. App.--Houston [14th Dist.] 1991, writ denied) (emphasis added)[8].

---

[8] While "agents of a corporation cannot form a conspiracy while acting in their corporate capacity, [they] can conspire with each other if they are acting in a different capacity or for a personal purpose of their own." *Texas-Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 138 (Tex. App. -- Texarkana 2000, no pet.) (noting that *Fojtik v. First Nat'l Bank of Beeville,* 752 S.W.2d 669 (Tex. App. - Corpus Christi 1988), *aff'd per curiam,* 775 S.W.2d 632 (Tex. 1989) ultimately held that a corporate agent *can conspire* with its corporation if not acting in his corporate capacity, and citing, as additional authority, *Boone v. Federal Express Corp.,* 59 F.3d 84 (8th Cir. 1995); *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.,* 629 So.2d 252 (Fla. Dist. Ct. App. 1993); and *Koster v. P & P Enter., Inc.,* 248 Neb.

In short, even if the intercorporate conspiracy is applicable, if the acts committed by Richards were partly for his own interest as Quality Chekd contends, then the "personal purposes" exception takes this case outside the intercorporate conspiracy doctrine (assuming, *arguendo*, that the doctrine applies to non-antitrust proceedings). See *Christopher v. General Computer Systems, Inc.*, 567 S.W.2d 698 (Tex. App. – Dallas 1977, writ ref'd n.r.e.).[9] Quality Chekd submits that there is no requirement that the personal purposes exception does not require the action be solely for the officer's purpose. *Dussouy v. Gulf Coast Investment, Corp.* 660 F.2d 594, 603 (5th Cir.1981); *Nelson v. Fontenot*, 784 F. Supp. 1258, 1261 (E.D. Tex. 1992) (which applied the personal purposes conduct exception to the intercorporate conspiracy defense). It is sufficient if the officer or director is acting for some personal purpose.

### 10. The Report Disregards Summary Judgment Evidence That Raises a Material Fact Issue of Richards' Personal Purpose Behind His Actions

The summary judgment evidence shows that Richards negotiated a six year non-compete agreement with Southern Foods for himself for $90,000 per year and a three year non-compete agreement for his sister for $33,000 per year. None of this $639,000 went to Cohyco. Further, the $291,000 balance of the $300,000 loan to Richards from Harlingen National Bank was his personal responsibility. No matter what Richards used this money for, if F Street's sale proceeds were not enough to pay off the loan, Richards would have to pay. The $291,000 from the sale proceeds was used to pay Richards' debt. It did not go to F Street or Cohyco. The Richards' family interest in

---

759, 539 N.W.2d 274 (1995)).

[9] *See also Dussouy*, 660 F.2d at 603, and that of the Eastern District of Texas in *Nelson v. Fontenot*, 784 F. Supp. 1258, 2161 (E.D. Tex. 1992), which applied the personal purposes exception. *See also Elliott v. Chilton*, 89 F.3d 260, 264 (5th Cir. 1996) (recognizing the personal purposes exception to the intercorporate conspiracy doctrine, but not applying it under the facts presented).

Cohyco is not, as the Report states, a mere assertion. It is backed by summary judgment evidence in the form of the Schedule from Cohyco's 1998 Consolidated Federal Income Tax Return listing the shareholders of Cohyco and their percentage interest. Richards also testified as to his family's 70% interest in Cohyco and his lifelong employment with F Street and Cohyco (Aff. 1, Tab 2, p. 103551; Aff. 2, Tab 1, pp. 38, 87-90; and Tab 4, pp. 105).

This summary judgment evidence is more than enough to raise issues of material fact on Richards' personal purposes behind his conduct. Between the personal non-compete agreement and his liability to the bank, Richards had an $831,000, plus the value of his interest in Cohyco, incentive to keep F Street in business. Richards testified that had F Street gone out of business before its assets could be sold, the return from the sale would have been much less. With F Street out of business, what would Richards' agreement not to compete have been worth? If acting adversely to Cohyco's interest is a requirement of the personal purpose exception, the summary judgment evidence establishes a facts issue as to whether Richards' interests were adverse to Cohyco. It shows that Richards and his sister pocketed or benefitted from almost $1,000,000 from the sale proceeds that should have gone to F Street or Cohyco.

## IV.

### Objection to the Report Because it Did Not Consider or in the Alternative, Misapplied Summary Judgment Evidence on the Course and Scope of Richards' Employment With Cohyco

11. <u>The Report failed to consider Summary Judgment Evidence which Creates An Issue of Material Fact on the Question of Whether Richards Was Acting in the Course and Scope of His Employment with Cohyco</u>

On pages 12, 13 and 14 the Report discusses the *respondeat superior* theory and concludes that the summary judgment evidence is insufficient to raise a fact issue as to whether Richards' was

acting for Cohyco when he committed fraud against, and breached his fiduciary duty to Quality Chekd. Quality Chekd objects to these findings because the summary judgment evidence, taken as a whole, does create a fact issue on this point. On page 13, the Report states: "... the basis of the lawsuit is the trade debt incurred by Hygeia..." This is incorrect. The basis of the lawsuit is the misconduct of Richards which deceived Quality Chekd into extending credit to F Street that it could not repay. The Report goes on to state that Quality Chekd failed to produce evidence that Richards' contacts with it were done for Cohyco. This is not correct. The summary judgment evidence cited above, taken as a whole, establishes why Richards was acting not only on behalf of F Street and himself but also for Cohyco. Cohyco had guaranteed about $7.3 million of F Street's debt to Congress. Had F Street gone out of business, its assets would have been worth less[10]. Cohyco stood to lose in direct proportion to any reduction of the asset's price caused by Hygeia's failure as a going concern. These facts demonstrate motive and opportunity on Cohyco's part from which a jury could find that Richards was at least in part, acting for and on behalf of Cohyco.

---

[10] The sale netted about $9.5 million; F Street owed Congress about $7.3 million; about $3.5 million of the sales price was for perishable inventory; Cohyco claimed it had a secured debt of over $16 million; Southern Foods bought the name and operations of Hygeia, which it put into operation and used; Cohyco claimed a right to all of the assets not sold and the cash proceeds of the sale; it had to approve the terms of the sale; Richards, in addition to negotiating F Street's credit with Quality Chekd, he negotiated the terms of the sale with Southern Foods; he was the top executive officer of both companies; Cohyco was well aware of F Street's poor financial condition and its continuing losses..

# V.
## Objection to the Report Because Cohyco Cannot Urge Its Position Because of the Doctrine of Issue Preclusion or Collateral Estoppel

12. **Cohyco Cannot Prosecute its Motion for Summary Judgment Because the Principal Issues Here Have Been Decided Against it in Anther Proceeding, Involving the Same Subject Matter in the Bankruptcy Court**

Quality Chekd and Cohyco are both unsecured creditors in Case No. 00-20953-B-11 styled *F Street Investments, a Texas Corporation f/k/a Hygeia Dairy Company;* In the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division. Ancillary to that proceeding, Quality Chekd filed an adversary proceeding to subordinate Cohyco's claim to Quality Chekd, Case No. 00-2102B styled *Quality Chekd Dairies, Inc. v. Cohyco, Inc.;* In the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division (the "Adversary"). In the Adversary, Quality Chekd asks the Bankruptcy Court to subordinate Cohyco's claim to that of Quality Chekd because Cohyco has engaged in inequitable conduct within the meaning of 11 U.S.C. §510 (c). Quality Chekd alleges that Cohyco is guilty of the inequitable conduct on the same grounds alleged here, conspiracy, aiding and abetting, causing, participating in and knowingly benefitting from Richard's conduct. A Motion for Summary Judgment similar to the Motion here was filed in the Adversary by Cohyco. Quality Chekd responded with essentially the same evidence, arguments and authorities cited here. The Bankruptcy Court denied Cohyco's motion, finding that Cohyco failed to establish there are no issues of material fact.

Under these facts, Cohyco is barred by the doctrine of issue preclusion, or as it was formerly known, collateral estoppel. *In Re: The Matter of Southward Corporation; Southward v. Coopers & Lybrand, et al*, 163 F3d. 925 (5th Cir 1999), cert denied, 1999 Lexis 4055.

Issue preclusion is appropriate when the following elements are present:

(1) the issue involved is identical to that resolved in the prior action;

(2) the issue must have actually been litigated;

(3) the parties against whom the doctrine is sought to be imposed must have been the same or in privity with the actual parties; and

(4) determination of the issue must have been part of the judgment in the prior action

See *Aguillard, et al v. McGowan, et al, 207 F.3d 226 (5th Cir 2000); McCoy v. Hernandez, et al,* 203 F3d 371 (5th Cir. 2000); *Next Level Communications, L.P., et al v. DSC Communications Corporation, et al,* 179 F.3d 244 (5th Cir. 1999). Even if an appeal is taken from the original judgment, unless and until that judgment is actually reversed, the first decision retains its preclusive effect. *Aguillard, et al v. McGowan, et al.,* 207 F.3d 229; *Sage v. United States*, 908 F.2d 18 (5th Cir. 1990); *Prager v. El Paso National Bank,* 417 F.2d 1111, 1112 (5th Cir. 1969); *TCA Building Company v. Northwestern Resources Co. et al,* 861 F. Supp. 1366 (S.D. Tex. 1994). If the requirements of issue preclusion are met, the same factual or legal issues may not be litigated again in a subsequent action. Because of the identity of issues in both this and the Adversary (in which both parties to this motion were in an adversarial position and litigated the same issue) and as there has already been one ruling by a court of competent jurisdiction on the principal issue (i.e. whether there an issue of material fact under the pleadings), Cohyco is not entitled to have another determination of this point.

WHEREFORE, Quality Chekd prays that its Objections to the Report be SUSTAINED and that this court enter its order DENYING Cohyco's Motion for Summary Judgment in all respects or in the alternative, referring the matter back to the Magistrate Judge for such further proceedings as the Court deems necessary.

RESPECTFULLY SUBMITTED,

*[signature]*

Lee Hamel, SBN: 08818000
William L. Bowers, Jr., SBN: 02740000
Michael E. Clark, SBN: 04293200
Hamel Bowers & Clark, L.L.P.
5300 Memorial Dr., Suite 900
Houston, Texas 77007
Telephone:    (713) 869-0557
Telecopier:    (713) 869-0677
*ATTORNEYS FOR QUALITY CHEKD DAIRIES, INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record on this the 23rd day of August 2002 by First Class United States Mail, postage prepaid and facsimile, as follows:

Christopher Lowrance
Royston, Rayzor, Vickery & Williams
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, Texas 78476.

*[signature]*
William L. Bowers, Jr.